**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN MUNCH, LARRY BUTLER, | ) | |
| JOSEPH LEONARD, KEVIN BARNES, | ) | |
| and VICTOR MATOS, individually and on | ) | |
| behalf of all others similarly situated, | ) | |
| | ) | Case No. 06-cv-7023 |
| Plaintiffs, | ) | |
| | ) | Judge Joan Humphrey Lefkow |
| v. | ) | |
| | ) | |
| SEARS ROEBUCK AND CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO**
**DISMISS COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE**
**DEFINITE STATEMENT OF PLAINTIFFS' CLAIMS**

Table of Contents                                                                                                Page

Table of Authorities ....................................................................................................... iii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT ................................................................................................................. 4

I.      PLAINTIFFS FAIL TO PLEAD COGNIZABLE CLAIMS UNDER ANY OF
        THE APPLICABLE CONSUMER PROTECTION STATUTES ......................... 4

        A.      Plaintiffs Fail to State Claims Under the Illinois Consumer Fraud and
                Deceptive Business Practices Act .............................................................. 5

                1.      Plaintiffs Butler, Leonard, Matos, and Barnes do not have
                        standing to pursue a claim under the Illinois Fraud Act ................. 5

                2.      Plaintiffs fail to allege statutory fraud with particularity because
                        they do not identify any statement by Sears that allegedly was
                        misleading due to the omission of a material fact........................... 6

                        a.      Plaintiffs' allegation that Sears did not disclose the
                                "substantial risk of mechanical failure" is not sufficient
                                to plead an omission of a material fact .............................. 6

                        b.      Plaintiffs' allegation that Sears did not disclose the risk
                                of "moldy smells" is insufficient to plead an actionable
                                omission ............................................................................ 9

                        c.      The other two "facts" Sears allegedly failed to disclose
                                are neither material nor deceptive....................................... 9

                3.      Plaintiffs fail to allege that Sears intended to induce Plaintiffs'
                        reliance, as required under the Illinois Fraud Act........................... 11

        B.      The Indiana Deceptive Consumers Sales Act Does Not Recognize
                Plaintiff Butler's Purported Cause of Action for Non-Disclosure .............. 12

        C.      Plaintiffs Fail to State Claims Under the Kentucky Consumer Fraud
                and Deceptive Business Practices Act ........................................................ 13

        D.      Plaintiff Leonard Fails to State a Claim Under the Minnesota
                Prevention of Consumer Fraud Act ............................................................ 13

II.     UNDER ILLINOIS' CHOICE-OF-LAW RULES, THE LAWS OF
        PLAINTIFFS' RESPECTIVE HOME STATES APPLY TO THEIR
        COMMON-LAW FRAUD, IMPLIED WARRANTY, AND UNJUST
        ENRICHMENT CLAIMS ......................................................................     14

III.    PLAINTIFFS FAIL TO STATE CLAIMS FOR COMMON-LAW FRAUD .......     15

        A.      Plaintiffs' Common-Law Fraud Claims Fail for Many of the Same
                Reasons as Their Defective Statutory Fraud Claims ..................................     15

        B.      Plaintiffs' Fraudulent Omission Claims Fail Because Sears Did Not
                Owe Plaintiffs a Duty to Disclose Additional Facts ..................................     15

                1.      Illinois law does not impose a duty of disclosure on Sears ............     16

                2.      Indiana law does not impose a duty of disclosure on Sears............     17

                3.      Kentucky law does not impose a duty of disclosure on Sears .......     17

                4.      Minnesota law does not impose a duty of disclosure on Sears.......     18

                5.      Texas law does not impose a duty of disclosure on Sears ..............     18

IV.     PLAINTIFFS FAIL TO STATE CLAIMS FOR BREACH OF IMPLIED
        WARRANTY OF MERCHANTABILITY ................................................................     19

        A.      Plaintiffs Have Failed to Plead Facts Showing That Their HE Washers
                Are Unfit for Cleaning Clothes ....................................................................     19

        B.      Plaintiffs Butler's, Leonard's, and Barnes's Warranty Claims Fail
                Because They Have Not Alleged They Gave Sears Pre-Suit Notice of
                Breach ...........................................................................................................     21

V.      PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL BECAUSE THEY
        FAIL TO ALLEGE FACTS SHOWING THAT SEARS' CONDUCT WAS
        WRONGFUL....................................................................................................     22

VI.     PLAINTIFFS LACK STANDING TO SEEK A DECLARATORY
        JUDGMENT .....................................................................................................     24

VII.    ALTERNATIVELY, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE
        A MORE DEFINITE STATEMENT OF THEIR CLAIMS ................................     25

CONCLUSION..................................................................................................     26

Table of Authorities

<u>Cases</u>                                                                                                                <u>Page</u>

*Agway, Inc. v. Teitscheid,*
472 A.2d 1250 (Vt. 1984) ...................................................................................   21n

*Alcan Aluminum Ltd. v. Dep't of Revenue of Oregon,*
724 F.2d 1294 (7th Cir. 1984) ...........................................................................   24

*Allensworth v. Ben Franklin Sav. & Loan,*
389 N.E.2d 684, 71 Ill. App. 3d 1041 (Ill. Ct. App., 2d Dist., 1979) ...............   15n,17n

*Alliance Acceptance Co. v. Yale Ins. Agency, Inc.,*
648 N.E.2d 971, 271 Ill. App. 3d 483 (Ill. App. Ct., 1st Dist., 1995)................   23

*Arcor, Inc. v. Textron, Inc.,*
960 F.2d 710 (7th Cir. 1992) ...............................................................................   21n

*Avery v. State Farm Mut. Auto. Ins. Co.,*
835 N.E.2d 801, 216 Ill. 2d 100 (Ill. 2005) .......................................................   5

*Bayh v. Sonnenburg,*
573 N.E.2d 398 (Ind. 1991) .................................................................................   24n

*Belfour v. Schaumburg Auto,*
713 N.E.2d 1233, 306 Ill. App. 3d 234 (Ill. App. Ct., 2d Dist., 1999) .............   21n

*Benge v. Miller,*
855 N.E.2d 716 (Ind. Ct. App. 2006).................................................................   15n

*Berghausen v. Microsoft Corp.,*
765 N.E.2d 592 (Ind. Ct. App. 2002).................................................................   12

*Capitol Cadillac Olds, Inc. v. Roberts,*
813 S.W.2d 287 (Ky. 1991)..................................................................................   13

*Christian v. Sony Corp. of Am.,*
152 F. Supp. 2d 1184 (D. Minn. 2002)...............................................................   22

*Codell Constr. Co. v. Kentucky,*
566 S.W.2d 161 (Ky. Ct. App. 1977) .................................................................   24n

*Cooper v. Durham Sch. Servs.,*
No. 03 C 2431, 2003 WL 22232833 (N.D. Ill. Sept. 22, 2003)........................   23-24

*Craig & Bishop, Inc. v. Piles*,
No. 2004-CA-001883-MR, 2005 WL 3078860 (Ky. Ct. App. Nov. 18, 2005)................  13

*Echo, Inc. v. Whitson Co.*,
52 F.3d 702 (7th Cir. 1995) .........................................................  14

*Ellis v. Allstate Ins. Co.*,
No. 06 C 4571, 2006 WL 3524409 (N.D. Ill. Dec. 5, 2006) ...........................  5

*Farmer City State Bank v. Guinrich*,
487 N.E.2d 758, 139 Ill. App. 3d 416 (Ill. Ct. App., 4th Dist., 1985) .............  16

*Ford v. Barnard, Sumner & Putnam Co.*,
294 N.E.2d 467 (Mass. App. Ct. 1973)..............................................  21n

*Gen. Motors Corp. v. Brewer*,
966 S.W.2d 56 (Tex. 1998)..........................................................  20n

*Goldstein v. G.D. Searle & Co.*,
378 N.E.2d 1083, 62 Ill. App. 3d 344 (Ill. App. Ct., 1st Dist., 1978)..............  21n

*Guar. Elec. Co. v. Big Rivers Elec. Co.*,
669 F. Supp. 1371 (W.D. Ky. 1987).................................................  23n

*Hatch v. Fleet Mortgage Corp.*,
158 F. Supp. 2d 962 (D. Minn. 2001)...............................................  14

*Hoggett v. Brown*,
971 S.W.2d 472 (Tex. App. 1997)...................................................  16n,18

*HPI Health Care Serv., Inc. v. Mt. Vernon Hosp. Inc.*,
545 N.E.2d 672, 131 Ill. 2d 145 (Ill. 1989) .....................................  22-23

*Illinois v. City of Chi.*,
137 F.3d 474 (7th Cir. 1998) .....................................................  24

*In re Air Bag Prods. Liab. Litig.*,
7 F. Supp. 2d 792 (E.D. La. 1998).................................................  22

*In re Estate of Wallace*,
No. 04-05-00567-CV, 2006 WL 3611277 (Tex. App. Dec. 13, 2006)....................  23n

*In re Sallee*,
286 F.3d 878 (6th Cir. 2002) .....................................................  16n,17

*In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
No. MDL-1703, 05 C 4742, 05 C 2623, 2005 WL 3077606 (N.D. Ill. Nov. 14, 2005) ....  5-6

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ................... 14-15

*In re Simitar Entm't, Inc.*,
275 B.R. 331 (D. Minn. 2002) ........................................................................................ 19

*Ind. Nat'l Bank of Indianapolis v. De Laval Separator Co.*,
389 F.2d 674 (7th Cir. 1968) ......................................................................................... 20n

*Indus. Hard Chrome, Ltd. v. Hetran, Inc.*,
64 F. Supp. 2d 741 (N.D. Ill. 1999) ............................................................................... 20

*Ins. Co. of N. Am. v. Morris*,
981 S.W.2d 667 (Tex. 1998).......................................................................................... 15n,18n

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
451 F. Supp. 2d 982 (N.D. Ill. 2006) ............................................................................. 16

*Jepson, Inc. v. Makita Corp.*,
34 F.3d 1321 (9th Cir. 1994) ......................................................................................... 2n

*Jones v. Hoosman*,
No. 05-C-2909, 2006 WL 1302524 (N.D. Ill. May 9, 2006) ........................................... 25

*Klaxon v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)....................................................................................................... 14

*Klein v. First Edina Nat'l Bank*,
186 N.W.2d 619 (Minn. 1972)........................................................................................ 15n

*L&H Airco, Inc. v. Rapistan Corp.*,
446 N.W.2d 372 (Minn. 1989)........................................................................................ 16n,18

*La Throp v. Bell Fed. Sav. & Loan Assoc.*,
370 N.E.2d 188, 68 Ill. 2d 375 (Ill. 1977) ...................................................................... 23

*Lebowich v. O'Connor*,
309 F.2d 111 (2d Cir. 1962)........................................................................................... 25

*Lehman v. Shroyer*,
721 N.E.2d 365 (Ind. Ct. App. 1999).............................................................................. 12

*Lynx, Inc. v. Ordnance Prods., Inc.*,
327 A.2d 502 (Md. 1974) ............................................................................................... 21n

*Mackinac v. Arcadia Nat'l Life Ins. Co.*,
648 N.E.2d 237, 271 Ill. App. 3d 138 (Ill. Ct. App., 1st Dist., 1995).............................. 11,17n

*Magna Bank of Madison County v. Jameson*,
604 N.E.2d 541, 237 Ill. App. 3d 614 (Ill. App. Ct., 5th Dist., 1992) .............................. 16n

*Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*,
No. 04 C 6631, 2005 WL 2284305 (N.D. Ill. Sept. 15, 2005).......................................... 2n

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270 (1941).......................................................................................................... 24

*McClure Oil Corp. v. Murray Equip., Inc.*,
515 N.E.2d 546 (Ind. Ct. App. 1987).............................................................................. 22

*Oliveira v. Amoco Oil Co.*,
726 N.E.2d 151, 201 Ill. 2d 134 (Ill. 2002) ...................................................................... 5

*Olson v. Jenkens & Gilchrist*,
No. Civ. A. 05-C-4216, 2006 WL 3354132 (N.D. Ill. Nov. 17, 2006)............................ 16-17

*Paper Mfrs. Co. v. Rescuers, Inc.*,
60 F. Supp. 2d 869 (N.D. Ind. 1999) ................................................................................ 21-22

*People ex rel. Hartigan v. E&E Hauling, Inc.*,
607 N.E.2d 165, 153 Ill. 2d 473 (Ill. 1992) ...................................................................... 23

*Plas-Tex, Inc. v. U.S. Steel Corp.*,
772 S.W.2d 442 (Tex. 1989)............................................................................................. 20n

*Plohg v. NN Investors Life Ins. Co.*,
583 N.E.2d 1233 (Ind. Ct. App. 1992).............................................................................. 17

*R. Conrad Moore & Assocs. v. Lerma*,
946 S.W.2d 90 (Tex. App. 1997)...................................................................................... 24n

*Red Bird Motors, Inc. v. Endsley*,
657 S.W.2d 954 (Ky. Ct. App. 1983) ............................................................................... 13

*Richards v. Delta Air Lines, Inc.*,
453 F.3d 525 (D.C. Cir. 2006) ......................................................................................... 25

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951, 201 Ill. 2d 403 (Ill. 2002) ..................................................................... 5,9,10, 11

*Rockford Mem'l Hosp. v. Havrilesko*,
858 N.E.2d 56, 368 Ill. App. 3d 115 (Ill. Ct. App., 2d Dist, 2006) ................................. 6,10,11

*Savoree v. Indus. Contracting & Erecting, Inc.*,
789 N.E.2d 1013 (Ind. Ct. App. 2003)............................................................................. 22n

*ServiceMaster of St. Cloud v. GAB Bus. Serv., Inc.*,
544 N.W.2d 302 (Minn. 1996)................................................................... 23n

*Skelton v. Gen. Motors Corp.*,
500 F. Supp. 1181 (N.D. Ill. 1980),
*rev'd on other grounds*, 660 F.3d 311 (7th Cir. 1981) ..................................... 20n

*Smith v. Gen. Motors Corp.*,
979 S.W.2d 127 (Ky. Ct. App. 1998) ................................................................ 20n

*Strotman v. K.C. Summers Buick, Inc.*,
489 N.E.2d 1148, 141 Ill. App. 3d 8 (Ill. App. Ct., 4th Dist., 1986) ................................ 20n

*Taylor Inv. Corp. v. Weil*,
169 F. Supp. 2d 1046 (D. Minn. 2001)....................................................... 14,18

*Thompson v. Am. Tobacco Co.*,
189 F.R.D. 544 (D. Minn 1999)................................................................... 25n

*Tuttle v. Lorillard Tobacco Co.*,
118 F. Supp. 2d 954 (D. Minn. 2000)............................................................. 14

*Uni\*Quality, Inc. v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir. 1992) .................................................................... 4n,6

*U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*,
307 N.W.2d 490 (Minn. 1981)................................................................... 24n

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) .................................................................... 3n

*Warth v. Seldin*,
420 U.S. 490 (1975)................................................................................. 7n

*Westfield Ins. Co. v. Yaste, Zent & Rye Agency*,
806 N.E.2d 25 (Ind. Ct. App. 2004)....................................................... 16n,17

*Wheeler v. Sunbelt Tool Co.*,
537 N.E.2d 1332, 181 Ill. App. 3d 1088 (Ill. App. Ct., 4th Dist., 1989) .......................... 23

*White v. DaimlerChrysler Corp.*,
856 N.E.2d 542, 368 Ill. App. 3d 278 (Ill. Ct. App., 1st Dist., 2006)............................ 8-9,11

*Willits v. Peabody Coal Co.*,
188 F.3d 510, 1999 WL 701916 (6th Cir. Sept. 1, 1999) ................................... 15n

*Yassin v. Capitol Indem. Corp.*,
No. 94 C 50156, 1995 WL 30610 (N.D. Ill. Jan. 24, 1995) ............................ 24

Statutes and Regulations

28 U.S.C. § 2201 ................................................................................................ 24

U.C.C. § 2-607 ................................................................................................ 21n

810 Ill. Comp. Stat. § 5/2-314(2)(c) ................................................................ 19n

815 Ill. Comp. Stat. § 505/2 ............................................................................ *passim*

Ind. Code § 24-5-0.5 (West 2002 & Supp. 2007) ............................................ 12

Ind. Code § 24-5-0.5-3 .................................................................................... 12

Ind. Code. § 26-1-2-314(2)(c) ........................................................................ 19n

Ky. Rev. Stat. § 355.2-314(2)(c) (West 2006) ................................................ 19n

Ky. Rev. Stat. § 367.120 ................................................................................ 13

Ky. Rev. Stat. § 367.170 ................................................................................ 13

Minn. Stat. Ann. § 325F.69 (West 2002 & Supp. 2007) .................................. 13-14

Minn. Stat. Ann. § 336.2-314(2)(c) ................................................................ 19n

Minn. Stat. Ann. § 336.2-607 .......................................................................... 22

Tex. Bus. & Com. Code § 2.314(b)(3) (West 1994 & Supp. 2007) ................ 19n

Tex. Bus. & Com. Code § 2.607 ...................................................................... 22

Fed. R. of Civ. P. 9 ........................................................................................ *passim*

Fed. R. of Civ. P. 11 ...................................................................................... 9n

Fed. R. of Civ. P. 12 ...................................................................................... 1,2,26

Fed. R. of Civ. P. 23 ...................................................................................... 1n

## INTRODUCTION

Plaintiffs Susan Munch, Larry Butler, Victor Matos, Joseph Leonard, and Kevin Barnes ("Plaintiffs"), alleged owners of Kenmore Elite®-brand HE3t and HE4t washing machines have filed a class action complaint ("Complaint") against Sears, Roebuck and Co. ("Sears") purportedly on behalf of all purchasers of Kenmore Elite® HE3, HE3t, HE4, and HE4t model washing machines ("HE washers").  (Compl. ¶¶ 1, 21, 25, 28, 32, 34.)  Plaintiffs allege that, "[d]ue to inherent design flaws," there exists "a substantial risk" that HE washing machines will manifest unspecified "mechanical failures." (*Id.* ¶¶ 64, 75, 87, 110.)  They also allege that HE washers "fail to circulate and drain completely, resulting in the growth of mold and mildew in the machine," which creates a "substantial risk" that the HE washers will manifest "moldy smells."  (*Id.*)  Plaintiffs allege that Sears failed to disclose these alleged problems with the HE washers, or the possibility that the problems "might not exhibit themselves until after the warranty has expired," or that Sears was "not committing to making the repairs" outside of the warranty period.  (*Id.*)  Based on these alleged non-disclosures, Plaintiffs assert claims for violation of their respective home states' consumer protection statutes, common law fraud, breach of implied warranty of merchantability, unjust enrichment, and declaratory relief.[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Court should dismiss all of Plaintiffs' claims for failure to state a claim upon which relief can be granted. Plaintiffs fail to plead their statutory fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  Plaintiffs' vague and conclusory allegations concerning the existence and nature of the alleged "design flaws," the allegedly "substantial risk" that such flaws might cause "mechanical failures and/or moldy smells," the nature of the alleged "mechanical failures," as well as the allegations concerning Sears' alleged knowledge of these problems, fall far short of the particularity required by Rule 9(b).  Plaintiffs' Complaint illustrates the need to impose heightened pleading standards in a consumer fraud case such as this one.  That is because <u>every</u> line of mass-produced product of any complexity will have some percentage of units that require maintenance or repair during the life of the product.  Absent a

---

[1] Plaintiffs filed the Complaint on behalf of two types of putative classes:  (i) a nationwide "injunctive relief" class pursuant to Federal Rule of Civil Procedure 23(b)(2) ("Rule 23(b)(2)"), (Compl. ¶ 39); and (ii) five "sub-classes" pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)"), consisting of all owners of HE washers who reside in the plaintiffs' home states, (Compl. ¶ 40).

requirement that the plaintiff plead with particularity that such maintenance or repair was caused by the defendant's having knowingly sold a defective product, virtually every product launch could be followed by baseless, expensive, and extortionate class litigation.[2]

Plaintiffs' remaining claims also fail. Plaintiffs' fraud-by-omission claims are deficient because Plaintiffs do not adequately allege facts that, if true, would show that Sears was under a duty to disclose any additional facts. Plaintiffs' claims for breach of implied warranty of merchantability fail because they have not adequately alleged facts that would show the HE washers suffer from a design defect that renders the washers unfit for their ordinary intended use (*i.e.*, to clean clothes). Plaintiffs' unjust enrichment claims fail because they have not alleged that Sears' conduct was wrongful in any way. Finally, Plaintiffs' request for a declaratory judgment should be denied because no actual controversy exists between Plaintiffs and Sears.

Alternatively, the Court should dismiss the Complaint without prejudice pursuant to Rules 9(b) and 12(e), and require Plaintiffs to provide a more definite statement of their claims so that Sears can adequately defend itself.

## STATEMENT OF FACTS

Plaintiffs allege that they bought HE washers from Sears between December 2004 and May 2005, and that their HE washers subsequently experienced mechanical problems. (Compl. ¶¶ 21-37.) Plaintiffs generically allege that their HE washing machines "would stop running, break down or otherwise fail to operate," and that "error codes such as F11 and FDL would appear" on their machines' display panel. (*Id.* ¶¶ 22, 26, 29, 33, 35.) Plaintiff Butler also alleges that his HE washer "developed a moldy musty smell." (*Id.* ¶ 26.) Plaintiffs claim that these alleged problems did not manifest until after the expiration of the initial one-year warranty period.[3] (*Id.* ¶ 14.) Plaintiffs' allegations differ regarding the washer model they bought, the problems they experienced, the repairs required, and their communications with Sears, if any:

---

[2] *See, e.g., Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (9th Cir. 1994) (observing that one of the purposes of Rule 9(b)'s heightened pleading requirement is to "minimize 'strike suits' and 'fishing expeditions'"); *Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*, No. 04 C 6631, 2005 WL 2284305, at *2 (N.D. Ill. Sept. 15, 2005) ("The purpose of Rule 9(b) in regards to fraud claims, 'is to minimize the extortionate impact that a baseless claim of fraud can have . . . .'" (citations omitted)).

[3] The written Kenmore Elite® Washer Warranty that accompanied each new HE washer sold by Sears during the period December 2004 through May 2005 ("Warranty") provides in pertinent part:

- Plaintiff Munch, a resident of Illinois, alleges that she bought an HE3t washer in December 2004, (*id.* ¶ 21), and began experiencing problems in June 2006, (*id.* ¶ 22). She alleges that it would have cost her $655 to repair her washer and that Sears "refused to repair the machine for free since the one year warranty had elapsed." (*Id.* ¶ 23.)

- Plaintiff Butler, a resident of Indiana, alleges that he bought an HE3t washer in February 2005, (*id.* ¶ 25), and began experiencing problems in November 2006, (*id.* ¶ 26).  He alleges that Sears "refused to repair the machine without a $54 service fee since the one year warranty had elapsed" and that he paid $50 for replacement parts.  (*Id.* ¶¶ 26-27.)

- Plaintiff Leonard, a resident of Minnesota, alleges that he purchased an HE3t washer in May 2005, (*id.* ¶ 28), and began experiencing problems in October 2006, (*id.* ¶ 29).  He alleges that he was charged $55 for a service call.  (*Id.* ¶ 30.)

- Plaintiff Barnes, a resident of Texas, alleges that he purchased an HE4t washer in March 2005, (*id.* ¶ 32), and began experiencing problems in October 2006, (*id.* ¶ 33).  He alleges that he "paid $100 for parts to repair the machine."  (*Id.*)

- Plaintiff Matos, a resident of Kentucky, alleges that he bought an HE4t washer in January 2005, (*id.* ¶ 34), and began experiencing problems in August 2005, (*id.* ¶ 35).[4]  He alleges that "Sears refused to repair the machine for free since the one year warranty had elapsed" and that he paid $141 for parts to repair the machine.  (*Id.* ¶ 36.)

Plaintiffs allege that Sears "received a significant number of complaints" about the performance of the HE washers, including complaints about "premature and repeated mechanical failure; electronic control panel failure; clothes not being cleaned properly, including clothes

---

For one year from the date of purchase, when this washing machine is installed and operated according to the instructions that come with it, Sears will repair or replace any of its mechanical or electrical parts if they are defective in material or workmanship.

(Warranty, attached hereto as Exhibit 1 and attached to the concurrently-filed affidavit of Steve Namnick as Exhibit A.)  The Warranty is properly before the Court because Plaintiffs refer to the Warranty in their Complaint, (*id.* ¶ 14), and the limited nature of the Warranty is central to Plaintiffs' non-disclosure claims (*id*. ¶¶ 64, 75, 87, 110).  *See, e.g.*, *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

[4]  Although Plaintiff Matos alleges that he began experiencing problems in August 200<u>5</u>, because he also alleges that his one-year warranty had expired, it is assumed that he intended to allege that the problems manifested in August 200<u>6</u>.

being stained; mold and mildew growing in the machines; and otherwise not performing as a durable dependable washing machine." (Compl. ¶ 15.) Further, Plaintiffs allege that Sears did not disclose "the many claims it received or the high incidence of repair" of HE washers—but did not provide any indication of what the repair rates were and which rates were too "high," (*id.* ¶16)—or the "true unreliable and defective nature" of the HE washing machines, (*id.* ¶ 17).

Plaintiffs allege that they have suffered actual damages "in that their Kenmore HE Series Washing Machines have not operated as represented by Sears," because they paid "too high a price for a washing machine that is defective and not fit for use," and because they paid for costs associated with service calls, replacement parts, and extended warranties.[5] (*Id.* ¶ 20.) Plaintiffs do not allege that they have abandoned their HE washers or that their out-of-warranty repairs, if any, were ineffective. (*Id.* ¶¶ 21-37.)

## ARGUMENT

## I. PLAINTIFFS FAIL TO PLEAD COGNIZABLE CLAIMS UNDER ANY OF THE APPLICABLE CONSUMER PROTECTION STATUTES

Plaintiffs assert claims under the consumer protection statutes of Illinois, Indiana, Kentucky, and Minnesota,[6] alleging that Sears failed to disclose (i) that there was a "substantial risk of mechanical failure and/or moldy smells," (ii) that such failures "might not exhibit themselves until after the warranty has expired," and (iii) that if one of these problems did manifest after the warranty period expired, Sears was "not committing to making the repairs." (*Id.* ¶¶ 64, 75, 87, 110.) For the reasons set forth below, Plaintiffs' vague and conclusory allegations regarding these alleged non-disclosures do not state a claim under any of the applicable consumer protection statutes.

---

[5] Plaintiffs' claims are based on Sears' alleged <u>non-disclosures</u>, and the Complaint does not explicitly refer to any alleged affirmative misrepresentations. (*See* Compl. ¶¶ 64, 75, 87, 110.) The Complaint, however, includes highly generalized references to alleged representations by Sears. (*E.g.*, *id.* ¶ 18 (alleging that Sears "falsely represented that Kenmore HE series Washing Machines provided outstanding performance as home washing machines").) These extraneous allegations should be ignored because Plaintiffs do not rely on any affirmative statement by Sears as a basis for any of their claims for relief. Moreover, Plaintiffs have not alleged what specific representations were made, by whom, when, in what medium, whether Plaintiffs were personally exposed to and relied on such representations, or even whether such alleged representations were false. *See Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (a plaintiff must "plead the who, what, when, where, and how of the alleged fraud").

[6] Plaintiff Barnes does not assert a claim for violation of any Texas consumer protection statute.

### A.      Plaintiffs Fail to State Claims Under the Illinois Consumer Fraud and Deceptive Business Practices Act

Plaintiffs invoke Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/2 ("Illinois Fraud Act").  (Compl. ¶ 57.)  Under that section, Plaintiffs must plead, *inter alia*, a deceptive act or practice by the defendant, the defendant's intent that the plaintiff rely on the deception, and actual damage proximately caused by the deception.  *Oliveira v. Amoco Oil Co.*, 726 N.E.2d 151, 160, 201 Ill. 2d 134, 149 (Ill. 2002).  Further, a plaintiff may pursue a claim under the Illinois Fraud Act only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54, 216 Ill. 2d 100, 187 (Ill. 2005) (holding that the out-of-state plaintiffs had "no cognizable cause of action under the [Illinois] Consumer Fraud Act").  Still further, the "deceptive act or practice" must be pled with particularity in accordance with Rule 9(b).  *E.g.*, *Ellis v. Allstate Ins. Co.*, No. 06 C 4571, 2006 WL 3524409, at *7 (N.D. Ill. Dec. 5, 2006) (dismissing Illinois Fraud Act claim for failure to plead violation with particularity); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961, 201 Ill. 2d 403, 419 (Ill. 2002) (affirming dismissal of Illinois Fraud Act claim, finding that the "complaint must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint").

### 1.      Plaintiffs Butler, Leonard, Matos, and Barnes do not have standing to pursue a claim under the Illinois Fraud Act

Plaintiffs Butler, Leonard, Matos, and Barnes reside outside the State of Illinois.  (Compl. ¶¶ 5-8.)  Given their out-of-state residences and the absence of any factual allegations to the contrary, the Court should infer that (1) they bought their HE washers from Sears' stores or other sellers in their home states; (2) accepted delivery of and used their HE washers in their home states; (3) experienced any malfunctions and service calls in their home states; and (4) incurred out-of-pocket repair expenses in their home states.  (*See id.* ¶¶ 25-37.)  In short, it is clear that "the overwhelming majority of the circumstances" that relate to Plaintiffs Butler's, Leonard's, Matos's, and Barnes's "disputed transactions . . . occurred outside Illinois."  *Avery*, 835 N.E.2d at 854, 216 Ill. 2d at 187.  Therefore, "[t]hese individuals have no cause of action under the [Illinois Fraud] Act," and their claims should be dismissed.  *Id.*; *see also In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL-1703, 05 C 4742, 05 C 2623, 2005 WL 3077606, at *2 (N.D. Ill. Nov. 14, 2005) (dismissing the plaintiffs' Illinois Fraud Act claims

because there were "no allegations that any plaintiff read any misrepresentation in Illinois, purchased any tools in Illinois, or had any contact with a Sears agent in Illinois" and the "location of Sears's principal place of business" in Illinois was insufficient) ("*Sears Tools I*").

> **2.     Plaintiffs fail to allege statutory fraud with particularity because they do not identify <u>any</u> statement by Sears that allegedly was misleading due to the omission of a material fact**

Plaintiffs' purported fraud-by-omission theory begs the question, "Omitted from what?" That is because Plaintiffs have failed to allege <u>any</u> statement or representation to which they personally were exposed, from which Sears omitted a material fact, and by which Plaintiffs were deceived due to omitted information.  Instead, Plaintiffs include highly generalized assertions that Sears marketed the HE washers "as being innovative, cost effective and dependable," (Compl. ¶ 2), "as a product that saved energy and water while providing outstanding cleaning and dependability," (*id*. ¶ 13), and "represented that Kenmore HE Series Washing Machines provided outstanding performance as home washing machines," (*id.* ¶ 18).  These alleged statements fall far short of the particularity required by Rule 9(b).  *See Uni*Quality*, 974 F.2d at 923 (Rule 9(b) requires the plaintiff to "plead the who, what, when, where, and how of the alleged fraud").  The Complaint does not specify a single representation made by Sears—much less by whom, when, or in what medium the allegedly misleading statements were made—that was allegedly misleading due to the omission of a material fact.  (*See* Compl. ¶¶ 1-139.)  Nor do Plaintiffs identify <u>any</u> statement that they personally read, heard, or otherwise received, let alone that they were actually deceived by any such statement.  (*See id.*)

The omission of a material fact in the conduct of trade or commerce can constitute a "deceptive act or practice," 815 Ill. Comp. Stat. § 505/2, but an omitted fact is "material" if "a consumer would have acted differently knowing the information, or if it concerned the type of information on which a consumer would be expected to rely in making a purchasing decision," *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 62, 368 Ill. App. 3d 115, 122 (Ill. Ct. App., 2d Dist., 2006).  Because Plaintiffs' Illinois Fraud Act claims are based on omissions, Plaintiffs must plead with <u>particularity</u> the material facts Sears allegedly knew and did not disclose.  *Id.*

> **a.     Plaintiffs' allegation that Sears did not disclose the "substantial risk of mechanical failure" is not sufficient to plead an omission of a material fact**

Plaintiffs' allegation that the HE washers have a "substantial risk of mechanical failure" is comprised of three related factual allegations:  (i) the HE washers suffer from some design or

manufacturing defect; (ii) the unspecified defect results in some type of mechanical failure; and (iii) the risk of mechanical failure resulting from the unidentified defect is "substantial" or "too high."  Plaintiffs' allegations concerning the alleged design defect, the nature of the alleged mechanical failure, and the alleged risk or likelihood of such manifestation, are far too vague and conclusory to satisfy the requirements of Rule 9(b).

First, the Complaint does not contain any specific allegations concerning the nature of the alleged defect.  Instead, the Complaint contains only conclusory assertions that HE washers suffer from "inherent design flaws," (Compl. ¶ 2), are "not fit for their expected uses," (*id.* ¶ 17), are "unreliable and defective," (*id.*), and have unidentified "major components" that might fail prematurely, (*id.* ¶ 18).[7]  The Complaint contains no specific factual allegations that, if true, would prove that HE washers share a design defect that should have been disclosed to Plaintiffs.

Second, the Complaint contains no particularized allegation concerning the nature of the alleged "mechanical failure."  Plaintiffs make only generic allegations that their HE washers "would stop running, break down or otherwise fail to operate" and that "error codes such as F11 and FDL would appear," presumably on the washer's display panel.[8]  (*Id.* ¶¶ 22, 26, 29, 33, 35.) Those allegations are so vague as to be meaningless.  Sears cannot possibly defend itself against allegations that some HE washers sometimes "fail to operate" properly.

Third, the Complaint contains no specific allegation that, if true, would prove that the alleged increased "risk" of mechanical failure is so "substantial" or high that Sears owed Plaintiffs a duty to disclose the risk of failure or repair.  Instead, Plaintiffs make conclusory

---

[7] Of course, an allegation that an appliance experienced a particular mechanical failure would not be the same thing as an allegation that the appliance suffered from a particular design defect.  Washing machines contain many component parts, which may experience mechanical failure due to any number of causes, including normal use and wear, consumer abuse, shipping or installation damage, a stack-tolerance problem, a manufacturing defect that affects some fraction of components or machines, or a design defect that affects all machines that share the same design.  The alleged failure of a specific part, therefore, could be the result of any number of causes other than a design or manufacturing defect.

[8] Plaintiffs' allegation that there are "reports" of other problems with the HE washers that they do not allege they personally experienced—including reports of "electronic control panel failure; clothes not being cleaned properly, including clothes being stained; mold and mildew growing in the machines," (Compl. ¶ 15)—cannot serve as a basis for pleading any of Plaintiffs' claims.  *See Warth v. Seldin*, 420 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

allegations that Sears has received some unspecified but "significant number of complaints regarding the performance" of HE washers, (*id.* ¶ 15), that HE washers have experienced an unspecified "high incidence of repair," (*id.* ¶ 16), and that HE washers "were not dependable and would not withstand normal operation," (*id.* ¶ 17).  Plaintiffs do not allege with particularity what kinds of component failures were known to occur, what the cause or causes of these failures were, how many such failures Sears was aware of, or when Sears supposedly learned of such facts or determined that there was a "substantial risk" that such failure could occur in certain models of HE washers.  (*See* Compl. ¶¶ 1-139.)

A recent decision of the Illinois Appellate Court is instructive.  In *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 368 Ill. App. 3d 278 (Ill. Ct. App., 1st Dist., 2006), the plaintiff brought an Illinois Fraud Act claim contending that the manufacturer "knowingly concealed a material defect in [the plaintiff's] Jeep vehicle."  *Id.* at 544, 368 Ill. App. 3d at 279.  Specifically, the plaintiff alleged that the defendant knew that the Jeep's exhaust manifolds "would fail at unacceptably high rates."  *Id.* at 545, 368 Ill. App. 3d at 281.  The court held that the plaintiff's conclusory allegations concerning the alleged design defect and the allegedly "high" failure rate were not sufficiently specific to support a claim under the Act:

> [W]e believe the allegations in the complaint describing the alleged defect fall short of the specificity required by the Act.  Plaintiff alleges defendant knew the tubular steel exhaust manifolds were "prone to cracking and failure," "would fail at unacceptably high rates," and that defendant was aware of a "high frequency of failures."  Plaintiff does not define these general phrases or provide more detail about the number of failures that occurred, how the defendant knew about the failures, or what defendant knew at the time of the sale to the plaintiff.

*Id.* at 550, 368 Ill. App. 3d at 287.

Likewise here, Plaintiffs base their Illinois Fraud Act claims, as well as their other statutory fraud claims, on Sears' alleged non-disclosure of a "significant number of complaints" about, and the "high incidence of repair" of, HE washers.  (Compl. ¶ 16.)  Plaintiffs make no effort to define these general phrases, nor do they provide any detail about the number of alleged mechanical failures that allegedly occurred, nor do they allege what would be an acceptable failure or repair rate as compared to a rate that is so "high" as to impose on Sears a duty to disclose the rate.  Further, with respect to the alleged design defect, the *White* plaintiff's

allegations were far more specific and detailed than the allegations in this case, but were nonetheless legally deficient.[9]  Here, Plaintiffs allege only that HE washers share unspecified "design flaws," (*id*. ¶ 2), that the washers "were not fit for their expected uses," (*id.* ¶ 17), and were "unreliable and defective," (*id.*), and that unidentified "major components" would fail prematurely, (*id.* ¶ 18).  These vague allegations amount to "conclusion and conjecture" and fail to satisfy the particularity required under the Illinois Fraud Act.  *See White*, 856 N.E.2d at 550, 368 Ill. App. 3d at 287.  The absence of such particularized allegations requires dismissal. *Robinson*, 775 N.E.2d at 961, 201 Ill. 2d at 419.

### b.    Plaintiffs' allegation that Sears did not disclose the risk of "moldy smells" is insufficient to plead an actionable omission

Plaintiffs' allegations concerning "moldy smells" are as vague as their allegations regarding the risk of mechanical failure.  The lone allegation regarding a design defect that manifests itself as "moldy smells" is that Plaintiffs attribute the odors to HE washers' purported failure "to circulate and drain completely."  (Compl. ¶ 2.)  They do not even attempt to specify the mechanism(s) through which the washers drain themselves, let alone plead any facts indicating why the washers fail to drain or drain incompletely.[10]  (*Id*. ¶¶ 1-139.)  Concerning the alleged failure rate—in this case, the percentage of HE washers that have developed moldy smells—the Complaint states only that Sears has received an unspecified number of complaints about "mold and mildew growing in the machines."  (*Id*. ¶ 15.)  These allegations are too vague and conclusory to state a claim under the Illinois Fraud Act.  *See White*, 856 N.E.2d at 550, 368 Ill. App. 3d at 287.

### c.    The other two "facts" Sears allegedly failed to disclose are neither material nor deceptive

Plaintiffs allege that Sears failed to disclose that the mechanical failures and moldy smells "might not exhibit themselves until after the warranty has expired" and that Sears was

---

[9] For example, the plaintiff in *White* alleged that tubular steel manifolds were subject to cracking from "thermal cyclic metal fatigue, whereby the pipes, which are made of tubular steel, are stressed beyond their elasticity as the manifold expands and contracts due to exhaust gas temperature changes during normal vehicle operation."  *White*, 856 N.E.2d at 545, 368 Ill. App. 3d at 281.

[10] It is readily apparent from the facially inadequate allegations that Plaintiffs have not conducted the due diligence required to allege, consistent with Federal Rule of Civil Procedure 11, that <u>all</u> HE washers are defective.

"not committing to making the repairs" outside of the one-year warranty period.  (Compl. ¶¶ 64, 75, 87, 110.)  The unremarkable fact that a complex appliance "might" manifest a problem outside the warranty period is hardly the "type of information on which a buyer would be expected to rely in making a decision."  *See Rockford Mem'l Hosp.*, 858 N.E.2d at 62, 368 Ill. App. 3d at 122.  Stated another way, <u>every</u> consumer is aware that such possibility is present in <u>every</u> commercial transaction in which he or she buys a product that is covered by a written warranty.[11]  The alleged non-disclosure of the well-known possibility that an appliance might require a repair at some point during the life of the product cannot be considered "material" under the Illinois Fraud Act, nor can the omission of that commonsense possibility be considered "deceptive."  *Id.* ("The bald assertion of deception is insufficient to state a claim; the deceptive manner of the omission must be stated with specificity and particularity.").

Likewise, the allegation that Sears failed to disclose that it was "not committing to making the repairs outside of the warranty period" cannot be considered a fact of which Plaintiffs were unaware.  The Warranty on which Plaintiffs rely states that, "<u>For one year from the date of purchase</u> . . . Sears will repair or replace any of its mechanical or electrical parts if they are defective in material or workmanship."  (Ex. 1 (emphasis added).)  Thus, Sears explicitly committed only to making free repairs for one year from the date of purchase.  If such an obvious fact was "material" to consumers, Plaintiffs' pleading shows that the fact was disclosed, (Compl. ¶ 14), and such a demonstrably false allegation cannot be the basis for any alleged deceptive act or practice.  *See Robinson*, 775 N.E.2d at 963, 201 Ill. 2d at 423 (observing that "there was no deception because the leases expressly stated that early termination was not permitted").

Moreover, Plaintiffs admit that Sears did <u>not</u> refuse to repair any of Plaintiffs' HE washers, even though Plaintiffs allegedly experienced mechanical failures outside the warranty

---

[11] For precisely that reason some consumers elect to buy an extended warranty or service contract.  The existence of a market for service contracts reflects consumers' knowledge that appliances may require maintenance or repair outside the limited warranty period.  The decision to buy a service contract is a decision to shift the risk of repair to the seller or warrantor.

period.[12]  (*See* Compl. ¶¶ 21-37.)  Rather, Plaintiffs allege that Sears charged a fee for service calls or replacement parts.  (*Id.*)  Again, that Sears was "not committing" to make repairs for free outside the warranty period was disclosed in the Warranty.  *See Robinson*, 775 N.E.2d at 963, 201 Ill. 2d at 423.

3. **Plaintiffs fail to allege that Sears intended to induce Plaintiffs' reliance, as required under the Illinois Fraud Act**

To adequately plead the element that Sears intended to induce Plaintiffs' reliance on the alleged omissions, Plaintiffs' allegations must show that Sears knew of the omitted facts at the time of sale.  *See White*, 856 N.E.2d at 549, 368 Ill. App. 3d at 285 ("[A]n action for fraudulent concealment logically demands that defendants have prior knowledge of the information that they are alleged to have suppressed." (quotation and citation omitted)).  Unless Sears possessed knowledge of the omitted facts before the sales transactions, Sears "could not have affirmatively intended that plaintiff rely upon their alleged failure to disclose . . . ."  *Mackinac v. Arcadia Nat'l Life Ins. Co.*, 648 N.E.2d 237, 240, 271 Ill. App. 3d 138, 142 (Ill. Ct. App., 1st Dist., 1995).  Here, Plaintiffs do not allege that Sears was aware of any of the alleged facts before Plaintiffs bought their HE washers.  (*See* Compl. ¶¶ 1-139.)  Although the Complaint contains a handful of generic allegations that Sears "knew or should have known" about the alleged defects, (*id.* ¶¶ 2, 17-19), Plaintiffs do not allege when Sears came into such knowledge.  The Complaint also generically alleges that Sears received customer complaints about the performance of HE washers, (*id.* ¶¶15-16), but does not allege when Sears began receiving these complaints, or at what point Sears had received a sufficient number of complaints to require disclosure of the complaints to Plaintiffs.  Absent any allegation showing when Sears learned about the alleged problems with HE washers, Plaintiffs have not pled that Sears intended to induce Plaintiffs' reliance on the alleged omissions, and their Illinois Fraud Act claims should be dismissed.  *See Rockford Mem'l Hosp.*, 858 N.E.2d at 63, 368 Ill. App. 3d at 123.

---

[12]  The Complaint does not allege that HE washers that develop moldy smells will require any service call or replacement parts or that the smells caused Plaintiff Butler to incur any out-of-pocket expenses.  (*See* Compl. ¶¶ 1-139.)

**B.     The Indiana Deceptive Consumers Sales Act Does Not Recognize Plaintiff Butler's Purported Cause of Action for Non-Disclosure**

Plaintiff Butler's claim under the Indiana Deceptive Consumers Sales Act, Ind. Code § 24-5-0.5 *et seq.* ("Indiana Fraud Act"), (Compl. ¶¶ 69-79), fails because the Indiana Fraud Act does not apply to alleged non-disclosures. "[T]o be considered a deceptive act under the [Indiana Fraud Act], an action must fall within the purview" of Indiana Code section 24-5-0.5-3. *Lehman v. Shroyer*, 721 N.E.2d 365, 369 (Ind. Ct. App. 1999). Section 24-5-0.5-3 delimits the conduct that constitutes a deceptive act under the statute. The only subsection that is potentially applicable to Plaintiff Butler's claim begins: "The following acts or representations as to the subject matter of a consumer transaction, made either orally or in writing by a supplier, are deceptive acts. . . ." Ind. Code § 24-5-0.5-3(a) (emphasis added). Accordingly, Plaintiff Butler must allege some deceptive act that was communicated by Sears "orally or in writing." *Id.*

Here, Plaintiffs allege only that Sears "failed to disclose" certain facts about HE washers. (Compl. ¶ 75.) By its express terms, however, the Indiana Fraud Act applies only to oral or written representations, not to alleged non-disclosures or "omissions in the air." *See Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 598 n.6 (Ind. Ct. App. 2002) (admonishing plaintiff's counsel for ignoring "the explicit statutory requirement of a written or oral representation"). The plaintiff in *Berghausen* brought a putative class action against Microsoft Corporation alleging that Microsoft had violated the Indiana Fraud Act because Microsoft "implicitly represented" that its prices were fair and competitive. *Id.* at 598. The court affirmed the dismissal of the statutory claim, holding that section 24-5-0.5-3(a) "applies, by its own terms, only to representations 'made either orally or in writing by a supplier,'" and refused to extend the Act to allegations of "implicit" representations. *Id.* Absent an allegation that Sears made either an oral or written representation to Plaintiff Butler, his Indiana Fraud Act claim fails as a matter of law. (*Compare* Compl. ¶¶ 69-79 *with Berghausen*, 765 N.E.2d at 598.)

### C.   Plaintiffs Fail to State Claims Under the Kentucky Consumer Fraud and Deceptive Business Practices Act

Plaintiffs also fail to state a claim under the Kentucky Consumer Fraud and Deceptive Business Practices Act, Ky. Rev. Stat. § 367.120 *et seq.* ("Kentucky Fraud Act").[13]  They rely on section 170 of the Kentucky Fraud Act, (Compl. ¶ 106), which prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Ky. Rev. Stat. § 367.170.  Although the statute does not define these terms, the Kentucky Supreme Court has clarified that mere incompetent performance is not enough, absent some allegation of "intentional or malicious conduct."  *See Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991).  A claim for violation of Kentucky Fraud Act section 367.170 based on an omission must plead that the omitted fact was material, *Craig & Bishop, Inc. v. Piles*, No. 2004-CA-001883-MR, 2005 WL 3078860, at *5 (Ky. Ct. App. Nov. 18, 2005), and must be pled with particularity, *Red Bird Motors, Inc. v. Endsley*, 657 S.W.2d 954, 956 (Ky. Ct. App. 1983) (finding that the trial court erred in not granting judgment on the pleadings because the plaintiff's statutory fraud claims were not pled with particularity).

Thus, Plaintiffs' Kentucky Fraud Act claims fail for some of the same reasons as their claims under the Illinois Fraud Act:  (i) Plaintiffs have not alleged with particularity that Sears failed to disclose a "material" fact, (*see* Argument, Part I.A.2, *supra*); and (ii) Plaintiffs have not alleged facts showing that Sears had knowledge of the omitted facts before Plaintiffs bought their HE washers, (*see* Argument, Part I.A.3, *supra*).

### D.   Plaintiff Leonard Fails to State a Claim Under the Minnesota Prevention of Consumer Fraud Act

Plaintiff Leonard seeks to plead a violation of section 69 of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. § 325F *et seq.* ("Minnesota Fraud Act").  He invokes section 325F.69, subdivision 1, (Compl. ¶ 83), which prohibits the intentional use of fraud, misrepresentation, or deceptive practices in connection with a sale of goods.[14]  Minn. Stat. Ann.

---

[13] The Complaint states that "Plaintiffs"—as opposed to Plaintiff Matos on behalf of himself and the putative subclass of Kentucky residents—seek to bring this claim.  (Compl. ¶¶ 104, 107.)

[14] Plaintiffs also allege a violation of section 325F.69, subdivision 4.  (Compl. ¶ 83.)  Subdivision 4 prohibits the solicitation of money "for merchandise not yet ordered or for services . . . not yet ordered."

§ 325F.69, subd. 1.  To state a claim for damages under the Minnesota Fraud Act, however, Plaintiff Leonard must allege, *inter alia*, that Sears engaged in some type of deceptive practice "with the intent that others rely on the alleged deception."  *See Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1062 (D. Minn. 2001).  Further, a claim based on an alleged failure to disclose must plead that the omitted fact was material, *Hatch v. Fleet Mortgage Corp.*, 158 F. Supp. 2d 962, 967 (D. Minn. 2001), and must be pled with particularity, *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000).

Like his purported Illinois statutory fraud claim, Plaintiff Leonard bases his claim for violation of the Minnesota Fraud Act on Sears' alleged omissions.  (Compl. ¶ 87.)  His Minnesota Fraud Act claim fails for some of the same reasons as his Illinois Fraud Act claim: (i) Plaintiff Leonard has not alleged with particularity that Sears failed to disclose a "material" fact, (*see* Argument, Part I.A.2, *supra*); and (ii) he has not alleged facts showing that Sears had knowledge of the allegedly omitted facts at the time he bought his HE washer, (*see* Argument, Part I.A.3, *supra*), without which knowledge there could be no intent to induce reliance.  *See Taylor Inv. Corp.*, 169 F. Supp. 2d at 1062.

## II.   UNDER ILLINOIS' CHOICE-OF-LAW RULES, THE LAWS OF PLAINTIFFS' RESPECTIVE HOME STATES APPLY TO THEIR COMMON-LAW FRAUD, IMPLIED WARRANTY, AND UNJUST ENRICHMENT CLAIMS

In addition to their statutory consumer fraud claims, Plaintiffs assert claims for common-law fraud by omission, breach of implied warranty of merchantability, and unjust enrichment. An Illinois federal court sitting in diversity must apply Illinois' choice-of-law rules.  *See Echo, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  The court in *In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litigation*, Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ("*Sears Tools II*"), applied Illinois' conflicts analysis in a case involving substantially similar facts.  In that case, citizens of several states sued Sears for marketing its Craftsman® Tools in an allegedly deceptive manner.  *Sears Tools II*, 2006 WL 3754823, at *1.  Ruling on Sears' motion to dismiss the plaintiffs' unjust enrichment claim, the court concluded that it was required to apply the laws of the states where the individual plaintiffs bought their tools:

---

Minn. Stat. Ann. § 325F.69, subd. 4.  Plaintiffs do not plead any facts showing that Sears solicited payment for washers that were not yet ordered.  (Compl. ¶¶ 1-139.)

> The place of the injury here . . . is the plaintiffs' home states where they
> purchased Sears's tools.  The place where the parties' relationship is centered is
> the plaintiffs' home states as well.  Plaintiffs saw the allegedly misleading
> advertising in those states, and they purchased the tools (which were located
> there) in those states as well. . . .  The relationship arose from plaintiffs' purchases
> of Craftsman tools, which occurred in plaintiffs' home states.

*Id.* at *2 (footnote and citation omitted).  The court went on to conclude that, although Sears is
headquartered in Illinois, the plaintiffs' respective home states have an interest in regulating the
business that takes place within their borders.  *Id.* at *3 ("The most important factors in this case
are the place of injury and the center of the parties' relationship, and both of those factors point
to the plaintiffs' home states.").  Here, Illinois' conflicts rules also require that the Court apply
the laws of Plaintiffs' respective home states—Illinois, Indiana, Kentucky, Minnesota, and
Texas—to their individual common-law fraud, warranty, and unjust enrichment claims.

### III.    PLAINTIFFS FAIL TO STATE CLAIMS FOR COMMON-LAW FRAUD

#### A.    Plaintiffs' Common-Law Fraud Claims Fail for Many of the Same Reasons as Their Defective Statutory Fraud Claims

Plaintiffs' fraud-by-omission claims fail for many of the same reasons that their statutory
fraud claims fail.  The common law applicable to each Plaintiff's fraudulent omission claims
requires that the allegedly omitted fact be material and that the defendant have had actual
knowledge of that fact at the time of the transaction.[15]  For the reasons described in Parts I.A.2
and I.A.3 above, Plaintiffs fail to plead with particularity that Sears omitted a material fact or
that Sears was aware of the allegedly undisclosed facts at the time of sale to Plaintiffs.

#### B.    Plaintiffs' Fraudulent Omission Claims Fail Because Sears Did Not Owe Plaintiffs a Duty to Disclose Additional Facts

Under the laws of Illinois, Indiana, Kentucky, Minnesota, and Texas, respectively,
Plaintiffs' common-law fraud claims also fail for the separate and independent reason that
Plaintiffs have not alleged any facts that, if true, would prove that Sears owed Plaintiffs an
affirmative duty of disclosure.  The applicable states' laws impose a duty of disclosure in the

---

[15] *See, e.g.*, *Allensworth v. Ben Franklin Sav. & Loan*, 389 N.E.2d 684, 687, 71 Ill. App. 3d 1041, 1043-
44 (Ill. Ct. App., 2d Dist., 1979); *Benge v. Miller*, 855 N.E.2d 716, 723 (Ind. Ct. App. 2006); *Klein v.
First Edina Nat'l Bank*, 186 N.W.2d 619, 622 (Minn. 1972); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d
667, 674 (Tex. 1998); *Willits v. Peabody Coal Co.*, 188 F.3d 510 (Table), 1999 WL 701916, at *9 (6th
Cir. Sept. 1, 1999) (applying Kentucky law).

context of a fiduciary relationship or other special relationship between the parties.[16]  Plaintiffs do not allege the existence of any fiduciary or other special relationship between themselves and Sears that would impose on Sears an affirmative duty to disclose under the laws of Illinois, Indiana, Kentucky, Minnesota, or Texas.  Moreover, each applicable state's law imposes a duty of disclosure where the defendant has made a partial disclosure, but Plaintiffs do not allege that Sears made any partial disclosure.

### 1.    Illinois law does not impose a duty of disclosure on Sears

To plead a claim for fraudulent concealment under Illinois law, Plaintiff Munch must allege, *inter alia*, that Sears concealed a material fact and that "the concealment was intended to induce a false belief, under circumstances creating a duty to speak."  *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 989 (N.D. Ill. 2006) (emphasis added).  "The burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief, and where the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence."  *Farmer City State Bank v. Guinrich*, 487 N.E.2d 758, 763, 139 Ill. App. 3d 416, 424 (Ill. Ct. App., 4th Dist., 1985).

Here, Plaintiffs allege that "Sears, through its experience, was in a position of superiority over Plaintiffs and class members . . . ."  (Compl. ¶ 116.)  Plaintiffs' naked assertion of Sears' "experience" and "superiority" are not sufficient to establish a duty of disclosure under the heightened pleading standards of Rule 9(b).  *See Int'l Star Registry*, 451 F. Supp. 2d at 989 n.8 (rejecting the plaintiff's "unsupported *ipse dixit* conclusion" that the defendant owed a duty of disclosure, stating that it "does not pass muster—certainly not in the Rule 9(b) environment").  Plaintiff Munch's fraudulent omissions claim fails because of the absence of allegations that, if true, would prove that Sears had a special relationship with Plaintiff that created a duty to speak or disclose additional facts.  *See Olson v. Jenkens & Gilchrist*, No. Civ. A. 05-C-4216, 2006 WL 3354132, at *5 (N.D. Ill. Nov. 17, 2006) (dismissing fraudulent concealment claim where the

---

[16] *See, e.g.*, *Magna Bank of Madison County v. Jameson*, 604 N.E.2d 541, 544, 237 Ill. App. 3d 614, 618-19 (Ill. App. Ct., 5th Dist., 1992); *Westfield Ins. Co. v. Yaste, Zent & Rye Agency*, 806 N.E.2d 25, 31 (Ind. Ct. App. 2004); *In re Sallee*, 286 F.3d 878, 896 (6th Cir. 2002) (applying Kentucky law); *L&H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989); *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App. 1997).

plaintiffs failed to allege any special relationship with tax advisors who recommended a tax shelter). The only facts that Plaintiff Munch has alleged show that her purchase of an HE washer was an ordinary, day-to-day business transaction.[17]

### 2. Indiana law does not impose a duty of disclosure on Sears

Under Indiana law, because Plaintiffs' claim is "[p]remised on an alleged omission, [their] claim constitutes a claim for constructive fraud . . . ." *Westfield Ins Co.*, 806 N.E.2d at 31. To plead a claim for constructive fraud, Plaintiffs must plead the existence of "a duty owing by the party to be charged to the complaining party due to their relationship," and a violation of that duty by "remaining silent when a duty to speak exists." *Id.* Indiana courts recognize a duty of disclosure only where a confidential or fiduciary relationship exists. *See Plohg v. NN Investors Life Ins. Co.*, 583 N.E.2d 1233, 1236 (Ind. Ct. App. 1992) (observing that under Indiana law constructive fraud based on an alleged omission is limited "to instances where a confidential or fiduciary relationship existed between the parties"). Plaintiffs' allegations demonstrate the existence of an ordinary buyer-seller relationship, not any confidential or fiduciary relationship. (*See* Compl. ¶¶ 21-37.) Under such circumstances, Indiana law does not impose a duty of disclosure on the seller. *Plohg*, 583 N.E.2d at 1236.

### 3. Kentucky law does not impose a duty of disclosure on Sears

Under Kentucky law, a duty to disclose can arise "[w]here one party to a contract has superior knowledge and is relied upon to disclose that information." *In re Sallee*, 286 F.3d at 896. "Fraudulent concealment implies knowledge of the material fact disclosed." *Id.* (emphasis added). Here, Plaintiffs have not pled facts from which it is reasonable to infer that Sears had "superior knowledge" about a material fact at the time Plaintiff Matos purchased his machine. Absent such allegations, Plaintiffs' fraud-by-omission claim fails as a matter of law.

---

[17] Illinois law does not create a fiduciary relationship, or a general duty to disclose additional information, between a merchant and a consumer in ordinary, day-to-day business transactions. *See, e.g.*, *Mackinac*, 648 N.E.2d at 240-41, 271 Ill. App. 3d at 143 (affirming the trial court's dismissal of Illinois Fraud Act claim where the plaintiff failed to allege facts showing that defendants owed a duty to inform her of insurance policy restrictions); *Allensworth*, 389 N.E.2d at 687, 71 Ill. App. 3d at 1044 (reversing judgment for plaintiffs on fraudulent omission claim because "[t]he concealment may not be a mere passive omission of facts during a business transaction, but must have been done with the intent to deceive under circumstances creating an opportunity and duty to speak").

####       4.       Minnesota law does not impose a duty of disclosure on Sears

Under Minnesota law, "[n]ondisclosure does not constitute fraud absent a 'legal or equitable obligation' to communicate facts to a particular person and that person is entitled to that information." *L&H Airco*, 446 N.W.2d at 380 (citation omitted).  Minnesota courts recognize a duty to disclose when one of the parties "has special knowledge of material facts to which the other party does not have access."  *Id.*  Minnesota courts, however, have rarely applied the "special facts" theory to impose a duty of disclosure.  *See Taylor Inv. Corp.*, 169 F. Supp. 2d at 1065 ("There are very few cases outlining the types of situations in which the third exception to the general rule that there is no duty to disclose should be applied.").  Here, the alleged facts "indicate an arms length [*sic*] business transaction."  *Id.*  Plaintiff Leonard does not allege any facts showing Sears had "special knowledge" of any material fact at the time of sale.

####       5.       Texas law does not impose a duty of disclosure on Sears

Absent an allegation of partial disclosure, Texas courts recognize a duty to disclose only "when there is a fiduciary relationship."  *Hoggett*, 971 S.W.2d at 487.  Under Texas law, a fiduciary relationship can arise formally as a matter of law, such as an attorney-client relationship, or may arise informally from a confidential relationship in which "one person trusts in and relies upon another, whether the relationship is moral, social, domestic or merely personal."  *Id.* (quotation and citation omitted).  "A person is justified in placing confidence in the belief that another party will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship, as well as personal friendship."  *Id.* at 488.

Here, Plaintiff Barnes does not allege that he was in a confidential relationship with Sears, or that he had a long business association with Sears.[18]  Thus, Plaintiff Barnes's fraudulent omission claim fails because he has not alleged the existence of a fiduciary relationship recognized under Texas law.

---

[18] Even if Plaintiff Barnes had so alleged, a party to an arm's-length retail business transaction would not be "justified in placing confidence in the belief that another party will act in his or her best interest." *Hoggett*, 971 S.W.2d at 487; *see also Ins. Co. of N. Am.*, 981 S.W.2d at 674 ("[M]ere subjective trust does not . . . transform arm's-length dealing into a fiduciary relationship.") (quotation and citation omitted).

## IV.   PLAINTIFFS FAIL TO STATE CLAIMS FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### A.   Plaintiffs Have Failed to Plead Facts Showing That Their HE Washers Are Unfit for Cleaning Clothes

To state a claim for breach of implied warranty of merchantability under Illinois, Indiana, Kentucky, Minnesota, and Texas law, Plaintiffs must plead facts that, if true, would prove that their HE washers were not "merchantable" at the time of sale, meaning that they were not fit for their ordinary intended use.[19]  Plaintiffs have not adequately pled a claim for breach of the implied warranty of merchantability because, among other things, they have not pled that the HE washing machines are not fit for their ordinary purpose, which is to clean clothes.

Plaintiffs baldly allege that their HE washers "were not merchantable," (Compl. ¶ 124), because of an unidentified "latent defect" that allegedly "manifested itself to Plaintiffs and the class," (*id.* ¶ 125).  Notably, Plaintiffs do not allege what the HE washers' ordinary intended use is, much less how the HE washers are not fit for such use, or what alleged defect caused the HE washers to be unfit.  (*See id.* ¶¶ 122-126.)  Although Plaintiffs have not alleged an ordinary intended use, it is reasonable to assume that the ordinary intended use of a washing machine is to clean clothes.  *Cf. In re Simitar Entm't, Inc.*, 275 B.R. 331, 351 (D. Minn. 2002) (finding that, in the absence of a specific allegation of intended use, the court should identify the use "reasonably to be anticipated by the hypothetical 'normal' retail buyer").  Thus, Plaintiffs' implied warranty claims fail because they have not pled facts that, if true, would show that the HE washers suffer from a defect that renders them unfit to clean clothes.

With one exception[20], the only problems Plaintiffs allege they experienced with their HE washers is that the washers "would stop running, break down or otherwise fail to operate" and that "error codes such as F11 and FDL would appear."  (Compl. ¶¶ 22, 26, 29, 33, 35.)  Nowhere do Plaintiffs allege that their HE washing machines failed to clean their clothes effectively, before or after their machines were repaired.  (*See id.* ¶¶ 1-139.)  Nor have Plaintiffs alleged that their HE washers could not be repaired, or that they had to or did replace their washing machines

---

[19] *See, e.g.*, 810 Ill. Comp. Stat. § 5/2-314(2)(c); Indiana U.C.C., Ind. Code Ann. § 26-1-2-314(2)(c) (West 2002 & Supp. 2007); Kentucky U.C.C., Ky. Rev. Stat. § 355.2-314(2)(c) (West 2006); Minnesota U.C.C., Minn. Stat. Ann. § 336.2-314(2)(c) (West 2002 & Supp. 2007); Texas U.C.C., Tex. Bus. & Com. Code § 2.314(b)(3) (West 1994 & Supp. 2007).

[20] Plaintiff Butler also alleges that his washer "developed a moldy musty smell."  (Compl. ¶ 26.)

because they were no longer fit to clean clothes.  (*See id.*)  To the contrary, the only reasonable inference that can be drawn from Plaintiffs' allegations is that they are continuing to use their HE washers because the washers clean clothes.[21]  Absent <u>any</u> allegation that would support an inference that their washing machines were not merchantable at the time of sale, Plaintiffs' claims should be dismissed.  *See Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999) (dismissing implied warranty of merchantability claim and stating that "conclusory allegations regarding the [product's] merchantability and fitness are not sufficient to state a claim for breach of implied warranty of merchantability absent some factual support").

Further, under the laws applicable to most of Plaintiffs' warranty claims—Minnesota law being the exception—Plaintiffs must identify a defect that renders the HE washers unmerchantable.[22]  Here, the Complaint contains only conclusory assertions regarding the existence of a purported defect.  (*E.g.*, Compl. ¶ 2 (alleging that the HE washers suffered from "inherent design flaws").)  The Complaint contains no specific factual allegations that, if true, would establish that there is a design defect in HE washers.  Thus, Plaintiffs' allegations do not state a claim for breach of implied warranty of merchantability.[23]

---

[21] The implied warranty of merchantability is not a guarantee that the product will never require maintenance or repair.  Instead, "it provides for a minimum level of quality—that the goods 'are fit for the ordinary purposes for which such goods are used.'"  *Skelton v. Gen. Motors Corp.*, 500 F. Supp. 1181, 1192 (N.D. Ill. 1980), *rev'd on other grounds*, 660 F.3d 311 (7th Cir. 1981); *cf. Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) ("A product which performs its ordinary intended function adequately does not breach the implied warranty of merchantability merely because it does not function as well as the buyer would like, or even as well as it could.").

[22] *See, e.g.*, *Strotman v. K.C. Summers Buick, Inc.*, 489 N.E.2d 1148, 1151, 141 Ill. App. 3d 8, 11 (Ill. App. Ct., 4th Dist., 1986) (dismissing implied warranty claim because "plaintiffs before us have not alleged specific facts from which one might infer the existence of a defect"); *Ind. Nat'l Bank of Indianapolis v. De Laval Separator Co.*, 389 F.2d 674, 677 (7th Cir. 1968) ("Since there was no defect in the ring when it left the factory, there could be no breach of implied warranty of fitness."); *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 132 (Ky. Ct. App. 1998) (denying summary judgment because there was "a material issue of fact as to whether the van's stalling was a material defect rendering the vehicle unmerchantable"); *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989) ("proof of a defect is required in an action for breach of implied warranty of merchantability").

[23] Even if the Court were to assume that the Complaint adequately alleges the existence of a defect, and even if the Court were to assume that the Complaint alleges that Plaintiffs' washers failed to clean clothes, the Complaint does not allege facts that would suggest a defect is the cause of the machines' unfitness for cleaning clothes.  (*See* Compl. ¶¶ 1-139.)  Absent allegations that the HE washers are not fit to clean clothes as a consequence of an alleged defect, Plaintiffs' implied warranty claims should be dismissed.  *See Plas-Tex*, 772 S.W.2d at 444 ("In the context of an implied warranty of merchantability

### B.     Plaintiffs Butler's, Leonard's, and Barnes's Warranty Claims Fail Because They Have Not Alleged They Gave Sears Pre-Suit Notice of Breach

Plaintiffs Butler's, Leonard's, and Barnes's warranty claims fail because these Plaintiffs have not pled, consistent with their respective home states' warranty laws, that they provided Sears with the statutorily required pre-suit notice of their claims.[24]   Plaintiffs vaguely allege that Sears "was notified that the Kenmore HE Series Washing Machines were not merchantable . . . ." (Compl. ¶ 125.)   Through use of the passive voice, Plaintiffs seek to gloss over how such notice was allegedly provided to Sears, by whom, and when.   Focusing on Plaintiffs' individual allegations, the only "notice" they provided Sears, if at all[25], were repair requests, which they admit that Sears honored (though Plaintiffs bore some repair costs).   (*Id.* ¶¶ 23, 27, 30, 36.)

Plaintiff Butler—the only plaintiff who alleges that he experienced moldy smells—does not claim that he <u>ever</u> contacted Sears about the odor issue, though he alleges to have requested and paid for "replacement relays."   (*Id.* ¶¶ 25-27.)   He does not assert that he complained to Sears, that he notified Sears that he was dissatisfied with the repair service, or that he otherwise contended Sears was in breach of its warranty.   (*Id.*)   Under Indiana law, a buyer must notify the seller "of the factual circumstances sufficient for the seller to determine that the buyer has grounds for a claim of breach."   *Paper Mfrs. Co. v. Rescuers, Inc.*, 60 F. Supp. 2d 869, 881 (N.D.

---

case the word 'defect' means a condition of the goods that renders them unfit for the ordinary purposes for which they are used.").

[24]   Pre-suit notice is a substantive requirement of warranty law under Uniform Commercial Code, U.C.C. § 2-607, however, the 50 states and the District of Columbia have developed markedly differing standards as to what constitutes sufficient notice to the seller.   *Compare, e.g., Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710, 715 (7th Cir. 1992) (under Illinois law, notice requirement met where seller had actual knowledge that machine failed), *and Goldstein v. G.D. Searle & Co.*, 378 N.E.2d 1083, 1088-89, 62 Ill. App. 3d 344, 351-52 (Ill. App. Ct., 1st Dist., 1978) (filing of legal complaint gave sufficient notice of breach, if timely filed), *with Ford v. Barnard, Sumner & Putnam Co.*, 294 N.E.2d 467, 469 (Mass. App. Ct. 1973) (telephone call complaining about product was insufficient to meet notice requirement), *Agway, Inc. v. Teitscheid*, 472 A.2d 1250, 1252-53 (Vt. 1984) (same), *and Lynx, Inc. v. Ordnance Prods., Inc.*, 327 A.2d 502, 514 (Md. 1974) ("[t]he institution of an action by the buyer to recover damages cannot by itself be regarded as a notice of the breach contemplated [by the U.C.C.]").

[25]   Plaintiffs Leonard and Barnes do not allege any facts from which it could be inferred that they demanded from Sears a free repair, reimbursement of out-of-pocket repair expenses, a refund of the washer's purchase price, or a replacement washing machine, or that Sears refused any such request. (Compl. ¶¶ 28-33.)   A breach of an obligation to repair or replace a product cannot occur until the warrantor refuses or fails to repair or replace.   *Belfour v. Schaumburg Auto*, 713 N.E.2d 1233, 1238, 306 Ill. App. 3d 234, 241 (Ill. App. Ct., 2d Dist., 1999) (finding no breach where warrantor offered to replace car, because breach cannot occur until warrantor refuses request to repair or replace).

Ind. 1999); *see also McClure Oil Corp. v. Murray Equip., Inc.*, 515 N.E.2d 546, 554 (Ind. Ct. App. 1987) ("[t]imely notice of a breach is a substantive condition precedent to recovery").

Under Minnesota law, as a precondition to filing suit, Plaintiff Leonard is required to allege that he notified Sears that he intended to assert a claim for breach of implied warranty of merchantability.  *See* Minn. Stat. Ann. § 336.2-607(3)(a) ("the buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1187-88 (D. Minn. 2002) (dismissing implied warranty claim because the plaintiffs' allegation that Sony "was aware" of the alleged defect was not sufficient absent an allegation that plaintiffs gave notice that "they intended to assert a warranty claim").  Failure to plead such pre-suit notice in the Complaint requires dismissal of Plaintiff Leonard's warranty claim.  *See Christian*, 152 F. Supp. 2d at 1187-88.

Likewise, Texas law requires that Plaintiff Barnes notify Sears of the alleged breach or be barred from any remedy.  *See* Tex. Bus. & Com. Code § 2.607(c)(1) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 804 (E.D. La. 1998) (applying Texas law and dismissing breach of implied warranty claim in part because the plaintiff did not give the required notice).  Plaintiff Barnes does not allege that he <u>ever</u> contacted Sears about the problems he experienced.  (Compl. ¶¶ 32-33.)  For that reason alone, his warranty claim should be dismissed.

## V.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL BECAUSE THEY FAIL TO ALLEGE FACTS SHOWING THAT SEARS' CONDUCT WAS WRONGFUL

The Illinois Supreme Court has identified three circumstances where "enrichment" can be found "unjust":  (1) where a benefit should have been given to the plaintiff, but a third party mistakenly gave it to the defendant instead; (2) where the defendant obtained the benefit through some type of wrongful conduct; and (3) where the plaintiff had a better claim to the benefit than the defendant for some other reason.[26]  *See HPI Health Care Serv., Inc. v. Mt. Vernon Hosp. Inc.*,

---

[26]  Because Plaintiffs base their unjust enrichment claims on the alleged wrongfulness of Sears' conduct, Indiana, Kentucky, Minnesota, and Texas law also require allegations showing that Sears acted "wrongfully" in some way.  *See, e.g.*, *Savoree v. Indus. Contracting & Erecting, Inc.*, 789 N.E.2d 1013, 1020 (Ind. Ct. App. 2003) ("The pivotal concept of 'unjust enrichment' is the occurrence of a wrong or

545 N.E.2d 672, 679, 131 Ill. 2d 145, 161-62 (Ill. 1989).  Here, Plaintiffs' unjust enrichment claims are based on the second circumstance—that is, they allege that Sears "wrongfully" collected money from them.  (Compl. ¶¶ 127-132.)  For the reasons stated above, however, the Complaint contains no well-pled <u>facts</u> that, if true, would show that Sears' conduct was "wrongful" in any meaningful way.

Plaintiffs have not adequately alleged that Sears engaged in any "deceptive" conduct or that Sears omitted any material fact that Sears was under a duty to disclose.  (*See* Argument, Parts I.A.2 & I.A.3, *supra*.)  Absent particularized allegations that Sears engaged in some wrongful conduct, Plaintiffs' unjust enrichment claims fail as a matter of law.  *See, e.g.*, *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977, 271 Ill. App. 3d 483, 492 (Ill. App. Ct., 1st Dist., 1995) (affirming summary judgment for defendants where the plaintiffs failed to allege that defendants engaged in "unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence").

In addition, Plaintiffs unjust enrichment claims fail because they admit that an express contract governs their relationship with Sears.[27]  (Compl. ¶ 14.)  "Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'"  *People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177, 153 Ill. 2d 473, 497 (Ill. 1992) (quoting *La Throp v. Bell Fed. Sav. & Loan Assoc.*, 370 N.E.2d 188, 195, 68 Ill. 2d 375, 391 (Ill. 1977)).  "Express warranties are contractual in nature."  *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341, 181 Ill. App. 3d 1088, 1100 (Ill. App. Ct., 4th Dist., 1989).  Thus, where as here, an express warranty governs the relationship between the parties, the doctrine of unjust enrichment does not apply and such claims must be dismissed.  *See, e.g.*, *Cooper v. Durham Sch. Servs.*, No. 03 C 2431,

---

something unjust."); *Guar. Elec. Co. v. Big Rivers Elec. Co.*, 669 F. Supp. 1371, 1381 (W.D. Ky. 1987) ("The most significant element of proof in an action for recovery is that the enrichment to the defendant is unjust."); *ServiceMaster of St. Cloud v. GAB Bus. Serv., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (unjust enrichment requires showing that "a party was unjustly enriched in the sense that the term 'unjustly' could mean 'illegally or unlawfully'" (citation omitted)); *In re Estate of Wallace*, No. 04-05-00567-CV, 2006 WL 3611277, at *3 (Tex. App. Dec. 13, 2006) (unjust enrichment occurs when a person obtains a benefit from another by fraud, duress, or the taking of an undue advantage).

[27]  Plaintiffs' unjust enrichment claim incorporates by reference the preceding 126 paragraphs of the Complaint, (Compl. ¶ 127), including the allegation that "Sears provided an express warranty" with new HE washers, (*id.* ¶ 14.)

2003 WL 22232833, at *7 (N.D. Ill. Sept. 22, 2003) ("unjust enrichment is a contract substitute and does not succeed where a contract exists").[28]

Essentially, Plaintiffs seek to rewrite the terms of Sears' Warranty so as to compel Sears to provide free repairs outside the warranty period. Plaintiffs, however, could have purchased a service contract at or after the time of sale, (*e.g.*, Compl. ¶ 24), which would have shifted the financial risk of repairs to Sears. Now that the named plaintiffs (other than Plaintiff Munch) have chosen not to pay to shift that risk, Plaintiffs cannot use an equitable remedy to rewrite the Warranty. *See Yassin v. Capitol Indem. Corp.*, No. 94 C 50156, 1995 WL 30610, at *3 (N.D. Ill. Jan. 24, 1995) (dismissing unjust enrichment claim on ground that the remedy cannot be invoked where an express contract exists between the parties, because to do so "would improperly shift risks that were negotiated under the contract").

## VI.    PLAINTIFFS LACK STANDING TO SEEK A DECLARATORY JUDGMENT

Plaintiffs also ask the Court to enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. (Compl. ¶ 138.) The Act requires an "actual controversy" before the Court may make a declaration of the parties' rights. "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Alcan Aluminum Ltd. v. Dep't of Revenue of Oregon*, 724 F.2d 1294, 1298 (7th Cir. 1984) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "Injury is an indispensable element of a case or controversy." *Illinois v. City of Chi.*, 137 F.3d 474, 477 (7th Cir. 1998).

---

[28]  Indiana, Kentucky, Minnesota, and Texas courts also deny recovery for unjust enrichment where an express contract governs the relationship of the parties. *See, e.g.*, *Bayh v. Sonnenburg*, 573 N.E.2d 398, 409 (Ind. 1991) (discussing the rule "which says recovery cannot be grounded on unjust enrichment where a contract controls the rights of the parties"); *Codell Constr. Co. v. Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) ("The doctrine of unjust enrichment has no application in a situation where there is an explicit contract that has been performed."); *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) (unjust enrichment "cannot be granted where the rights of the parties are governed by a valid contract"); *R. Conrad Moore & Assocs. v. Lerma*, 946 S.W.2d 90, 97 (Tex. App. 1997) ("[A] valid enforceable contract exist[s] . . . , thus restitution under unjust enrichment is not an appropriate remedy.").

Here, the purported "controversy" on which Plaintiffs base their declaratory action is not a controversy to which they are parties, or one that has caused them injury.[29]  Thus, Plaintiffs' request for a declaratory judgment should be dismissed.  *Cf. Lebowich v. O'Connor*, 309 F.2d 111, 114 (2d Cir. 1962) (affirming district court's refusal to issue declaratory judgment because "such an order would not be determinative of any controversy to which appellant is a party").

In addition, despite the claim's label as "declaratory" in nature, Plaintiffs seek more than a mere declaration of rights and liabilities, but rather an injunction awarding money damages and establishing a corrective action program.[30]  (Compl. ¶ 135.)  Injunctions are inappropriate if an adequate remedy at law exists.  *See Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 & n.6 (D.C. Cir. 2006) (action for declaratory relief seeking decree that defendant was liable, accompanied by injunction forcing reimbursement, could not be maintained where an award of damages would provide an adequate remedy at law).  Here, money damages would sufficiently compensate Plaintiffs' for their injuries, if any.  *Cf. id.*

## VII.   ALTERNATIVELY, PLAINTIFFS SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE STATEMENT OF THEIR CLAIMS

At a minimum, Plaintiffs should be required to provide a more definite statement of their claims.  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b) serves important purposes in fraud actions by "protect[ing] defendants from the harm of false accusations, minimiz[ing] 'fishing expeditions,' and provid[ing] defendants with adequate notice" so that they may prepare proper defenses.  *Jones v. Hoosman*, No. 05-C-2909, 2006 WL 1302524, at *1 (N.D. Ill. May 9, 2006) (granting motion to dismiss for failure to plead fraudulent concealment with requisite specificity).  For the reasons discussed in Parts I.A.2 and I.A.3 above,

---

[29]  Plaintiffs allege the existence of a controversy "concerning the legality of Defendant's marketing of Kenmore HE Series Washing Machines as innovative, cost effective and dependable when it knew or should have known them to be defective and unreliable."  (Compl. ¶ 137.)  Plaintiffs, however, do not base their legal claims on Sears' "marketing" of HE washers, and they do not allege they were exposed to or deceived by any Sears statement.  (*Id.* ¶¶ 1-139.)

[30]  *See Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544 (D. Minn 1999) (request for injunction establishing a smoking cessation program that would not be court-administered was not really injunctive in nature, but rather disguised pre-payment of compensatory damages).

Plaintiffs' conclusory allegations that Sears failed to disclose certain "facts" about HE washers do not satisfy Rule 9(b)'s specificity and particularity requirements.

Under Rule 12(e), where a complaint "is so vague or ambiguous that a defendant cannot reasonably be required to frame a responsive pleading, the defendant may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). For Sears to properly defend itself against Plaintiffs' claims and to determine the appropriate scope of class discovery, Plaintiffs must plead particularized facts showing exactly what they contend Sears knew and should have disclosed to Plaintiffs.

## CONCLUSION

For all these reasons, Sears requests that the Court dismiss Plaintiffs' Complaint.

Dated:  March 26, 2007          By:      s/ Brad E. Rago

Bradley B. Falkof
Brad E. Rago
Barnes & Thornburg LLP
1 North Wacker Drive, Suite 4400
Chicago, IL  60606
Telephone: (312) 214-8304
Facsimile:  (312) 759-5646

*and*

Malcolm E. Wheeler
Michael T. Williams
Kara J. Rohe
Gallen D. Bellamy
Wheeler Trigg Kenney LLP
1801 California Street, Suite 3600
Denver, CO  80202-2617
Telephone: (303) 244-1800
Facsimile:  (303) 244-1879

Peter W. Herzog, III
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750
Telephone: (314) 259-2000
Facsimile:  (314) 259-2020

*Attorneys for Sears, Roebuck and Co.*

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing Memorandum in Support of Defendant's Motion to Dismiss Complaint or, in the Alternative, for a More Definite Statement of Plaintiffs' Claims was served this 26th day of March, 2007 via the Court's CM/ECF system to Paul M. Weiss and George K. Lang, Freed & Weiss LLC, 111 W. Washington St., Suite 1331, Chicago, IL 60602.

s/ Brad E. Rago