UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN MUNCH, LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES and VICTOR MATOS, individually and on behalf of all other similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 06 C 7023, consolidated with No. 07 C 412 |
| v. | ) ) | Judge Joan H. Lefkow |
| SEARS ROEBUCK AND CO., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Susan Munch, Larry Butler, Joseph Leonard, Kevin Barnes, and Victor Matos (collectively, "the Munch plaintiffs"),[1] alleged owners of Kenmore Elite®-brand HE3t and HE4t washing machines, have filed suit against defendant, Sears Roebuck and Co. ("Sears"), on behalf of all purchasers of Kenmore Elite® HE3, HE3t, HE4 and HE4t model washing machines ("HE washers"), alleging claims for violation of their respective home states' consumer protection statutes, common law fraud, breach of implied warranty of merchantability, unjust enrichment, and declaratory relief. Before the court is Sears's motion to dismiss plaintiffs' complaint or, in the alternative, for a more definite statement of plaintiffs' claims, as well as Sears's motion to

---

[1]On December 19, 2006, Susan Munch *et al.* filed case No. 06 CV 7023. On January 22, 2007, Bryan Seratt, Alan Jarashow, Dr. Stephen Papaleo, Lauren Crane and Lawrence L'Hommedieu (collectively, "the Seratt plaintiffs") filed their own putative class action against Sears, case No. 07 CV 412, alleging the same fraudulent conduct alleged by the Munch plaintiffs. On March 7, 2007, after a finding of relatedness, both cases were brought before this court. On April 3, 2007, the parties' joint motion to consolidate the Munch and Seratt complaints was granted. Accordingly, Sears' motion to dismiss is directed at both complaints, and all references to "plaintiffs" herein refer, unless otherwise noted, to both the Munch and Seratt plaintiffs.

strike plaintiffs' class allegations. For the reasons stated below, Sears's motion to dismiss is granted in part and denied in part.

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs allege that they bought HE washers from Sears between December 2004 and May 2005, and that their HE washers subsequently experienced mechanical problems, causing the machines to "stop running, break down or otherwise fail to operate." Plaintiffs contend that they and other HE washer owners complained to Sears about premature and repeated mechanical failure; electronic control panel failure; the appearance of error codes such as F11 and FDL on the electronic control panel; clothes not being cleaned properly, including clothes being stained; mold and mildew growing in the machines; and the machines otherwise not performing as a durable and dependable washing machines. Plaintiffs contend that the high number of complaints Sears received regarding the HE washers put it on notice that the HE washers were defective and obligated it to disclose that fact to owners and potential purchasers of the machines. Instead of disclosing the problems, plaintiffs further contend, Sears actively concealed that the HE washers were defective by blaming the "mechanical failures on soap, water issues or other conduct" by the owners of the machines, and tried to profit from the machines' defects by selling extended warranties.

Plaintiffs allege that they have suffered actual damages "in that their Kenmore HE Series Washing Machines have not operated as represented by Sears," because they paid "too high a price for a washing machine that is defective and not fit for use," and because they paid for costs associated with service calls, replacement parts, and extended warranties.

**STANDARD**

A motion to dismiss under 12(b)(6), Fed. R. Civ. P., challenges the legal sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan* v. *American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan* v. *Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz* v. *Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke* v. *Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer* v. *Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

## DISCUSSION

I.  **Statutory Fraud Claims**

   A.  **Illinois Consumer Fraud and Deceptive Business Practices Act**

Plaintiffs allege that Sears violated section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/2 ("Illinois Consumer Fraud Act"). The Illinois Consumer Fraud Act prohibits any "concealment, suppression or omission of any material fact, with intent that others rely upon the concealment in the conduct of any trade or commerce." 815 Ill. Comp. Stat. 505/2. To state a claim under the Illinois Consumer Fraud Act, a complaint must set forth specific facts that show (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving a trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. *Connick* v. *Suzuki Motor Co.*, 675 N.E.2d 584, 594, 174 Ill.2d 482, 221 Ill. Dec. 389 (Ill. 1996). Furthermore, a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud. *People ex rel. Hartigan* v. *E & E Hauling, Inc.*, 607 N.E.2d 165, 174-75, 153 Ill.2d 473, 180 Ill. Dec. 271 (1992).[2]

Sears argues that plaintiffs' Illinois Consumer Fraud Act claim should be dismissed because their allegations that the HE washers would "stop running, break down, or otherwise fail

---

[2]Plaintiffs do not explicitly assert a claim for fraudulent misrepresentation but nevertheless include several allegations implying that Sears's alleged representations regarding the quality and durability of the HE washers should be the standard by which the machines are measured. Plaintiffs' generalized references to alleged representations by Sears, however, are insufficient to state a claim for fraudulent misrepresentation. Plaintiff fails to allege the who, what, when, where and how of any representations made by Sears. As such, plaintiffs fail to state a claim for fraudulent misrepresentation, and therefore all such allegations are properly disregarded. *Hirsch* v. *Feuer*, 702 N.E.2d 265, 272, 299 Ill. App. 3d 1076, 234 Ill. Dec. 99 (Ill. App. Ct. 1st Dist. 1998).

4

to operate" and had a "substantial risk of mechanical failure" lacks the particularity required by Rule 9(b), Fed. R. Civ. P., which provides that "all averments of fraud or mistake shall be stated with particularity." In response, plaintiffs cite two problems with their HE washers that they identified in their complaint - the failure of the electronic control panel and the growth of mold and mildew in the machines - as their specific allegations of the washers' defects.

To the extent that plainiffs regard these two problems as the HE washers' defects, they have failed to plead them with sufficient particularity. Plaintiffs fail to give a technical description of the problems or to quantify the number of other HE washers that have experienced them.[3] Plaintiffs instead seek relief on behalf of all HE washer owners based solely on the allegation that their particular machines required a single repair. Since it is understood that some percentage of all mass-produced complex machines will fail, their allegation is insufficient to state a claim.

It seems more likely, though, that plaintiffs regard the particular problems experienced by their HE washers merely as manifestations of some larger defect, whether caused by poor design, inferior materials or incompetent or inconsistent production. If that is the case, then plaintiffs really just allege that the HE washers must necessarily be defective because their repair and replacement rate is unreasonably high. The alleged defect that underlies that allegation likely cannot be stated at this stage with any greater particularity, as plaintiffs cannot uncover it, as

---

[3]In their response to Sears's motion to dismiss, plaintiffs assert that "at least 22,987 HE Series owners have had electronic control board repairs, and 15,538 have had mold issues." While plaintiffs contend that these figures mean that there was a greater than 1 in 50 chance that a HE washer will cease operation or start exhibiting a moldy or mildewy odor, plaintiffs fail to explain how that figure is material. Again, unless that failure rate exceeds in a meaningful way the failure rate of comparable machines, there is no reason to believe that it would be material to a potential purchaser's decision since it is an accepted fact that some percentage of all machines will fail. Regardless, plaintiffs do not make these allegations in their complaint, so it would be inappropriate to consider them in resolving Sears's motion to dismiss.

5

they can in the case of specific defect, merely by examining their particular machines. As a consequence, plaintiffs' attempt to plead their claim by reference to the number of HE washers that have failed is, at least on initial consideration, appropriate. Even so, plaintiffs still fail to provide sufficiently detailed allegations to permit an inference of fraud.

In order to state a cause of action for fraudulent concealment under the Illinois Consumer Fraud Act, a plaintiff must plead that the defendant omitted or concealed a material fact in the conduct of trade or commerce. *White* v. *DaimlerChrysler Corp.*, 856 N.E.2d 542, 547, 368 Ill. App. 3d 278, 305 Ill. Dec. 737 (Ill. App. Ct. 1st Dist. 2006). In Illinois, a fact is material "if the plaintiff would have acted differently had he been aware of it, or if it concerned the type of information upon which he would be expected to rely when making his decision to act." *Miller* v. *William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 7, 326 Ill. App. 3d 642, 260 Ill. Dec. 735 (Ill. App. Ct. 1st Dist. 2001) (citing *Mackinac* v. *Arcadia Nat. Life Ins. Co.*, 648 N.E.2d 237, 239, 271 Ill. App. 3d 138, 141, 207 Ill. Dec. 781 (Ill. App. Ct. 1st Dist. 1995).

Plaintiffs allege that the HE washers had a "high incidence of repair" and that Sears received "a high number of complaints" about them, but they allege no facts that give meaning to the term "high." A product's rate of failure would be material to a reasonable person only if it exceeded a standard rate of failure in the industry for comparable machines produced by comparable manufacturers. Even then, the materiality of the rate of failure would turn on such considerations as (1) whether the machine typically fails during the warranty period or after its expiration; (2) what it costs on average to repair the machine; (3) whether the machine can be repaired once it fails; (4) whether the machine suffers from repeat failures; and (5) what component of the machine most commonly fails. Absent allegations concerning some or all of

6

these and perhaps other similar facts, plaintiffs' complaint lacks plausible grounds to infer that Sears committed fraud by concealing that some percentage of HE washers required repair.[4] *See White*, 856 N.E.2d at 549-50 (finding that allegations that tubular steel exhaust manifolds were "prone to cracking and failure," "would fail at unacceptably high rates," and that defendant was aware of a "high frequency of failures" fall short of the specificity required by the Illinois Consumer Fraud Act).[5]

### B.  Indiana Deceptive Consumer Sales Act

Plaintiffs allege that Sears violated the Indiana Deceptive Consumer Sales Act ("the Indiana Consumer Fraud Act"), Ind. Code § 24-5-0.5 *et seq.* by misrepresenting the quality of the HE washers and failing to disclose the machines' known defects.[6]  Section 24-5-0.5-3 defines "acts constituting deceptive practices," and provides in relevant part:

> (a) The following acts or representations as to the subject matter of a consumer transaction, made either orally or in writing by a supplier, are deceptive acts:
> (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

---

[4] For the same reason, plaintiffs' claims under the California Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*, Kentucky Consumer Fraud and Deceptive Business Practices Act, Ky. Rev. Stat. § 367.120 *et seq.*, the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. § 325F *et seq.*, the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.903(1)(g), the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.,* the New York Consumer Protection Law, N.Y. General Business Code § 349 *et seq.*, and the Washington Consumer Protection Act, Wash. Rev. Code § 19.86 *et seq.*, are subject to dismissal.  Likewise, plaintiffs' claims for common law fraud based on Sears's alleged non-disclosures are dismissed.

[5] Having found that plaintiffs have failed to plead with sufficient particularity that Sears concealed a material fact, there is no need to consider Sears's remaining challenges to plaintiffs' claims under the Illinois Consumer Fraud Act, including whether the non-Illinois resident plaintiffs have standing to pursue a claim under that statute and whether plaintiffs plead with sufficient particularity that Sears intended to induce plaintiffs' reliance.

[6] Sears does not argue that plaintiffs' claims under the Indiana Consumer Fraud Act fail for failure to plead with specificity.

7

On its face, section 24-5-0.5-3 appears not to apply to non-disclosures, as it requires a representation "made either orally or in writing." *Id.* § 24-5-0.5-3(a). In *Berghausen* v. *Microsoft Corp.*, 765 N.E.2d 592, 598 n. 6 (Ind. App. Ct. 2002), the court ruled that a plaintiff who alleged that Microsoft implicitly represented to consumers that its prices were fair and competitive by distributing its Windows operating system through computer manufacturers failed to allege a representation made either orally or in writing sufficient to state a claim under section 24-5-0.5-3. Unable to find a single case in which a plaintiff prevailed on a claim under the Indiana Consumer Fraud Act based on an alleged non-disclosure, and finding only one case, *Booth* v. *Wiley*, 839 N.E.2d 1168 (Ind. 2005), in which a plaintiff even founded a claim under that statute on an alleged non-disclosure, this court follows *Berghausen* and finds that plaintiffs cannot maintain an action under the Indiana Consumer Fraud Act based on Sears's alleged non-disclosure of the HE washers failure rate.[7]

## II. Common Law Claims

The threshold question presented by plaintiffs' remaining common law claims is whether Illinois's choice-of-law rules require application of the laws of plaintiffs' respective home states or whether the law of this court's forum state, Illinois, should govern. Conflicts rules are appealed to only when a difference in law will make a difference to the outcome. *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 605 (7th Cir. 1981). The choice of law is not made once for all issues; the trend is to decide the applicable law for each

---

[7]Defending their Indiana Consumer Fraud Act claim, plaintiffs invoke Sears's alleged misrepresentations. As noted above, plaintiffs fail to plead with sufficient particularity alleged misrepresentations made by Sears, and thus, they provide no basis to sustain plaintiffs' Indiana Consumer Fraud Act claim.

issue separately. *Id.* at 611. Sears fails to identify any disagreement between the contact states that alter the resolution of the issues presented by its motion to dismiss plaintiffs' remaining common law claims. As a consequence, the court declines to conduct a choice of law analysis merely to resolve a conflict that may or may not arise at a later stage in this litigation, and applies the law of Illinois. *Int'l Administrators, Inc.* v. *Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 (7th Cir. 1985).

### A. Breach of Implied Warranty of Merchantability

Sears first contends that plaintiffs' claim for breach of implied warranty of merchantability should be dismissed because they have failed to plead facts showing that their HE washers were unfit at the time of sale for their intended purpose, cleaning clothes. Sears further contends that the laws applicable to most of plaintiffs' warranty claims require plaintiff to identify a defect that renders their HE washers unmerchantable, and that plaintiff offers only conclusional allegations of a purported defect.

To state a claim for breach of implied warranty of merchantability under Illinois law,[8] plaintiffs must allege that (1) Sears's HE washers were not merchantable at the time of sale; (2) plaintiffs suffered damages as a result of the defective washers; and (3) plaintiffs gave Sears notice of the defect. *See* 810 Ill. Comp. Stat. 5/2-314; *see also Industrial Hard Chrome. Ltd.* v. *Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999). To be merchantable, the goods must be, among other things, fit for the ordinary purpose for which the goods are used. *Id.*

---

[8]Incidentally, the same standard applies under California, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, Texas and Washington law. *See* Cal. Comm. Code § 2314; Indiana U.C.C., Ind. Code Ann. § 26-1-2-314(2)(c); Kentucky U.C.C., Ky. Rev. Stat. § 355.2-314(2)(c); Mich. Comp. Laws § 440.2314; Minnesota U.C.C., Minn. Stat. Ann. § 266.2.-314(2)(c); N.J. Stat. Ann. § 12A:2-314(1); N.Y.U.C.C. §2-314; Texas U.C.C., Tex. Bus. & Com. Code § 2.314(b)(3); Wash. Rev. Code § 62A.2-314.

While plaintiffs do not specifically allege that their HE washers failed to clean clothes effectively, an omission Sears finds significant, they do assert that their machines experienced repeated mechanical failures that resulted in multiple periods of inoperation, as implied by their allegation that the problems *began* on a particular date. It should go without saying that a washing machine cannot clean clothes, effectively or otherwise, if it will not operate. As such, plaintiffs adequately plead that their HE washers were not fit for their intended purpose.[9]

The issue of whether plaintiffs alleged a product defect sufficient to sustain their implied warranty claim highlights the fact that their claim is subject only to the notice pleading requirement of Rule 8, Fed. R. Civ. P., whereas plaintiffs' fraud claims are subject to the heightened pleading standard of Rule 9(b). Under the former standard, plaintiffs' allegations that their washers suffered from a variety of problems, from electronic control panel failure to the occurrence of mold and mildew, all of which occurred on multiple occasions, is sufficient to withstand the motion to dismiss. Plaintiffs explicitly allege that their HE washers were defective and allege facts that support that conclusion.

Sears also argues that plaintiffs' breach of implied warranty claims should be dismissed because their complaint does not adequately allege that plaintiffs notified Sears of the breach. Plaintiffs counter that they were excused from giving direct notice of the breach of warranty because Sears had actual knowledge of the breach and because Sears was notified by the timely filing of their breach of warranty complaint. Regardless, plaintiffs contend they gave Sears

---

[9]Particular plaintiffs can establish a breach of warranty even if plaintiffs as a class cannot establish that all of the HE washers were defective, because the fact that all HE washers are not defective does not mean that a particular HE washer is not defective. Accordingly, plaintiffs' allegations of defects with the HE washers are sufficient to sustain their implied warranty claims even though they are insufficient to plead fraud.

adequate notice of their breach of warranty claim when they complained to Sears about the problems experienced with their HE washers.[10]

Section 5/2-607 of the Illinois Uniform Commercial Code provides that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 Ill. Comp. Stat. Ann. 5/2-607(3)(a). A notification of a breach of the warranty is sufficient if it lets the seller know that the particular "transaction is still troublesome and must be watched." *Connick*, *supra*, 675 N.E.2d at 590. There are no particular words which must be used to constitute an adequate form of notice. *Id.*

In this case, plaintiffs allege that they notified Sears that there were problems with their machines and requested that Sears make the necessary repairs, which in most cases Sears did, thereby observing for itself the respective failures of the machines. Nothing more is required to give notice of a breach of an implied warranty. *See Connick*, 675 N.E.2d at 590 (citing *Malawy v. Richards Mfg. Co.,* 501 N.E.2d 376, 150 Ill. App. 3d 549, 103 Ill. Dec. 355, (Ill. App. Ct. 5th Dist. 1986) (actual knowledge satisfied notice requirement where seller hospital removed defective medical device from plaintiff); *Crest Container Corp.* v. *R.H. Bishop Co.*, 445 N.E.2d 19, 111 Ill. App. 3d 1068, 67 Ill. Dec. 727, 445 N.E.2d 19 (Ill. App. Ct. 5th Dist. 1982) (actual knowledge satisfied notice requirement where seller's employee visited plaintiff to "get to the bottom of why" the product was malfunctioning); *Overland Bond & Investment Corp.* v. *Howard*, 292 N.E.2d 168, 9 Ill. App. 3d 348 (Ill. App. Ct. 1st Dist. 1972) (actual knowledge

---

[10] Because the court finds that plaintiffs satisfied the notice requirement by advising Sears of the problems with their HE washers, the court need not consider plaintiffs' contention that they were excused from giving direct notice of the breach of warranty because Sears had actual knowledge of the HE washers' alleged defects and because they timely failed a breach of warranty complaint.

11

satisfied notice requirement where the car was towed to the seller's auto dealership and seller's employees were told that the car needed major repairs)).[11]

B.      Unjust Enrichment

Sears argues that plaintiffs' unjust enrichment claims should be dismissed because they fail to allege facts showing that Sears's conduct was wrongful. In Illinois, to prevail on a claim for unjust enrichment, a plaintiff must show either that (1) a benefit that should have been given to the plaintiff was mistakenly given to the defendant instead; (2) the defendant obtained a benefit through some type of wrongful conduct; or (3) the plaintiff had a better claim to the benefit than the defendant for some other reason. *See HPI Health Car Serv., Inc.* v. *Mt. Vernon Hosp. Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 161-62, 137 Ill. Dec. 19 (Ill. 1989). In this case, plaintiffs' unjust enrichment claims are based on the allegation that Sears acted "wrongfully."[12]

---

[11]The laws of the other contact states are in accord. *See Agrarian Co., Inc.* v. *Meeker*, 526 N.E.2d 1189 (Ind. App. Ct. 1988) (notice requirement satisfied by the buyer's actual knowledge that there are some problems with the subject goods); *Church of the Nativity of Our Lord* v. *WatPro, Inc*., 491 N.W.2d 1 (Minn. 1992), *overruled on other grounds by Ly* v. *Nystrom*, 615 N.W.2d (Minn. 2000) (notification need merely be sufficient to let the seller know that the transaction is troublesome and must be watched); *Duall Bldg. Restoration, Inc.* v. *1143 East Jersey Ave., Associates, Inc.*, 652 A.2d 1225 (N.J. Super. A.D. 1995) (buyer that informs seller that there is a problem with the identified product has taken such steps as may be reasonably required to inform manufacturer about breach); *Cliffstar Corp.* v. *Elmar Indus, Inc.*, 254 A.D.2d 723, 678 N.Y.S.2d 222 (N.Y.A.D. 4th Dept. 1998) (notice need only alert seller that the transaction was troublesome and did not need to include a claim for damages or threat of future litigation); *Baum* v. *Murray*, 162 P.2d 801, 806-07 (Wash. 1945) (notice given when buyer advised seller of the unwholesomeness and unfitness of the subject pork sausage); *Lochinvar Corp.* v. *Meyers*, 930 S.W.2d 182, 190 (Tex. App. Ct. 1996) (general expression of buyer's dissatisfaction with the product sufficient to give notice); *Whitfield* v. *Jessup*, 31 Cal.2d 826, 193 P.2d 1 (Cal. 1948) (buyer need only advise that he intends to look to seller for damages).

[12]The parties agree that the other relevant jurisdictions also require plaintiffs to allege that Sears acted "wrongfully" in some way.

Unjust enrichment is not descriptive of conduct, but rather it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, and undue influence. *Charles Hester Enterprises, Inc.* v. *Ill. Founders Ins. Co.*, 484 N.E.2d 349, 354, 137 Ill. App. 3d 84, 91 Ill. Dec. 790 (Ill. App. Ct. 5th Dist. 1985). Plaintiffs' allegation of wrongful conduct is premised on its claim that Sears concealed the HE washers defects by failing to disclose the machines' "high incidence of repair" and the "high number of complaints." Since the court has already determined that these allegations are insufficient to plead a claim for fraud, plaintiffs lack a basis on which to found their claim that Sears unjustly enriched itself.[13]

### III. Plaintiffs Lack Standing To Seek A Declaratory Judgment

Plaintiffs ask the court to enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. That statute requires an "actual controversy" before the court may make a declaration of the parties' rights. "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Alcan Aluminum Ltd.* v. *Dep't of Revenue of Oregon*, 724 F.2d 1294, 1298 (7th Cir. 1984) (quoting *Maryland Cas. Co.* v. *Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)). "Injury is an indispensable element of a case or controversy." *Illinois* v. *City of Chicago*, 137 F.3d 474, 477 (7th Cir. 1998).

Plaintiffs allege that there is an actual controversy between Sears and the class members concerning the legality of Sears's marketing of the HE washers as innovative, cost effective and

---

[13] In light of this ruling, the court need not address Sears's other contention that plaintiffs cannot assert a claim for unjust enrichment because the parties' have an express contract that governs their relationship.

defendable when it knew or should have known them to be defective and unreliable. As discussed above, plaintiffs, however, fail to allege that they were ever exposed to Sears's alleged marketing. As a consequence, plaintiffs cannot be said to have been injured by Sears's alleged marketing of the HE washers. Accordingly, there is no controversy between the parties requiring a declaration of their rights.[14]

## CONCLUSION

For the reasons stated above, Sears's motion to dismiss [#30] is granted in part and denied in part. Counts I-VII, IX, and X of the Seratt Complaint are dismissed. Counts I-V, VII, and VIII (mislabeled as XIII) of the Munch Complaint are dismissed. Plaintiffs have until September 24, 2007 to file an amended complaint. Sears's motion to strike class allegations [#33] is denied with leave to refile if plaintiffs amend their complaint.


Dated: August 27, 2007                    ENTER:_____
                                              JOAN HUMPHREY LEFKOW
                                              United States District Judge

---

[14]In their response to Sears's motion, plaintiffs attempt to ground their declaratory action on other alleged controversies. None of those alleged controversies, however, are alleged in plaintiffs' complaint, and plaintiffs' cannot amend their complaint merely by recasting their claims in their response to Sears's motion to dismiss.

14