## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN MUNCH, LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES, and VICTOR MATOS, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 06-cv-7023 |
| v. | ) ) | Judge Joan H. Lefkow |
| SEARS, ROEBUCK AND CO., | ) ) ) | |
| Defendant. | ) ) | |
| BRYAN SERATT, ALAN JARASHOW, DR. STEPHEN PAPALEO, LAUREN CRANE, and LAWRENCE L'HOMMEDIEU, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07C 0412 |
| v. | ) ) | Judge Joan H. Lefkow |
| SEARS, ROEBUCK AND CO., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS COUNTS I–X, XII, AND XIII OF PLAINTIFFS'
## CONSOLIDATED FIRST AMENDED CLASS ACTION COMPLAINT

<div align="center">Table of Contents</div>

| | | | Page |
|---|---|---|---|

Table of Authorities ................................................................................ iii

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS ......................................................................... 3

    A.    Procedural History of This Litigation ........................................ 3

    B.    Plaintiffs' Allegations in the Amended Complaint .................... 6

ARGUMENT .............................................................................................. 11

I.    PLAINTIFFS FAIL TO PLEAD COGNIZABLE CLAIMS UNDER ANY OF THE APPLICABLE CONSUMER PROTECTION STATUTES ...................... 11

    A.    Plaintiffs Fail to State a Claim Under the Illinois Fraud Act ................... 12

        1.    The nine non-resident Plaintiffs do not have standing under the Illinois Fraud Act ......................................................... 12

        2.    Plaintiffs fail to allege statutory fraud with the requisite particularity because they do not identify <u>any</u> statement by Sears that allegedly was misleading due to the omission of a material fact ................................................................. 13

            a.    Plaintiffs' allegation that Sears did not disclose the "substantial risk of mechanical failure" is not sufficient to plead an omission of a material fact ............................. 14

            b.    Plaintiffs' allegation that Sears did not disclose the risk of "moldy smells" is insufficient to plead an actionable omission ......................................................... 16

            c.    The other two "facts" Sears allegedly failed to disclose are neither material nor deceptive .................................... 17

        3.    Plaintiffs fail to allege that Sears intended to induce Plaintiffs' reliance, as required under the Illinois Fraud Act ........................ 19

    B.    Plaintiff Papaleo Fails to State a Claim Under California's Unfair Competition Law ................................................................... 19

        1.    Plaintiff Papaleo fails to allege facts showing that Sears engaged in an "unlawful" practice ................................................. 20

        2.    Plaintiff Papaleo does not allege facts showing that Sears engaged in an "unfair" practice ................................................. 21
</div>

<div align="center">i</div>

|  |  | a. | Sears' alleged conduct is not "unfair" under *Smith* | 22 |
|  |  | b. | Sears' alleged conduct is not "unfair" under *Scripps* | 23 |
|  |  | 3. | Plaintiffs fail to allege that Sears engaged in a "fraudulent" practice | 23 |
|  | C. | | Plaintiffs Have Failed to Cure Their Defective Claim for Non-Disclosure Under the Indiana Fraud Act | 24 |
|  | D. | | Plaintiffs Fail to State a Claim Under the Kentucky Fraud Act | 24 |
|  | E. | | Plaintiff Seratt Fails to State a Claim Under the Michigan Fraud Act | 25 |
|  | F. | | Plaintiff Leonard Fails to State a Claim Under the Minnesota Fraud Act | 26 |
|  | G. | | Plaintiff Jarashow Fails to State a Claim Under the New Jersey Fraud Act | 27 |
|  | H. | | Plaintiff Crane Fails to State a Claim Under the New York Fraud Act | 27 |
|  | I. | | Plaintiff L'Hommedieu Fails to State a Claim Under the Washington Fraud Act | 28 |
| II. | | | PLAINTIFFS FAIL TO STATE A CLAIM FOR COMMON-LAW FRAUD | 29 |
|  | A. | | Plaintiffs' Common-Law Fraud Claim Fails for Many of the Same Reasons as Their Defective Statutory Fraud Claims | 29 |
|  | B. | | Plaintiffs' Fraudulent Omission Claim Fails Because Sears Did Not Owe Plaintiffs a Duty to Disclose Additional Facts | 30 |
| III. | | | PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT | 32 |
| IV. | | | PLAINTIFFS LACK STANDING TO SEEK A DECLARATORY JUDGMENT | 34 |
| CONCLUSION | | | | 36 |

Table of Authorities

<u>Cases</u>                                                                                                      <u>Page</u>

*Alcan Aluminum Ltd. v. Dep't of Revenue of Oregon,*
724 F.2d 1294, 1298 (7th Cir. 1984)................................................................   34

*Allensworth v. Ben Franklin Sav. & Loan,*
389 N.E.2d 684, 71 Ill. App. 3d 1041 (Ill. App. Ct., 2d Dist., 1979) ...........   30n, 31n

*Alliance Acceptance Co. v. Yale Ins. Agency, Inc.,*
648 N.E.2d 971, 271 Ill. App. 3d 483 (Ill. App. Ct., 1st Dist., 1995).............   33

*Allis-Chalmers Corp. Prod. Liab. Trust v. Liberty Mut. Ins. Co.,*
702 A.2d 1336 (N.J. Super. Ct. App. Div. 1997)..........................................   30n

*Allstate Ins. Co. v. Menards, Inc.,*
285 F.3d 630 (7th Cir. 2002) .....................................................................   22n

*Anunziato v. eMachines, Inc.,*
402 F. Supp. 2d 1133 (C.D. Cal. 2005)......................................................   20-21

*Avery v. State Farm Mut. Auto. Ins. Co.,*
835 N.E.2d 801, 216 Ill. 2d 100 (Ill. 2005) ................................................   12, 13

*Bailie Commc'ns, Ltd v. Trend Bus. Sys., Inc.,*
810 P.2d 12 (Wash. Ct. App. 1991) ...........................................................   32n

*Bardin v. DaimlerChrysler Corp.,*
39 Cal. Rptr. 3d 634 (Cal. Ct. App. 2006).................................................   20,21,22, 23,24

*Bayh v. Sonnenburg,*
573 N.E.2d 398 (Ind. 1991).......................................................................   33n

*Benge v. Miller,*
855 N.E.2d 716 (Ind. Ct. App. 2006)..........................................................   30n

*Bepko v. St. Paul Fire & Marine Ins. Co.,*
No. 3:04 CV 01996 PCD, 2005 WL 3619253 (D. Conn. 2005)....................   25n

*Berghausen v. Microsoft Corp.,*
765 N.E.2d 592 (Ind. Ct. App. 2002)..........................................................   24

*Bison Media, Inc. v. KTSL, Inc.,*
115 Wash. App. 1045, 2003 WL 361222 (Wash. Ct. App. Feb. 20, 2003).....   29, 30n

*Capitol Cadillac Olds, Inc. v. Roberts*,
813 S.W.2d 287 (Ky. 1991) ............................................................................ 25

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
83 Cal. Rptr. 2d 548 (Cal. 1999) .................................................................. 22n

*Clifford R. Gray, Inc. v. LeChase Constr. Serv., LLC*,
819 N.Y.S.2d 182 (N.Y. App. Div. 2006) ...................................................... 32n

*Codell Constr. Co. v. Kentucky*,
566 S.W.2d 161 (Ky. Ct. App. 1977) ............................................................. 33n

*Commonwealth Ins. Co. v. Stone Container Corp.*,
323 F.3d 507 (7th Cir. 2003) ........................................................................ 22n

*Consumer Advocates v. Echostar Satellite Corp.*,
8 Cal. Rptr. 3d 22 (Cal. Ct. App. 2003) ......................................................... 23

*Cooper v. Durham Sch. Servs.*,
No. 03 C 2431, 2003 WL 22232833 (N.D. Ill. Sept. 22, 2003) ...................... 33

*Craig & Bishop, Inc. v. Piles*,
No. 2004-CA-001883-MR, 2005 WL 3078860 (Ky. Ct. App. Nov. 18, 2005) .............. 25

*Crisman v. Crisman*,
931 P.2d 163 (Wash. Ct. App. 1997) ............................................................ 30n

*Demelash v. Ross Stores*,
20 P.3d 447 (Wash. Ct. App. 2001) .............................................................. 29

*EBC I, Inc. v. Goldman Sachs & Co.*,
832 N.E.2d 26 (N.Y. 2005) ........................................................................... 33n

*Farmer City State Bank v. Guinrich*,
487 N.E.2d 758, 139 Ill. App. 3d 416 (Ill. Ct. App., 4th Dist., 1985) ............ 31

*Fodale v. Waste Mgmt. of Mich., Inc.*,
718 N.W.2d 827 (Mich. Ct. App. 2006) ................................................. 32n, 33n

*Griffith v. Centex Real Estate Corp.*,
969 P.2d 486 (Wash. Ct. App. 1998) ............................................................ 29

*Guar. Elec. Co. v. Big Rivers Elec. Co.*,
669 F. Supp. 1371 (W.D. Ky. 1987) ............................................................. 32n

*Hatch v. Fleet Mortgage Corp.*,
158 F. Supp. 2d 962 (D. Minn. 2001) ........................................................... 27

*Hinc v. Lime-O-Sol Co.*,
382 F.3d 716 (7th Cir. 2004) ....................................................................   22n

*Hoggett v. Brown*,
971 S.W.2d 472 (Tex. App. 1997) .............................................................   30n

*Holiday Resort Cmty. Ass'n v. Echo Lake Assocs.*,
135 P.3d 499 (Wash. Ct. App. 2006) .........................................................   28, 29

*HPI Health Care Serv., Inc. v. Mt. Vernon Hosp. Inc.*,
545 N.E.2d 672, 131 Ill. 2d 145 (Ill. 1989) ...............................................   32

*Illinois v. City of Chi.*,
137 F.3d 474 (7th Cir. 1998) ....................................................................   34

*In re Estate of Wallace*,
No. 04-05-00567-CV, 2006 WL 3611277 (Tex. App. Dec. 13, 2006)...........   32n

*In re Sallee*,
286 F.3d 878 (6th Cir. 2002) ....................................................................   30n

*In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
No. MDL-1703, 05 C 4742, 05 C 2623, 2005 WL 3077606 (N.D. Ill. Nov. 14, 2005) ...   13

*Ins. Co. of N. Am. v. Morris*,
981 S.W.2d 667 (Tex. 1998)......................................................................   30n

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
451 F. Supp. 2d 982 (N.D. Ill. 2006) .......................................................   31

*Jana L. v. West 129th St. Realty Corp.*,
802 N.Y.S.2d 132 (N.Y. App. Div. 2005) .................................................   30n

*Jepson, Inc. v. Makita Corp.*,
34 F.3d 1321 (9th Cir. 1994) ....................................................................   2n

*Klein v. First Edina Nat'l Bank*,
186 N.W.2d 619 (Minn. 1972).................................................................   30n

*L&H Airco, Inc. v. Rapistan Corp.*,
446 N.W.2d 372 (Minn. 1989)..................................................................   30n

*La Throp v. Bell Fed. Sav. & Loan Ass'n*,
370 N.E.2d 188, 68 Ill. 2d 375 (Ill. 1977) ...............................................   33

*Lebowich v. O'Connor*,
309 F.2d 111 (2d Cir. 1962) ....................................................................   34-35

*Lovejoy v. AT&T Corp.*,
111 Cal. Rptr. 2d 711 (Cal. Ct. App. 2001)...................................................... 30n

*Mable Cleary Trust v. Edward-Marlah Muzyl Trust*,
686 N.W.2d 770 (Mich. Ct. App. 2004) ............................................................. 30n

*MacDonald v. Hayner*,
715 P.2d 519 (Wash. Ct. App. 1986) ................................................................. 34n

*Mackinac v. Arcadia Nat'l Life Ins. Co.*,
648 N.E.2d 237, 271 Ill. App. 3d 138 (Ill. Ct. App., 1st Dist., 1995)............... 19, 31n

*Magna Bank of Madison County v. Jameson*,
604 N.E.2d 541, 237 Ill. App. 3d 614 (Ill. App. Ct., 5th Dist., 1992) ............... 30n

*Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*,
No. 04 C 6631, 2005 WL 2284305 (N.D. Ill. Sept. 15, 2005) ......................... 2n

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270 (1941) ............................................................................................ 34

*McBride v. Boughton*,
20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004)......................................................... 32n

*Michels v. Monaco Coach Corp.*,
298 F. Supp. 2d 642 (E.D. Mich. 2003) .............................................................. 25, 26

*Mitschele v. Schultz*,
826 N.Y.S.2d 14 (N.Y. App. Div. 2006)............................................................. 30n

*N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*,
725 A.2d 1133 (N.J. Super. Ct. App. Div. 1998)................................................ 30n

*O'Briant v. Rollins, Inc.*,
No. 217035, 2001 WL 684568 (Mich. Ct. App. June 15, 2001) ....................... 26

*Oliveira v. Amoco Oil Co.*,
726 N.E.2d 151, 201 Ill. 2d 134 (Ill. 2002) ...................................................... 12

*Olson v. Jenkens & Gilchrist*,
No. Civ. A. 05-C-4216, 2006 WL 3354132 (N.D. Ill. Nov. 17, 2006)............. 31

*Osborne v. Subaru of Am., Inc.*,
243 Cal. Rptr. 815 (Cal. Ct. App. 1988)............................................................ 20n

*People ex. rel. Dep't of Motor Vehicles v. Cars 4 Causes*,
43 Cal. Rptr. 3d 513 (Cal. Ct. App. 2006)......................................................... 20

*People ex rel. Hartigan v. E&E Hauling, Inc.*,
607 N.E.2d 165, 153 Ill. 2d 473 (Ill. 1992) ................................................................ 33

*Pitts v. Monaco Coach Corp.*,
330 F. Supp. 2d 918 (W.D. Mich. 2004) .................................................................... 26

*Potter v. Wilbur-Ellis Co.*,
814 P.2d 670 (Wash. 1991) ........................................................................................ 28

*R. Conrad Moore & Assocs. v. Lerma*,
946 S.W.2d 90 (Tex. App. 1997) ............................................................................... 34n

*Red Bird Motors, Inc. v. Endsley*,
657 S.W.2d 954 (Ky. Ct. App. 1983) ........................................................................ 25

*Richards v. Delta Air Lines, Inc.*,
453 F.3d 525 (D.C. Cir. 2006) ................................................................................... 35

*Robinson v. Toyota Motor Credit Corp.*,
775 N.E.2d 951, 201 Ill. 2d 403 (Ill. 2002) ......................................................... 12, 16, 18

*Rockford Mem'l Hosp. v. Havrilesko*,
858 N.E.2d 56, 368 Ill. App. 3d 115 (Ill. Ct. App., 2d Dist., 2006) .............................. 14, 17-18, 19

*Savoree v. Indus. Contracting & Erecting, Inc.*,
789 N.E.2d 1013 (Ind. Ct. App. 2003) ...................................................................... 32n

*Scripps Clinic v. Super. Ct.*,
134 Cal. Rptr. 2d 101 (Cal. Ct. App. 2003) ......................................................... 22, 23

*Seely v. White Motor Co.*,
45 Cal. Rptr. 17 (Cal. 1965) ...................................................................................... 23

*ServiceMaster of St. Cloud v. GAB Bus. Serv., Inc.*,
544 N.W.2d 302 (Minn. 1996) .................................................................................. 32n

*Shalita v. Township of Wash.*,
636 A.2d 568 (N.J. Super. Ct. App. Div. 1994) ........................................................ 33n

*Smith v. State Farm Mut. Auto. Ins. Co.*,
113 Cal. Rptr. 2d 399 (Cal. Ct. App. 2001) .......................................................... 21-22

*Solomon v. Bell Atl. Corp.*,
777 N.Y.S.2d 50 (N.Y. App. Div. 2004) .................................................................. 28

*Stutman v. Chem. Bank*,
731 N.E.2d 608 (N.Y. 2000) ..................................................................................... 28

*Taylor Inv. Corp. v. Weil*,
169 F. Supp. 2d 1046 (D. Minn. 2001) ........................................................ 27

*Thompson v. Am. Tobacco Co.*,
189 F.R.D. 544 (D. Minn. 1999) ................................................................. 35

*Tuttle v. Lorillard Tobacco Co.*,
118 F. Supp. 2d 954 (D. Minn. 2000) .......................................................... 27

*Uni\*Quality, Inc. v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir. 1992) ................................................................. 9n, 13

*U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*,
307 N.W.2d 490 (Minn. 1981) ................................................................... 33n

*Varacallo v. Mass. Mut. Life Ins. Co.*,
752 A.2d 807 (N.J. Super. Ct. App. Div. 2000) ............................................ 27

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429, 431 (7th Cir. 1993) ................................................................ 7n

*VRG Corp. v. GKN Realty Corp.*,
641 A.2d 519 (N.J. 1994) ........................................................................... 32n

*Warner Const. Corp. v. City of L.A.*,
466 P.2d 996 (Cal. 1970) ....................................................................... 21, 30

*Warth v. Seldin*,
420 U.S. 490 (1975) ................................................................................... 15n

*Westfield Ins. Co. v. Yaste, Zent & Rye Agency*,
806 N.E.2d 25 (Ind. Ct. App. 2004) ............................................................ 30n

*Willits v. Peabody Coal Co.*,
188 F.3d 510 (Table), 1999 WL 701916 (6th Cir. Sept. 1, 1999) ................... 30n

*Wheeler v. Sunbelt Tool Co.*,
537 N.E.2d 1332, 181 Ill. App. 3d 1088 (Ill. App. Ct., 4th Dist., 1989) ......... 33

*White v. DaimlerChrysler Corp.*,
856 N.E.2d 542, 368 Ill. App. 3d 278 (Ill. Ct. App., 1st Dist., 2006) ....... 14, 16, 19

*Yassin v. Capitol Indem. Corp.*,
No. 94 C 50156, 1995 WL 30610 (N.D. Ill. Jan. 24, 1995) ............................ 34

*Zine v. Chrysler Corp.*,
600 N.W.2d 384 (Mich. Ct. App. 1999) ....................................................... 25

Statutes and Regulations

28 U.S.C. § 2201 ................................................................................................ 6, 34

815 Ill. Comp. Stat. § 505/2 .............................................................................. 12, 14

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ......................................................... 19-20

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ......................................................... 20

Cal. Civ. Code §§ 1750 *et seq.* ........................................................................ 20

Cal. Civ. Code § 1770 ......................................................................................... 21

Ind. Code §§ 24-5-0.5 *et seq.* .......................................................................... 24

Ind. Code § 24-5-0.5-3 ....................................................................................... 5

Ky. Rev. Stat. §§ 367.120 *et seq.* .................................................................... 24

Ky. Rev. Stat. § 367.170 ..................................................................................... 24

Mich. Comp. Laws Ann. § 445.903 .................................................................... 25, 26

Minn. Stat. Ann. § 325F.69 ................................................................................ 26-27

N.J. Stat. Ann. § 56:8-1 ...................................................................................... 27

N.Y. Gen. Bus. Code § 349 *et seq.* .................................................................. 27

Wash. Rev. Code § 19.86 .................................................................................... 28

Fed. R. Civ. P. 8 .................................................................................................. 25n

Fed. R. Civ. P. 9 .................................................................................................. *passim*

Fed. R. Civ. P. 11 ................................................................................................ 17n

Fed. R. Civ. P. 12 ................................................................................................ 2, 3

Fed. R. Civ. P. 23 ................................................................................................ 6n

## INTRODUCTION

Plaintiffs Susan Munch, Larry Butler, Joseph Leonard, Kevin Barnes, Victor Matos, Bryan Seratt, Alan Jarashow, Dr. Stephen Papaleo, Lauren Crane, and Lawrence L'Hommedieu ("Plaintiffs") have filed their Consolidated First Amended Class Action Complaint ("Amended Complaint") against Defendant Sears, Roebuck and Co. ("Sears") asserting that all Kenmore Elite®-brand HE3, HE3t, and HE4t front-loading washing machines (the "HE washers" or "HE washing machines")[1] sold by Sears contain a design defect that causes the machines to "suffer from electronic control board failure" and "water drainage failure" and that these alleged problems occur in "excess of industry standards."  (Am. Compl. ¶¶ 1, 20, 31.)  Plaintiffs allege that the "Central Control Units or CCU's" or the CCU's "relays" are defective (*id.* ¶ 21) and that the defect "manifests itself in a variety of ways, including, but not limited to, premature and repeated mechanical failure; stopping or not starting; the door remaining locked; and displaying a variety of error codes such as F11 and FdL" (*id.* ¶ 20).  Further, Plaintiffs assert that the water drainage failure "manifests itself in a variety of ways including, but not limited to, clothes not being cleaned properly (including clothes being stained); foul odors; and mold and mildew growing in the machines."  (*Id.*)  Plaintiffs' theories of liability are based on their contention that Sears had a duty to disclose to consumers that all HE washers experience control board failures and water drainage failures in "excess of industry standards" and that Sears failed to disclose these "facts."  (*Id.* ¶¶ 20, 31; *cf. id.* ¶ 229 ("There is an actual controversy between Defendant and all class members concerning the legality of Defendant's marketing of Kenmore HE Series Washing Machines as innovative, cost effective and dependable when it knew or should have known them to be defective and unreliable.").)  Based on these alleged non-disclosures, Plaintiffs plead claims for violations of their home states' consumer protection statutes, common-law fraud, breach of implied warranty of merchantability, unjust enrichment, and declaratory relief.

Even though the Amended Complaint is Plaintiffs' second attempt to plead viable claims, and even though Sears already has produced to Plaintiffs copies of Sears' relevant customer and

---

[1] Kenmore® and Kenmore Elite® are Sears' proprietary brand names.

service databases for HE washer owners and other discovery,[2] the Amended Complaint recites no facts that, if true, would support Plaintiffs' purported claims for consumer fraud, common-law fraud by omission, unjust enrichment, and declaratory relief.  As shown below, Plaintiffs have simply added <u>more</u> conclusional and unsupported allegations to their pleading in a superficial attempt to satisfy the concerns expressed by this Court in its August 27, 2007, Memorandum Opinion and Order (the "Order"), rather than adding any well-pled facts that would satisfy Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Thus, pursuant to Rules 9(b) and 12(b)(6), Counts I-X, XII, and XIII of the Amended Complaint should be dismissed <u>with prejudice</u>.

Plaintiffs' statutory fraud claims should be dismissed for, among other things, failure to plead with the particularity required by Rule 9(b).  Plaintiffs' Amended Complaint illustrates the need to impose heightened pleading standards in a consumer fraud case such as this one.  That is because <u>every</u> line of mass-produced product of any complexity will have some percentage of units that require maintenance or repair during the life of the product.  Absent a requirement that Plaintiffs plead <u>facts</u> with particularity showing that their HE washers' failures and repairs were caused by Sears' having knowingly sold a defective product <u>and</u> that the HE washers' repair rates exceed the "normal" or expected range of repair rates for other residential front-loading clothes washers manufactured at and during a reasonable period preceding the proposed class period (*i.e.*, August 2001 to the present), virtually every product launch could be followed by baseless, expensive, and extortionate class litigation.[3]

Instead of pleading the specific and particularized facts contemplated by the Court's August 27 Order, Plaintiffs simply amended their allegations, without pleading any supporting facts, to include the conclusional allegations that HE washers' failure rates are "in excess of industry standards" and, as such, the failure rates are material facts that should have been disclosed to consumers.  (Am. Compl. ¶¶ 31-32.)  Plaintiffs do not identify what, if any,

---

[2] *See* Def.'s Mem. in Supp. of Second Mot. to Strike Pls.' Class Allegations at 9-12.

[3] *See, e.g., Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (9th Cir. 1994) (observing that one of the purposes of Rule 9(b)'s heightened pleading requirement is to "minimize 'strike suits' and 'fishing expeditions'"); *Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*, No. 04 C 6631, 2005 WL 2284305, at *2 (N.D. Ill. Sept. 15, 2005) ("The purpose of Rule 9(b) in regards to fraud claims, 'is to minimize the extortionate impact that a baseless claim of fraud can have . . . .'" (citations omitted)).

"electronic industry standards" apply to the home appliance industry generally or to residential washing machines specifically, nor do they plead any facts showing that HE washers have experienced "relay" failures in excess of that standard.[4]  Moreover, they baldly contend that "industrial and commercial front loading washing machines operate relatively free of front load door seal drainage issues" (*id.* ¶ 30), which does not inform the Court of any <u>facts</u> regarding the rates of mold, mildew, or odor problems in commercial front-loading washers, let alone any facts regarding the rates of mold, mildew, or odor problems in <u>residential</u> clothes washers manufactured during, and a reasonable period preceding, the putative class period.

Plaintiffs' remaining claims also fail.  Plaintiffs' fraud-by-omission claims are deficient because Plaintiffs do not adequately allege facts that, if true, would show that Sears was under a duty to disclose any additional facts, nor do Plaintiffs plead facts identifying the statements that Sears made to each of them that were misleading due to omissions, the Sears representative who made such statements, or the time and manner in which each Plaintiff received, read, or heard the alleged statements.  Plaintiffs' unjust enrichment claims fail because they have not alleged that Sears' conduct was wrongful in any way.  Finally, Plaintiffs' request for a declaratory judgment should be denied because no actual controversy exists between Plaintiffs and Sears.

Alternatively, the Court should dismiss the Amended Complaint without prejudice pursuant to Rules 9(b) and 12(e), and require Plaintiffs to provide a more definite statement of their claims so that Sears can adequately defend itself.

<div align="center"><u>**STATEMENT OF FACTS**</u></div>

### A.    Procedural History of This Litigation

The *Munch* plaintiffs filed their original complaint (the "*Munch* Complaint") on December 19, 2006, and the *Seratt* plaintiffs filed their original complaint (the "*Seratt* Complaint") on January 22, 2007.  Thereafter, Sears filed motions to dismiss both original complaints ("First Motion to Dismiss") and motions to strike Plaintiffs' class allegations ("First Motion to Strike").  The Court subsequently consolidated the *Munch* and *Seratt* cases for pretrial proceedings.  On

---

[4] If Plaintiffs have <u>any</u> facts to support their allegation regarding voluntary or mandatory reliability standards that apply to relays or electronics in residential washing machines, they could have and should have pled those facts.  Their failure to do so <u>confirms</u> that Plaintiffs have no good-faith basis for their allegations that all, most, or even a percentage approaching majority of HE washers are defective.

August 27, 2007, the Court granted in part and denied in part Sears' First Motion to Dismiss, dismissing without prejudice Plaintiffs' consumer protection, common-law fraud, unjust enrichment, and declaratory relief claims.  (*See* Mem. Op. & Order at 14, Aug. 27, 2007.) Accordingly, the Court denied as moot Sears' First Motion to Strike, without reaching the merits, and granted Sears leave to file a new motion to strike if Plaintiffs amended their complaints.  (*Id.*)

As to Plaintiffs' claim for violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Fraud Act"), the Court found that Plaintiffs had failed to allege sufficient facts to make out a claim for either affirmative misrepresentations or fraudulent omissions.  (*Id.* at 4-6.)  To the extent Plaintiffs based their claim on affirmative misrepresentations, Plaintiffs' "generalized references to alleged representations by Sears" were "insufficient to state a claim for fraudulent misrepresentation" because Plaintiffs had failed to allege "the who, what, when, where and how of any representations made by Sears."  (Mem. Op. & Order at 4 n.2.)  Consequently, "all such allegations are properly disregarded."  (*Id.*)

Further, as to Plaintiffs' allegations that Sears had failed to disclose that the HE washers suffered from two defects—electronic control panel failures and water drainage failures—the Court found that Plaintiffs had "failed to plead them with sufficient particularity" because Plaintiffs had failed "to give a technical description of the problems or to quantify the number of other HE washers that have experienced them."  (*Id.* at 5.)  If Plaintiffs were to amend their pleading to cure these deficiencies, the Court advised as follows:

> [P]laintiffs assert that "at least 22,987 HE Series owners have had electronic control board repairs, and 15,538 have had mold issues."  While plaintiffs contend that these figures mean that there was a greater than 1 in 50 chance that a HE washer will cease operation or start exhibiting a moldy or mildewy odor, plaintiffs fail to explain how that figure is material.  <u>Again, unless that failure rate exceeds in a meaningful way the failure rate of comparable machines, there is no reason to believe that it would be material to a potential purchaser's decision since it is an accepted fact that some percentage of all machines will fail</u>.

(*Id.* at 5 n.3 (emphasis added).)  Because Plaintiffs' original complaints alleged that the HE washers had a "high incidence of repair" and that Sears received "a high number of complaints about the washers, but they had failed to allege facts that "give meaning to the term 'high'" (*id.* at 6), the Court ruled that Plaintiffs had not stated a claim for fraudulent omissions under the Illinois

Fraud Act.  Again, the Court provided Plaintiffs with specific guidance as to the standard

Plaintiffs' amended pleading would have to meet in order to state an actionable claim:

> A product's rate of failure would be material to a reasonable person only if
> exceeded a standard rate of failure in the industry for comparable machines
> produced by comparable manufacturers.  Even then, the materiality of the rate of
> failure would turn on such considerations as (1) whether the machine typically fails
> during the warranty period or after its expiration; (2) what it costs on average to
> repair the machine; (3) whether the machine can be repaired once it fails; (4)
> whether machine suffers from repeat failures; and (5) what component of the
> machine most commonly fails.  <u>Absent allegations concerning some or all of these
> and perhaps similar facts, plaintiffs' complaint lacks plausible grounds to infer that
> Sears committed fraud by concealing that some percentage of HE washers
> required repair</u>.

(*Id.* at 6-7.)  Because the Court found that Plaintiffs had failed to plead with sufficient

particularity that Sears concealed a material fact, the Court did not reach the questions of whether

"the non-Illinois resident plaintiffs have standing to pursue a claim under that statute and whether

plaintiffs plead with sufficient particularity that Sears intended to induce plaintiffs' reliance."  (*Id.*

at 7 n.5.)

        For the above reasons, the Court also dismissed Plaintiffs' claims for common-law fraud

based on Sears' alleged non-disclosures and for violations of the California Unfair Competition

Law ("UCL"), the Kentucky Consumer Fraud and Deceptive Business Practices Act ("Kentucky

Fraud Act"),the Michigan Consumer Protection Act ("Michigan Fraud Act"), the Minnesota

Prevention of Consumer Fraud Act ("Minnesota Fraud Act"), the New Jersey Consumer Fraud

Act ("New Jersey Fraud Act"), the New York Consumer Protection Law ("New York Fraud

Act"), and the Washington Consumer Protection Act ("Washington Fraud Act").  (Mem. Op. &

Order at 7 n.4.)  Further, the Court ruled that Plaintiffs "cannot maintain an action under the

Indiana Consumer Fraud Act based on Sears's alleged non-disclosure of the HE washers failure

rate" because Indiana Code section 24-5-0.5-3 requires Plaintiffs to allege "a representation made

either orally or in writing," which they had failed to do.  (Mem. Op & Order at 8.)

        Next, the Court found that Plaintiffs' unjust enrichment claim was based on their

allegations that Sears had committed statutory and common-law fraud by concealing the HE

washers' defects, "high incidence of repair," and "high number of complaints."  (*Id.* at 13.)

Because Plaintiffs' allegations were "insufficient to plead a claim for fraud, plaintiffs lack a basis

on which to found their claim that Sears unjustly enriched itself." (*Id.*) Thus, the Court dismissed the unjust enrichment claim without reaching Sears' other contentions, including Sears' argument that an express contract governs the relationship of the parties such that Plaintiffs cannot maintain their equitable or quasi-contract claim for unjust enrichment. (*Id.* at 13 n.13.)

Finally, the Court dismissed Plaintiffs' claim for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because Plaintiffs had not alleged facts showing that there was an "actual controversy" between Plaintiffs and Sears regarding "the legality of Sears's marketing of the HE washers as innovative, cost effective and de[p]endable." (Mem. Op & Order at 13-14.) Specifically, Plaintiffs had failed to allege that they "were ever exposed to Sears's alleged marketing" statements, so Plaintiffs could not be said to have been injured by Sears' alleged marketing of the HE washers. (*Id.* at 14.)

### B.    Plaintiffs' Allegations in the Amended Complaint

Plaintiffs, ten owners of Kenmore Elite®-brand HE3t and HE4t model washing machines, now have filed their Amended Complaint against Sears, purportedly on behalf of all owners of all models of HE washers throughout the nation.[5] (Am. Compl. ¶ 1.) In the Amended Complaint, Plaintiffs have revised their class allegations to include a small degree of specificity to their original vague allegations that the HE washers were subject to "mechanical failure." (*Compare, e.g.*, *Munch* Compl. ¶ 64 *with* Am. Compl. ¶¶ 20, 27-32.) According to Plaintiffs, either the "Central Control Units or CCU's," or the "relays" in the Central Control Units, in all HE washers sold since 2001 are defective (*id.* ¶ 21), and the defect "manifests itself in a variety of ways, including, but not limited to, premature and repeated mechanical failure; stopping or not starting; the door remaining locked; and displaying a variety of error codes such as F11 and FdL" (*id.* ¶ 20). Further, Plaintiffs assert that the water drainage failure "manifests itself in a variety of ways including, but not limited to, clothes not being cleaned properly (including clothes being stained); foul odors; and mold and mildew growing in the machines" (*id.*), but otherwise Plaintiffs' allegations about the purported defect that results in mold, mildew, and odors in HE washers are

---

[5] Plaintiffs filed their Amended Complaint on behalf of two types of putative classes: (i) A nationwide "injunctive relief" class pursuant to Rule 23(b)(2), consisting of all owners of HE washers throughout the United States (Am. Compl. ¶ 74); and (ii) ten statewide "Sub-Classes" pursuant to Rule 23(b)(3), consisting of all owners of HE washers who reside in Plaintiffs' home states (*id.* ¶ 75).

identical in all material respects to their original allegations.  (*Compare, e.g.*, *Munch* Compl. ¶¶ 2, 15 *with* Am. Compl. ¶¶ 2, 20.)  Still further, Plaintiffs speculate that "the defects described herein tend to manifest themselves after" the expiration of Sears' initial one-year written warranty.[6] (Am. Compl. ¶ 24.)

Plaintiffs have attempted to augment their allegation that the risk of "mechanical failure and/or moldy smells" was "substantial."  (*Munch* Compl. ¶ 64.)  Plaintiffs now state that "at least 22,987 HE Series owners" among the more than "1.5 million" HE washer owners "have had electronic control board repairs (1.5%)" (Am. Compl. ¶¶ 27-28), and that "at least 15,538 have had mold issues (1.0%)" (*id.* ¶ 28).  Plaintiffs also assert that the "electronic[s] industry" has voluntarily adopted a standard for "relay failure rates" and that the "United States government" has "established" this same standard, presumably as a mandatory requirement for relays used in certain electronic applications.  (Am. Compl. ¶ 29.)  Plaintiffs do not allege that the home appliance industry has voluntarily adopted any such standard, nor do they claim that the federal government has established a mandatory standard that home appliance manufacturers must meet.  In fact, the Amended Complaint contains no <u>facts</u> identifying <u>any</u> particular standard or regulation that allegedly applies to the home appliance industry, because there is none that remotely resembles Plaintiffs' bald allegation that relays should not experience more than "1 failure in a million operations (0.0001%)."  (*See id.* ¶¶ 27-32.)  Even if there were such a standard that applied to the HE washers' electronic control boards or relay components, only one named plaintiff (Larry Butler) alleges that he actually experienced a relay failure.  (*Id.* ¶ 44.)  Furthermore, Plaintiffs do not plead facts showing that the more than 1,500,000 HE washers sold

---

[6] The written Kenmore Elite® Washer Warranty that accompanied each new HE washer sold by Sears during the period December 2004 through May 2005 (the "Warranty") provides in pertinent part:

> For one year from the date of purchase, when this washing machine is installed and operated according to the instructions that come with it, Sears will repair or replace any of its mechanical or electrical parts if they are defective in material or workmanship.

(Warranty, attached hereto as Exhibit 1.)  The Warranty is properly before the Court because Plaintiffs refer to the Warranty in their pleading (Am. Compl. ¶ 24), and the limited nature of the Warranty is central to Plaintiffs' non-disclosure claims (*id.* ¶¶ 38-72, 97, 110, 128, 139, 152, 164, 178, 190, 202, 212, 222).  *See, e.g.*, *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)

by Sears have experienced widespread or excessive relay failures such that the Court could infer that the machines' "Central Control Units" (machine control boards) or relays do not satisfy any industry or government standard. (*See id.* ¶¶ 27-32, 38-72.) Nonetheless, Plaintiffs make the conclusory allegation that "[e]ach individual failure rate – in excess of the industry norm – would be a material fact to a reasonable consumer purchasing a washing machine." (*Id.* ¶ 32.)

Plaintiffs' theories of liability are based on their allegations that Sears had an obligation, but failed, to disclose to consumers that:

> a) there was a substantial risk of mechanical failure and/or moldy smells that exceeded the risk of such defect normally associated with similar consumer products;
>
> b) that failures might not exhibit themselves until after the warranty has expired; and
>
> c) that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs" outside of the warranty period.

(Am. Compl. ¶¶ 97, 110, 128, 139, 152, 164, 178, 190, 202, 212, 222.) They assert claims for violations of the consumer protection statutes of nine states—California, Illinois, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, and Washington—as well as common-law fraud, breach of implied warranty of merchantability, and unjust enrichment. (*Id.* ¶¶ 90-233.) Plaintiffs allege that they have suffered actual damages "in that their Kenmore HE Series Washing Machines have not operated as represented by Sears," because they paid "too high a purchase price for a washing machine that is defective and not fit for use," and because they have had "to pay for costs associated with service calls, buy replacement parts, and buy extended warranties."[7]

---

("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

[7] Plaintiffs' claims are based on Sears' alleged <u>non-disclosures</u>, and the Complaint does not explicitly refer to any alleged affirmative misrepresentations. (*See* Compl. ¶¶ 64, 75, 87, 110.) The Complaint, however, includes highly generalized references to alleged representations by Sears. (*E.g.*, *id.* ¶ 18 (alleging that Sears "falsely represented that Kenmore HE series Washing Machines provided outstanding performance as home washing machines").) These extraneous allegations should be ignored because Plaintiffs do not rely on any affirmative statement by Sears as a basis for any of their claims for relief. Moreover, Plaintiffs have not alleged what specific representations were made, by whom, when, in what medium, whether Plaintiffs were personally exposed to and relied on such representations, or even whether

(*Id.* ¶ 37.)  Plaintiffs do not allege that they have abandoned their HE washers or that their out-of-warranty repairs, if any, were ineffective.  (*Id.* ¶¶ 38-72.)

Plaintiffs' own individual allegations differ widely as to the particular model and model-year machine they bought; the problems each Plaintiff experienced; the type, number, and cost of service calls, if any, required to correct the problems; and whether the washer was covered by any full warranty, limited warranty, or service contract at the time of service:

- Plaintiff Munch, a resident of Illinois, alleges that she bought an HE3t washer in December 2004 (Am. Compl. ¶ 38), and began to experience problems in June 2006 (*id.* ¶ 39).  She alleges that the estimated cost of the repairs was $655 and that Sears "refused to repair the machine for free since the one year warranty had elapsed."  (*Id.* ¶ 40.)  According to Plaintiff Munch, she "was coerced into buying" a service contract "for approximately $300.00 . . . due to the already evident poor performance of the HE3t washer" and to avoid incurring the estimated repair costs.  (*Id.* ¶ 41.)

- Plaintiff Butler, a resident of Indiana, alleges that he bought an HE3t washer in February 2005 (Am. Compl. ¶ 42) and began to experience problems in November 2006 (*id.* ¶ 43).  He alleges that Sears "refused to repair the machine without a $54 service fee since the one year warranty had elapsed" and that he paid approximately $50 for "replacement relays."  (*Id.* ¶ 44.)  He also alleges that his HE washer "developed a moldy musty smell."  (*Id.* ¶ 43.)

- Plaintiff Leonard, a resident of Minnesota, alleges that he bought an HE3t washer in May 2005 (Am. Compl. ¶ 45) and began to experience problems in October 2006 (*id.* ¶ 46).  He alleges that Sears charged him $55 for a service call to correct his problems, which included "error codes such as F11 and FdL."  (*Id.* ¶ 47.)

- Plaintiff Matos, a resident of Kentucky, alleges that he bought an HE4t washer in January 2005 (Am. Compl. ¶ 51) and began to experience problems in August 2005 (*id.* ¶ 52).[8]

---

such alleged representations were false.  *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (a plaintiff must "plead the who, what, when, where, and how of the alleged fraud").

[8] Although Plaintiff Matos alleges that he began experiencing problems in August <u>2005</u>, he also alleges that his one-year warranty had expired when those problems began.  (Am. Compl. ¶ 53.)  Accordingly,

He alleges that "Sears refused to repair the machine for free since the one year warranty had elapsed" and that he paid approximately $141 for parts to repair the machine.  (*Id.* ¶ 53.)

- Plaintiff Barnes, a resident of Texas, alleges that he bought an HE4t washer in March 2005 (Am. Compl. ¶ 49) and began to experience problems in October 2006, including "error codes such as F11 and FdL" (*id.* ¶ 50).  He alleges that he "paid $100 for parts to repair the machine."  (*Id.*)

- Plaintiff Seratt, a resident of Michigan, alleges that he bought an HE3t model washer in August 2002 (Am. Compl. ¶ 55) and began to experience problems in August 2006 (*id.* ¶ 56).  He alleges that repairs cost him $348.49 and that Sears "refused to repair the machine for free since the one year warranty had elapsed."  (*Id.* ¶ 57.)  He also alleges that his HE washer "developed a moldy musty smell."  (*Id.* ¶ 56.)

- Plaintiff Jarashow, a resident of New Jersey, alleges that he bought an HE4t model washer in November 2004 (Am. Compl. ¶ 59) and began to experience problems in November 2006 (*id.* ¶ 60).  He alleges that he paid $450 to repair the machine and that Sears "refused to repair the machine for free since the one year warranty had elapsed."  (*Id.* ¶ 61.)

- Plaintiff Papaleo, a resident of California, alleges that he "acquired" an HE3t model washer in April 2005, when he bought his home (Am. Compl. ¶ 62), and began to experience problems in April 2006 (*id.* ¶ 63).  He does not state the washer's age or whether the washer was used or new and unused when he acquired it.  (*Id.* ¶¶ 62-64.)  He alleges that he paid $170 for replacement parts and that Sears "refused to repair the machine for free since the one year warranty had elapsed."  (*Id.* ¶ 64.)

- Plaintiff Crane, a resident of New York, alleges that she bought an HE4t model washer in June 2005 (Am. Compl. ¶ 65) and began to experience problems in April 2006 (*id.* ¶ 66).  She alleges that she paid $55 "for a trip charge" and that Sears "refused to repair the

---

Sears assumes that he intended to allege that the problems first manifested in August <u>2006</u> or some later date.

machine for free since the one year warranty had elapsed."[9]  (*Id.* ¶ 67.)  She also alleges

that her HE washer "developed a moldy musty smell."  (*Id.* ¶ 66.)

- Plaintiff L'Hommedieu, a resident of Washington, alleges that he bought an HE3t model

  washer in December 2004 (Am. Compl. ¶ 69) and began to experience problems in

  January 2006 (*id.* ¶ 70).  He alleges that he paid $200.59 "for replacement parts and

  service calls" and that Sears "refused to repair the machine for free since the one year

  warranty had elapsed."  (*Id.* ¶ 71.)  He also alleges that his HE washer "developed a

  moldy musty smell."  (*Id.* ¶ 70.)

None of the named plaintiffs who allegedly paid for a service call claims that the service call failed

to resolve the problem with the machine.  (*See* Am. Compl. ¶¶ 38-72.)

Plaintiffs do not limit their proposed nationwide class and statewide subclasses to specific

washer models, nor do they limit the class definitions to persons who have experienced any

manifest defect.  (Am. Compl. ¶¶ 74-75.)  Plaintiffs seek injunctive and declaratory relief for the

putative nationwide class (*id.* ¶¶ 74, 228-233), and money damages and injunctive relief for the

statewide subclasses (*id.* ¶¶ 75, 101, 121, 132, 143, 156, 168, 182, 194, 206).

In short, despite having the benefit of taking some class discovery since filing their original

complaints, and despite having the benefit of the Court's explicit guidance in the August 27

Order, Plaintiffs still have not cured the fatal deficiencies that plagued their original pleadings.

The fact remains that they assert no facts that, if true, would prove their claims for consumer

fraud, common-law fraud, unjust enrichment, and declaratory relief.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD COGNIZABLE CLAIMS UNDER ANY OF THE APPLICABLE CONSUMER PROTECTION STATUTES

Plaintiffs assert claims under the consumer protection statutes of California, Illinois,

Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, and Washington,[10] alleging that

---

[9] Plaintiff Crane alleges that her HE washer malfunctioned in April 2006, ten months after she alleges she purchased the machine in June 2005.  Thus, despite her allegation to the contrary, the one-year warranty had not elapsed on her machine.

[10] Plaintiff Barnes does not assert a claim for violation of any Texas consumer protection statute.

Sears failed to disclose that (i) that "there was a substantial risk of mechanical failure and/or moldy smells that exceeded the risk of such defect normally associated with similar consumer products" (*e.g.*, Am. Compl. ¶ 97.a), (ii) that such "failures might not exhibit themselves until after the warranty has expired" (*e.g.*, *id.* ¶ 97.b), and (iii) that if one of these problems did manifest after the warranty period had expired, Sears was "not committing to making repairs" (*e.g.*, *id.* ¶ 97.c).  For the reasons set forth below, Plaintiffs' conclusory allegations regarding these alleged non-disclosures do not state a claim under any of the applicable consumer protection statutes.

### A.      Plaintiffs Fail to State a Claim Under the Illinois Fraud Act

Plaintiffs invoke Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/2.  (Am. Compl. ¶ 92.)  Under that section, Plaintiffs must plead, *inter alia*, a deceptive act or practice by the defendant, the defendant's intent that the plaintiff rely on the deception, the deception occurred in the course of conduct involving trade or commerce, and actual damage proximately caused by the deception.  *Oliveira v. Amoco Oil Co.*, 726 N.E.2d 151, 160, 201 Ill. 2d 134, 149 (Ill. 2002); Mem. Op. & Order at 4.  Further, a plaintiff may pursue a claim under the Illinois Fraud Act only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois."  *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54, 216 Ill. 2d 100, 187 (Ill. 2005) (holding that the out-of-state plaintiffs had "no cognizable cause of action under the [Illinois] Consumer Fraud Act").  Still further, the "deceptive act or practice" must be pled with particularity in accordance with Rule 9(b).  *See, e.g.*, Mem. Op. & Order at 4; *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961, 201 Ill. 2d 403, 419 (Ill. 2002) (affirming dismissal of Illinois Fraud Act claim and finding that the "complaint must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint").

### 1.      The nine non-resident Plaintiffs do not have standing under the Illinois Fraud Act

All of the named plaintiffs except Plaintiff Munch reside outside the State of Illinois.  (Am. Compl. ¶¶ 4-13.)  Given their out-of-state residences and the absence of any factual allegations to the contrary, the Court should infer that (1) the non-resident Plaintiffs bought their HE washers

from Sears stores (or other sellers) in their home states; (2) accepted delivery of and used their HE washers in their home states; (3) experienced any malfunctions and service calls in their home states; and (4) incurred any out-of-pocket repair expenses or damages in their home states. (*See id.* ¶¶ 42-72.)  It is clear that "the overwhelming majority of the circumstances" that relate to Plaintiffs Barnes's, Butler's, Crane's Jarashow's, Leonard's, L'Hommedieu's, Matos's, Papaleo's, and Seratt's "disputed transactions . . . occurred outside Illinois."  *Avery*, 835 N.E.2d at 854, 216 Ill. 2d at 187.  Therefore, "[t]hese individuals have no cause of action under the [Illinois Fraud] Act," and their claims should be dismissed.  *Id.*; *see also In re Sears Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL-1703, 05 C 4742, 05 C 2623, 2005 WL 3077606, at *2 (N.D. Ill. Nov. 14, 2005) (dismissing the plaintiffs' Illinois Fraud Act claims because there were "no allegations that any plaintiff read any misrepresentation in Illinois, purchased any tools in Illinois, or had any contact with a Sears agent in Illinois" and the "location of Sears's principal place of business" in Illinois was insufficient) ("*Sears Tools I*").

### 2. Plaintiffs fail to allege statutory fraud with the requisite particularity because they do not identify <u>any</u> statement by Sears that allegedly was misleading due to the omission of a material fact

Plaintiffs' purported fraud-by-omission theory begs the question, "Omitted from what?" That is because, just as in their original complaints, the Amended Complaint does not identify <u>any</u> statement or representation to which Plaintiffs personally were exposed, from which Sears omitted a material fact, and by which Plaintiffs were deceived due to omitted information. Instead, Plaintiffs include highly generalized assertions that Sears marketed the HE washers "as being innovative, cost effective and dependable" (Am. Compl. ¶ 2) and "as a product that saved energy and water while providing outstanding cleaning and dependability" (*id.* ¶ 18), and also "falsely represented" HE washers as providing "outstanding performance as home washing machines" (*id.* ¶ 35).  These alleged statements fall far short of the particularity required by Rule 9(b).  *See Uni*Quality*, 974 F.2d at 923 (Rule 9(b) requires the plaintiff to "plead the who, what, when, where, and how of the alleged fraud"); Mem. Op. & Order at 4-6 & 4 n.2.

The 233 paragraphs of the Amended Complaint do not specify a single statement by Sears—much less "the who, what, when, where, and how"—that was allegedly misleading due to the omission of a material fact.  (*See* Am. Compl. ¶¶ 1-233.)  Nor do Plaintiffs identify <u>any</u>

statement that they personally read, heard, or otherwise received, let alone that they were actually deceived by any such statement.  (*See id.* ¶¶ 38-72.)

> **a.  Plaintiffs' allegation that Sears did not disclose the "substantial risk of mechanical failure" is not sufficient to plead an omission of a material fact**

The omission of a material fact in the conduct of trade or commerce can constitute a "deceptive act or practice," 815 Ill. Comp. Stat. § 505/2, but an omitted fact is "material" only if "a consumer would have acted differently knowing the information, or if it concerned the type of information on which a consumer would be expected to rely in making a purchasing decision," *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 62, 368 Ill. App. 3d 115, 122 (Ill. Ct. App., 2d Dist., 2006).  Because Plaintiffs' Illinois Fraud Act claims are based on omissions, Plaintiffs must plead with particularity the material facts Sears allegedly knew and did not disclose.  *Id.*

Plaintiffs' allegation that the HE washers have a "substantial risk of mechanical failure" is comprised of three related factual allegations: (i) the HE washers suffer from some design defect in the machine control board or the machine control board's relays (Am. Comp. ¶ 21); (ii) the unspecified defect results in at least six different types of mechanical failure (*id.* ¶ 20); and (iii) the risk of mechanical failure resulting from the unidentified defect is "substantial," "too high," and "in excess" of some unidentified appliance industry standard (*id.* ¶¶ 31, 33, 97).  These allegations concerning the alleged design defect, the alleged mechanical failure modes, and the alleged risk or likelihood of such manifestation, are far too vague and conclusory to satisfy the requirements of Rule 9(b).  (*See* Mem. Op. & Order at 5-6; *White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 550, 368 Ill. App. 3d 278, 287 (Ill. Ct. App., 1st Dist., 2006) (finding that allegations that tubular steel exhaust manifolds were "prone to cracking and failure," "would fail at unacceptably high rates," and that defendant was aware of "high frequency of failures" fell short of the specificity required by the Illinois Fraud Act).)

First, the Amended Complaint does not contain any technical description of the alleged defect.  Instead, the pleading contains only conclusory assertions that HE washers suffer from "inherent design flaws" (*id.* ¶ 2) and use "defective, in appropriate, and/or inferior electronic control panels, a.k.a. Central Control Units or CCU's, and defective, inappropriate, and/or

inferior relays, an integral component part of the CCU's" (*id.* ¶ 21).[11]   The Amended Complaint contains no specific factual allegations that, if true, would prove that HE washers share a design defect that should have been disclosed to Plaintiffs.

Second, the Amended Complaint contains no particularized allegation concerning the nature of the alleged "mechanical failure."   Plaintiffs make only generic allegations that the defect manifests itself in a variety of ways, including "premature and repeated mechanical failure; stopping or not starting; the door remaining locked; and displaying a variety of error codes such as F11 and FdL."[12]   (*Id.* ¶ 20.)   On their face, these allegations indicate different problems with different machines, not a uniform defect, and Sears cannot possibly defend itself against scattershot allegations that some HE washers sometimes fail to operate properly.

Third, the Amended Complaint contains no specific allegation that, if true, would prove that the alleged "risk" of mechanical failure is so "substantial" or high that Sears owed Plaintiffs a duty to disclose the failure or repair rate.   Instead, Plaintiffs admit that their only evidence shows that a tiny fraction (1.5%) of the putative class members "have had electronic control board repairs" (*id.* ¶ 28) and that this repair rate exceeds some unidentified "electronics industry" and "United States government" standards regarding "acceptable <u>relay</u> failure rates" (*id.* ¶ 29). Plaintiffs cannot cure the deficiencies of their original complaints that the Court identified in its August 27 Order by simply adding more conclusory allegations to their pleading, which is

---

[11] An allegation that an appliance experienced a particular mechanical failure is <u>not</u> the same as a particularized allegation that the appliance suffers from a specific design defect.  Washing machines contain many component parts, which may experience mechanical failure due to any number of causes, including normal use and wear, consumer abuse, shipping or installation damage, a stacked-tolerance problem, a manufacturing defect that affects some fraction of components or machines, or a design defect that affects all machines that share the same design.  The alleged failure of a specific part, therefore, could be the result of any number of causes other than a design or manufacturing defect.  Plaintiffs' lawyers apparently have not bothered to retain a competent electrical or mechanical engineer to inspect Plaintiffs' HE washers to identify any design or manufacturing defect.  (*Cf. id.* ¶ 21.)

[12] Plaintiffs' allegation that there are "reports" of other problems with the HE washers that they do not allege they personally experienced—including reports of "clothes not being cleaned properly (including clothes being stained)" (Am. Compl. ¶ 20)—cannot serve as a basis for any of Plaintiffs' claims.   *See Warth v. Seldin*, 420 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

precisely what Plaintiffs have tried to do here.  (*See* Am. Compl. ¶¶ 25-33.)  Moreover, Plaintiffs have not claimed that all or most the control board repairs have been caused by relay defects and failures, nor could they make such an allegation in good faith: Of the ten named plaintiffs, only Plaintiff Butler alleges that his HE washer required "replacement relays."  (*Id.* ¶ 44.)

Like the plaintiff in *White v. DaimlerChrysler Corp.*, Plaintiffs base their Illinois Fraud Act claims, as well as their other statutory fraud claims, on Sears' alleged non-disclosure of a "significant number of complaints" about, and the "high incidence of repair" of, HE washers. (Am. Compl. ¶¶ 25, 33.)  Plaintiffs make no <u>legitimate</u> effort to define what they allege would be an "acceptable" failure or repair rate as compared to a rate that is so "high" as to impose on Sears a duty to disclose the rate.  (*See id.* ¶¶ 25-33.)  Further, with respect to the alleged design defect, the *White* plaintiff's allegations were more specific and detailed than the allegations in this case, but were nonetheless found legally deficient.  *White*, 856 N.E.2d at 545, 368 Ill. App. 3d at 281 (the plaintiff alleged that tubular steel manifolds were subject to cracking from "thermal cyclic metal fatigue, whereby the pipes, which are made of tubular steel, are stressed beyond their elasticity as the manifold expands and contracts due to exhaust gas temperature changes during normal vehicle operation").  Plaintiffs' amended allegations amount to "conclusion and conjecture" and fail to satisfy the particularity required under the Illinois Fraud Act.  *See id.* at 550, 368 Ill. App. 3d at 287.  The absence of such particularized allegations requires dismissal. *Robinson*, 775 N.E.2d at 961, 201 Ill. 2d at 419.

### b.    Plaintiffs' allegation that Sears did not disclose the risk of "moldy smells" is insufficient to plead an actionable omission

Plaintiffs' amended allegations concerning "moldy smells" are as vague as the allegations in their original complaints.  Now they allege that the HE washers share a design defect in that the washers "fail to circulate and drain completely, resulting in the growth of mold and mildew in the machine, which causes strong, unpleasant odors in the machine and in the clothes 'cleaned' in the machine."  (Am. Compl. ¶ 2.)  According to Plaintiffs, the "door seal" is involved in some unspecified way (*id.* ¶ 20), and "at least 15,538" of the more than 1,500,000 putative class members, or 1.0% of the putative class, "have had mold issues."  (*Id.* ¶ 28.)  Plaintiffs do not even attempt to specify the mechanism(s) through which the HE washers drain themselves, let alone

plead any facts indicating why the washers fail to drain or drain incompletely.[13]  (*Id.* ¶¶ 1-139.)
Concerning the alleged 1.0% failure rate, the Amended Complaint makes only the bald allegation
that "industrial and commercial front loading washing machines operate relatively free of front
load door seal drainage issues." (*Id.* ¶ 30.)  Plaintiffs do not state the rate of "moldy smells" in
commercial front-loading washers, let alone specify the "acceptable" or "standard" rate of such
failure in the appliance industry for comparable residential washing machines produced by
comparable manufacturers.  (*Compare* Am. Compl. ¶¶ 28-32 *with* Mem. Op. & Order at 6.)
Thus, these allegations are too vague and conclusory to state a claim under the Illinois Fraud
Act.  (*See* Mem. Op. & Order at 6.)

> **c.   The other two "facts" Sears allegedly failed to disclose are
> neither material nor deceptive**

Plaintiffs also allege that Sears had an obligation, but failed, to disclose that the
mechanical failures and moldy smells "might not exhibit themselves until after the warranty has
expired" and that Sears was "not committing to making repairs" outside of the one-year warranty
period.  (Am. Compl. ¶ 97.)  The unremarkable fact that a complex appliance "might" manifest a
problem outside the warranty period is hardly the "type of information on which a buyer would be
expected to rely in making a decision."  *See Rockford Mem'l Hosp.*, 858 N.E.2d at 62, 368 Ill.
App. 3d at 122.  Stated another way, <u>every</u> consumer is aware that such possibility is present in
<u>every</u> commercial transaction in which he or she buys a product that is covered by a written
warranty.[14]  (*See* Mem. Op. & Order at 5 ("it is understood that some percentage of all mass-
produced complex machines will fail").)  The alleged non-disclosure of the well-known possibility
that an appliance might require a repair at some point during the life of the product cannot be
considered "material" under the Illinois Fraud Act (*id.* at 5 n.5), nor can the omission of that
common-sense possibility be considered "deceptive," *cf. Rockford Mem'l Hosp.*, 858 N.E.2d at

---

[13] It is readily apparent from the facially inadequate allegations that Plaintiffs have not conducted the
due diligence required to allege, consistent with Federal Rule of Civil Procedure 11, that <u>all</u> HE washers
are defective.

[14] For precisely that reason some consumers elect to buy an extended warranty or service contract.  The
existence of a market for service contracts reflects consumers' knowledge that appliances may require
maintenance or repair outside the limited warranty period.  The decision to buy a service contract is a
decision to shift the risk of repair to the seller or warrantor.

62, 368 Ill. App. 3d at 122 ("The bald assertion of deception is insufficient to state a claim; the deceptive manner of the omission must be stated with specificity and particularity.").

Likewise, the allegation that Sears failed to disclose that it was "not committing to making repairs" outside of the warranty period cannot be considered a fact of which Plaintiffs were unaware.  The Warranty on which Plaintiffs rely states that, "<u>For one year from the date of purchase</u> . . . Sears will repair or replace any of its mechanical or electrical parts if they are defective in material or workmanship." (Ex. 1 (emphasis added).)  Thus, Sears explicitly committed only to making free repairs for one year after the date of purchase.  If such a fact was "material" to consumers, Plaintiffs' own allegations show that the fact was disclosed: "Sears provided an express warranty with Kenmore HE Series Washing Machines that guaranteed, for the first year from the date of purchase, free replacement of parts without labor charge, with a two-year warranty on the electronic control board." (Am. Compl. ¶ 19.)  Plaintiffs' demonstrably false allegation that Sears "failed to disclose to consumers" that "if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs" cannot be the basis for any alleged deceptive act or practice.  *See Robinson*, 775 N.E.2d at 963, 201 Ill. 2d at 423 (observing that "there was no deception because the leases expressly stated that early termination was not permitted").

Moreover, Plaintiffs admit that Sears did <u>not</u> refuse to repair any of Plaintiffs' HE washers, even though Plaintiffs allegedly experienced mechanical failures outside the one-year full-warranty period.[15]  (*See* Am. Compl. ¶¶ 38-72.)  Rather, Plaintiffs allege that Sears or a third party charged them for labor, "service calls," or "replacement parts." (*Id.*)  In any event, the fact that Sears had not committed to make repairs <u>for free</u> outside the one-year full-warranty period was disclosed in the Warranty, and these named plaintiffs were entitled to, at most, free parts, not free labor or service calls.  (*See* Ex. 1; *Robinson*, 775 N.E.2d at 963, 201 Ill. 2d at 423.)

---

[15] Plaintiffs do not allege that Plaintiff Butler's, Crane's, L'Hommedieu's, or Seratt's HE washers required <u>any</u> service call or replacement parts to correct the purported "moldy musty smell" or that the odor caused them to incur <u>any</u> out-of-pocket expenses. (*See* Am. Compl. ¶¶ 42-44, 55-58, 65-68, 69-72.)

### 3.      Plaintiffs fail to allege that Sears intended to induce Plaintiffs' reliance, as required under the Illinois Fraud Act

To adequately plead the element that Sears intended to induce Plaintiffs' reliance on the alleged omissions, Plaintiffs' allegations must show that Sears knew of the omitted facts at the time of sale.  *See White*, 856 N.E.2d at 549, 368 Ill. App. 3d at 285 ("[A]n action for fraudulent concealment logically demands that defendants have prior knowledge of the information that they are alleged to have suppressed." (quotations and citation omitted)).  Unless Sears possessed knowledge of the omitted facts <u>before</u> the Plaintiffs' sales transactions, Sears "could not have affirmatively intended that plaintiff rely upon their alleged failure to disclose . . . ."  *Mackinac v. Arcadia Nat'l Life Ins. Co.*, 648 N.E.2d 237, 240, 271 Ill. App. 3d 138, 142 (Ill. Ct. App., 1st Dist., 1995).  Here, Plaintiffs do not allege that Sears was aware of any of the alleged "facts" before Plaintiffs bought their HE washers.[16]  (*See* Am. Compl. ¶¶ 25, 27-28.)

Although the Amended Complaint contains a handful of generic allegations that Sears "knew or should have known" about the alleged defects (*e.g., id.* ¶ 2), Plaintiffs do not allege <u>when</u> Sears came into such knowledge (*id.* ¶¶ 2, 17-37).  The Amended Complaint also generically alleges that Sears received customer complaints about the performance of HE washers (*id.* ¶ 25), but does not allege when Sears began receiving these complaints, or at what point Sears had received a sufficient number of complaints such that the number was material, triggering a duty to disclose the complaints to consumers.  Absent any allegation showing when Sears first learned that the HE washers share a design defect, Plaintiffs have not pled that Sears intended to induce Plaintiffs' reliance on the alleged omissions.  Their Illinois Fraud Act claims should be dismissed.  *See Rockford Mem'l Hosp.*, 858 N.E.2d at 63, 368 Ill. App. 3d at 123.

---

[16] For example, Plaintiffs allege that the fact that approximately 15,538 of the more than 1,500,000 HE washer owners have experienced "mold issues" is a material fact that should have been disclosed to Plaintiffs and other consumers.  (Am. Compl. ¶¶ 27-28, 97.)  Plaintiffs' allegations, however, show that these "facts" were neither known nor knowable by Sears until mid-2007, nearly two years <u>after</u> the last named plaintiff, Plaintiff Crane, had bought her HE washer in June 2005.  (*Id.* ¶ 66.)

**B.      Plaintiff Papaleo Fails to State a Claim Under California's Unfair Competition Law**

Plaintiff Papaleo fails to plead a violation of California's Unfair Competition Law, Business and Professions Code section 17200 *et. seq.* ("UCL").  The UCL prohibits "unfair competition," defined to include acts or practices that are deemed either "unlawful," "unfair," or "fraudulent."  *See* Cal. Bus. & Prof. Code §§ 17200 *et. seq.*, 17500 *et. seq.*; *Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 638-648 (Cal. Ct. App. 2006).  Plaintiff Papaleo's allegations do not show that Sears' alleged omissions were unlawful, unfair, or fraudulent, as required by California courts.

**1.      Plaintiff Papaleo fails to allege facts showing that Sears engaged in an "unlawful" practice**

In an attempt to plead an "unlawful" business practice, Plaintiff Papaleo alleges that Sears' alleged omissions violated California Civil Code sections 1750 *et seq.* ("CLRA") and Business and Professions Code sections 17500 *et seq.* ("False Advertising Law").  (Am. Compl. ¶ 115.)  Plaintiff Papaleo, however, does not plead a violation of either statute.

California's False Advertising Law prohibits false or misleading advertising.  Cal. Bus. & Prof. Code § 17500.  Advertising may be misleading if it has the likelihood or tendency to deceive or confuse the reasonable consumer.  *People ex. rel. Dep't of Motor Vehicles v. Cars 4 Causes*, 43 Cal. Rptr. 3d 513, 521 (Cal. Ct. App. 2006).  Plaintiffs do not adequately plead that Sears engaged in any "advertising" or that Sears made any other affirmative representation.  The Amended Complaint includes only the conclusory allegations that Sears "marketed" the HE washers as "innovative, cost effective and dependable" (Am. Compl. ¶ 2) and "as a product that saved energy and water while providing outstanding cleaning and dependability"[17] (*id.* ¶ 18), and misrepresented the washers as "providing outstanding cleaning" (*id.* ¶ 33) and "outstanding performance as home washing machines" (*id.* ¶ 35).  Under California law, these alleged "statements" are mere puffery and are insufficient to plead a violation of the False Advertising

---

[17] Plaintiffs do not dispute that HE washers save energy and water compared to conventional washers, nor do they dispute that HE washers generally provide outstanding cleaning or performance as residential washing machines (*i.e.*, for the vast majority of owners who have not experience mold or mildew stains or odors).  (*See* Am. Compl. ¶¶ 1-233.)

Law.[18]  *See, e.g., Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139-41 (C.D. Cal. 2005) (recognizing that puffery is not actionable under either the False Advertising Law or the UCL). Accordingly, Plaintiff Papaleo cannot rely on the False Advertising Law to support his claim that Sears engaged in "unlawful" conduct in violation of the UCL.

The CLRA proscribes unfair methods of competition or deceptive practices undertaken to result in a consumer sale.  Cal. Civ. Code § 1770.  The conduct prohibited by the statute includes, *inter alia*, representations that goods or services are of a particular standard, quality or grade, if they are of another.  Cal. Civ. Code § 1770(7).  Omissions are actionable under the CLRA only if the defendant was under a duty to disclose the omitted facts.  *Bardin*, 39 Cal. Rptr. 3d at 648 (demurrer granted where complaint failed to assert facts showing that defendant was under a duty to disclose).  A duty to disclose arises from fiduciary or confidential relations, where the defendant makes partial or incomplete representations, where the facts are known only to the defendant and the defendant knows they are not reasonably discoverable by the plaintiff, or in cases of active concealment.  *See Warner Const. Corp. v. City of L.A.*, 466 P.2d 996, 1001 (Cal. 1970).

Here, there is no relationship of trust or confidence between Sears and Plaintiff Papaleo, who is an ordinary consumer in an ordinary business transaction.  Plaintiff Papaleo also does not allege that Sears made any affirmative representation that required additional disclosures.  (Am. Compl. ¶¶ 62-64, 102-121.)  Nor has Plaintiff Papaleo identified the omitted "facts" that were solely accessible to Sears, or that Sears actively concealed.  (*See id.*)  Because Plaintiff Papaleo has failed to plead any facts showing that Sears had a duty to disclose, he has not pled that Sears' alleged conduct was "unlawful" under the CLRA.

> **2.    Plaintiff Papaleo does not allege facts showing that Sears engaged in an "unfair" practice**

---

[18]  "Sellers are permitted to 'puff' their products by stating opinions about the quality of the goods so long as they do not cross the line and make factual representations about important characteristics like a product's safety."  *Osborne v. Subaru of Am., Inc.*, 243 Cal. Rptr. 815, 823 n.8 (Cal. Ct. App. 1988). Statements identified as constituting non-actionable puffery include representations that a product is "high quality," "reliable," "high performance," "excellent performance," and "latest technology."  *Anunziato*, 402 F. Supp. 2d at 1139-41.

There is a split of authority in California regarding how the courts should determine whether a defendant's alleged conduct is "unfair" in the context of a UCL action. *See Bardin,* 39 Cal. Rptr. 3d at 641 (observing that, in the context of a consumer action, courts in California follow either the approach set forth in *Smith v. State Farm Mut. Auto. Ins. Co.*, 113 Cal. Rptr. 2d 399 (Cal. Ct. App. 2001), or *Scripps Clinic v. Super. Ct.*, 134 Cal. Rptr. 2d 101 (Cal. Ct. App. 2003)).[19] Here, because the California Supreme Court has not established a definitive test for determining whether conduct is "unfair" in the context of a consumer action, and because the state's intermediate courts are split, the Court either must predict which standard the California Supreme Court would likely adopt <u>or</u> should dismiss Plaintiffs' allegations unless they satisfy <u>both</u> the *Smith* and *Scripps* standards.[20] *Cf. Bardin,* 39 Cal. Rptr. 3d at 641.

### a.    Sears' alleged conduct is not "unfair" under *Smith*

Under *Smith*, a practice is unfair if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or is substantially injurious to consumers. *Smith*, 113 Cal. Rptr. 2d 399. The *Bardin* decision is instructive here. The plaintiffs in *Bardin* brought suit against a car manufacturer, claiming that the defendant's use of tubular steel, rather than cast iron, in certain of its vehicles' exhaust manifolds, violated California's UCL. *Bardin*, 39 Cal. Rptr. 3d at 644. The plaintiffs' theory was that the defendant "unfairly" used a cheaper product, thereby gaining a competitive advantage while forcing consumers to pay for the cost of premature repair or replacement. *Id.* The court dismissed the claim, holding that the use of less durable and less

---

[19] The *Smith* and *Scripps* lines of authority developed in response to the California Supreme Court's decision in *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548 (Cal. 1999), in which the Court narrowed the scope of the unfairness prong, but in the context of an action between business competitors. The *Smith* and *Scripps* lines of authority represent different views as to whether the Supreme Court's criticism of the prior interpretations of the "unfair" standard continues to apply to consumer actions. *Bardin*, 136 Cal. App. 4th at 1267.

[20] When a federal court sitting in diversity is called upon to decide an unsettled question of state law, the court is required to predict how the state's highest court would rule on the issue. *See Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). "[I]n the absence of guiding authority from the state's highest court, we give 'great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court.'" *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)).

expensive materials did not violate public policy. *Id.* The *Bardin* court also observed that the complaint failed to allege that the manufacturer made representations about the composition of the manifolds, that the use of tubular steel posed a safety hazard, or that the use of steel violated any warranty. *Id.*

Like the plaintiffs in *Bardin*, Plaintiffs here claim that Sears' conduct was "unfair" because it gave Sears an unfair competitive advantage over its competitors (Am. Compl. ¶ 116), and because Sears profited from selling "a machine that fails to wash clothes as advertised" (*id.* ¶ 117). These allegations are insufficient to establish that Sears engaged in an unfair business practice. The act of selling washing machines that might require repair at some point during the life of the product does not violate any public policy, nor does it constitute immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct to fail to disclose the commonsense fact of such possibility. *Bardin*, 39 Cal. Rptr. 3d at 644. And Plaintiffs do not allege with particularity that Sears made representations about the performance of the HE washers, that the HE washers posed a safety hazard, or that the HE washers violated any express warranty. *Id.* Thus, Plaintiffs have failed to allege facts that, if true, show that Sears' conduct was unfair.

**b.      Sears' alleged conduct is not "unfair" under *Scripps***

Under *Scripps*, a business practice is unfair if it offends a public policy "tethered" to a specific constitutional, statutory, or regulatory provision. *Bardin*, 39 Cal. Rptr. 3d at 641. The *Bardin* court held that the plaintiff's allegations did not meet the *Scripps* test because the right asserted—the right to have a vehicle containing an exhaust manifold lasting as long as the "industry standard" cast iron manifold—is one based in contract or warranty, not a legislatively declared policy. *Id.* Likewise here, California consumers do not have a public policy right to a washing machine that is free from all risk of repair or moldy odors. *Cf. id.* at 645. To the contrary, every consumer assumes the risk that an appliance might not perform to their expectations either within or outside the written warranty period, unless they specifically contract for a more expansive warranty or service contract. *E.g.*, *Seely v. White Motor Co.*, 45 Cal. Rptr. 17, 18 (Cal. 1965) (absent an agreement that the product will match a consumer's specified expectations, consumers are charged with the risk that a product will not do so).

**3.      Plaintiffs fail to allege that Sears engaged in a "fraudulent" practice**

A failure to disclose material information may be actionable under the UCL as "fraudulent" conduct.  *Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 30 (Cal. Ct. App. 2003).  To establish a fraudulent business practice, a plaintiff must show that the public is likely to be deceived, as adjudged by a reasonable consumer standard.  *Bardin*, 39 Cal. Rptr. 3d at 647.  A conclusory statement that the public would likely be deceived, without pleading any facts showing the basis for that conclusion, is insufficient to plead a fraudulent practice under the UCL.  *Bardin*, 39 Cal. Rptr. at 647 (dismissing allegations that the defendant's omissions about the exhaust manifolds were likely to deceive members of the public about the product's durability, quality, and performance).

Plaintiff Papaleo fails to allege any facts that, if true, would show that the public likely would have been deceived by Sears' alleged omissions.  Instead, Plaintiff Papaleo makes only conclusory allegations that Sears' alleged omissions were "fraudulent" because members of the consuming public were likely to be deceived.  (Am. Compl. ¶ 114.)  Such a conclusional statement of deception is insufficient to plead a "fraudulent" practice under the UCL.  *Bardin*, 39 Cal. Rptr. at 647.

### C.    Plaintiffs Have Failed to Cure Their Defective Claim for Non-Disclosure Under the Indiana Fraud Act

Plaintiff Butler's claim under the Indiana Deceptive Consumers Sales Act, Ind. Code § 24-5-0.5 *et seq.* ("Indiana Fraud Act") (Am. Compl. ¶¶ 122-32), fails for the same reason stated in the Court's August 27 Order: the Indiana Fraud Act does not apply to alleged non-disclosures. (Mem. Op. & Order at 7-8.)  Plaintiffs have done nothing to cure this fatal deficiency in Count III of the Amended Complaint (*e.g.*, converting this claim into one for affirmative misrepresentations).  (*See* Am. Compl. ¶¶ 122-32.)  Thus, the Indiana Fraud Act claim should be dismissed <u>with prejudice</u>.  *See Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 598 n.6 (Ind. Ct. App. 2002) (admonishing the plaintiff's lawyer for ignoring "the explicit statutory requirement of a written or oral representation").

### D.    Plaintiffs Fail to State a Claim Under the Kentucky Fraud Act

Plaintiffs also fail to state a claim under the Kentucky Consumer Fraud and Deceptive Business Practices Act, Ky. Rev. Stat. § 367.120 *et seq.* ("Kentucky Fraud Act").[21]  They rely on section 170 of the Kentucky Fraud Act (Am. Compl. ¶ 135), which prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Ky. Rev. Stat. § 367.170.  Although the statute does not define these terms, the Kentucky Supreme Court has clarified that mere incompetent performance is not enough, absent some allegation of "intentional or malicious conduct."  *See Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991).  A claim for violation section 367.170 based on an omission must plead that the omitted fact was material.  *Craig & Bishop, Inc. v. Piles*, No. 2004-CA-001883-MR, 2005 WL 3078860, at *5 (Ky. Ct. App. Nov. 18, 2005).  Also, the facts must be pled with particularity. *Red Bird Motors, Inc. v. Endsley*, 657 S.W.2d 954, 956 (Ky. Ct. App. 1983).

Plaintiffs' Kentucky Fraud Act claim fails for some of the same reasons as their claims under the Illinois Fraud Act: (i) Plaintiffs have not alleged with particularity that Sears failed to disclose a "material" fact (*see* Argument, Part I.A.2, *supra*); and (ii) Plaintiffs have not alleged facts showing that Sears had knowledge of the omitted facts before Plaintiffs bought their HE washers (*see* Argument, Part I.A.3, *supra*).

### E.     Plaintiff Seratt Fails to State a Claim Under the Michigan Fraud Act

Plaintiff Seratt asserts a claim for violation of subsection (g) of the Michigan Consumer Protection Act,  Mich. Comp. Laws Ann. § 445.903(1) (g) ("Michigan Fraud Act").  (Am. Compl. ¶¶ 145-56.)  Subsection (g) prohibits "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented."  Mich. Comp. Laws Ann. § 445.903(1)(b), (g).[22]  Michigan Fraud Act claims are construed with reference to the

---

[21] The Amended Complaint states that "Plaintiffs," not Plaintiff Matos, seek to bring this claim.  (Am. Compl. ¶¶ 133, 136.)

[22] Plaintiff Seratt also alleges a violation of subsection (b), which prohibits "deceptive representations or deceptive designations of geographic origin in connection with goods or services."  Mich. Comp. Laws Ann. § 445.903(1)(b).  This claim fails because Plaintiffs do not allege that Sears made any representations, false or otherwise, concerning the "geographic origin" of the HE washers.  To the extent Plaintiff Seratt is relying on any of the 37 subsections of the Michigan Fraud Act other than subsections (b) and (g), the Amended Complaint fails to satisfy the basic pleading requirements of Federal Rule of Civil Procedure 8.  *See, e.g., Bepko v. St. Paul Fire & Marine Ins. Co.*, No. 3:04 CV 01996 PCD, 2005 WL 3619253, at *4 (D. Conn. 2005) (dismissing complaint where the plaintiff improperly pleaded that

common law tort of fraud, *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999), which requires proof that the alleged misrepresentation or omission was material. *Id.* Further, a fraud-based claim under the Michigan Fraud Act must be pled with particularity. *Cf. Michels v. Monaco Coach Corp.*, 298 F. Supp. 2d 642, 651 (E.D. Mich. 2003) (the buyer's Michigan Fraud Act claim for failure to provide promised benefits was based on warranty, not fraud, and therefore the buyer did not need to plead claim with particularity), *disapproved of on other grounds in Pitts v. Monaco Coach Corp.*, 330 F. Supp. 2d 918 (W.D. Mich. 2004).

Plaintiff Seratt's claim under subsection (g) fails because he does not allege with particularity that Sears made any affirmative representation or advertisement concerning the HE washers. All of Plaintiffs' consumer fraud claims are based on Sears' alleged "omissions in the air." (Am. Compl. ¶¶ 2, 97, 110, 128, 139, 152, 164, 178, 190, 202, 212, 222.) On its face, however, subsection (g) applies only to affirmative representations or advertisements.[23] Mich. Comp. Laws Ann. § 445.903(1)(g). Plaintiffs do not allege that Sears engaged in any deceptive advertising.[24] The Amended Complaint includes only highly generalized allegations, as discussed above. Plaintiffs fail to allege what specific representations were made, by whom, when, in what medium, whether Plaintiffs were personally exposed to and relied on such representations, or even whether such representations were false. The absence of such particularized allegations requires dismissal of Plaintiff Seratt's Michigan Fraud Act claim. *Cf. Michels*, 298 F. Supp. 2d at 651. Further, the alleged "statements" constitute, at most, non-actionable puffery. *See e.g.*, *O'Briant v. Rollins, Inc.*, No. 217035, 2001 WL 684568, at *2 (Mich. Ct. App. June 15, 2001) (granting summary judgment on Michigan Fraud Act claim where the plaintiffs could produce only evidence of puffery).

---

defendant violated "one or more" of the 22 subsections of a statute; for Rule 8 "[t]o have any meaning, Defendant should not have to guess as to what portions of [the statute] are being pled").

[23] Even if subsection (g) did apply to omissions, for the reasons described in Parts I.A.2 and I.A.3 above, Plaintiffs have failed to plead actionable omissions.

[24] Plaintiffs' lone "advertising" allegation is that the HE washers did not wash clothes "as advertised." (Am. Compl. ¶ 117.) This conclusory allegation does not identify any statement by Sears.

### F. Plaintiff Leonard Fails to State a Claim Under the Minnesota Fraud Act

Plaintiff Leonard seeks to plead a violation of section 69 of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. § 325F *et seq.* ("Minnesota Fraud Act"). (Am. Compl. ¶¶ 157-67.) He invokes section 325F.69, subdivision 1 (*id.* ¶ 160), which prohibits the intentional use of fraud, misrepresentation, or deceptive practices in connection with a sale of goods.[25] Minn. Stat. Ann. § 325F.69, subd. 1. To state a claim for damages under the Minnesota Fraud Act, however, Plaintiff Leonard must allege, *inter alia*, that Sears engaged in some type of deceptive practice "with the intent that others rely on the alleged deception." *See Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1062 (D. Minn. 2001). Further, a claim based on an alleged failure to disclose must plead that the omitted fact was material, *Hatch v. Fleet Mortgage Corp.*, 158 F. Supp. 2d 962, 967 (D. Minn. 2001), and must be pled with particularity, *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000).

Like his purported Illinois Fraud Act claim, Plaintiff Leonard bases his claim for violation of the Minnesota Fraud Act on Sears' alleged omissions. (Am. Compl. ¶ 164.) Consequently, his Minnesota Fraud Act claim fails for some of the same reasons that his Illinois Fraud Act claim fails: (i) Plaintiff Leonard has not alleged with particularity that Sears failed to disclose a "material" fact (*see* Argument, Part I.A.2, *supra*); and (ii) he has not alleged facts showing that Sears had knowledge of the allegedly omitted facts at the time he bought his HE washer (*see* Argument, Part I.A.3, *supra*), without which knowledge there could be no intent to induce reliance. *See Taylor Inv. Corp.*, 169 F. Supp. 2d at 1062.

### G. Plaintiff Jarashow Fails to State a Claim Under the New Jersey Fraud Act

Plaintiff Jarashow purports to bring a claim for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* ("New Jersey Fraud Act"). To plead a violation of the New Jersey Fraud Act, Plaintiff Jarashow must plead that Sears knowingly omitted a material fact. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 813 (N.J. Super. Ct. App. Div. 2000). Thus, Plaintiff Jarashow's New Jersey Fraud Act claim fails for the same reasons that

---

[25] Plaintiff Leonard also alleges a violation of section 325F.69, subdivision 4. (Am. Compl. ¶ 160.) Subdivision 4 prohibits the solicitation of money "for merchandise not yet ordered or for services . . . not yet ordered." Minn. Stat. Ann. § 325F.69, subd. 4. Plaintiffs, however, do not plead any facts showing that Sears solicited payment for washers that were not yet ordered. (Am. Compl. ¶¶ 1-233.)

Plaintiffs' Illinois Fraud Act claim fails: Plaintiff Jarashow has not alleged with particularity facts showing that Sears failed to disclose a material fact, or that Sears had knowledge of the allegedly omitted fact at the time Plaintiff Jarashow bought his HE washer.  (*See* Argument, Parts I.A.2 and 3, *supra.*)

### H.    Plaintiff Crane Fails to State a Claim Under the New York Fraud Act

Plaintiff Crane alleges that Sears violated New York's Consumer Protection Law, N.Y. General Business Code § 349 *et seq.* ("New York Fraud Act").[26]  (Am. Compl. ¶¶ 183-94.)  To state a claim under the New York Fraud Act, a plaintiff must prove, *inter alia*, that the defendant's consumer-oriented act or practice was materially misleading to a reasonable consumer.  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000) ("A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.").  The deceptive practice must be "likely to mislead a reasonable consumer" under the circumstances.  *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (N.Y. App. Div. 2004) (denying class certification because the court would have to determine whether each class member was reasonably mislead by the advertisements at issue, given the existence of alternate information available about the product).

Plaintiff Crane's claim for violation of the New York Fraud Act fails for many of the same reasons that Plaintiffs' Illinois Fraud Act claim fails.  Plaintiff Crane does not allege facts showing that Sears failed to disclose a material fact.  (*See* Argument, Part I.A.2, *supra*; *Stutman*, 731 N.E.2d at 611.)  Further, none of the "facts" that Sears allegedly omitted—that there was a substantial risk of mechanical failure, that said failures may not exhibit themselves until the Warranty had expired, and that Sears would not repair for free the out-of-warranty problems—are of a kind "likely to mislead a reasonable consumer" under the circumstances.  (*See* Argument, Part I.A.2, *supra*; *Solomon*, 777 N.Y.S.2d at 55.)

---

[26] Although Plaintiff Crane cites to section 329, the quoted language is from section 349.

I.      **Plaintiff L'Hommedieu Fails to State a Claim Under the Washington Fraud Act**

Plaintiff L'Hommedieu alleges that Sears' alleged omissions violated Washington's Consumer Protection Act, Wash. Rev. Code § 19.86 *et seq.* ("Washington Fraud Act"). (Am. Compl. ¶¶ 195-206.)  The Washington Fraud Act prohibits unfair methods of competition or unfair or deceptive commercial practices.  Wash. Rev. Code § 19.86.020.  An unfair or deceptive act is one that has the capacity to deceive a substantial portion of the public.  *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs.*, 135 P.3d 499, 507 (Wash. Ct. App. 2006).  A seller's failure to disclose a material fact when <u>under a duty to do</u> so may be classified as an unfair or deceptive act.  *See, e.g.*, *Potter v. Wilbur-Ellis Co.*, 814 P.2d 670, 674 (Wash. 1991).  Further, a plaintiff must also plead that the allegedly deceptive conduct impacts the public interest.[27]  *Holiday Resort Cmty.*, 135 P.3d at 507.

Here, Plaintiff L'Hommedieu's claim for violation of the Washington Fraud Act fails for at least three reasons.  First, he does not allege with particularity that Sears failed to disclose a material fact.  (*See* Argument, Part I.A.2, *supra*; *Griffith v. Centex Real Estate Corp.*, 969 P.2d 486, 492 (Wash. Ct. App. 1998).)  Second, Plaintiff L'Hommedieu does not allege any facts that, if true, would support a finding that Sears owed Plaintiff L'Hommedieu a duty of disclosure.[28]  Specifically, he has not alleged that Sears occupied a quasi-fiduciary position, that he developed a special relationship of trust and confidence with Sears, or that Sears had superior specialized

---

[27] Where the transaction at issue is a consumer transaction, the following factors are relevant to determine whether the act or practice affects the public interest:

> 1) were the alleged acts committed in the course of defendant's business?  2) are the acts part of a pattern or generalized course of conduct?  3) were repeated acts committed prior to the act involving plaintiff?  4) is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff?  5) if the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Demelash v. Ross Stores*, 20 P.3d 447, 455-456 (Wash. Ct. App. 2001) (internal footnotes and citations omitted).

[28] Under Washington law, a duty to disclose can arise from a quasi-fiduciary relationship, a special relationship of trust and confidence, where one party is relying upon the superior specialized knowledge and experience of the other, where a seller has knowledge of a material fact not easily discoverable by the buyer, and where there exists a statutory duty to disclose.  *See Bison Media, Inc. v. KTSL, Inc.*, 115 Wash. App. 1045, 2003 WL 361222, at *8-9 (Wash. Ct. App. Feb. 20, 2003).

knowledge and experience.  *See Bison Media*, 2003 WL 361222, at *8-9.  Third, Plaintiff

L'Hommedieu fails to allege any facts showing that Sears' alleged conduct impacts a public

interest.  *See Holiday Resort Cmty.*, 135 P.3d at 507.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR COMMON-LAW FRAUD

### A.    Plaintiffs' Common-Law Fraud Claim Fails for Many of the Same Reasons as Their Defective Statutory Fraud Claims

Plaintiffs' common-law fraud-by-omission claim fails for many of the same reasons that

their statutory fraud claims fail.  The common law applicable to each Plaintiff's fraudulent

omission claim[29] requires that the allegedly omitted fact be material and that the defendant have

had actual knowledge of that fact at the time of the transaction.[30]  For the reasons described in

Argument Parts I.A.2 and I.A.3 above, Plaintiffs have failed to plead with particularity either that

Sears omitted a material fact or that Sears was aware of the allegedly undisclosed facts before

Plaintiffs bought their HE washers.

### B.    Plaintiffs' Fraudulent Omission Claim Fails Because Sears Did Not Owe Plaintiffs a Duty to Disclose Additional Facts

Under the laws of Illinois and the other interested states, Plaintiffs' fraudulent omission

claim fails for the separate and independent reason that Plaintiffs have not alleged any facts that, if

true, would prove that Sears owed Plaintiffs an affirmative duty of disclosure.  The applicable

states' laws impose a duty of disclosure in the context of a fiduciary relationship or other special

---

[29] Sears does not concede that the common law of Illinois can be applied to the non-resident Plaintiffs' common law claims or that there are no outcome-determinative differences between Illinois law and the laws of the non-resident plaintiffs' home states.  The outcome of this motion, however, is the same regardless of whether the Court applies Illinois law or another state's law to Plaintiffs' purported fraudulent concealment claim.  Thus, Sears will brief only Illinois law below.

[30] *See, e.g., Lovejoy v. AT&T Corp.*, 111 Cal. Rptr. 2d 711, 719 (Cal. Ct. App. 2001); *Allensworth v. Ben Franklin Sav. & Loan*, 389 N.E.2d 684, 687, 71 Ill. App. 3d 1041, 1043-44 (Ill. Ct. App., 2d Dist., 1979); *Benge v. Miller*, 855 N.E.2d 716, 723 (Ind. Ct. App. 2006); *Willits v. Peabody Coal Co.*, 188 F.3d 510 (Table), 1999 WL 701916, at *9 (6th Cir. Sept. 1, 1999) (applying Kentucky law); *Klein v. First Edina Nat'l Bank*, 186 N.W.2d 619, 622 (Minn. 1972); *Allis-Chalmers Corp. Prod. Liab. Trust v. Liberty Mut. Ins. Co.*, 702 A.2d 1336, 1339 (N.J. Super. Ct. App. Div. 1997); *Mitschele v. Schultz*, 826 N.Y.S.2d 14 (N.Y. App. Div. 2006); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Crisman v. Crisman*, 931 P.2d 163, 166 (Wash. Ct. App. 1997).

relationship between the parties.[31]  Plaintiffs do not allege the existence of any fiduciary or other special relationship between themselves and Sears that would impose on Sears an affirmative duty to disclose under the laws of California, Illinois, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, Texas, or Washington.  Moreover, each applicable state's law imposes a duty of disclosure where the defendant has made a partial disclosure, but Plaintiffs do not allege that Sears made any partial disclosure.

To plead a claim for fraudulent omissions under Illinois law, Plaintiffs must allege, *inter alia*, that Sears concealed a material fact and that "the concealment was intended to induce a false belief, under circumstances creating a duty to speak."  *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 989 (N.D. Ill. 2006).  "The burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief, and where the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence."  *Farmer City State Bank v. Guinrich*, 487 N.E.2d 758, 763, 139 Ill. App. 3d 416, 424 (Ill. Ct. App., 4th Dist., 1985).

Here, Plaintiffs allege that "Sears, through its experience, was in a position of superiority over Plaintiffs and class members . . . ."  (Am. Compl. ¶ 208.)  Plaintiffs' naked assertion of Sears' "experience" and "superiority" are not sufficient to establish a duty of disclosure under the heightened pleading standard of Rule 9(b).  *See Int'l Star Registry*, 451 F. Supp. 2d at 989 n.8 (rejecting the plaintiff's "unsupported *ipse dixit* conclusion" that the defendant owed a duty of disclosure, stating that it "does not pass muster—certainly not in the Rule 9(b) environment").  Plaintiffs' claim for fraudulent omissions fails because of the absence of allegations that, if true, would prove that Sears had special relationships with Plaintiffs that created a duty to speak or disclose additional facts to each of them.  *See Olson v. Jenkens & Gilchrist*, No. Civ. A. 05-C-

---

[31] *See, e.g.*, *Warner*, 466 P.2d at 1001; *Magna Bank of Madison County v. Jameson*, 604 N.E.2d 541, 544, 237 Ill. App. 3d 614, 618-19 (Ill. App. Ct., 5th Dist., 1992); *Westfield Ins. Co. v. Yaste, Zent & Rye Agency*, 806 N.E.2d 25, 31 (Ind. Ct. App. 2004); *In re Sallee*, 286 F.3d 878, 896 (6th Cir. 2002) (applying Kentucky law); *Mable Cleary Trust v. Edward-Marlah Muzyl Trust*, 686 N.W.2d 770, 782 (Mich. Ct. App. 2004); *L&H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989); *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 725 A.2d 1133, 1139 (N.J. Super. Ct. App. Div. 1998); *Jana L. v. West 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 134 (N.Y. App. Div. 2005); *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App. 1997); *Bison Media*, 2003 WL 361222, at *8-9.

4216, 2006 WL 3354132, at *5 (N.D. Ill. Nov. 17, 2006) (dismissing fraudulent concealment claim where the plaintiffs failed to allege any special relationship with tax advisors who recommended a tax shelter).  The only facts that Plaintiffs have alleged show that their purchases of HE washers were an ordinary, day-to-day business transactions.[32]  (Am. Compl. ¶¶ 38-72.)

Plaintiffs have failed for a second time to cure the multiple deficiencies in their fraud allegations.  (*Compare* Mem. Op. & Order at 4-7 *with* Am. Compl. ¶¶ 2, 20-31, 90-213.)  Thus, the Court should dismiss with prejudice all of the statutory fraud and common-law fraud claims.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT

The Illinois Supreme Court has identified three circumstances where "enrichment" can be found "unjust": (1) where a benefit should have been given to the plaintiff, but a third party mistakenly gave it to the defendant instead; (2) where the defendant obtained the benefit through some type of wrongful conduct; and (3) where the plaintiff had a better claim to the benefit than the defendant for some other reason.[33]  *See HPI Health Care Serv., Inc. v. Mt. Vernon Hosp.*

---

[32] Illinois law does not create a fiduciary relationship, or a general duty to disclose additional information, between a merchant and a consumer in ordinary, day-to-day business transactions.  *See, e.g.*, *Mackinac*, 648 N.E.2d at 240-41, 271 Ill. App. 3d at 143 (affirming the trial court's dismissal of Illinois Fraud Act claim where the plaintiff failed to allege facts showing that defendants owed a duty to inform her of insurance policy restrictions); *Allensworth*, 389 N.E.2d at 687, 71 Ill. App. 3d at 1044 (reversing judgment for plaintiffs on fraudulent omission claim because "[t]he concealment may not be a mere passive omission of facts during a business transaction, but must have been done with the intent to deceive under circumstances creating an opportunity and duty to speak").

[33] Because Plaintiffs base their unjust enrichment claims on the alleged wrongfulness of Sears' conduct, the other states' laws also would require allegations showing that Sears acted "wrongfully" or "unjustly" in some way.  *See, e.g.*, *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 122 (Cal. Ct. App. 2004); *Savoree v. Indus. Contracting & Erecting, Inc.*, 789 N.E.2d 1013, 1020 (Ind. Ct. App. 2003) ("The pivotal concept of 'unjust enrichment' is the occurrence of a wrong or something unjust."); *Guar. Elec. Co. v. Big Rivers Elec. Co.*, 669 F. Supp. 1371, 1381 (W.D. Ky. 1987) ("The most significant element of proof in an action for recovery is that the enrichment to the defendant is unjust."); *Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006); *ServiceMaster of St. Cloud v. GAB Bus. Serv., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (unjust enrichment requires showing that "a party was unjustly enriched in the sense that the term 'unjustly' could mean 'illegally or unlawfully'" (citation omitted)); *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994); *Clifford R. Gray, Inc. v. LeChase Constr. Serv., LLC*, 819 N.Y.S.2d 182, 187 (N.Y. App. Div. 2006); *In re Estate of Wallace*, No. 04-05-00567-CV, 2006 WL 3611277, at *3 (Tex. App. Dec. 13, 2006) (unjust enrichment occurs when a person obtains a benefit from another by fraud, duress, or the taking of an undue advantage); *Bailie Commc'ns, Ltd v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991).

*Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 161-62 (Ill. 1989).  Here, Plaintiffs' unjust enrichment claim is based on the second circumstance—that is, they allege that Sears "wrongfully" collected money from them.  (Am. Compl. ¶¶ 219-27.)  For the reasons stated above, however, the Amended Complaint contains no well-pled <u>facts</u> that, if true, would show that Sears' conduct was "wrongful" in any meaningful way.  (*See* Argument, Parts I.A.2 & I.A.3, *supra*.)  Absent particularized allegations that Sears engaged in some wrongful conduct, Plaintiffs' unjust enrichment claims fail as a matter of law.  *See, e.g.*, *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977, 271 Ill. App. 3d 483, 492 (Ill. App. Ct., 1st Dist., 1995) (affirming summary judgment for defendants where the plaintiffs failed to allege that defendants engaged in "unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence").

In addition, Plaintiffs unjust enrichment claim fails because they admit that an express contract governs their relationships with Sears.[34]  (Am. Compl. ¶ 19.)  "Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'"  *People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177, 153 Ill. 2d 473, 497 (Ill. 1992) (quoting *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195, 68 Ill. 2d 375, 391 (Ill. 1977)).  "Express warranties are contractual in nature."  *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341, 181 Ill. App. 3d 1088, 1100 (Ill. App. Ct., 4th Dist., 1989).  Thus, where as here, an express warranty governs the relationship between the parties, the doctrine of unjust enrichment does not apply, and such claims must be dismissed.  *See, e.g.*, *Cooper v. Durham Sch. Servs.*, No. 03 C 2431, 2003 WL 22232833, at *7 (N.D. Ill. Sept. 22, 2003) ("unjust enrichment is a contract substitute and does not succeed where a contract exists").[35]

---

[34] Plaintiffs' unjust enrichment claim incorporates by reference the preceding 218 paragraphs of the Amended Complaint (Am. Compl. ¶ 219), including the allegation that "Sears provided an express warranty" with new HE washers (*id.* ¶ 19.)

[35] California, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, Texas, and Washington courts also deny recovery under an unjust enrichment theory where an express contract governs the relationship between the parties.  *See, e.g.*, *Bayh v. Sonnenburg*, 573 N.E.2d 398, 409 (Ind. 1991) (discussing the rule "which says recovery cannot be grounded on unjust enrichment where a contract controls the rights of the parties"); *Codell Constr. Co. v. Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) ("The doctrine of unjust enrichment has no application in a situation where there is an explicit

Essentially, Plaintiffs seek to rewrite the terms of Sears' Warranty so as to compel Sears to provide free repairs outside the warranty period.  Plaintiffs, however, could have purchased a service contract at or after the time of sale (*e.g.*, Am. Compl. ¶ 24), which would have shifted the financial risk of repairs to Sears.  Now that the named plaintiffs (other than Plaintiff Munch) have chosen not to pay to shift that risk, Plaintiffs cannot use an equitable remedy to rewrite the Warranty.  *See Yassin v. Capitol Indem. Corp.*, No. 94 C 50156, 1995 WL 30610, at *3 (N.D. Ill. Jan. 24, 1995) (dismissing unjust enrichment claim on ground that the remedy cannot be invoked where an express contract exists between the parties, because to do so "would improperly shift risks that were negotiated under the contract").

## IV.    PLAINTIFFS LACK STANDING TO SEEK A DECLARATORY JUDGMENT

Plaintiffs also ask the Court to enter a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  (Compl. ¶ 138.)  The Act requires an "actual controversy" before the Court may make a declaration of the parties' rights.  "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Alcan Aluminum Ltd. v. Dep't of Revenue of Oregon*, 724 F.2d 1294, 1298 (7th Cir. 1984) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  "Injury is an indispensable element of a case or controversy."  *Illinois v. City of Chi.*, 137 F.3d 474, 477 (7th Cir. 1998).

Here, the purported class-wide "controversy" on which Plaintiffs base their declaratory action is not a controversy to which they are parties, nor one that has caused them injury.[36]  Thus,

---

contract that has been performed."); *Fodale*, 718 N.W.2d at 841; *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) (unjust enrichment "cannot be granted where the rights of the parties are governed by a valid contract"); *Shalita v. Township of Wash.*, 636 A.2d 568, 571 (N.J. Super. Ct. App. Div. 1994); *EBC I, Inc. v. Goldman Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005); *R. Conrad Moore & Assocs. v. Lerma*, 946 S.W.2d 90, 97 (Tex. App. 1997) ("[A] valid enforceable contract exist[s] . . . , thus restitution under unjust enrichment is not an appropriate remedy."); *MacDonald v. Hayner*, 715 P.2d 519, 522-23 (Wash. Ct. App. 1986).

[36] Plaintiffs allege the existence of a controversy "concerning the legality of Defendant's marketing of Kenmore HE Series Washing Machines as innovative, cost effective and dependable when it knew or should have known them to be defective and unreliable."  (Am. Compl. ¶ 229.)  Plaintiffs, however, do not

Plaintiffs' request for a class-wide declaratory judgment should be dismissed.  *Cf. Lebowich v. O'Connor*, 309 F.2d 111, 114 (2d Cir. 1962) (affirming district court's refusal to issue declaratory judgment).

Plaintiffs Barnes, Jarashow, L'Hommedieu, and Much also allege that there is an individual controversy between them and Sears.  (Am. Compl. ¶ 230.)  According to Plaintiffs, Sears "declined to honor its two year warranty for the control boards for Plaintiffs Munch, Barnes, Jarashow, and L'Hommedieu, notwithstanding that those Plaintiffs had control board problems and asked that Sears fix them within two years of sale."  (*Id.* ¶ 230.)  The only named plaintiff whose fact allegations arguably support the contention that Sears declined to honor its two-year limited parts warranty is Plaintiff Munch.  (*See id.* ¶¶ 40-41 (Plaintiff Munch bought an extended warranty for approximately $300 to avoid incurring estimated repair costs of $655).)  Plaintiff Barnes does <u>not</u> allege that he contacted Sears to report the error codes he experienced, nor does he state that he paid <u>Sears</u> $100 for the replacement parts he bought to repair his machine.  (*Id.* ¶ 50.)  Plaintiffs Jarashow and L'Hommedieu only claim that Sears "refused to repair the machine for free" (*id.* ¶¶ 60-61, 70-71)—which, if their allegations are true, would make sense because the two-year warranty only covers control board <u>parts</u>, not labor.[37]  Even if there is an actual controversy between these four Plaintiffs, on the one hand, and Sears, on the other, these individual controversies cannot serve as a basis for challenging on a <u>class-wide</u> basis the Warranty's "time limits, application of those limits, and whether [warranty] claims have been denied improperly" (*id.* ¶ 230), especially because the overwhelming majority of HE washer owners have never experienced any of the problems alleged by these Plaintiffs.  At most, the Court may "declare the rights and legal relations" of these four named plaintiffs and Sears, not the rights and legal relations of more than 1,500,000 consumers who are not similarly situated.

---

base their legal claims on Sears' "marketing" of HE washers, and they do not allege they were exposed to or deceived by any Sears statement.  (*Id.* ¶¶ 1-233.)

[37] Sears' customer and service records indicate that Plaintiff Jarashow actually bought his HE washer on September 5, 2004, not in "November 2004" (Am. Compl. ¶ 59), so Plaintiff Jarashow's machine may have been two months beyond the two-year warranty period in November 2006, which is when he contacted Sears to correct the error code problem (*id.* ¶¶ 60-61).  Sears' records also indicate that Plaintiff L'Hommedieu's replacement control board actually was covered under the two-year parts warranty, so he may have paid only the labor, not parts, charges.  (*Id.* ¶ 71.)

Finally, Plaintiffs seek more than a mere declaration of rights and liabilities, but rather an injunction awarding money damages and establishing a corrective action program. (*See* Am. Compl. ¶ 233; *compare id. with Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn. 1999) (the plaintiffs' request for an injunction establishing a smoking cessation program was not really injunctive in nature, but a disguised request pre-payment of compensatory damages).) Injunctions, however, are inappropriate if an adequate remedy at law exists. *See Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 & n.6 (D.C. Cir. 2006) (action for declaratory relief seeking decree that defendant was liable, accompanied by injunction forcing reimbursement, could not be maintained where an award of damages would be adequate). Here, money damages would sufficiently compensate Plaintiffs for their injuries, if any. *Cf. id.*

## CONCLUSION

For all these reasons, Sears requests that the Court dismiss with prejudice Counts I–X, XII, and XIII of Plaintiffs' Amended Complaint.

Dated:  November 2, 2007                     Respectfully submitted,


                                             s/ Michael T. Williams
                                             Michael T. Williams

                                             Malcolm E. Wheeler
                                             Michael T. Williams
                                             Galen D. Bellamy
                                             Kara J. Rohe
                                             Wheeler Trigg Kennedy LLP
                                             1801 California Street, Suite 3600
                                             Denver, CO  80202-2617
                                             Telephone: (303) 244-1800
                                             Facsimile:  (303) 244-1879

                                             *and*

                                             Bradley B. Falkof
                                             Brad E. Rago
                                             Barnes & Thornburg LLP
                                             1 North Wacker Drive, Suite 4400
                                             Chicago, IL  60606

Telephone: (312) 214-8304
Facsimile:  (312) 759-5646

Peter W. Herzog III
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750
Telephone: (314) 259-2000
Facsimile:  (314) 259-2020

*Attorneys for Sears, Roebuck and Co.*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on November 2, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Tod N. Aronovitz**
  ta@aronovitzlaw.com
- **Galen D. Bellamy**
  bellamy@wtklaw.com
- **Eric C. Brunick**
  ericb@freedweiss.com
- **Richard J. Burke**
  rich@richardjburke.com,debs@richardjburke.com
- **Bradley B. Falkof**
  bfalkof@btlaw.com
- **Mark S. Fistos**
  msf@aronovitzlaw.com
- **Scott A. George**
  sgeorge@seegerweiss.com
- **Peter W. Herzog , III**
  pwherzog@bryancave.com,peggy.hoy@bryancave.com
- **Steven R. Jaffe**
  srj@aronovitzlaw.com
- **George K Lang**
  george@freedweiss.com
- **Brad Eric Rago**
  brad.rago@btlaw.com
- **Kara Jean Rohe**
  rohe@wtklaw.com
- **James J Rosemergy**
  jrosemergy@careydanis.com
- **Jonathan Shub**
  jshub@seegerweiss.com
- **Paul M. Weiss**
  paul@freedweiss.com,ECF@freedweiss.com,sherrie@freedweiss.com
- **Michael T. Williams**
  williams@wtklaw.com,wesson@wtklaw.com,kemezis@wtklaw.com

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Michael J Flannery
Carey & Danis, L.L.C.
8235 Forsyth Boulevard
Suite 1100
St. Louis, MO 63105

Malcolm Edward Wheeler
Wheeler Trigg Kennedy LLP
1801 California Street, Suite 3600
Denver, CO 80202

<div style="margin-left:40%">

_s/ Michael T. Williams by Elizabeth Anadale_
Michael T. Williams

Malcolm E. Wheeler
Michael T. Williams
Galen D. Bellamy
Kara J. Rohe
_Attorneys for Sears, Roebuck and Co._
Wheeler Trigg Kennedy LLP
1801 California Street, Suite 3600
Denver, CO  80202-2617
Telephone: (303) 244-1800
Facsimile:  (303) 244-1879

</div>

577776v.2