IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN MUNCH, LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES and VICTOR MATOS, individually and on behalf of all others similarly situated; | |
| Plaintiff, | No.:   06 C 7023 |
| v. | Honorable Joan H. Lefkow |
| Sears Roebuck & Co., | |
| Defendant. | |

| | |
|---|---|
| BRYAN SERATT, ALAN JARASHOW, DR. STEPHEN PAPALEO, LAUREN CRANE and LAWRENCE L'HOMMEDIEU, individually and on behalf of all others similarly situated; | |
| Plaintiff, | No.:   07 C 412 |
| v. | Honorable Joan H. Lefkow |
| Sears Roebuck & Co., | |
| Defendant. | |

## NOTICE OF FILING

To: All Counsel of Record:

PLEASE TAKE NOTICE that on January 11, 2008 we filed with the U.S. District Court for the Northern District of Illinois, Eastern Division, Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss Counts I-X, and XIII of Plaintiffs' Consolidated First Amended Complaint, copies of which are attached.

DATED:  January 11, 2008

Respectfully submitted,

**SUSAN MUNCH, LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES and VICTOR MATOS, and BRYAN SERATT, ALAN JARASHOW, DR. STEPHEN PAPALEO, LAUREN CRANE and LAWRENCE L'HOMMEDIEU Class Plaintiffs,**

By:___s/George K. Lang_____

One of Their Attorneys

Tod Aronovitz
Steven R. Jaffe
Mark S. Fistos
**ARONOVITZ JAFFE**
150 West Flager Street
Suite 2700-Museum Tower
Miami, FL  33130
(305) 372-2772
ta@aronovitzlaw.com
srj@aronovitzlaw.com
msf@aronovitzlaw.com

Paul M. Weiss
George K. Lang
Eric C. Brunick
Matthew Sheynes
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000
paul@freedweiss.com
george@freedweiss.com
ericb@freedweiss.com
matt@freedweiss.com

Richard J. Burke
**RICHARD J. BURKE, LLC**
1010 Market Street
Suite 650
St. Louis, MO  63101
(314) 621-8647
rich@richardjburke.com

Jonathan Shub
Scott Alan George
**SEEGER WEISS LLP**
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(215)  564-2300
jshub@seegerweiss.com
sgeorge@seegerweiss.com

Michael J. Flannery
James J. Rosemergy
**CAREY & DANIS, LLC**
8235 Forsyth Boulevard
Suite 1100
St. Louis, MO  63105
(314) 725-7700
mflannery@careydanis.com
jrosemergy@careydanis.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SUSAN MUNCH, LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES, and VICTOR MATOS, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 06-cv-7023 |
| and | Consolidated with 07-CV-0412 |
| BRYAN SERATT, ALAN JARASHOW, DR. STEPHEN PAPALEO, LAUREN CRANE, and LAWRENCE L'HOMMEDIEU, individually and on behalf of all others similarly situated, | Judge Joan H. Lefkow |
| Plaintiffs, | |
| v. | |
| SEARS, ROEBUCK AND CO., | |
| Defendant. | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-X, XII, AND XIII OF PLAINTIFFS' CONSOLIDATED FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................... 1

II. ARGUMENT ....................................................................... 2

   A. LEGAL STANDARDS ........................................................ 3

     1.  Rule 12(b)(6) .......................................................... 3

     2. Rule 9(b) ............................................................... 4

   B. PLAINTIFFS HAVE PLED WITH REQUISITE
     PARTICULARITY ........................................................... 6

     1. Plaintiffs Fully Allege the Elements of their Fraud-Based
       Claims ................................................................... 7

        a.  No affirmative misrepresentation is required .................. 8

        b.  Defendant had a duty to make disclosures to Plaintiffs ....... 10

        c.  Sears' fraud involved material facts ......................... 12

     2. Plaintiffs' Fully Allege the Existence of the Defects ........... 12

        a.  Recognized approaches to alleging a mechanical defect ........ 13

        b.   Plaintiffs fully describe the defects at issue in this case ... 16

   C. PLAINTIFFS HAVE STANDING TO SEEK
     RELIEF UNDER THE ICFA .................................................. 20

   D. PLAINTIFFS' CLAIMS UNDER THE CONSUMER LAWS OF
     OTHER  STATES ARE PROPERLY ALLEGED ................................. 21

     1. Indiana Law Condemns Defendant's Wrongdoing ................... 21

     2. California Law Condemns Defendant's Wrongdoing ................ 22

i

3.  Washington Law Condemns Defendant's Wrongdoing ............ 24

E.  PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE
    FULLY ARTICULATED ................................................................. 24

F.  DECLARATORY JUDGMENT IS NECESSARY TO MAKE
    PLAINTIFFS AND THE CLASS WHOLE ................................. 27

III. CONCLUSION .................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*2500 Lakeview Ass'n v. Euchem, Inc.,* 1997 WL 126857 (N.D. Ill., Mar.17 1997) ......... 9

*ADT Security Services, Inc. v. Hawa*, 2005 WL 2878161 (Tex.App. Nov. 3, 2005) ........ 27

*Alper v. Altheimer & Gray*, 257 F.3d (7th Cir.2001) .................. 27

*Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E. 2d 801 (Ill. 2005) ................. 20

*Bardin v. DaimlerChrysler Corporation* 136 Cal.App.4th 1255,
    39 Cal. Rptr. 634 (2006) ................................................................. 24

*Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007) ................... 3

*Berghausen v. Microsoft Corp.,* 765 N.E.2d 592 (Ill. App. 2002) ................. 22

*Billfish, Inc. v. Campbell*, 1999 WL 455014  (9th Cir. June 29, 1999) ............... 27

*Bison Media, Inc. v. KTSL, Inc.,* 115 Wash. App. 1045 (Wash Ct. App. 2003) ............... 25

*Brinkerhoff v. Campbell*, 99 Wash.App. 692  P.2d 911 (Wash.App. 2000) ............... 11

*Brown v. SBC Communs., Inc.,* 2007 WL 684133 (S.D. Ill., Mar. 1, 2007) ................. 3, 4

*Bryant v. Troutman*, 287 S.W.2d 918 (Ky 1956) ................... 11

*Chamberlan v. Ford Motor Co.,* 369 F. Supp.2d 1138 (N.D. Cal. 2005) ................ 17

*Cirone-Shadow v. Union Nissan*, 955 F. Supp. 938 (N.D. Ill. 1997) ................ 12

*City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.,* 736 S.W.2d 247
    (Tex.App.1987) ................................................................. 27

*Coca-Cola Foods Div. v. Almarc Packaging Co.,* 620 F.Supp. 966
    (N.D.Ill. 1985) ................................................................. 8, 10

*Connick v. Suzuki Motor Company, Ltd.,* 174 Ill. 2d 482 (1996) ................ 15, 16

*Cornick v. Hi Grade Cleaners, Inc.,* 595 F. Supp. 718 (N.D. Ill. 1984) ................ 13

*Coughler v. Fickler,* 510 S.W.2d 16 (Ky. 1974) ................... 27

*Daghlian v. DeVry Univ., Inc.,* 461 F.Supp.2d 1121 (C.D.Cal. 2006) ........................ 9

*David K. Lindemuth Co. v. Shannon Financial Corp.,*
    637 F.Supp. 991 (N.D. Cal. 1986) ........................................................ 5

*Day v. AT&T Corporation et al.,* 63 Cal.App.4th 325 ........................................ 25

*Dickson v. Chicago Allied Warehouses,* 1991 WL 60571
    (N.D. Ill., Apr. 15, 1991) ............................................................ 4, 13

*Dix v. American Bankers Life Assur. Co. of Florida,*
    415 N.W.2d 206 (Mich. 1987) ........................................................ 9, 22

*E.E.O.C. v. Concentra Health Servs.,* 496 F.3d 773 (7th Cir. 2007) ........................ 3

*Elliott Graphics, Inc. v. Stein,* 660 F. Supp. 378 (N.D. Ill. 1987) ........................ 4, 5

*Emergency Care and Health Organization, Ltd. v. Trinity Med. Ctr.,*
    2001 WL 34142437 (Ill. App. 3rd Dist. Dec. 12, 2001) ........................ 26

*Falk v. GMC,* 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................ 5

*Frymire v. Peat, Marwick, Mitchell & Co.,* 657 F.Supp. 889 (N.D. Ill. 1987) ............ 13

*Fujisawa Pharmaceutical Co., Ltd.* v. Kapoor, 814 F. Supp. 720 (N.D. Ill. 1993) ........ 5

*Gelco v. Duval,* 2002 WL 31875537 (N.D. Ill, Dec. 26,.2002) ........................ 4, 6

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074 (7th Cir. 1997) ...... 3

*Gerber v. First Horizon Home Loans Corp.,*
    2006 WL 581082 (W.D.Wa., March 08, 2006) ........................................ 27

*Gershengorin v. Vienna Beef, Ltd.,* 2007 WL 2840476 (N.D. Ill., Sep. 28, 2007) ........ 4

*Glen Holly Entertainment, Inc. v. Tektronix Inc.,* 343 F.3d 1000 (9th Cir. 2003) ........ 24

*Groening v. Opsata,* 34 N.W.2d 560 (Mich. 1948) ........................................ 11

*Hamilton v. York, 987 F.Supp.* 953 (E.D.Ky 1997) ........................................ 9

*Heastie v. Community Bank of Greater Peoria,* 690 F. Supp. 716 (N.D. Ill. 1988) ........ 12

*Henness v. Hunt,* 272 A.D.2d 756 N.Y.S.2d 180 (N.Y.A.D. 3 Dept. 2000) ................ 27

*Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.,*
   167 F.3d 1170 (7th Cir. 1999) ................................................................................3

*Hot Wax v. Grace-Lee Prods.,* 1998 WL 664945 (N.D. Ill., Sep. 15, 1998) ......................5

*IFC Credit Corp. v. Aliano Bros. Gen. Contractors,*
   2007 WL 164603 (N.D.Ill. Jan 12, 2007) ..............................................................21

*In the Matter of Cliffdale Assocs., Inc.,* 103 F.T.C. 110 (1984) ...............................8, 12

*Indiana Bank & Trust Co. v. Perry.* 467 N.E.2d 428 (Ind. App. 1984) .......................11

*IRN Payment Sys. v. Direct Furniture, LLC,*
   2007 WL 2713366  (N.D. Ill., Sep. 12, 2007) .......................................................10

*Kaplan v. Shure Bros, Inc.,* 266 F.3d 598 (7th Cir. 2001) ......................................21

*Kyle v. Morton High School,* 144 F.3d 448 (7th Cir. 1998) .......................................3

*Lefebvre Intergraphics v. Sanden Mach.,* 946 F. Supp. 1358 (N.D. Ill. 1996) ..............10

*Levine v. Prudential Bache Properties, Inc.,* 855 F. Supp. 924 (N.D. Ill. 1994) ............5

*Lipinski v. Martin J. Kelly Oldsmobile, Inc.,*
   325 Ill. App. 3d 1139 (Ill. App. Ct. 2001) ...........................6, 7, 10, 13, 14, 15, 19

*M.H. v. Caritas Family Servs.,* 488 N.W.2d 282 (Minn.1992) ..................................11

*Marathon Petroleum Co. v. 23 & Romeo Station Corp.,* 2006 WL 2521438
   (E.D. Mich. Aug. 30, 2006) ...............................................................................27

*Mercantile Capital Partners v. Agenzia Sports, Inc.,* 2005 WL 351926
   (N.D. Ill., Feb. 11, 2005) ..................................................................................10

*Midcoast Aviation, Inc. v. General Elec. Credit Corp.,* 907 F.2d 732 (7th Cir. 1990) .....26

*Miller v. GM,* 1999 U.S. Dist. LEXIS 7119 (N.D. Ill. 1999) ...................................6, 9

*Minnesota ex rel. Hatch v. Fleet Mortg. Corp.,* 158 F.Supp.2d 962 (D.Minn. 2001) ........9

*Muehlbauer v. GMC,* 431 F. Supp. 2d 847 (N.D. Ill. 2006) ......................4, 6, 16, 23, 26

*Nguyen v. Doak Homes, Inc.,* 167 P.3d 1162 (Wash.App. 2007) .................................9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
   647 N.E.2d 741 (N.Y. 1995) ...............................................................................9

*Pappas v. Pella Corp.*, 363 Ill. App. 3d 795 (Ill. App. Ct. 2006) ................................. 7

*Pavicich v. Santucci*, 85 Cal.App.4th 382 Cal.Rptr.2d 125 (Cal.App. 6 Dist. 2000) ........ 11

*Payne v. Wood*, 1995 WL 461786 (Mich. 1995) ............................................. 27

*Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943 (1st Dist. 1998) ........................... 26

*Peerless Strand v. Librascope, Inc.*, 197 F.Supp. 743 (E.D.Mich. 1961) ..................... 11

*Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59 (1997) ............... 7, 12, 14, 15

*Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268 (M.D. Ala. 1999) ............................. 6

*Petri v. Gatlin*, 997 F. Supp. 956 (N.D. Ill. 1997) ........................................ 5

*Playboy Enterprises, Inc. v. Editorial Caballero, S.A. de C.V.*,
    202 S.W.3d 250 (Tex.App. 2006) ..................................................... 11

*Podolsky v. First Helathcare Corp.*, 50 Cal.App.4th 632 (1996) ............................ 25

*Portillo v. Georgie Boy Mfg.*, 2005 WL 2787211 (N.D. Ill., Oct. 26, 2005) .................. 6

*Powell v. McCormick*, 395 U.S. 486 (1969) ............................................. 28

*Prince-Servance v. BankUnited,* 2007 WL 32544332 (N.D. Ill., Nov. 1, 2007) ............. 3, 4

*QuikPac, Inc. v. Reynolds-Freeborn Co*,
    2005 WL 1939996  (S.D.Ind. July 18, 2005) ......................................... 27

*Reshal Assoc., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226 (N.D. Ill. 1990) ........ 4

*Richards v. Delta Airlines, Inc.*, 453 F.3d 525 (D.C.Cir. 2006) ............................ 28

*Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144 Cal.Rptr.2d 439
    (Cal.App.1.Dist. 2000) ......................................................... 24, 25

*Smith v. General Motors Corp.*, 979 S.W.2d 127 (Ky.App.1998) ........................... 11

*Special Force Ministries v. WCCO Television*, 584 N.W.2d 789 (Minn. App. 1998) ....... 11

*Strawn v. Canuso*, 638 A.2d 141 (N.J.Super.App. Div.1994) .............................. 11

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*,
    933 F.Supp. 918 (C.D. Cal. 1996) ................................................... 24

*Swersky v. Dreyer & Traub*, 219 A.D.2d 321 N.Y.S.2d 33 (1996) ....................................11

*Systems Research, Inc. v. Random, Inc*., 614 F. Supp. 494 (N.D. Ill. 1985 ....................6

*Thompson v. IFA, Inc.,* 181 Ill. App. 3d 293 (1989) ....................................12

*Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Group, Inc*.,
    2006 WL 2788369 (D.N.J. Sep. 27, 2006) ....................................27

*Tomera v. Galt*, 511 F.2d 504 (7th Cir. 1975) ....................................4, 13

*Towers Financial Corp. v. Solomon,* 126 F.R.D. 531 (N.D. Ill. 1989) ....................4

*United States v. Baxter Int'l, Inc*., 345 F.3d 866 (11th Cir. 2003) ....................6

*Vargas v. Universal Mortg. Corp.,* 2001 WL 550845 (N.D. Ill., May 21, 2001) ..........8

*Vielbig v. USA Janitorial, Inc*., 2001 WL 50890 (Minn.App. January 23, 2001) ..........27

*Warner Constr. Corp. v. City of Los Angeles,* 466 P.2d 996 ....................................23

*Washington Courte Condominium Ass'n v. Washington-Golf Corp.,*
    267 Ill. App. 3d 790 (1st Dist. 1994) ....................................9

*Washington v. Baenziger,* 673 F.Supp. 1478 (N.D. Cal. 1987) ....................................5

*Whirlpool Fin. Corp. v. GN Holdings, Inc.,* 873 F. Supp. 111 (N.D. Ill. 1995) ..........3, 5

*White v. Daimler Chrysler Corp*., 368 Ill. App. 3d 278 (Ill. App. Ct. 2006) ..............18

*Wolff v. Ampacet Corp.,* 284 Ill. App. 3d 824 (1st Dist. 1996) ....................................27

## Statutes and Rules

815 ILCS 505/2 ....................................6, 7, 8

Bus. & Prof. Code 17500 *et seq*. ....................................23

Cal. Civ. Code 1750 *et seq*. ....................................23

Fed. R. Civ. P. 9 ....................................Passing

Fed. R. Civ. P. 12 ....................................5

Ind.Code § 24-5-0.5-1 ................................................................................ 22

Mich. Comp. Laws Ann. § 2245.903(cc) ..................................................... 22

N.J.S.A. 56:8-2 ............................................................................................. 9

## Treatises

*Moore's Federal Practice - Civil* §9.03 ...................................................... 4

Plaintiffs Susan Munch, Larry Butler, Joseph Leonard. Kevin Barnes, Vistor Matos, Bryan Seratt, Alan Jarashow, Dr. Stephen Papaleo, Lauren Crane, and Lawrence L'Hommedieu ("Plaintiffs"), through their attorneys, hereby oppose the Motion to Dismiss Counts I-X, XII and XIII of Plaintiffs' Consolidated First Amended Class Action Complaint ("Motion to Dismiss") by Defendant Sears Roebuck and Co. ("Defendant" or "Sears"), and in support state:

## I.  **INTRODUCTION**

Plaintiffs purchased defective HE Series front-load washing machines ("Machines" or "HE Series Washing Machines") and have sued Sears for economic injuries they and a host of other consumers have suffered.  In Plaintiffs' original complaints and even more so in Plaintiffs' current Consolidated First Amended Class Action Complaint ("Complaint"), Plaintiffs detail the defects of the machines they purchased, that were similar, if not identical, to those of other class members: For years, consumers' HE Series Washing Machines have been plagued by repeated Central Control Unit ("CCU") failure and mold and mildew infestation due to a common drainage failure. Contrary to Sears' contention, these two defects at issue in this case are very clearly defined and Sears knew about them.[1]   Indeed, not only did Sears know about these

---

[1] As summarized in the Complaint at paragraph 20:

> The Kenmore HE Series Washing Machines suffer from electronic control board failure which manifests itself in a variety of ways including, but not limited to, premature and repeated mechanical failure; stopping or not starting; the door remaining locked; and displaying a variety of error codes such as F11 and FdL.  The Kenmore HE Series Washing Machines also suffer from water drainage failure, especially the door seal, which manifests itself in a variety of ways including, but not limited to clothes not being cleaned properly (including clothes being stained); foul odors; and mold and mildew growing in the machines.  Consequently, the

persistent defects, Sears actively concealed them while continuing to tout its machines to class members as effective and durable.  As tens of thousands of Machine failures accumulated around the country, Sears has sought to deflect blame from itself and has instead placed blame on its customers' purported misuse of soap, water issues or other conduct.  Plaintiffs' allegations, however, make it clear that the blame for these defects properly rests with Sears.  Class members often paid in excess of $1,000 for their Sears machines, which no reasonable consumer in Plaintiffs' position would do had Sears revealed the truth about their highly problematic machines.

In the Court's August 27, 2007, Memorandum Opinion and Order on Defendant's previous motion to dismiss ("MTD Order"), the Court determined that Plaintiffs adequately plead claims for breach of implied warranty, and permitted limited discovery on that claim.  As to the remaining counts, the Court granted Plaintiffs leave to amend to describe more fully (as best they could with very limited or no formal discovery into the nature of the defects) either the nature of the defect in the Machines or the basis for the claim that the Machines were failing at an excessive rate. (MTD Order at 5-6)  Plaintiffs have done so in their Complaint.  Defendant has now filed yet another Motion to Dismiss, essentially rehashing its previous arguments that Plaintiffs lack standing, fail to state a claim under Rule 12(b)(6) and fail to meet the particularity requirements of Rule 9(b) for their fraud-based claims. ("Def. Mem.")   Defendant's rehashed arguments are

---

machines otherwise do not perform as durable and dependable washing machines.  The Kenmore HE Series Washing Machines as designed do not perform in accordance either with the representations made by Sears or the reasonable expectations of Plaintiffs and class members.

Contrary to Defendant's contention, the two defects at issue in this case are very clearly defined:  CCU and water drainage failures.

2

wholly unavailing when considered in light of the new allegations in the Complaint. Plaintiffs have met or exceeded all relevant pleading standards with their Complaint. Sears' Motion to Dismiss should be rejected unequivocally.

## II. ARGUMENT

### A.  LEGAL STANDARDS

### 1.  Rule 12(b)(6)

"A motion to dismiss under Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the complaint for failure to state a claim upon which relief may be granted." (MTD Order at 3) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp*., 128 F.3d 1074, 1080 (7th Cir. 1997)  "When evaluating a Rule 12(b)(6) motion, a court must accept as true all factual allegations in a complaint and draw all reasonable inferences in a plaintiff's favor."[2] *Brown v. SBC Communs., Inc*., 2007 WL 684133 *1 (S.D. Ill., Mar. 1, 2007) (citing *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch*., 167 F.3d 1170, 1173 (7th Cir. 1999)).  To satisfy 12(b)(6), a "[p]laintiff need only allege the 'operative facts' upon which each claim is based, *Prince-Servance v. BankUnited*, 2007 WL 32544332 *3 (N.D. Ill., Nov. 1, 2007) (citing *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998)), and include allegations in the complaint that 'plausibly suggest that the plaintiff has a right to relief.'" *Prince-Servance*  (quoting *E.E.O.C. v. Concentra Health Servs*., 496 F.3d 773 (7th Cir. 2007) (quoting in part *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007)).

---

[2]     Indeed, both Rule 9(b) *and* Rule 12(b)(6) require this Court to accept as true all of Plaintiffs' well-pleaded factual allegations, drawing all reasonable inferences in its favor. *Whirlpool Fin. Corp. v. GN Holdings*, Inc., 873 F. Supp. 111, 114 (N.D. Ill. 1995).

### 2. Rule 9(b)

Plaintiffs bring claims based on statutory and common law fraud, and unjust enrichment which the Court has determined are subject to Fed.R.Civ.P. 9(b).  "Rule 9(b) requires that the circumstances constituting fraud must be stated with particularity." 2-9 Moore's Federal Practice - Civil § 9.03.  However, Rule 9(b) does not require that a plaintiff plead evidentiary facts. *Towers Financial Corp. v. Solomon*, 126 F.R.D. 531, 535 (N.D. Ill. 1989).  The particularity requirement of Rule 9(b) *must be read together with* the liberal notice pleading standard of Rule 8, which requires only a short and plain statement of a plaintiff's claim. *Brown v. SBC Communs.*, 2007 WL 684133; *Prince-Servance*, 2007 WL 3254432 (citing *Tomera v. Galt*, 511 F.2d 504 (7th Cir. 1975); *Dickson v. Chicago Allied Warehouses*, 1991 WL 60571 * 2 (N.D. Ill., Apr. 15, 1991) ("particularity requirement set forth in Rule 9(b) must be tempered by the principle of notice pleading in Rule 8") (citations omitted)   "When Rule 9 is read in conjunction with Rule 8, a plaintiff is required to plead only 'slightly more' than is demanded under ordinary notice pleading." *Brown*, 2007 WL 684133 *3 (citing *Tomera*, 511 F.2d 504).

Moreover, Rule 9(b) is not to be read superficially, but should be applied in order to effectuate the Rule's underlying primary purpose which is primarily to ensure that defendants are apprised of the claimed fraud in a manner sufficient to permit adequate responsive pleadings.[3] *Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 860 (N.D. Ill. 2006)

---

[3]      "Fair notice is the most basic consideration" of Rule 9(b). *Gershengorin v. Vienna Beef, Ltd.*, 2007 WL 2840476 *2 (N.D. Ill., Sep. 28, 2007) (citations omitted); *Prince-Servance*, 2007 WL 3254432 (citing *Reshal Assoc., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990); *Elliott Graphics, Inc. v. Stein*, 660 F. Supp. 378, 380 (N.D. Ill. 1987); *Gelco v. Duval*, 2002 WL 31875537 *6 (N.D. Ill, Dec. 26,.2002) (citing *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993); *Petri v. Gatlin*, 997 F. Supp. 956, 975 (N.D. Ill. 1997) ("[U]nder Rule 9(b)

("Rule 9(b) requires that averments of fraud be made with specific detail, including the who, what, when, where, and how of the specific misconduct, *so the defendant may defend the charges and not merely deny them*.") (emphasis added); *Levine v. Prudential Bache Properties, Inc*., 855 F. Supp. 924, 931 (N.D. Ill. 1994) ("[A] complaint does not run afoul of Rule 9(b) if the defendants can make enough sense of it so that they may mount an answer or defense.") (citation omitted).

Likewise, even though Rule 9(b) requires specificity, plaintiffs are not expected to specify the exact time and particular place of each misrepresentation or omission when there are as here multiple transactions occurring over time. *Elliott Graphics, Inc. v. Stein*, 660 F. Supp. 378, 380 (N.D. Ill. 1987).  The specificity threshold will turn on the facts and circumstances of each case. "Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. GMC*, 496 F. Supp. 2d 1088, 1098-1099 (N.D. Cal. 2007) (citing *Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987) and *David K. Lindemuth Co. v. Shannon Financial Corp*., 637 F.Supp. 991, 995 (N.D. Cal. 1986)).  "Rule 9(b)'s requirement of pleading with particularity also

---

'perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading."); *Whirlpool Fin. Corp. v. GN Holdings, Inc*., 873 F. Supp. 111, 119 (N.D. Ill. 1995) (stressing that the provision of adequate notice to an adverse party is "one of the Rule's core purposes"), *aff'd*, 67 F.3d 605 (7th Cir. 1995). Other purposes of Rule 9(b) some courts have referred to which are not at issue here are to eliminate the filing of conclusory complaints as a pretext for detecting additional wrongs; and to shield defendants from unfounded fraud charges that might injure their reputations. *Hot Wax v. Grace-Lee Prods*., 1998 WL 664945 (N.D. Ill., Sep. 15, 1998) (finding that complaint provided sufficient information to satisfy the purposes of Rule 9(b) although it did not indicate where and when the alleged misrepresentations occurred).

is relaxed if 'the information that is required to plead rests exclusively within the defendants' control, or is otherwise unavailable to him.'" *Gelco*, 2002 WL 31875537 [no pinpoint] (citation omitted); *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881-882 (11th Cir. 2003) (citing *Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268, 1284-85 (M.D. Ala. 1999)).

## B.  PLAINTIFFS HAVE PLED WITH REQUISITE PARTICULARITY

In light of the forgoing standards, Plaintiffs' allegations relating to statutory deceptive trade practices based on Defendant's omissions of material facts (Counts I-IX), common law fraud by omission (Count X) and unjust enrichment based on Sears' deceptive conduct (Count XII)[4] clearly meet the requirements of Rule 9(b).  In its MTD Order, the Court applied Rule 9(b) to Plaintiffs' factual allegations in light of Plaintiffs' Count I (violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2) and then generalized from that discussion to Plaintiffs' other Counts subject to Rule 9(b) analysis (Counts X and XII). (MTD Order at n. 4, 13).  That approach is taken here.[5]

---

[4]     *See Systems Research, Inc. v. Random, Inc.*, 614 F. Supp. 494 (N.D. Ill. 1985) (applying  Rule 9(b) within the context of  elements of alleged claims).

[5]     This approach makes sense because of elements of these claims to a certain degree overlap and Plaintiffs have incorporated their ICFA allegations into their other Counts. "Like the common law [fraud], [the ICFA] prohibits deception, misrepresentation, or the concealment, suppression, or omission of any material fact, intending that others rely thereon in a business transaction." *Portillo v. Georgie Boy Mfg.*, 2005 WL 2787211 (N.D. Ill., Oct. 26, 2005) (citation omitted).  Like common law fraud by omission, actual reliance is not required to state a claim under the ICFA. *Miller v. GM*, 1999 U.S. Dist. LEXIS 7119 (N.D. Ill. 1999) (no reliance for fraud by omission claims); *Lipinski*, 325 Ill. App. 3d at 1145 (ICFA requires no reliance).  However, the ICFA provides broader protection to consumers than a common-law fraud claim. *Portillo*. "[T]he statute does not require that the plaintiff show that he or she was actually damaged, misled, or deceived by the defendant's actions." *Id*  Also, as the Court noted in its MTD Order, because Plaintiffs' unjust enrichment claims are based on alleged deceptive or fraudulent acts, the specificity required for allegations about those acts

### 1.   Plaintiffs Fully Allege the Elements of their Fraud-Based Claims

To state a claim under the Illinois Consumer Fraud Act ("ICFA"), "a complaint must set forth specific facts that show (1) a deceptive act or practice by the defendant;[6] (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving a trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury." *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 325 Ill. App. 3d 1139, 1145 (Ill. App. Ct. 2001) (quoting *Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59, 65 (1997) (citation omitted). The omission or concealment of a material fact in the conduct of trade or commerce constitutes deception in violation of Section 2 of the ICFA.[7] *Perona*, 292 Ill.App.3d at 67.  In construing

---

would be the same for Rule 9(b) purposes. (MTD Order at 12-13).  The upshot: if Plaintiffs have adequately pled their ICFA claims and underlying facts to satisfy Rule 9(b), they have done so for their claims based on state deceptive trade practice statutes, common law fraud by omission and unjust enrichment.

[6]   Unjust enrichment claims are likewise based on the defendant's misconduct rather than the plaintiff's reaction to that conduct. *See Muehlbauer* , 431 F. Supp. 2d at 852 (defendant's conduct is primary focus of unjust enrichment analysis).

[7]   Section 815 ILCS 505/2 of the ICFA provides, in pertinent part:

> *Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to* the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or *the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact*, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce *are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby*.

(emphasis added).   "An omission need not concern potential bodily harm. The [ICFA] provides remedies for omissions resulting in purely economic injury." *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 802 (Ill. App. Ct. 2006) (citations omitted).

Section 2, "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission ["FTC"] Act [15 U.S.C. § 45]." 815 ILCS 505/2; *accord In the Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 165 (1984) (deception occurs under the FTC Act when there is an omission likely to mislead consumers acting reasonably under the circumstances, and  the omitted information is material).  Additionally, for their claims based on common law fraudulent concealment, Plaintiffs need establish that Defendant had a duty to disclose.  *See Coca-Cola Foods Div. v. Olmarc Packaging Co.*, 620 F.Supp. 966, 973 (N.D.Ill. 1985).

Sears alleges three legal deficiencies to Plaintiffs' complaint regarding particularity: (1) failure to state a material omissions case because they don't plead some affirmative representation; (2) failure to plead facts demonstrating Sears concealed anything material; and (3) failure to allege that Sears had a duty to disclose material facts. (Def. Mem. at 15, 17-18, 30-32).  Sears misinterprets the legal standards relating to each of these propositions and overlooks the plain allegations of the Complaint.

### a.    No affirmative misrepresentation is required

Sears is flat out wrong that an affirmative misrepresentation is a prerequisite to stating a case for consumer fraud.  The ICFA prohibits the "misrepresentation *or* the concealment, suppression *or* omission of any material fact" in the conduct of trade or commerce. 815 ILCS 505/2 (emphasis added). 815 ILCS 505/2. Based on the plain meaning of Section 2 the ICFA, "[a]n omission or concealment of a material fact can violate the ICFA as well as a misrepresentation." *Vargas v. Universal Mortg. Corp.*, 2001 WL 550845 *3 (N.D. Ill., May 21, 2001).  This is also true for a case of common law

fraud by omission. *Miller*, 1999 U.S. Dist. LEXIS 7119; *2500 Lakeview Ass'n v. Euchem, Inc.*, 1997 WL 126857 *1 (N.D. Ill., Mar.17 1997) (quoting *Washington Courte Condominium Ass'n v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 814-15 (1st Dist. 1994)).  Affirmative misrepresentations are not required to be pled in a fraud by omission case. *Miller*, 1999 U.S.Dist. LEXIS 7119.  Thus, Plaintiffs need not specify any affirmative representation to state a case for consumer fraud.[8]

Not only is Defendant's legal analysis flawed, but its argument ignores the allegations of the Complaint.  Defendant's active concealment includes not only the failure to disclose the excessive calls relating to machine failures and its knowledge of the defect but also its active deception and misrepresentations relating to blaming the purchaser's, their choice of soap, the quality of their water or other extraneous matters for the failure of the Machines.[9]  Indeed, contrary to Defendant's argument, it made affirmative conduct and representations regarding the qualities of the Machines that were part and parcel of its efforts to conceal the known defects, and further profited from its concealment by peddling extended warranties.[10]

---

[8]     Other jurisdictions implicated by the Complaint are fully in accord.  *See e.g. Daghlian v. DeVry Univ., Inc.*, 461 F.Supp.2d 1121, 1156 (C.D.Cal. 2006); *Dix v. American Bankers Life Assur. Co. of Florida*, 415 N.W.2d 206, 207 n.3 (Mich. 1987); *Minnesota ex rel. Hatch v. Fleet Mortg. Corp.*, 158 F.Supp.2d 962, 967 (D.Minn. 2001); N.J.S.A. 56:8-2 ("The knowing concealment, suppression, or omission of any material fact . . . is declared to be an unlawful practice"); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995); *Nguyen v. Doak Homes, Inc.*, 167 P.3d 1162, 116 (Wash.App. 2007); *cf. Hamilton v. York*, 987 F.Supp. 953, 958 (E.D.Ky 1997) (recognizing action for failure to disclose interest rates in consumer trasnsaction).  Indiana is the one jurisdiction that differs slightly on a consumer deception action based, at least in part, on concealment, and is discussed individually *infra*.

[9]     Complaint at ¶¶ 20-22, 25-26, 28, 86.

[10]     *Id.* at ¶ 33-35, 27

### b.      Defendant had a duty to make disclosures to Plaintiffs

Sears also misconstrues the law on duties to disclose.  It is not necessary to plead a common law duty to disclose under the ICFA. *Lipinski*, 325 Ill. App. 3d  at 1145.  Sears accurately states a duty must be pled for common law fraud by omission claims.  But, Sears misstates that such a duty only arises from a fiduciary relationship. (Def. Mem. at 30-32)   For common law fraud by omission claims (Count X in this case), a plaintiff may plead a duty owed by a defendant, which can be shown circumstantially in one of *two* ways, either: (1) as Sears contends, when the defendant owes some fiduciary duty to the plaintiff to make full and fair disclosure and fails to correct a misapprehension of a material fact; *or* (2) though ignored by Sears, when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension. *Coca-Cola Co. Foods Div. v. Olmarc Packaging Co*., 620 F. Supp. 966, 973 (N.D. Ill. 1985). "With respect to the second circumstance, Illinois courts have held that 'while silence in a business transaction does not necessarily amount to fraud, [when] silence [is] accompanied by deceptive conduct or suppression of material facts results in active concealment  . . . it then becomes the duty of the person to speak.'" *Lefebvre Intergraphics v. Sanden Mach*., 946 F. Supp. 1358, 1367 (N.D. Ill. 1996) (internal citations omitted) (emphasis added); *see IRN Payment Sys. v. Direct Furniture, LLC*, 2007 WL 2713366 * 4 (N.D. Ill., Sep. 12, 2007) (duty found despite no fiduciary relationship) (citing *Lefebvre*, 946 F.Supp. 1356); *Mercantile Capital Partners v. Agenzia Sports, Inc*., 2005 WL 351926 (N.D. Ill., Feb. 11, 2005) (same). [11]  As set out

---

[11]      The other jurisdictions raised by Defendant are in accord.  *See Pavicich v. Santucci*, 85 Cal.App.4th 382, 398, 102 Cal.Rptr.2d 125, 137 (Cal.App. 6 Dist. 2000) (California law) ("where one does speak he must speak the whole truth to the end that he

below, the heart of Plaintiffs' case is Sears' active suppression of the defects while

making deceptive representations about the Machines.[12]  Sears' superior position and

knowledge of the problems confirms that it had a duty to be candid with Plaintiffs and the

class, and not seek to take further advantage of them.

---

does not conceal any facts which materially qualify those stated. One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud"); *Indiana Bank & Trust Co. v. Perry*. 467 N.E.2d 428, 431 (Ind. App. 1984) (Indiana law) (once a party undertook "to disclose facts within his knowledge, he [had to] disclose the whole truth without concealing material facts...."); *Smith v. General Motors Corp.*, 979 S.W.2d 127, 128 (Ky.App.1998) (Kentucky law) ("A duty to disclose may arise . . . from a partial disclosure of information, or from particular circumstances such as where one party to a contract has superior knowledge and is relied upon to disclose same") (citing *Bryant v. Troutman*, 287 S.W.2d 918 (Ky 1956);  *Peerless Strand v. Librascope, Inc.*, 197 F.Supp. 743 (E.D.Mich. 1961) (Michigan law) ("even without a fiduciary relationship, a party is under a duty to use diligence in making a complete disclosure of facts where partial disclosure may convey false impressions and mislead the plaintiff. Such half-truths or non-disclosures are considered to be concealment of facts and, therefore, misrepresentations") (citing *Groening v. Opsata*, 34 N.W.2d 560 (Mich. 1948)); *Special Force Ministries v. WCCO Television*, 584 N.W.2d 789, 792 (Minn. App. 1998) (Minnesota law) ("a duty is imposed when disclosure is 'necessary to clarify information already disclosed, which would otherwise be misleading.'") (citing *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 288 (Minn.1992)); *Strawn v. Canuso*, 638 A.2d 141, 149 (N.J.Super.App. Div.1994) (New Jersey law) ("There is yet another reason supporting the finding of a duty to disclose in this case. Even where no duty to speak exists, one who elects to speak must tell the truth when it is apparent that another may reasonably rely on the statements made"); *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 327-328, 643 N.Y.S.2d 33 (1996) (New York law) ("a duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair") (quotations omitted); *Playboy Enterprises, Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 260 (Tex.App. 2006) (Texas law) ("a duty to speak may arise in an arms-length transaction in at least three other situations: (1) when one voluntarily discloses information, he has a duty to disclose the whole truth; . . . and (3) when one makes a partial disclosure and conveys a false impression, he has the duty to speak"); *Brinkerhoff v. Campbell*, 99 Wash.App. 692, 698, 994 P.2d 911 (Wash.App. 2000) (Washington law) ("An affirmative duty to disclose can arise . . . where one party is relying upon the superior specialized knowledge and experience of the other; where a seller has knowledge of a material fact not easily discoverable by the buyer.")

[12]       *See e.g.* Complaint at ¶ 33.

### c.   Sears' fraud involved material facts

Finally, even though Sears argues Plaintiffs allege immaterial facts, it avoids discussing the legal standards of materiality relating to consumer fraud.  The standard for materiality for consumer fraud claims is an objective standard, which is to be decided by the trier of fact, not on a motion to dismiss as Sears would have it. *Cirone-Shadow v. Union Nissan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997); *Thompson v. IFA, Inc.*, 181 Ill. App. 3d 293 (1989).  "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be expected to rely in making a decision [regarding] whether to purchase the product." *Perona*, 292 Ill. App. 3d at 67-68; *see Heastie v. Community Bank of Greater Peoria*, 690 F. Supp. 716, 719 (N.D. Ill. 1988).  Accordingly, omitted facts are material typically if they pertain to the central characteristics of the product or service, or where the omitted fact "concerns the purpose, safety, efficacy, or cost of the product or service. . .or if it concerns durability, performance, warranties or quality." *In Re Cliffdale Assoc., Inc.*, 103 F.T.C. at 190 (1982) (appending 1983 Federal Trade Commission Policy Statement on Deception).  Again, as detailed below, the focus of  Plaintiffs' Complaint is that Sears allegedly failed to disclose material facts about defects in its Machines which from a consumer's perspective directly and unarguably reflect upon the Machines' efficacy, purpose, durability and warranty.  Materiality is alleged in Plaintiffs' Complaint.

### 2.  Plaintiffs' Fully Allege the Existence of the Defects

In support of its renewed Motion, Sears again attempts to impose a requirement that Plaintiffs provide a complete explanation of the technical mechanisms and causes of the

defects encountered by consumers or the basis for the experience of Defendant's consumers that the Machines were subject to an excessive rate of failure. This has not been required by this or any other court – such proofs are a matter of discovery. Indeed, Plaintiffs' allegations measure up against any of the established cases analyzing the adequacy of allegations of a mechanical defect in cases of consumer fraud.

### a.  Recognized approaches to alleging a mechanical defect

When a plaintiff has generally not yet had access to discovery, a sketch of the claim may only be required in order to satisfy Rule 9(b). *Dickson v. Chicago Allied Warehouses*, 1991 WL 60571 *3 (N.D. Ill., Apr. 15, 1991) (citing *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F.Supp. 889, 894 (N.D. Ill. 1987). As the Court found in its Order on the initial Motion to Dismiss, Plaintiffs will likely not be able to fully uncover a specific defect at this stage (prior to formal discovery) "merely by examining their particular machines." *Id.* at p. 5. The details concerning the technical and mechanical aspects of the defects Plaintiffs describe in their Complaint must thus be acquired through discovery. *See Cornick v. Hi Grade Cleaners, Inc.*, 595 F. Supp. 718, 721 (N.D. Ill. 1984) (citing *Tomera*, 511 F.2d at 509). One need look no further than three leading cases on pleading consumer fraud in Illinois to confirm that Plaintiffs have exceeded any governing standard.

The putative class representative in *Lipinski*, 325 Ill. App. 3d 1139, alleged a defect in his motor vehicle engine which the manufacturer, General Motors, had known about and concealed from purchasers. The *Lipinski* court noted that ICFA allegations "'must be pled with the same particularity and specificity' required in common law fraud

claims." *Id.* at 1145 (quotation omitted).  The court summarized the *Lipinski* plaintiff's

factual allegations as follows:

> Plaintiff alleged that his car was defective because it had an excessive risk
> of oil migration into the PCV [positive crankcase ventilation system]
> system . . . resulting in excessive oil consumption and severe damage to
> the engine from insufficient oil. Plaintiff alleged that the engine in his car
> failed as a result of the defect. Plaintiff alleged that defendants knew that
> plaintiff's car had "the above described tendency for excessive oil
> consumption which causes severe damage to the engine in ordinary use" . .
> . that they failed to disclose to plaintiff the Cutlass's tendency to consume
> excessive amounts of oil in ordinary use and that the defect causes severe
> engine damage; and that the omission was made with intent and in such
> manner that plaintiff and the members of the class relied on the omission.
> Plaintiff stated that he would not have purchased the car if he had known
> of this tendency and that he suffered damages for the cost of replacing the
> engine and for the diminution in the value of the car.

*Id.* at 1143.

Importantly, the plaintiff in *Lipinski* did not attempt to identify specifically

what part(s) or other causes allowed the oil to leak into the inappropriate regions

of the engine. The court found "plaintiff's use of the term 'tendency' to describe

the defect, as in 'tendency to consume excessive amounts of oil' [wa]s sufficient

to allege that a defect existed." *Id.* at 1147.  "Whether the engine failed *as a result

of* [i.e.-caused] the alleged excessive oil consumption defect [wa]s for the trier of

fact to determine." *Id.* at 1148 (emphasis added).

Like *Lipinski*, the putative class representatives in *Perona*, 292 Ill.App.3d 59,

alleged a common defect and concealment of related material facts which constituted

consumer fraud.  The lower court in *Perona* erroneously dismissed the plaintiffs'

consumer fraud count for failure to plead with sufficient specificity. *Id.* at 65.  The

plaintiffs in *Perona* alleged that the defendant manufacturer, Audi, had knowledge that

certain motor vehicles "had a tendency to accelerate unintentionally." *Id.* at 68.  The

14

*Perona* complaint acknowledged "2,000 incidents of unintended acceleration occurred."

*Id*. at 62.   The *Perona* complaint offered a list of a number of parts that may be involved

in the unintentional acceleration, but contained no allegations as to how those parts,

together or individually, caused that defect; as alleged in the *Perona* complaint:

> "The defects in design or manufacture include the following which
> independently or in connection with each other cause said "unintended
> acceleration" and/or create a likelihood of driver error causing an
> unreasonable risk of harm: a) the lever and cable system linking the
> transmission shift lever; b) the break [sic] and gas pedal placement and
> separation; c) the cruise control system; d) the shift lock system."

*Id.* at 66.

As in *Lipinsky,* the *Perona* court found that the plaintiff's consumer fraud claims were

stated with adequate specificity and reversed the lower court's dismissal of those claims.

Like *Lipinski* and *Perona*, *Connick v. Suzuki Motor Company, Ltd.*, 174 Ill. 2d

482 (1996) was a putative class case involving alleged material omissions about a

product defect.  The *Connick* plaintiffs alleged that the defendant manufacturer

committed consumer fraud by concealing material facts regarding the Suzuki Samurai's

tendency to roll over.  In reversing dismissal of plaintiffs' ICFA claim, the Illinois

Supreme Court held that plaintiffs' allegations about Suzuki's material omissions about a

defect tendency stated a claim for consumer fraud:

> Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems,
> including its *tendency* to roll over and its inadequate protection for
> passengers.  Plaintiffs further alleged that Suzuki failed to disclose these
> defects.  Finally, plaintiffs alleged that the safety problems were a material
> fact in that they would not have purchased the vehicles if Suzuki had
> disclosed the Samurai's safety defects.

*Connick*, 174 Ill.2d at 505 (emphasis added) (cited with approval by *Muehlbauer v.*

*General Motors Corp*., 431 F.Supp. 2d 847, 868 (N.D. Ill. 2006).

**b.      Plaintiffs fully describe the defects at issue in this case**

Here, Plaintiffs meet or even exceed the particularity requirements met in

*Connick, Lipinski* and *Perona*, and satisfy the Court's instruction that Plaintiffs state

more specifically the nature of the defect in the Machines and/or the basis for the claim

that the Machines were failing at an excessive rate. (MTD Order at 5-6.)   Plaintiffs

identify the specific models of Machines alleged to be defective, the time periods of their

manufacture, the dates Plaintiffs purchased them, the prices paid, the costs to repair them,

and exactly which models Plaintiffs purchased.[13]  Plaintiffs identify the nature of the two

particular design defects of the Machines which have led to the failures of the Machines

of Plaintiffs and putative class members: (1) the use of inferior electronic control panels,

*a.k.a.* Central Control Units or CCU's, which uniformly results in error codes, F11 and

FdL; and (2) inadequate water drainage from the Machines, resulting in the accumulation

of mold and/or mildew.[14]   Like *Perona*, Plaintiffs identify the parts that are preliminarily

believed to be integral to these two defects; in this case, defective CCU relays and door

seals, and Plaintiffs allege preliminarily that failures are due to those parts.[15] Plaintiffs

further identify in their Complaint the acceptable failure rate for CCU relays according to

industry and governmental standards (0.0001%).[16]

---

[13]      Complaint at ¶¶ 2, 17, 24, 27, 38, 41- 43, 45-46, 49, 50-51, 55-56, 59-60, 62-63, 65, 69-70.

[14]      *Id.* at  ¶¶ 2, 20-23, 39, 43, 46, 50, 52, 56, 60, 63, 66, 70.

[15]      *Id.* at ¶¶ 20-21.  Therefore, Sears incorrectly asserts that Plaintiffs provides "no particularized" allegations relating to a "technical description" of the defects or the "mechanism" leading to the defects Plaintiffs allege. Def. Mem.. at  14-15.

[16]      Complaint at ¶ 29.

Plaintiffs also allege the particular material facts Sears actively concealed from Plaintiffs and putative class members with the intent Plaintiffs and class members rely on the facts omitted:[17] (1) that the Machines had a heightened risk of failure and fail at a rate higher than is the norm according to industry and governmental standards (they fail at a rate well above 0.0001%); (2) that CCU and water drainage defects render them undependable and ineffective for their intended purposes; (3) that consumer complaints attributable to those defects exceeded good quality control practices; (4) that the failure would not likely manifest until after the Sears warranty expired meaning they'd likely be left without any remedy; and (5) that Defendant's omissions of material facts drove sales of its Machines, and was used to push the sales of extended warranties.[18]  Plaintiffs clearly allege these omissions proximately caused class members and them injury.[19]  The foregoing omissions about the Machines tendency to fail and Sears extended warranty scheme all impact the "durability, performance, warranties or quality" of Plaintiffs' Machines, and consequently, Plaintiffs allege sufficient materiality. (Complaint at ¶¶ 32, 95-99, 210-213); *see Chamberlan v. Ford Motor Co*., 369 F. Supp.2d 1138, 1145 (N.D. Cal. 2005) (determining an increased rate of post-warranty failure to be material either to choice of a product or its price).

Plaintiffs also specify the basis for Sears' knowledge of these two defects *and* approximately when it learned of them: Plaintiffs allege Sears knew of the same or

---

[17]    *Id*. at ¶ 98 (allegation that Sears intended that Plaintiffs and the class would rely on its deception).

[18]    *Id*. at ¶¶ 18, 20, 25, 28, 29, 33, 34, 35, 95-98, 110, 128, 139, 152, 164, 178, 190, 202, 210, 212, 222.

[19]    *Id*. at ¶¶ 37, 101, 211.

similar defects prior to August 2001 (when it began selling the Machines at issue and
*before* all Plaintiffs' purchases of their Machines) because it was involved in major
litigation over the same or similar defects in predecessor models it manufactured and for
which it paid consumers damages,[20] that Sears received significant numbers of
complaints about their successors at issue here (including complaints from Plaintiffs),
that its technicians' repaired the Machines repeatedly, what technicians told consumers,
that at least 22,987 HE Series owners have had electronic control board repairs and at
least 15,538 have had mold issues, and that Sears was in superior position to know such
information because, *inter alia*, Sears sold the Machines as part of its regular trade and
business.[21]

---

[20]     Sears maintains that Plaintiffs make no allegations regarding the time frames of
Sears' knowledge of the defects at issue or when it began receiving consumer complaints;
hence, Plaintiffs have not sufficiently alleged Sears intend to induce reliance. *See* Def.
Mem. at 19.  Sears is wrong. *See* Complaint at ¶¶ 27, 36 (Sears began marketing the
Machines in August 2001 and previously litigated the same defects at issue in this case
before August 2001).  Further, because Plaintiffs' consumer fraud allegations focus on
the omission of material facts within Sears' exclusive knowledge, Rule 9(b) does not
require identification of the exact time Sears learned of the defects or complaints. *See*
discussion and cases cited *supra* at 6-7.

[21]     Complaint at ¶¶ 17, 23-24, 28, 33-36, 38, 40- 42, 44-45, 47, 49, 51, 53, 55, 57, 59,
61-62, 64-65, 67, 69, 71, 208. The foregoing factual allegations about Sears' knowledge
and failure rates of its Machines distinguish Plaintiffs' case from *White v. Daimler
Chrysler Corp.*, 368 Ill. App. 3d 278 (Ill. App. Ct. 2006), upon which Sears to a large
extent relies for its particularity challenges.  As regards specificity, *White* stands for three
simple requirements, all of which Plaintiffs satisfy:  First, a plaintiff needs to allege that
she would act differently if a material fact were known.   Plaintiffs allege just that.
Complaint at ¶ 211.  Second, when failure rates present a material fact, some support that
failure rates were "unacceptable" or "excessive" needs to be pleaded.  As discussed
above, Plaintiffs identify basis for their claims regarding rates of failure.  Third, a
plaintiff needs to estimate a timeframe when the defendant likely learned of the defect.
Plaintiffs have done so. *See* Complaint at ¶¶ 27, 36 (Sears began marketing the Machines
in August 2001 and previously litigated the same defects at issue in this case before
August 2001 before Plaintiffs purchased their machines, which demonstrates its
knowledge of the defects).

Ultimately, because of Sears' concealment of facts solely within its knowledge, Plaintiffs allege they were unaware and unable to discover the defects prior to their purchases.[22]  As a corollary, in contrast to Sears' argument, in the absence of discovery, Plaintiffs would in no way be able to describe in more detail the actual defect mechanisms and causes of the defects or to allege the exact moment Sears knew about them.[23]  Causation like materiality is for the trier of fact to determine, and isn't to be resolved on a motion to dismiss as Sears would have it. *See Lipinski*, 325 Ill. App. 3d at 1147.  Notwithstanding the very limited information Plaintiffs have been able to glean from very-little-to-no discovery, Plaintiffs have clearly identified in their Complaint the nature of the defects, the excessive rates of failure of the Machines they purchased, how Sears knew about the defects, approximately when it knew about them, what Sears concealed about them (with the intent that consumers rely on its omissions), that such concealment was deceptive (as an omission of material fact in trade or commerce), and that Sears proximately caused Plaintiffs and class members economic injury by such misconduct.  When read as a whole and when all reasonable inferences are drawn in Plaintiffs' favor, Plaintiffs' Complaint more than adequately alleges consumer fraud based on material omissions and under Rules 8 *and* Rule 9(b), and certainly provides Sears enough information to respond to and defend against Plaintiffs' fraud-based allegations.

---

[22]  *Id*. at ¶¶ 33-34, 37, 85-88, 97-98, 211-213.

[23]  *See* discussion *supra* at 6-7.  Even Sears appears to lack complete knowledge of the technical nature and causes of the Machines' two defects.  Repair of the defects in the Kenmore HE Series Washing Machines has proven "elusive" and its specific efforts "have not rectified the problems and necessitated further service calls" or left the consumers to address the problems on their own. (Complaint at ¶ 23).

### C.   PLAINTIFFS HAVE STANDING TO SEEK RELIEF UNDER THE ICFA

Defendant, an Illinois resident, claims that only other Illinois residents may challenge its conduct under the ICFA.  Defendant bases its argument upon *Avery v. State Farm Mut. Auto. Ins. Co*., 835 N.E. 2d 801 (Ill. 2005).  However, as this Court has recognized, *Avery* is not interpreted so broadly.  *IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 2007 WL 164603 *3 (N.D.Ill. Jan 12, 2007).  *Avery* confirmed that the ICFA was intended to have extraterritorial application, particularly when Illinois corporations are wrongdoers:

> "If, for example, the bulk of the circumstances that make up a fraudulent transaction occur within Illinois, and the only thing that occurs out-of-state is the injury or deception, it seems to make little sense to say that the fraudulent transaction has occurred outside Illinois. . . . Accordingly, we hold that a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois. In adopting this holding, we recognize that there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own facts."

*Avery,* 216 Ill. 2d at 186-87

This is exactly the situation here.  Not only is Defendant headquartered in Illinois, but substantial and common acts primarily responsible for the injury to each Plaintiff were centered in Illinois.  Plaintiffs challenge both the marketing and warranty practices of Defendant and, as argued against Defendant's earlier Motion, the allegations in this case show that every relevant decision regarding marketing and warranties was made in Illinois.[24]  The warranty claims process brings consumers, like Plaintiffs, back to Illinois,

---

[24]   To the extent the Court finds that the allegations in this case do not clearly support such a finding, Plaintiffs request discovery as to the matter of the locus of Defendant's relevant business operations, and briefing based on a factual record.

where all inquiries are to be directed and, in this case, warranty coverage is regularly denied. Ultimately, as has been alleged in this case, "the fraud alleged was conceived, executed and emanated from Sears senior management in Illinois." All that happened unique to each consumer is the purchase of the machine (faced with the same marketing that originated in Illinois) and eventual payment for repairs because they were denied warranty coverage (because of the same warranty practices terminating in Illinois).

Further, unlike *Avery*, which was decided after a complete record was developed, Plaintiffs do not have the benefit of discovery for fully articulate the extent and nature of the conduct emanating from Defendant's headquarters. *Cf Kaplan v. Shure Bros, Inc.*, 266 F.3d 598, 601 (7th Cir. 2001). Because alternative relief is being sought under the respective consumer protection laws of the states of residence for each of the plaintiffs – *including* Illinois – it is premature to deny the standing for only some of the plaintiffs.

### D.   PLAINTIFFS' CLAIMS UNDER THE CONSUMER LAWS OF OTHER STATES ARE PROPERLY ALLEGED

Defendant principally raises the same challenges that it raised to the adequacy of the allegations under the ICFA against the consumer protection laws of other jurisdictions. For the aforementioned reasons, these same challenges must fail. However, for Indiana, California and Washington, Defendant raises unique challenges. Each is unfounded.

### 1.   Indiana Law Condemns Defendant's Wrongdoing

Defendant mischaracterizes this case as a case solely of concealment, and argues that the Indiana Consumer Protection Law does not recognize an action for concealment. The Indiana Law is to "be liberally construed and applied to . . . protect consumers from

. . . deceptive and unconscionable sales acts; and . . .encourage the development of fair

consumer sales practices."  Ind.Code § 24-5-0.5-1.

While this is not a case based primarily on misrepresentation, Plaintiffs do not

merely argue that Defendant stood silently by while the defective machines were sold.

Rather, as the Complaint currently summarizes, "[d]espite receiving a high level of

complaints about the Kenmore HE Series Washing Machines . . . Sears continued to

misrepresent Kenmore HE Series Washing Machines as being dependable and providing

outstanding cleaning and did not disclose the relatively high likelihood of product defects

to its consumers.  . . .   Sears omitted critical information and made representations with

the intent that consumers rely upon the totality of the message conveyed, *i.e.*, that the

Kenmore Series Washing Machines were highly dependable and effective. . . . "

(Complaint at ¶ 33).

Accordingly, Defendant's reliance on *Berghausen v. Microsoft Corp.*, 765 N.E.2d

592 (Ill. App. 2002) is misplaced.  In *Berghausen*, plaintiffs relied exclusively on

"implied representations" in Microsoft's pricing that such prices were "fair and

competitive."  The Plaintiffs *sub judice* allege far more than such "omissions in the air."[25]

The deception engaged in by Sears was so successful because its concealment was

---

[25]     Defendant appears to make a similar argument regarding the Michigan Consumer
Protection Act, but without any legal citation.  To the extent that Defendant simply failed
to fully develop the same argument in support of its Motion regarding the Michigan Law,
it has absolutely no legal support and similarly fails.  Indeed, Michigan expressly
provides for liability for "failing to reveal facts that are material to the transaction in light
of representations made in a positive matter."  Mich. Comp. Laws Ann. § 2245.903(cc);
*see also Dix*, 415 N.W.2d at 207 n.3 (noting "serious omissions.").  While the
representations may not be themselves actionable, the omission or concealment becomes
actionable against the backdrop of such representations which actually facilitate the
concealment.

effectuated, in part, by express misrepresentations about the qualities of the Machines and

the source of the problems it foisted on Plaintiffs and other consumers.

### 2.    California Law Condemns Defendant's Wrongdoing

Defendant argues that its scheme to defraud consumers by selling defective

machines, and to further profit from its deceit by pushing extended warranty coverage is

neither unlawful, unfair nor a fraud as is prohibited under California's UCL.  If

Defendant violated any of the three prongs, it violated the UCL, but Defendant violated

all three.

Regarding the "unlawful" prong of the UCL, Defendant's conduct runs afoul of

the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code 1750 *et seq.* and the False

Advertising Law (FAL), Bus. & Prof. Code 17500 *et seq.*  A violation of either is

sufficient.  Contrary to Defendant's assertion, the CLRA does not require that a plaintiff

allege the elements of fraud, such as a duty to disclose, but only the likelihood of

deception.  *See Muehlbauer*,  431 F.Supp. 2d at 860-61.  Based on Defendants acts and

practices (not limited solely to omissions), Plaintiffs allege the likelihood of deception.[26]

Similarly, Defendant improperly argues that under the FAL any statements it

made are mere puffery.  Puffery is defined as generalized, vague, and unspecified

assertions upon which a reasonable consumer could not rely.  *Glen Holly Entertainment,*

*Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003); *see also Summit Technology,*

---

[26]     Complaint at ¶ 113.  To the extent a "duty to disclose" is necessary, as discussed *infra*, Plaintiffs have alleged facts sufficient to establish such a duty.  Indeed, as stated by Defendant, California law imposes a duty to disclose in a case like this one "where the defendant makes partial representations, where the facts are known only to the defendant, and the Defendant knows they are not reasonably discoverable by the plaintiff."  Def. Mem.. 21 (citing *Warner Constr. Corp. v. City of Los Angeles*, 466 P.2d 996, 1001).  Plaintiffs have alleged just this.  (*see e.g.* Complaint at ¶¶ 2, 18, 33, 35, 36, 86, 88).

*Inc. v. High-Line Medical Instruments, Co.*, 933 F.Supp. 918, 931 (C.D. Cal. 1996).  In

this case, Defendant made statements of fact about its machines (they were dependable,

were reliable under normal use, and would clean clothes) but sold something else (the

Machines ceased operation, would break down and were unfit to clean clothes).  Such

misstatements are actionable under the FAL.

Regarding the "unfairness" of Defendant's scheme, active concealment of a

defect is "unfair" because Defendant had no justification, except its own profit, for its

deceit.  Under any theory:

> "unfairness" is an equitable concept that cannot be mechanistically
> determined under the relatively rigid legal rules applicable to the
> sustaining or overruling of a demurrer . . . [T]he determination of whether
> a particular business practice is unfair necessarily involves an examination
> of its impact on its alleged victim, balanced against the reasons,
> justifications and motives of the alleged wrongdoer. In brief, the court
> must weigh the utility of the defendant's conduct against the gravity of the
> harm to the alleged victim."

*Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 93 Cal.Rptr.2d 439 (Cal.App.1.Dist. 2000).

As alleged, Defendants deceit about the defect, and wider scheme left Plaintiffs with

machines that were unfit to clean – there was no countervailing benefit.  In an effort to

justify its misconduct, Defendant merely argues that it acted no less "fairly" than the

defendant in *Bardin*.  The Court in *Bardin* found that the plaintiff "did not allege

[defendant] made *any* representations regarding the [defect]," tying the wrongdoing to

some preexisting policy concern.  *Id.*, 136 Cal.App.4[th] 1255, 1270, 39 Cal. Rptr. 3d 634,

643 (2006) (emphasis added).  In the case at bar, Defendant is accused of making

affirmative statements as part of a wider scheme to conceal and profit from the defect.

Indeed, unlike *Bardin*, Plaintiffs have articulated several reasons that Defendant's

conduct is illegal (*supra*) and, tethered to clearly articulated laws, unfair.

24

Finally, as regards the "fraud" prong of the UCL, it is distinct from common law actions for fraud or deception. "A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that members of the public are likely to be deceived." *Podolsky v. First Helathcare Corp.*, 50 Cal.App.4[th] 632, 647-48 (1996).  Even true statements may be actionable if they may also be misleading.  *Day*, 63 Cal.App.4[th] at 332-333.  What is deceptive or fraudulent is necessarily fact-intensive and not amenable to a ruling on the pleadings.  *Schnall*, 78 Cal.App.4[th] at 1167.   Far exceeding such a standard, Plaintiffs have fully articulated claims that satisfy the far more rigorous standards of the ICFA and common law fraud.

### 3.      Washington Law Condemns Defendant's Wrongdoing

Finally, Defendant argues that the claims under the Washington Consumer Protection Act fail because it has no duty to disclose in that state.  The Court need look no further than Defendant's brief to deny its Motion.  Buried in a footnote, Defendant explains that *Bison Media, Inc. v. KTSL, Inc.*, 115 Wash. App. 1045 (Wash Ct. App. 2003) recognizes a duty to disclose "where a seller has knowledge of a material fact not easily discoverable by the buyer."  Def. Mem. 29 n. 28.  This is just what Plaintiffs allege.[27]

## E.      PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE FULLY ARTICULATED

In support of its Motion to Dismiss the unjust enrichment claims, Defendant makes two arguments.  First, based on its argument that it did nothing wrong, Defendant argues any enrichment it received is not unjust**.**  However, as explained above, the

---

[27]      *See* Complaint. at ¶¶ 33, 85-88

Complaint plainly alleges an ongoing scheme of deception, concealment, misrepresentation and profiteering through the marketing and sale of defective machines and, subsequently, extended warranty plans.  As the Court of Appeals observed: "We cannot say as a matter of law that it is [unjust], nor can we say the opposite.  But we can say that a reasonable jury . . .  could find the facts indicative of what the words "unjust" and "inequitable" stand for. And that is all we need say to uphold the district court." *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 738 (7th Cir. 1990). Reasonable minds could readily decide Defendant's active concealment is unjust.

Second, Defendant's argument that Plaintiff's claim for unjust enrichment is precluded by the mere existence of a warranty is unfounded and premature.  "Mere invocation of a written contract does not automatically bar an unjust enrichment claim." *Muehlbauer*, 431 F. Supp. 2d at 856 (applying laws of multiple states).  To bar an unjust enrichment claim, a determination that the dispute is fully covered by a contract must first be made.  *Id*. at 855.  Without such a determination, dismissal of an unjust enrichment claim is improper.  *Emergency Care and Health Organization, Ltd. v. Trinity Med. Ctr.,* 2001 WL 34142437, at *4 (Ill. App. 3rd Dist. Dec. 12, 2001).  Additionally, courts have allowed unjust enrichment claims to stand where, as here, a contract may exist, but tortious conduct is also alleged.  *Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943, 949 (1st Dist. 1998) (citing *Wolff v. Ampacet Corp.*, 284 Ill. App. 3d 824, 829 (1st Dist. 1996)).[28]

---

[28]     The jurisdictions singled out by Defendant are in accord, both because of the wider allegations of wrongdoing and the declaratory challenge to Defendant's warranty.  *QuikPac, Inc. v. Reynolds-Freeborn Co*, 2005 WL 1939996 (S.D.Ind. July 18, 2005) (Indiana law) (citing *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir.2001)); *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247,

Plaintiffs' claims of unjust enrichment far exceed the narrow scope of any conceivable warranty claims. Indeed, the terms of the warranty are absent from the record properly before the Court as the Complaint is focused on Defendant's wrongful and tortuous conduct, not the terms of its warranty.

**F.  DECLARATORY JUDGMENT IS NECESSARY TO MAKE PLAINTIFFS AND THE CLASS WHOLE**

The Declaratory Judgment Act expressly provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Plaintiffs seek just that, a declaration, given Defendant's unfair course of conduct vis-à-vis Plaintiffs and the class, that its warranty time limits are void, and, concomitantly, the requirement going forward that Defendant establish the sort of repair and reimbursement program that should have governed from the outset due to its knowledge of the defect.

Defendant does not challenge the propriety of Plaintiffs seeking declaration about their rights under the warranty. Rather, the establishment of warranty repair and

---

250 (Tex.App.1987) (Texas law); *ADT Security Services, Inc. v. Hawa*, 2005 WL 2878161 *5 (Tex.App. Nov. 3, 2005) (same); *Billfish, Inc. v. Campbell*,1999 WL 455014, at *1 (9th Cir. June 29, 1999) ("California does not ... preclude pleading both a claim for breach of express contract and a claim for unjust enrichment; it only prevents recovery under both."); *Marathon Petroleum Co. v. 23 & Romeo Station Corp.*, 2006 WL 2521438, at *4 (E.D. Mich. Aug. 30, 2006) (Michigan law); *Payne v. Wood*, 1995 WL 461786 *5 (Mich. 1995) (same); *Coughler v. Fickler*, 510 S.W.2d 16, 18 (Ky. 1974) (unjust enrichment is available if contract is not enforceable); *Vielbig v. USA Janitorial, Inc.*, 2001 WL 50890 * 3(Minn.App. January 23, 2001) (Minnesota law); *Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Group, Inc.*, 2006 WL 2788369 *5 (D.N.J. Sep. 27, 2006); *Henness v. Hunt*, 272 A.D.2d 756, 758, 708 N.Y.S.2d 180, 182 (N.Y.A.D. 3 Dept. 2000) (New York law); *Gerber v. First Horizon Home Loans Corp.*, 2006 WL 581082 * 2 (W.D.Wa., March 08, 2006) (Washington law).

reimbursement programs, Defendant argues that damages will suffice.  This is factually and legally unfounded.  First, without such programs, Defendant would be immunized from liability for the continuing repairs necessitated by the defect.  Thus, unlike *Richards*, continuing monetary losses are threatened.  *Richards v. Delta Airlines, Inc.*, 453 F.3d 525, 531 n.6 (D.C.Cir. 2006).  Second, contrary to Defendant's bald assertion, the existence of injunctive or legal relief is not a bar to declaratory action.  *See Powell v. McCormick*, 395 U.S. 486, 518 (1969).

Finally, Defendant seeks partial dismissal of declaratory relief solely as regards the two year warranty, but concedes that at least one plaintiff, Plaintiff Munch, has alleged cognizable claims for such relief.  To the extent Defendant is arguing against certification of a class for declaratory relief relating solely to Defendant's conduct in regards to the two year warranty limit, such argument is premature, and can await full briefing of class issues.  At this juncture, it is more than sufficient to understand that such questions, even for a readily identifiable class of similarly situated persons, would be marked by a single common question that is amenable to class-wide determination.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.


DATED:  January 11, 2008                    Respectfully submitted,

**Class Plaintiffs,**

By:____s/George K. Lang_____

One of Their Attorneys


28

Tod Aronovitz
Steven R. Jaffe
Mark S. Fistos
**ARONOVITZ JAFFE**
150 West Flager Street
Suite 2700-Museum Tower
Miami, FL  33130
(305) 372-2772
ta@aronovitzlaw.com
srj@aronovitzlaw.com
msf@aronovitzlaw.com


Richard J. Burke
**RICHARD J. BURKE, LLC**
1010 Market Street
Suite 650
St. Louis, MO  63101
(314) 621-8647
rich@richardjburke.com

Paul M. Weiss
George K. Lang
Eric C. Brunick
Matthew Sheynes
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000
paul@freedweiss.com
george@freedweiss.com
ericb@freedweiss.com
matt@freedweiss.com


Jonathan Shub
Scott Alan George
**SEEGER WEISS LLP**
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(215)  564-2300
jshub@seegerweiss.com
sgeorge@seegerweiss.com


Michael J. Flannery
James J. Rosemergy
**CAREY & DANIS, LLC**
8235 Forsyth Boulevard
Suite 1100
St. Louis, MO  63105
(314) 725-7700
mflannery@careydanis.com
jrosemergy@careydanis.com

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned, an attorney, affirms that he served a copy of the attached pleading pursuant to Fed. R. Civ. P. 5(b)(2)(D) upon:

Bradley B. Falkof
Brad Eric Rago
**Barnes & Thornburg**
One North Wacker Drive
Suite 4400
Chicago, IL 60606
bfalkof@btwlaw.com
brad.rago@btwlaw.com

Malcolm Edward Wheeler
Galen D. Bellamy
Kara Jean Rohe
Michael T. Williams
**Wheeler Trigg Kennedy LLP**
1801 California Street
Suite 3600
Denver, CO 80202
wheeler@wtklaw.com
bellamy@wtklaw.com
rohe@wtklaw.com
williams@wtklaw.com

Peter W. Herzog, III
**Bryan Cave LLP (St. Louis)**
211 North Broadway
Suite 3600
St. Louis, MO 63102
pwherzog@bryancave.com

           By: ___s/George K. Lang_____