| | | |
|---|---|---|
| SUSAN MUNCH, LARRY BUTLER, | ) | |
| JOSEPH LEONARD, KEVIN BARNES, and | ) | |
| VICTOR MATOS, individually and on behalf | ) | |
| of all others similarly situated, | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| BRYAN SERATT, ALAN JARASHOW, | ) | |
| DR. STEPHEN PAPALEO, LAUREN | ) | **No. 06 C 7023,** |
| CRANE, and LAWRENCE L'HOMMEDIEU, | ) | **Consolidated with No. 07 C 412** |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | **Judge Joan H. Lefkow** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| SEARS, ROEBUCK AND CO., | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs,[1] owners of Kenmore Elite-brand HE3t and HE4t washing machines, have filed

a Consolidated First Amended Class Action Complaint (hereinafter, "Amended Complaint")

individually and on behalf of purchasers of Kenmore Elite HE3, HE3t, HE4, and HE4t model

washing machines (collectively, "HE washers"). Plaintiffs allege violations of their respective

home states' consumer protection statutes (Counts I–IX), common law fraud (Count X), breach

of implied warranty of merchantability (Count XI), unjust enrichment (Count XII), and a

---

[1]  Plaintiffs Susan Munch, Larry Butler, Joseph Leonard, Kevin Barnes, and Victor Matos (collectively, "the Munch plaintiffs") filed their original complaint on December 19, 2006, and plaintiffs Bryan Seratt, Alan Jarashow, Dr. Stephen Papaleo, Lauren Crane, and Lawrence L'Hommedieu (collectively, "the Seratt plaintiffs") filed their original complaint on January 22, 2007. Because of the relatedness of the complaints, the court consolidated the cases on April 3, 2007. Any references to "plaintiffs" herein refer to both the Munch Plaintiffs and the Seratt Plaintiffs.

declaration of the rights of the parties (Count XIII).[2]  Before the court is Sears's motion to dismiss Counts I–X, XII, and XIII of the Amended Complaint.  Also before the court is Sears's refiled motion to strike plaintiffs' class allegations.  For the reasons stated below, Sears's motion to dismiss [#78] is granted in part and denied in part, and Sears's motion to strike [#74] is moot.

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT[2]

In their Amended Complaint, plaintiffs allege that their Sears washers suffer from two major defects:  electronic control board failure and water drainage failure.  Electronic control board failure, plaintiffs allege, manifests itself in a variety of ways, including "premature and repeated mechanical failure; stopping or not starting; the door remaining locked; and display of a variety of error codes such as F11 and FdL."  Pls.' Am. Compl. ¶ 20.  Plaintiffs allege that these electronic and mechanical failures result from "the use of defective, inappropriate, and/or inferior electronic control panels, a.k.a. Central Control Units or CCU's, and defective, inappropriate, and/or inferior relays, an integral component part of the CCU's."  *Id.* ¶ 21.  Water drainage failure, plaintiffs contend, manifests itself in various ways, including "clothes not being cleaned properly (including clothes being stained); foul odors; [and] mold and mildew growing in the machines."  *Id.* ¶ 20.  Plaintiffs suggest that the water drainage failure is often related to a defective door seal.  *Id.*  Plaintiffs allege that despite the electronic control board failure and water drainage failure defects, Sears misrepresents the HE washers to consumers as "being dependable and providing outstanding cleaning."  *Id.* ¶ 33.

Plaintiffs further allege that Sears knew or should have known about the defects because the high number of complaints Sears received was "far in excess of the number deemed acceptable by reasonable quality control" standards.  *Id.* ¶ 25.  Plaintiffs contend, for example,

---

[2]  The court assumes familiarity with the background of this case as set out in its August 27, 2007 Memorandum Opinion & Order (Dkt. No. 64) (hereinafter "August 27, 2007 Opinion") but restates the original and amended allegations here for the convenience of the reader.

that at least 22,987—or 1.5% of—HE washer owners have had electronic control board repairs, but that the "acceptable relay failure rate" is "1 failure in a million operations (0.0001%)." *Id.* ¶¶ 28–29. According to plaintiffs, this standard was established by the United States government and is generally accepted by the electronics industry. Plaintiffs further allege that at least 15,538—or 1.0% of—HE washer owners have had mold issues, whereas, typically, "industrial and commercial front loading washing machines operate relatively free of front load door seal drainage issues." *Id.* ¶ 30. Plaintiffs contend that because Sears knew about their defective machines but failed to disclose this information to consumers, Sears committed fraud.[3]

The HE washers came with a two-year express warranty on the electronic control board. The warranty covers free replacement parts for two years with labor charges covered only during the first year.[4] HE washer owners were allegedly forced to pay a significant amount of money—some times more than 30% of the purchase price—to repair their machines because the defects tend not to manifest themselves until after the warranty period has elapsed. Plaintiffs contend that Sears has further benefitted from their defective machines by marketing extended warranties on its HE washers. Plaintiffs thus allege that they have suffered actual damages in that (1) their HE washing machines "have not operated as represented by Sears," (2) they "have had to pay too high a price for a washing machine that is defective and not fit for use," and (3) they have "ha[d] to pay for costs associated with service calls, replacement parts, and extended warranties." *Id.* ¶ 37.

---

[3] In plaintiffs' own words, "Sears never disclosed the many claims it received or the high incidence of repair of the Kenmore HE Series Washing Machines, or implemented a recall to correct these problems. Sears omitted critical information and made representations with the intent that consumers rely upon the totality of the message conveyed, i.e., that [HE washers] were highly dependable and effective . . . ." *Id.* ¶ 33.

[4] The warranty on the control board provides, "For two years from the date of purchase, Sears will replace the SENSOR SMART™ control board if defective in material or workmanship. You will be charged for labor after the first year." Mem. in Support of Def.'s Mot. to Strike, Ex. A.

**STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a motion under Rule 12(b)(6), the complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *EEOC* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 776–77 (7th Cir. 2007) (citing *Bell Atl. Corp.* v. *Twombly*,— U.S. —, 127 S. Ct. 1955, 1964, 167 L, Ed. 2d 929 (2007)). The allegations in the complaint must also be "enough to raise a right to relief above a speculative level." *Bell Atl.*, 127 S. Ct. at 1965.

**DISCUSSION**

**I. Claims Under State Consumer Fraud Statutes**

Plaintiffs allege that Sears violated the consumer fraud statutes of the individual plaintiffs' respective states, including Illinois, California, Kentucky, Minnesota, Michigan, New Jersey, New York, Washington, and Indiana.[5] Plaintiffs' theories of fraud liability are based on their contentions that Sears had a duty to disclose to consumers that HE washers experience control board failures and drainage failures at rates in excess of industry standards and that Sears failed to disclose such information.

---

[5] As stated in the August 27, 2007 Opinion, the Indiana Deceptive Consumer Sales Act, Ind. Code Section 24-05-0.5 *et seq*., applies only to representations made either orally or in writing. August 27, 2007 Op. at 8. Because Plaintiff Larry Butler failed to amend his complaint to allege that he was deceived by a misrepresentation orally or in writing, the court must restate its ruling that Plaintiff Butler "cannot maintain an action under the Indiana Consumer Fraud Act based on Sears's alleged non-disclosure of the HE washers failure rate." *Id*.

The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act") prohibits any "concealment, suppression or omission of any material fact, with intent that others rely upon the concealment . . . in the conduct of any trade or commerce." 815 Ill. Comp. Stat. 505/2. To successfully plead a claim under the Illinois Consumer Fraud Act, a complaint must set forth specific facts showing (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. *Connick* v. *Suzuki Motor Co.*, 675 N.E.2d 584, 593, 174 Ill. 2d 482, 221 Ill. Dec. 389 (Ill. 1996). Additionally, a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required for common law fraud. *Id.* (citing *People ex rel. Hartigan* v. *E & E Hauling, Inc.*, 607 N.E.2d 165, 174–75, 153 Ill. 2d 473, 180 Ill. Dec. 271 (1992)); *see also* Fed. R. Civ. P 9(b) (mandating that "a party must state with particularity the circumstances constituting fraud or mistake").

To successfully state a cause of action for *fraudulent concealment* as a deceptive act or practice, the plaintiff must allege that the defendant omitted or concealed a material fact in the conduct of trade or commerce. *See White* v. *DaimlerChrysler Corp.*, 856 N.E.2d 542, 547, 368 Ill. App. 3d 278, 305 Ill. Dec. 737 (Ill. App. Ct. 1st Dist. 2006). A fact "is 'material' if the plaintiff would have acted differently had he been aware of it, or if it concerned the type of information upon which he would be expected to rely when making his decision to act." *Miller* v. *William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 7, 326 Ill. App. 3d 642, 260 Ill. Dec. 735 (Ill. App. Ct. 1st Dist. 2001) (citing *Mackinac* v. *Arcadia Nat'l Life Ins. Co.*, 648 N.E.2d 237, 239, 271 Ill. App. 3d 138, 207 Ill. Dec. 781 (Ill. App. Ct. 1st Dist. 1995)). When such a claim is brought in federal court, the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure are imposed to ensure that defendants are properly notified of their alleged fraud, so

that they can respond adequately. *Towers Fin. Corp.* v. *Solomon*, 126 F.R.D. 531, 535 (N.D. Ill. July 10, 1989).

Although plaintiffs are not required to plead all evidentiary facts, they cannot put defendants on notice simply by asserting conclusional allegations. *Id.* (citing *Ambling* v. *Blackstone Cattle Co., Inc.*, 658 F. Supp. 1459, 1468 (N.D. Ill. 1987); *Rudolph* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 100 F.R.D. 807, 809 n.2 (N.D. Ill. 1984)) At the same time, Rule 9 is to be read in conjunction with Rule 8. *Brown* v. *SBC Communications, Inc.*, 2007 WL 684133 *6 (S.D. Ill.). This means that a plaintiff is required to plead "only slightly more than is demanded under ordinary notice pleading." *Id.* (quoting *Tomera* v. *Galt*, 511 F.2d 504, 508 (7th Cir. 1975)) (overruled on other grounds by *Short* v. *Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir. 1990)). More specifically, "a plaintiff must plead 'the bare bones' of a fraudulent scheme, by supplying 'a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants.' The reason, of course, is that under the liberal discovery provisions of the Federal Rules of Civil Procedure, '[m]ore information can be gathered through discovery.'" *Brown* at *6 (quoting *Tomera,* 511 F.2d at 508, 509).

In granting the motion to dismiss the original complaint, this court concluded that plaintiffs had failed to plead fraud with sufficient particularity because they did not "give a technical description of the [electronic control board and drainage] problems or . . . quantify the number of other HE washers that have experienced them." August 27, 2007 Op. at 5. The court noted plaintiffs' failure to allege facts demonstrating the "high" number of defective machines and that the alleged concealment "would be material to a reasonable person only if it exceeded a standard rate of failure in the industry for comparable machines produced by comparable manufacturers." *Id.* at 6.

In the Amended Complaint, plaintiffs frame the deceptive act or practice element of their claim as follows: From August 2001 through March of 2007, Sears has sold more than 1.5 million Kenmore HE Series washing machines, marketing them as top-of-the-line (at prices over $1,000) when, in fact, compared to industry quality control standards, Sears's washers are likely to fail sooner than would be expected for washers sold at this price (likely to fail after the express warranty has lapsed, ¶ 24; "not meeting the reasonable expectations of a consumer purchasing a washing machine" ¶¶ 22, 35). Despite Sears's knowledge that major components of the washers would fail, Sears falsely represented that Kenmore HE Series Washing Machines provided outstanding performance. ¶ 35. An ulterior motive, according to plaintiffs, is the revenue generated by repairs and sales of extended warranty contracts. ¶ 25.

The Amended Complaint identifies the washers' defects in terms of user problems with electronic control boards and drainage. Paragraphs 20-24 describe "electronic and mechanical failure due to the use of defective or inappropriate electronic control panels and/or an integral component thereof called "relays." Manifestations of the defects include incomplete drainage, "especially the door seal," resulting in accumulation of mold and mildew in the machine, resulting in foul odors as well as poorly cleaned and stained clothing.

Plaintiffs have included a number of new allegations regarding defect rates as well. Plaintiffs allege, for example, that (1) "an unacceptable number of [HE washers] manifest defects in design and/or manufacture"; (2) "[t]he number of complaints Sears received about the defects and problems . . . were far in excess of the number deemed acceptable by reasonable quality control"; and (3) "[a]ccording to Sears, at least 22,987 HE Series owners have had electronic control board repairs (1.5%), and at last 15,538 have had mold issues (1.0%). " ¶¶ 25–28. Plaintiffs further assert, "Upon information and belief, electronic standards, both those

established by the United States government, and those accepted generally in the industry, couch acceptable relay failure rates in terms of 1 failure in a million operations (0.0001%)." *Id.* ¶ 29.

The issue is whether these additional allegations suffice to allow the claim to go forward under the Illinois Consumer Fraud Act. Plaintiffs argue that their allegations regarding the electronic control board and drainage problems constitute material facts and are pled with the particularity required under Rule 9(b). They rely on three consumer fraud decisions in which Illinois courts ruled that the plaintiffs' allegations concerning alleged mechanical defects were pled with sufficient particularity: *Lipinski* v. *Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 325 Ill. App. 3d 1139, 259 Ill. Dec. 586 (Ill. App. Ct. 1st Dist. 2001); *Perona* v. *Volkswagen of America, Inc.*, 684 N.E.2d 859, 292 Ill. App. 3d 59, 225 Ill. Dec. 868 (Ill. App. Ct. 1st Dist. 1997); and *Connick*, 675 N.E.2d 584.

In each of these cases, the court held a complaint adequately pleaded where the plaintiffs (1) identified a particular defect in an automobile[6]; (2) alleged that at least by a certain time defendant knew of the defect, yet failed to disclose it when they sold the vehicles to the plaintiffs[7]; (3) alleged that defendants intended the plaintiff consumers to rely on the deception,[8]; and (4) alleged that the failure to disclose was material in that the plaintiffs would not have purchased had they known the omitted facts. Plaintiffs here argue that they have pled at least this much.

---

[6]The defects were excessive rollover risk in *Connick*; unintended acceleration in *Perona*; and risk of oil migration into the positive crankcase ventilation system in *Lipinski*.
[7]In *Connick*, plaintiffs cited a review published in CAR & DRIVER in January 1986 where the manufacturer made an allegedly false representation; in *Perona*, plaintiffs pointed to two press releases announcing a recall; in *Lipinski*, the manufacturer issued a technical service bulletin to its deal regarding the problem.
[8]*See, e.g., Connick*, 174 Ill. 2d at 504 ("Suzuki undoubtedly knew that many prospective purchasers would read the review and that information furnished to the magazine by Suzuki would be one basis of the published review.").; *White*, 856 N.E.2d at 549 ("[C]ircumstantial evidence may be used to establish the seller's intent.")

*White* v. *DaimlerChrysler* is instructive here, as it addresses each of these cases in light of a complaint similar to the one now before the court.  In *White* the plaintiff, who purchased a Jeep in 1996, alleged that the standard in the industry for the vehicle was to use cast iron exhaust manifolds, but in 1991 until early 1999 the manufacturer substituted a cheaper substandard component for the industry standard.  856 N.E.2d at 545.  Plaintiff alleged that the manufacturer knew that the substandard manifold would not last as long as the standard and would fail "at unacceptably high rates."  *Id*.  Regarding the knowledge element, the court found this allegation insufficient, distinguishing the cases on which plaintiffs rely here:

> Unlike the plaintiffs in *Connick*, *Perona*, and *Lipinski*, plaintiff does not specify how defendant knew this information.  For purposes of the Act, it is important that the defendant be aware of the existence of the material fact before the time of the sale to the plaintiff.  Otherwise, an omission of a material fact cannot be the proximate cause of the plaintiff's damages.

*Id.* at 549.  And regarding the materiality element, the court said the complaint lacked particularity:

> [W]e believe the allegations in the complaint describing the alleged defect fall short of the specificity required by the Act. Plaintiff alleges defendant knew the tubular steel exhaust manifolds were "prone to cracking and failure," "would fail at unacceptably high rates," and that defendant was aware of a "high frequency of failures." Plaintiff does not define these general phrases or provide more detail about the number of failures that occurred, how the defendant knew about the failures, or what defendant knew at the time of the sale to plaintiff. The complaint is laden with conclusion and conjecture.

*Id*. at 550.  Defendants rely on both of these points.  They contend that plaintiffs have not alleged any facts demonstrating Sears's pre-sale knowledge of the defects other than the existence of a particular number of "similar" problems both before and after plaintiffs made their individual decisions to purchase, and they contend that the generalized allegations of "high

incidence of repair" and failure rates in excess of "industry standards" are insufficient without any allegations that a standard in the industry or set by government even exists.

Despite the plaintiffs' effort to allege numbers of control board repairs and machines with "mold issues," the amended complaint still consists of conclusion and conjecture. Plaintiffs do not have any standard by which to measure the alleged failure rate. First, even assuming that the acceptable relay failure rate is "1 failure in a million operations (0.0001%)," how this relates to a rate for control board repairs (1.5%) is unknown. (An operation, presumably, is a complete washer cycle; an control board failure is something else.) Second, plaintiffs provide no indication of whether or how either of their statistical measures is relevant to comparable washing machines, or even to comparable home appliances generally. Further, the numbers of repairs alleged are plainly over-inclusive of the defects at issue here and even at that are a small portion of the 1.5 million machines sold. Moreover, plaintiffs do not have an engineering explanation for the two alleged defects.

Apart from the question of Sears's knowledge of the defect based solely on the numbers, unlike the complaints in *Connick*, *Perona*, and *Lipinksi,* this Amended Complaint fails to identify a specific point at which the defendant clearly knew of the defect in its product, yet conveyed an opposite message to the plaintiffs. Rather, the deception in this case was conveyed to the plaintiffs only through "the totality of the message" that the washers were "highly dependable and effective." Am. Compl. ¶¶ 33, 2. Without a basis for comparison of HE washers to their counterparts in the industry, the additional allegations concerning the nature and consequences of the machines' failures and the high cost of repairs add little to remedy the absence of particularity in pleading a deceptive practice or to permit an inference of materiality.

In sum, the Amended Complaint sets out facts that indicate the HE washers have a higher than normal failure rate, but even taken as true, a generalized marketing campaign is not the basis for a materially deceptive practice under the Illinois Consumer Fraud Act. It follows from this conclusion that plaintiffs' fraud claims must be dismissed.[9]

## II. Unjust Enrichment

In the August 27, 2007 Opinion, the court stated that in order to prevail on a claim for unjust enrichment in Illinois, the plaintiff must show either that (1) a benefit that should have been given to the plaintiff was mistakenly given to the defendant instead; (2) the defendant obtained a benefit through some type of wrongful conduct; or (3) the plaintiff had a better claim to the benefit than the defendant for some other reason. *See HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 137 Ill. Dec. 19 (1989).

Plaintiffs' unjust enrichment claim is, once again, based on their allegation that Sears acted "wrongfully." *See* August 27, 2007 Op. at 12. Plaintiffs allege that Sears wrongfully

---

[9] In its August 27, 2007 Opinion, the court considered whether plaintiffs' claim under the Illinois Consumer Fraud Act met the pleading requirements of Rule 9(b), concluded that it did not, and then determined that the same analysis was also applicable to plaintiffs' fraud claims brought under the consumer fraud statutes of California, Kentucky, Minnesota, Michigan, New Jersey, New York, and Washington. *See* August 27, 2007 Op. at 7 & n. 4. Plaintiffs acknowledge that this analysis is appropriate because of the overlapping elements of their various state statutory fraud claims, as well as their common law fraud by omission claim. Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss Counts I-X, XII, and XII of Pls.' Consol. First Am. Compl. at 6 n. 5. Here again, because plaintiffs have failed to adequately plead fraud under the Illinois Consumer Fraud Act, their claims under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, the Kentucky Consumer Fraud and Deceptive Business Practices Act, Ky. Rev. Stat. § 367.120 *et seq.*, the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. § 325F *et. seq.*, the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.903(1)(g), the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*, the New York Consumer Protection Law, N.Y. Gen. Bus. Law § 349 *et seq.*, and the Washington Consumer Protection Act, Wash. Rev. Code § 19.86 *et seq.*, are also subject to dismissal. Likewise, plaintiffs' claim for common law fraud based on Sears's alleged omission of a material fact (Count X) must also be dismissed.

Having found once again that plaintiffs have failed to plead with sufficient particularity that Sears concealed a material fact, the court need not consider Sears's remaining challenges to Plaintiffs' claims under the Illinois Consumer Fraud Act, such as whether plaintiffs plead with sufficient particularity that Sears intended to induce plaintiffs' reliance or whether plaintiffs have standing to seek relief under Illinois's consumer fraud statute. *See* August 27, 2007 Op. at 7 n. 5.

profited by concealing from consumers certain material facts—e.g., that the risk of defects for HE washers far exceeds that normally associated with similar consumer products. As discussed above, however, plaintiffs have failed to plead such allegations with the particularity required under Rule 9(b). Plaintiffs' unjust enrichment claim (Count XII) must therefore be dismissed.[10]

### III. Declaratory Relief Pursuant to 28 U.S.C. Section 2201

The Declaratory Judgment Act, 28 U.S.C. § 2201, requires an "actual controversy" before the court may make a declaration of the parties' rights. "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Alcan Aluminum Ltd.* v. *Dep't of Revenue of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984) (quoting *Maryland Cas. Co.* v. *Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).

Plaintiffs amended their Complaint to ask the court to enter a declaratory judgment for the following three alleged actual controversies: (1) the legality of Sears's marketing of the HE washers as innovative, cost effective and dependable when it knew or should have known them to be defective and unreliable; (2) Sears's failure to honor its two-year warranty for plaintiffs Munch, Jarashow, L'Hommedieu, and Barnes's defective control boards; and (3) Sears's unlawful gains under its extended warranty program because of its defective HE washers.

With respect to the first alleged actual controversy, the court stated in its August 27, 2007 Opinion that plaintiffs "fail[ed] to allege that they were ever exposed to Sears's alleged marketing." August 27, 2007 Op. at 14. Plaintiffs have failed to amend their complaint to

---

[10] Again, in light of this ruling, the court need not address Sears's other contention that plaintiffs cannot assert a claim for unjust enrichment because the parties have an express contract that governs their relationship. *Id.* at 13 n. 13.

include any facts indicating that they were exposed to Sears's marketing. Thus, regarding the first alleged controversy, the court restates its earlier ruling that "there is no controversy between the parties requiring a declaration of their rights." *Id*.

Regarding the second alleged actual controversy—Sears's alleged failure to honor its two-year warranty for plaintiffs Munch, Jarashow, L'Hommedieu, and Barnes's defective control boards—Sears argues that only Munch's allegations could arguably support such a claim. Munch alleges that she "contacted Sears to correct the [electronic control board] problem within two years of purchase" and was coerced into buying a $300.00 extended warranty to avoid estimated repair costs of $655.00. Pls.' Am. Compl. ¶¶ 40–41. Based on these allegations, Sears concedes that an actual controversy may exist between Munch and Sears requiring a declaration of her rights, because she may have suffered injury as a result of Sears's failure to honor its warranty.

Plaintiffs' allegations regarding Jarashow and L'Hommedieu, on the other hand, indicate that each "contacted Sears to correct the [electronic control board] problem" but "Sears refused to repair the machine for free since the one year warranty had elapsed." *Id*. ¶¶ 61, 71. Sears points out that the warranty specifically states that HE washer owners would be charged for labor (as compared to parts) after the first year of purchase. Mem. in Support of Def.'s Mot. to Dismiss, Ex. A (Dkt No. 79-2).[11] Although plaintiffs assert that Jarashow and L'Hommedieu each paid a certain amount for repairs, neither alleges that he was actually charged for replacement control board parts, as opposed to labor. Sears thus argues that plaintiffs have failed

---

[11] The warranty, which Sears attaches as Exhibit 1 to its memorandum in support of its motion to dismiss, is properly before the court because, as Sears notes, the warranty is referred to in plaintiffs' Amended Complaint and is central to their claims. *See* Pls.' Am. Compl. ¶¶ 40, 230; *Venture Assocs. Corp.* v. *Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

to allege facts showing that Sears dishonored Jarashow or L'Hommedieu's warranty by charging them for control board parts within the two-year warranty period. Additionally, with regard to Barnes, Sears argues that plaintiffs have failed to allege that Barnes even contacted Sears regarding his defective electronic control board. Rather, plaintiffs merely assert that Barnes "spent approximately $100 for parts to repair the machine." *Id.* ¶ 50. This statement alone, Sears contends, does not demonstrate that there is an actual controversy between Barnes and Sears, because it is unclear whether he paid the $100 to Sears or another company.

Unlike most of their other claims, however, plaintiffs' allegations regarding Sears's failure to honor its warranty do not concern fraud and are not on the list of claims subject to the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b). Plaintiffs' failure to plead facts sufficient to demonstrate that Jarashow, L'Hommedieu, and Barnes's warranties were dishonored is thus not necessarily fatal to those claims. *See Pratt* v. *Tarr*, 464 F.3d 730, 732 (7th Cir. 2006) ("[N]otice pleading [is] all that is required of claims that don't fall within the scope of Rule 9(b)."); *Veazey* v. *Commc'ns & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999) ("[I]n contrast [to fact-pleading], the federal rules follow the notice pleading approach, requiring only a short and plain statement of the claim showing that the pleader is entitled to relief. The only function the pleadings must serve is to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process.") (internal quotation marks and citations omitted). The court therefore declines to grant Sears's motion to dismiss with respect to the second alleged actual controversy.

Finally, the third alleged actual controversy—Sears's unlawful gains under its extended warranty program—relies directly on Plaintiffs' allegation that Sears committed fraud by concealing material information from plaintiffs, in an effort to profit under its extended warranty

program.  As discussed above, plaintiffs fail to allege their fraud claims with the requisite

specificity.  Accordingly, plaintiffs have failed to allege an actual controversy between the

Plaintiffs and Sears with respect to unlawful profits from the warranty.

## CONCLUSION

For the reasons stated above, Sears's Motion to Dismiss [#78] is granted in part and

denied in part.  Counts I–X and Count XII of Plaintiffs' Amended Complaint [#66] are dismissed

with prejudice.  Count XIII, in which Plaintiffs' seek declaratory relief, is dismissed with

prejudice as to all claims except Sears's alleged failure to honor its two-year warranty for

plaintiffs Munch, Jarashow, L'Hommedieu, and Barnes's defective control boards.  Sears's

motion to strike [#74] is denied as moot.[12]


Dated:  September 30, 2008                    ENTER:  _Joan N. Lefkow_____

                                                              JOAN HUMPHREY LEFKOW

                                                              United States District Judge

---

[12]  The vast majority of the class allegations with which Sears's motion to strike is concerned have been
dismissed pursuant to Sears's motion to dismiss; the motion to strike is therefore moot with respect to
those allegations.  To the extent that Sears's motion to strike addresses Plaintiffs' remaining claims (e.g.,
Plaintiffs' claim for breach of implied warranty of merchantability (Count XI)), the motion to strike is
denied as premature.  *See, e.g.*, *Korman* v. *Walking Co.*, 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007)
(noting that courts often view motions to strike class allegations as premature and that the proper avenue
is to oppose the plaintiff's motion for class certification).