**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES, VICTOR MATOS, ALFRED BLAIR and MARTIN CHAMPION, Individually And On Behalf of All Others Similarly Situated; | CIVIL ACTION NO. 06 C 7023 |
| Plaintiffs, | |
| v. | |
| SEARS, ROEBUCK AND CO., | |
| Defendant. | |
| ALAN JARASHOW, LAUREN CRANE and LAWRENCE L'HOMMEDIEU, Individually And On Behalf Of All Others Similarly Situated; | CIVIL ACTION NO. 07 C 412 |
| Plaintiffs, | |
| v. | |
| SEARS, ROEBUCK AND CO., | |
| Defendant. | |
| JOHN BETTUA, GIUSEPPINA P. DONIA, DERRAL HOWARD, DENISE MILLER, CHARLES NAPOLI, VIC PFEFER, JEFFREY A. AND SANDRA K. ROBINSON, Individually And On Behalf Of All Others Similarly Situated, | CIVIL ACTION NO. 08 C 1832 |
| | JURY TRIAL DEMANDED |
| Plaintiffs, | Honorable Joan H. Lefkow |
| v. | |
| SEARS, ROEBUCK AND CO., | |
| Defendant. | |

## AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs, Kevin Barnes, John Bettua, Alfred Blair, Larry Butler, Martin Champion, Lauren Crane, Giuseppina P. Donia, Derral Howard, Alan Jarashow, Joseph Leonard, Lawrence L'Hommedieu, Victor Matos,  Denise Miller, Charles Napoli, Vic Pfefer, Jeffrey A. and Sandra K. Robinson, (collectively "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this Complaint, aver as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.      Plaintiffs bring this class action individually and on behalf of the Classes defined herein (the "Classes" or collectively, the "Class"), against Defendant, Sears, Roebuck and Co. ("Defendant" or "Sears"), to obtain, *inter alia*, damages and injunctive relief for the proposed Classes, as defined below.

2.      As alleged and explained more fully below, this action is brought to remedy violations of applicable law in connection with Sears' marketing, advertising, selling, warranting and servicing of its Kenmore HE2, HE2t, HE3, HE3t, HE4t, HE5t  and other Front-Loading Automatic Washers (the "Washing Machines" or "Machines"), certain of which are marketed and sold as part of Defendant's Kenmore Elite line of appliances.  The Washing Machines contain a serious design defect that prevents adequate water drainage and causes them to (a) accumulate mold and mildew within the Washing Machines; (b) produce a moldy odor that permeates consumers' homes if the doors to the Washing Machines are left open;  (c) produce a mold or mildew odor on clothes washed in the Machines; (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew

and/or associated foul odors; and (e) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold. The problems caused by the design defects are collectively referred to herein as "mold, mildew and/or foul odor problems" and/or "Mold Problems."  The Machines also suffer from electronic control board failure which manifests itself in a variety of ways including, but not limited to, (a) premature and repeated mechanical failure; (b) stopping or not starting; (c) door remaining locked; and (d) displaying a variety of error codes such as F11 and Fdl.  As a result of the defects, the Machines are unusable in the manner, to the extent to and for the purpose for which the Washing Machines were advertised, marketed and sold.

3.     As a result of Sears' false and misleading statements and concealment or material facts, as well as Sears' other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of Washing Machines and have suffered -- and continue to suffer -- injury as a result of the defective nature of these Machines and as a result of Defendant's misconduct.

4.     Plaintiffs assert claims for violation of the Magnuson-Moss Act (15 U.S.C. §§2301-2312) with respect to the written and implied warranties, violation of California's Song-Beverly Consumer Warranty Act (Civil Code §1790 *et seq.*), Arizona's Consumer Fraud Act (A.R.S. §§44-1251 *et seq.*), Cal. Bus. & Prof. Code Section 17200, Colorado's Consumer Protection Act (C.R.S. §§6-1-101 *et seq.*), Florida's Deceptive and Unfair Trade Practices Act, (F.S.A. §§501.201 *et seq.)*, Illinois's Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. §50 5/2), Indiana's Deceptive Consumers Sales Act (Ind. Code §24-5-0.5 *et seq.*), Kentucky's Consumer Fraud and Deceptive Business Practices Act (Ky. Rev. Stat. §367.220 *et seq.*), Michigan's Comp. Laws (§445.903 *et seq.*), Minnesota's Prevention of

Consumer Fraud Act (§325 F *et seq.*), New Jersey's Consumer Fraud Act (N.J. Rev. Stat. §56: 8-1 *et seq.*), New York's Gen. Bus. (§329 *et seq.*), Ohio's Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*), Oklahoma's Consumer Protection Act (15 Okl. St. §751 *et seq.*), Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 Pa.C.S.A. §§201-1 *et seq.*), Washington's Rev. Code (§19.86 *et seq.)*, Wisconsin's Deceptive Trade Practices Act (Wis. Stat. Ann. §100.18 *et seq.*), breach of implied warranty of merchantability, as well as claims for breach of express warranty and unjust enrichment under various states' laws.

5.     Plaintiffs seek actual and/or compensatory damages, as well as equitable relief, including the replacement and/or recall of the defective Washing Machines and/or repair and maintenance costs attributable to the defects, and costs and expenses of litigation, including attorneys' fees, to the extent permitted by applicable law, and all additional and further relief that may be available.

## THE PARTIES

### Named Plaintiffs

6.     Plaintiff, Kevin Barnes ("Barnes"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Texas.  Moreover, at all times relevant and pertinent to this action, Barnes has been a citizen of the State of Texas and the United States of America and has been domiciled in the State of Texas.  Barnes purchased an HE4t Washing Machine in or about March 2005.  Barnes paid approximately $1,150.00 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.  On or about October 2006, Plaintiff began experiencing problems with the HE4t washer in that the Machine would stop running, break down or otherwise fail to operate.  Additionally, error codes

such as F11 and FDL would appear.  Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine and spent approximately $100.00 for parts to repair the Machine, but was unable to completely resolve the problems.

7.     Plaintiff, John Bettua ("Bettua"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Florida.  Moreover, at all times relevant and pertinent to this action, Bettua has been a citizen of the State of Florida and the United States of America and has been domiciled in the State of Florida.  Bettua purchased an HE3.5 Washing Machine on or about June 20, 2006, and took delivery of the Machine on or about June 22, 2006.  Bettua paid approximately $599.88 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.  Bettua began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about June 2007.  Plaintiff promptly contacted Sears, on several occasions, concerning the problem with the mold, mildew and/or foul odors in the Machine.  In response, Sears sent a repairperson, who was unable to resolve the problems.  The Sears technician advised Bettua that "this is an age old problem [with the Washing Machines] that will never be fixed."  The Sears technician offered to replace the rubber seal in Bettua's Machine for a cost of approximately $400.00 (in addition to the $68.00 service call fee).  Plaintiff declined, because the Sears technician said that replacing the rubber seal would not solve the mold and mildew problem.  Specifically, the Sears technician indicated that he would "be back in six months (to replace it again), as they (front-loader Washing Machines) all do that."  Bettua also contacted Sears' corporate office, but did not receive any assistance.

8.      Plaintiff, Alfred Blair ("Blair"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of California.  Moreover, at all times relevant and pertinent to this action, Blair has been a citizen of the State of California and the United States of America and has been domiciled in the State of California.  Blair purchased a Kenmore Access HE 4t front loading washing machine in or about February 12, 2005.  Barnes paid approximately $1,499.00 for the Washing Machine, exclusive of a 10% discount for opening up a Sears credit card.  At all pertinent times, has used the Machine only for its intended purpose.  Within the first year of his ownership and use of the Machine, Plaintiff began experiencing problems with the HE4t washer in that the Machine would stop running, break down or otherwise fail to operate and error codes would appear.   Plaintiff promptly contacted Sears concerning the problem with the error codes and the mold, mildew and/or foul odors in the Machine.  Plaintiff was informed that it would cost approximately $600.00 and three weeks in time to repair the central control unit of the Machine.  Plaintiff did not elect to make the repair suggested by Sears.  Plaintiff made a second call to the Sears 800 repair service number when his clothes became locked in the Machine with water in the drum for three days. The Sears repair person again said it would take three weeks to get repair person out to Plaintiff's house to inspect and attempt to fix the Machine.  To date, Blair has not had the Machine repaired and has spent approximately $10 per week since January 2009 to wash his laundry at a public Laundromat.

9.      Plaintiff, Larry Butler ("Butler"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Indiana.  Moreover, at all times relevant and pertinent to this action, Butler has been a citizen of the State of Indiana and the United States of America and has been domiciled in the State of Indiana.  Butler purchased an HE3t Washing Machine in or

about February 2005. Butler paid approximately $1,200.00 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose. On or about November 2006, Plaintiff began experiencing problems with the HE3t washer in that the machine would stop running, break down or otherwise fail to operate. Additionally, error codes such as F11 and FDL would appear. Furthermore, the HE3t also developed a moldy musty smell. Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson, who charged Plaintiff for various "repairs," but was unable to completely resolve the problems.

10.     Plaintiff, Martin Champion ("Champion"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Illinois. Moreover, at all times relevant and pertinent to this action, Barnes has been a citizen of the State of Illinois and the United States of America and has been domiciled in the State of Illinois. Champion purchased an HE4t Washing Machine in or about March 2005. Champion paid approximately $1,229.99 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose. On or about January 2006, Plaintiff began experiencing problems with the HE4t washer in that the Machine would stop running, break down or otherwise fail to operate. Additionally, error codes such as F11 would appear. Plaintiff promptly contacted Sears concerning the problem with the error codes, and Sears sent out a repair technician who attempted to fix the error code problem and replaced the bellow. However, this repair was unsuccessful, and in October 2007 Champion had to spend approximately $60.00 for parts to repair the Machine. This still did not completely resolve the problems, and in March 2009, he further purchased an extended warranty for approximately $200.00 in expectation that the problems with the machine would never be

–7–

completely resolved.

11.     Plaintiff, Lauren Crane ("Crane"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of New York.  Moreover, at all times relevant and pertinent to this action, Crane has been a citizen of the State of New York and the United States of America and has been domiciled in the State of New York.  Crane purchased an HE4t Washing Machine in or about June 2005.  Crane paid approximately $1,200.00 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.  On or about April 2006, Plaintiff began experiencing problems with the HE4t washer in that the Machine would stop running, break down or otherwise fail to operate.  Additionally, error codes such as F11 and FDL would appear.  Furthermore, the HE4t also developed a moldy, musty smell.  Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine.  In response, Sears sent a repairperson, who charged Plaintiff for various "repairs" but was unable to completely resolve the problems.

12.     Plaintiff, Giuseppina P. Donia ("Donia"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Ohio.  Moreover, at all times relevant and pertinent to this action, Donia has been a citizen of the State of Ohio and the United States of America and has been domiciled in the State of Ohio.  Donia purchased an HE3 Washing Machine on or about September 15, 2003.  Donia paid approximately $1,000.00 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.  Donia began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (both escaping from the Machine and affecting clothes and other items washed in the Machine) after only one and a half to two years of use of her Washing

Machine. Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson, who charged Plaintiff for various "repairs" but was unable to completely resolve the problems.

13. Plaintiff, Derral Howard ("Howard"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Oklahoma. Moreover, at all times relevant and pertinent to this action, Howard has been a citizen of the State of Oklahoma and the United States of America and has been domiciled in the State of Oklahoma. Howard purchased an HE3 Washing Machine on or about July 4, 2005 and received delivery of the Machine on or about July 9, 2005. Howard paid approximately $1099.99 for the Washing Machine and, at all pertinent times, used the Machine for its intended purpose. Howard began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about July of 2007. Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine, and replaced some parts, including the rubber drain hose, but this did not completely resolve the problems. Furthermore, in response to an email from Howard complaining again about the problems in February 2008, Sears stated, "[o]ccasionally mildew will form above the water line in the inner tub assembly."

14. Plaintiff, Alan Jarashow ("Jarashow"), is, and at all times relevant and pertinent to this action has been, a resident and citizen New Jersey. Moreover, at all times relevant and pertinent to this action, Jarashow has been a citizen of the State of New Jersey and the United States of America and has been domiciled in the State of New Jersey. Jarashow purchased an HE4t Washing Machine in or about November 2004. Jarashow paid approximately $1,300.00

for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose. On or about November 2006, Plaintiff began experiencing problems with the HE4t washer in that the Machine would stop running, break down or otherwise fail to operate. Additionally, error codes such as F11 and FDL would appear. Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson, who charged Plaintiff for various "repairs" but was unable to completely resolve the problems.

15.     Plaintiff, Joseph Leonard ("Leonard"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Minnesota. Moreover, at all times relevant and pertinent to this action, Leonard has been a citizen of the State of Minnesota and the United States of America and has been domiciled in the State of Minnesota. Leonard purchased an HE3t Washing Machine in or about May 2005. Leonard paid approximately $1,000.00 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose. On or about October 2006, Plaintiff began experiencing problems with the HE3t washer in that the Machine would stop running, break down or otherwise fail to operate. Additionally, error codes such as F11 and FDL would appear. Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson, who charged Plaintiff for various "repairs" but was unable to completely resolve the problems.

16.     Plaintiff, Lawrence L'Hommedieu ("L'Hommedieu"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Washington. Moreover, at all times relevant and pertinent to this action, L'Hommedieu has been a citizen of the State of

Washington and the United States of America and has been domiciled in the State of Washington. L'Hommedieu purchased an HE3t Washing Machine in or about December 2004. L'Hommedieu paid approximately $1,100.00 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose. On or about January 2006, Plaintiff began experiencing problems with the HE3t washer in that the Machine would stop running, break down or otherwise fail to operate. Additionally, error codes such as F11 and FDL would appear. Furthermore, the HE3t also developed a moldy, musty smell. Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson, who charged Plaintiff for various "repairs" but was unable to completely resolve the problems.

17.     Plaintiff, Victor Matos ("Matos"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Kentucky. Moreover, at all times relevant and pertinent to this action, Matos has been a citizen of the State of Kentucky and the United States of America and has been domiciled in the State of Kentucky. Matos purchased an HE4t Washing Machine in or about January 2005. Matos paid approximately $1,200.00 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose. On or about August 2005, Plaintiff began experiencing problems with the HE4t washer in that the Machine would stop running, break down or otherwise fail to operate. Additionally, error codes such as F11 and FDL would appear. Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson, who charged Plaintiff for various "repairs" but was unable to completely resolve the problems.

18.     Plaintiff, Denise Miller ("Miller"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Wisconsin.  Moreover, at all times relevant and pertinent to this action, Miller has been a citizen of the State of Wisconsin and the United States of America and has been domiciled in the State of Wisconsin.  Miller purchased an HE2 Washing Machine on or about February 17, 2006 and took delivery of the Machine on or about February 24, 2006.  Miller paid approximately $843.99 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.  Miller began to experience mold and mildew accumulation in the Washing Machine and mold/mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about July 2006.  Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine.  In response, Sears sent a repairperson, who was unable to completely resolve the problems.

19.     Plaintiff, Charles Napoli ("Napoli"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Arizona.  Moreover, at all times relevant and pertinent to this action, Napoli has been a citizen of the State of Arizona and the United States of America and has been domiciled in the State of Arizona.  Napoli purchased a Kenmore Elite HE2 Washing Machine on or about October 7, 2006, and received delivery of that Machine on or about October 10, 2006.  Napoli paid approximately $799.99 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.  Napoli began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washing the Machine) within six months after purchasing the Washing Machine.  Plaintiff promptly contacted Sears

−12−

concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson, on at least two occasions, who charged Plaintiff for various "repairs" but were unable to completely resolve the problems.

20.     Plaintiff, Victor Pfefer ("Pfefer"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Colorado. Moreover, at all times relevant and pertinent to this action, Pfefer has been a citizen of the State of Colorado and the United States of America and has been domiciled in the State of Colorado. Pfefer purchased a Kenmore Elite HE3t Washing Machine in or about the spring of 2004 from The Great Indoors® (a store owned by Sears), and received delivery of that Machine shortly thereafter. Pfefer paid approximately $1,500.00 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose. Pfefer began to experience mold and mildew accumulation in the Washing Machine and to experience mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about December 2006. Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine, but the problems were not resolved. Further, in response to an email in January 2008, Sears sent "instructions" for cleaning, which did not work and did not resolve the problems.

21.     Plaintiffs, Jeffrey A. and Sandra K. Robinson (the "Robinsons"), are, and at all times relevant and pertinent to this action have been, residents and citizens of Wisconsin. Moreover, at all times relevant and pertinent to this action, the Robinsons have been citizens of the State of Wisconsin and the United States of America and have been domiciled in the State of Wisconsin. The Robinsons purchased a Kenmore Elite HE4t Washing Machine on or about July

−13−

4, 2006 and its representatives represented the Washing Machine as the "best washing machine in the industry." The Robinsons received delivery of that Machine on or about July 11, 2006. The Robinsons paid approximately $1,541.74 for the Washing Machine and, at all pertinent times, have used the Machine only for its intended purpose. The Robinsons began to experience mold and mildew accumulation in the Washing Machine and mold/mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) within four months after purchasing the Washing Machine. Plaintiffs promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson, on more than one occasion, and charged Plaintiffs for various "repairs" but did not completely resolve the problems. The Sears repairman that came to their home in October 2007 was candid about the problem that plagues the Washing Machines and stated that there is no permanent fix for the mold and mildew problem in the Washing Machines. The Sears repairman stated that removing and cleaning the mold and mildew from the back of the stainless steel drum, and then replacing the drum's plastic liner and rubber seal, would only provide temporary relief. The repairman suggested that this temporary fix would not be worth the cost.

22 – 23.      Omitted.

**<u>Defendant</u>**

24.      Sears is a New York corporation and maintains its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. At all times relevant and pertinent to this action, Sears has been a citizen of the State of Illinois. Sears markets and sells Kenmore brand products, including the Washing Machines, throughout the United States, including this judicial district, itself, and by and through its Sears, Kmart and other retail outlets.

**JURISDICTION AND VENUE**

25.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.§1332(d)(2)

because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

interest and costs, and this is a class action in which certain of the Class members and Defendant

are citizens of different states.

26.     Venue is proper in this judicial district pursuant to 28 U.S.C.§1391, because

Defendant does business throughout this district and a substantial part of the acts and omissions

giving rise to Plaintiffs' claims occurred in this district and emanated from this district.  Further,

Sears maintains its principal place of business in this district.

27.     At all pertinent times, Defendant was engaged in the sale of products, including

the Washing Machines, throughout the United States.

28.     At all pertinent times, Sears was in the business of distributing, advertising,

marketing, promoting and selling products, including the Washing Machines.

29.     The Washing Machines that form the basis of this Complaint were purchased

from Defendant and/or placed in the stream of commerce by Defendant.

**FACTUAL BACKGROUND**

**Class Members' Common Factual Allegations**

30.     Defendant holds itself out to the public as a leading broad line retailer providing

merchandise (including the Washing Machines) and related services.  Defendant is in the

business of distributing, and/or selling washing machines through more than 2,400 Sears-branded

and affiliated stores in the United States and Canada.

31.     Defendant has sold and/or distributed front-loading Washing Machines for its retailers throughout the United States.

32.     In recognition of the anticipated useful life of the Machines, Sears expressly warranted that the Washing Machines were reliable, free from defects, and of merchantable quality and workmanship.  Sears specifically represented that the Washing Machines were "designed and manufactured for years of dependable operation" and, in recognition of the anticipated useful life of the Machines, expressly warranted the stainless steel drum of the Washing Machines for its lifetime.  Specifically, Sears provided a "limited lifetime warranty on the stainless steel drum" stating that, "for the lifetime of the washer from the date of purchase," Sears would replace the "Stainless Steel drum due to defective material or workmanship."  Sears also provided each owner with a one-year warranty for mechanical and electrical parts, a two-year warranty on SENSOR SMART™ control board, a five-year warranty on gear case parts, and a ten-year warranty on the plastic tub.  Sears' express warranty provides coverage for repairs to correct any Washing Machine defect related to materials or workmanship occurring during the warranty period.  Under this warranty, Sears was obligated, *inter alia*, to repair the water drainage and electrical control board defects at no charge.  Defendant has these same obligations with respect to Plaintiffs and all Class members, but has failed to satisfy these obligations.   In conjunction with each sale, Defendant marketed, advertised and warranted that the defective Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects, including that the Machines would not accumulate mold, mildew or emit associated odors, and/or result in mechanical and electrical failures.

33.     Defendant also makes numerous additional express representations about the quality of the Washing Machines.  For example, Sears sold the Washing Machines as "High Efficiency" and labeled the Machines as "ENERGY STAR" compliant.  ENERGY STAR is a voluntary labeling program designed to identify and promote energy-efficient products through a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy. Members of the Class have purchased the Washing Machines, in part, on the basis that the Machines would save money and energy.  In reality, at the recommendation of Sears and independently, Class members are having to run empty cycles of hot water and bleach to combat the mold and mildew problems with the Machines.  Further, Sears recommends running successive washer cleaning cycles with bleach.  Upon information and belief, the ratings (Modified Energy factor) provided by Sears to the government entities are not taking into account the extra loads necessary to run through the Machines in order to attempt to clean the Machines.  Therefore, the ENEREGY STAR label is false and misleading.

34.     Sears has refused, and continues to refuse, to warn consumers about the water drainage and electronic control board defects inherent in the Washing Machines, or to effectively remedy the problems and defects inherent in the Machines.  In fact, to this day, Sears continues to deny that there is a Mold Problem or a mechanical problem with its Washing Machines. Unwilling to admit fault, Sears has sat silently while consumers have purchased these defective products and continues to sit silently today as an unacceptable percentage of the Washing Machines become effectively unusable.  Sears has omitted and/or concealed material facts regarding the Washing Machines, including a serious design defect that prevents the Machines from adequately cleaning themselves following a wash cycle which causes the Washing

Machines to: (a) accumulate mold and mildew within the Washing Machines; (b) produce a moldy odor that permeates consumers' homes if the doors to the Washing Machines are left open; (c) produce a mold or mildew odor on clothes washed in the Machines; (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew and/or associated foul odors; and (e) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold.

35.     The Machines also suffer from an electronic control board defect which manifests itself in a variety of ways including, but not limited to, (a) premature and repeated mechanical failure; (b) stopping or not starting; (c) door remaining locked; and (d) displaying a variety of error codes such as F11 and Fdl.  As a result of the defects, the Machines are unusable in the manner, to the extent and for the purpose for which the Washing Machines were advertised, marketed and sold.

## **MOLD PROBLEM**

36.     Defendant's Washing Machines fail to adequately clean themselves following the completion of a wash cycle.  Upon information and belief, the stainless steel drum, which comes with a lifetime warranty, among other things, plays a role in the accumulation of mold and mildew within the Washing Machines by, *inter alia*, not fully or properly draining in connection with each and every wash cycle.  Also playing a role in the accumulation of mold, mildew and/or foul odors is the door seal ("boot"), which, among other things, does not fully or properly drain or get clean in connection with each and every wash cycle.  Additionally, while offering the Washing Machines for sale to the general public, Defendant was aware of the water drainage defect and that it had no effective solution or remedy for the defect.

37.     Sears is aware that the Mold Problem is caused *inter alia*, by the inability of the Machine to clean itself following a wash cycle and that none of the proposed solutions Sears has offered Plaintiffs and the Class members will adequately remedy the defect.

38.     Upon information and belief, Sears knew and was aware, prior to marketing and selling the Washing Machines, that the Machines were inherently defective in that they were substantially likely to cease working in the manner that they were intended to perform during their useful life. Nevertheless, Sears has failed and refused to inform its customers of the serious defect inherent in the Washing Machines or to advise them regarding the problems that they would encounter when the Machines began to accumulate mold, mildew and/or foul odor problems as result of the self-cleaning defect at issue in this case.

39.     Sears has refused, and continues to refuse, to advise consumers about the self-cleaning defect inherent in the Washing Machines or to effectively remedy the problems and defect inherent in the Machines. In fact, to this day, Sears continues to deny that there is a Mold Problem with its Washing Machines. Unwilling to admit knowledge of the extent of the problem, or fault, Sears has sat silently while consumers have purchased these defective products and continues to sit silently today as an unacceptable percentage of the Washing Machines become effectively unusable for their intended purpose.

40.     Based upon, *inter alia*, consumer complaints, representations by Sears' representatives (including repair personnel), and information available in the public domain, the number of Washing Machines experiencing mold and mildew growth and accumulation as a result of the water drainage defect dramatically and materially exceeds the failure/defect rates of comparable, non-defective washing machines. The level of failures is substantially high such

−19−

that any reasonable consumer would consider the existence of the self-cleaning design defect material in connection with the purchase of a Washing Machine. This is particularly true because the Machines often exhibit mold, mildew and/or foul odor problems within the warranty period, or shortly after the expiration of the warranty period. Moreover, consumers are frequently required to spend several hundred dollars (if not more) to attempt to remedy the defect (including the re-washing of clothes and other items rendered "unclean" as a result of the defect). The money spent by consumers to attempt to remedy the defect is wasted, however, because Sears does not have an adequate remedy for the self-cleaning defect. For example, Sears technicians have suggested that consumers run bleach, vinegar or other cleaning solutions through their Machines to kill the mold and mildew, *i.e.* that consumers wash their own Washing Machines. But these proposed solutions have not rectified the problem. Moreover, one solution suggested by Sears is to leave the door open so the Washing Machines dry and/or air out; however this is a dangerous "solution," as it poses a deadly risk to each household that has small children.

41.     As a result of the mold, mildew and/or foul odor problems that permeate many clothes and other items, including towels, that are "washed" in the Machines, many consumers have been forced to not only re-wash but to even replace clothes, towels and other items that have been ruined by the defect in these Washing Machines.

42.     Plaintiffs' experiences mirror those of the thousands of other owners of the Washing Machines. The internet is replete with references to the common and profound problems that consumers have experienced with the Machines, including, but not limited to, the following small sample of representative complaints appearing in one on-line forum:

I have problems with a moldy, musty smell from my front Kenmore Elite washer.  I too also wished I had never bought it.  The use of less water and detergent seemed to be a real plus, but the clothes don't seem to get clean.  I take care of my three little grandchildren so the machine is always in use.  I leave the door open.  I try to wipe out the gasket, but nothing removes the smell.  My problem is that the laundry room is right next to the back door and kitchen, so the odor is most annoying.  I would love to have my old frontloader back.  Anyone contemplating a frontloader should ask some hard questions of the salespeople.

*       *       *

I purchased a Sears HE1 front loader 4 years ago and have had a chronic problem with mold under the gasket.  I leave the door open and have to wipe the underside of the gasket with bleach occasionally.  It smells all the time and I have not been happy with that aspect of it.  I am going to contact Sears and start a formal complaint process to see where that gets me.  I am hoping they will at least have a retro-fit for it and acknowlege the problem.  I'll keep you posted as to my results.

*       *       *

I have a Kenmore Elite front load that is now 2 ½ years old.  It has smelled musty for about 1 year.  I now have found Im not the only one with the problem and wonder if Sears backs this problem?  I will be calling on this but it sounds like ... there is no solution to cleaning or drying the problem away.  It stinks and is very annoying to have a brand new house and new equipment and then a nasty smell.

*       *       *

I HAVE A KENMORE ELITE FRONT LOAD FOR APPROX 2 YEARS AND THE MUSTY SMELL IS HORRIBLE. IF I LEAVE THE DOOR OPEN, THE ENTIRE LAUNDRY ROOM SMELLS.... HOPEFULLY THE MOTOR BLOWS AND MY HUSBAND LETS ME BUY A TOP LOADER.  I GUESS WE ARE ALL STUCK WITH THIS EXPENSIVE NO GOOD WASHER FOR A WHILE.

*    *    *

I have a Kenmore Elite front loading washing machine (3 yrs old). I have spent a fortune replacing smelly towels. I have tried the bleach, baking soda, white vinegar,and Lysol suggestions to get rid of the odor in my towels. I have been told only to use the hottest water possible and on the longest time setting. Strangely enough, nothing else stinks but the towels. The smell is so bad that if you dry off with them, then you'll smell that funky smell on your skin. The only solution I have found is to throw them away. We keep the door open between washes and wipe out the mold as it accumulates. I use the "correct" HE detergents, but nothing seems to make any difference. I spent a lot of money on this washer and now I am spending a lot of money replacing towels for 3 bathrooms every 4 months! I told my husband that we'd spend less money drying off with paper towels every day.

*    *    *

I'm elated to know I'm not alone in my mold issue!! I thought I was doing something wrong. I love my Kenmore Elite HE3, I've had it about 2 yrs,but not enjoying the mold problem. The savings of detergent, water and energy are great and my washing time is cut in half due to the large amount of cloathes in each load. BUT....I have tried a little bleach and wiping it down after each use and leaving the door open all the time but to know avail. I've also tried a little bleach and a small load of just water cycle. (although I'm going to try the "stopping it for 10 min." suggestion.) Still there. My main complaint are my towels! Especially wash cloths. Oiy! I've thrown out several and can't seem to get the soured smell out....

*    *    *

Hi I have been reading many comments. Obviously I am here for a reason as well. I purchased my Kenmore washer and Dryer 2 years ago and although I love them for saving me time and money (supposedly) I find my towels and dish clothes always come out with a horible smell. I have thrown many out because I have not been able to find a solution to the problem. I have tried using household Amonia in with my detergent and always liquid detergent. That helps until someone goes to dry themselves off after a shower then I hear "why do our towels stink?"

I am throwing more towels away these days because of the smell. I even started putting smaller loads in the machine so I am back to doing more loads more often.

*       *       *

I hate my front loading washing machine. I thought by buying it I would be helping because it uses less water, but all the washing over and over and running everything from bleach to tang through it I use more water than I would have with my old top loader. I have a Sears Elite and no matter what I do it smells and like another, if I leave the door open my whole laundry room smells. Knock you over smell. The repair man told me that it is the main problem with the front loader and even when the repair men talk it over among themselves they can't figure out a way to fix the problem. I think we should all get together and sue the manufactures for faulty machines. The mold can't be good for us either and adding that smell just makes it even more so.

I am going to get rid of mine as soon as I have the extra money to buy a new one even though the front loader is new.

Even my clothes smell. I hate it.

*       *       *

I can't believe how many people have the same problem with their smelly towels. I have had my Kenmore front loader since Jan 06 and it started to smell within months. The towels are definitely worse than all other laundry but the machine can also smell up the laundry room. If this is a universal problem then why aren't the manufacturers responsible ... or liable as they say? I have also seen the scum under the rubber gasket ... I have tried running bleach throught the cycle and wiping with paper towel but the problem never really goes away!

*       *       *

I have a front loader and it has mold...severely...in the water hoses inside of the machine. My husband has been VERY ill for several years and was thought to have MS...no...it was an allergy to the mold in the machine being washed onto his clothes. All of our clothes smelll SOOOOOO bad and all of us have been ill to some

−23−

> degree. Sears would come out and say they couldn't find a reason
> for the smell....until the last tech came out and showed me the
> white hoses were now BLACK from mold. And...this being
> washed onto all of our clothes. I have to replace all of our clothes,
> bedding, towels...and Sears is being HORRIBLE about the whole
> problem. I would NEVER buy a front loader again!!!! Be
> careful!!! Not only is there mold in the rubber boot in the
> front...but in the hoses inside of the machine!!! Please be careful!!

http://www.dld123.com/q&a/index.php?cid=443 (misspellings in original entries).

43.     Plaintiffs' experiences, mirroring those of countless other Washing Machine

purchasers who have publicly recounted their problems with these models, reveal that these

warranties were breached. Sears has long known that the Washing Machines suffer from a self-

cleaning defect and do not perform as intended, because they are susceptible to and likely to

experience Mold Problems as a result of *inter alia*, the water drainage defect, which Sears has

been, and continues to be, unable to remedy. This problem is compounded by the fill lines on the

Washing Machines used to measure detergent and fabric softener which also may be defective.

44.     Each of the Plaintiffs named in this lawsuit purchased a Sears Washing Machine

and used it for its intended purpose, and in a manner consistent with its intended use. At the time

of Plaintiffs' purchases, Sears failed to disclose that the Washing Machines were defective, as

evidenced by the fact that Plaintiffs experienced, and continue to experience, mold, mildew

and/or foul odors in their Machines and on clothing and other items washed in their Machines.

45.     In response to the various notices from the Plaintiffs to Sears regarding the defects

in their Washing Machines and the mold, mildew and/or foul odor problems, Sears personnel,

including retailers and authorized repairmen, made form or "canned" responses. For example, on

or about February 2008, Sears provided the following instructions in response to an email from

Plaintiff Howard:

> "Set the washer to its highest possible fill level and load size but do not add laundry.  Use an all hot water wash setting and allow the wash basket to fill, then stop the cycle.  Add an additional 3-5 gallons of very hot water using a bucket or similar device.  Add one cup of chlorine bleach and continue the cycle for approximately half the normal wash cycle.  (Do not allow the machine to advance to a drain or rinse cycle).  Stop the cycle and allow the tub to soak for 3-4 hours.  Resume the cycle and allow the unit to agitate for the rest of the wash cycle and drain.  Advance the timer and run a second all hot water wash cycle to assure that all bleach water residue is flushed from the system.
>
> To clean the seal itself, use a solution consisting of 1/4 cup of bleach to 1 gallon of warm water with a small amount of dishwashing detergent.  Use this solution to scrub the door seal.
>
> To prevent further odor problems, always leave the washer door open between loads to allow a more thorough drying of the interior.  Some consumers add a small fan to the laundry room to speed the drying process."

46.     Sears also proposed, *inter alia*:  running double rinse cycles with each load; wiping down the gasket, door and inside of the Washing Machines after each use; wiping the inside of the stainless steel drum with a washcloth after use of the Washing Machine; running empty loads with bleach, borax and/or baking soda through the Machine; wiping the seal of the Machines; cleaning the filter of the Machines; running vinegar through the Machines; running vinegar and bleach, dishwasher detergent, and baking soda through the Machines; leaving the door open after each wash (despite the obvious danger to children and inconvenience in tight spaces normally associated with laundry rooms); running the sanitary cycle all the time; using far less laundry detergent than recommended in the owner's manual; running Clorox through the

Machines; using a cleaning solution sold by Sears and devised to address Mold Problems; cleaning the rubber seal on a regular basis; hand-drying the Machines after each use; running weekly hot water cycles and wiping the gasket with bleach and hot water after every use of the Machine; using a sanitizer; running back-to-back empty-load cycles of water and bleach; and cleaning a particular tube underneath the Machine.

47.    Sears also attempted to profit from the Mold Problems.  For example, its technicians, while on service calls, strongly urged Plaintiffs to purchase additional extended warranties on the Machines, for amounts ranging from $300.00 to $910.00.  Similarly, Sears sells a solution that it claims will address Mold Problems each time they recur.

48.    Tellingly, neither the Mold Problems nor the alleged "solutions" were set forth in Plaintiffs' Owner's Manuals that accompanied the Sears Machines.  Moreover, none of these alleged "solutions" stopped or otherwise remedied the Mold Problems that plague Plaintiffs' and Class Members' Sears Washing Machines.

49.    As a result of the mold, mildew and/or foul odor problems, Plaintiffs collectively have been forced to endure, *inter alia*, mold, mildew and/or foul odors in their Machines and on their clothes and other items.

## ELECTRICAL CONTROL BOARD PROBLEM

50.    Based upon Plaintiffs' investigation to date, the Washing Machines have demonstrated mechanical and electrical failure due to the use of defective, inappropriate, and/or inferior electronic control panels, *a.k.a.* Central Control Units or CCUs.  This problem manifests itself as error codes such as F11 and FDL, among others, with the Machines not starting, stopping during a cycle, being unable to unlock or open the door, and other operative failures.

51.     The failures of the electronic control panels may be related to faulty or defective relays within those panels.

52.     Remedy or repair of the mechanical and electrical defects in the Washing Machines has proven elusive.  For example, the Sears' CCU failure technicians have focused on the door lock mechanism or rebalancing the Machine, which have not rectified the problem and necessitated further service calls.

53.     Further injuring consumers, the defects described herein tend to manifest themselves and/or recur after Sears' express warranty has elapsed, putting owners of the Washing Machines in the position of having to pay to repair the problems.  These repairs cost Plaintiffs and the Class a significant amount of money; some of Plaintiffs spent over 30% of the purchase price of the Machine repairing it.  Indeed, Sears uses the need for these repairs as a basis for marketing extended warranties on its Washing Machines, generating even more revenue.

54.     Sears received a significant number of complaints regarding the performance of the Washing Machines concerning the problems identified herein, including complaints from Plaintiffs in this litigation.  The number of complaints Sears received about the defects and problems described of herein were far in excess of the number deemed acceptable by reasonable quality control.

**THE DEFECTS AND THE WRONGFUL CONDUCT**

**(Incapable of a Single Simple Repair)**

55.     Defendant utilizes various quality control protocols and standards for the manufacture and quality control testing of products sold to its consumers.

56. Notwithstanding Sears' quality control efforts, an unacceptable number of Sears' Washing Machines manifest defects in design and/or manufacture. Moreover, each defect – Mold Problem and Electrical Control Board Problem – has been resistant to multiple attempts at repair. For example, the suggested "fixes" for the Mold Problem are ineffective or are temporarily effective and requiring multiple applications, only to have the Mold Problem re-appear. Also, fixes such as replacing the boot also result in re-development of the Mold Problem. This is because each "fix" suggested by Sears only goes to the symptom – the Mold Problem – and not the defect, which is the inability of the Washing Machine to clean itself after each wash cycle. A washing machine should be able to remove the debris and filth left over after washing each load of clothes. However, the Washing Machines are incapable of and do not accomplish this fundamental task and no "fix" yet has been able to cure the defect in the Machines. Furthermore, the fixes for the Control Board Problem include such repairs as replacing the door latch and un-plugging the Machine for a period of time. These "fixes" also do not repair the Machines and multiple repairs are necessary. Unless the relays are replaced – at a cost of up to 50% of the purchase price of the Machine – the electromechanical problems will persist. Sears' knowledge that the Washing Machines contain defects that are resistant to (costly) repair is a material fact that should have been made available to the Washing Machine consumers.

**(Accepted Industry Standards)**

57. One accepted industry standard requires defect levels below 1 in 10,000 units, or a failure rate of .01% for electromechanical defects. Industry norms for washing machines having the ability to self-clean through and after each washing cycle are 100% of all units short of some

–28–

defect in design or manufacturing. Consequently, based upon industry standards, only a few hundred Washing Machines should exhibit one of the defects identified here.

58.     Sears introduced the Kenmore HE Series Washing Machines in August 2001. From initial production through March of 2007, Sears had sold over 1.5 million Kenmore HE Series Washing Machines. According to Sears, at least 22,987 HE Series owners have had electronic control board repairs (1.5%), and at least 15,538 have had mold issues (1.0%). Sears' failure rates are far in excess of industry standards.[1] Upon information and belief, failure rates are underreported by at least a magnitude of five, but likely more. The Mold Problems are so pervasive that Whirlpool and other companies have created cleaning products such as Affresh, Smelly Washer and Tide Cleaner, among others, which reflect at minimum the scope and demand of the problem. Consequently, even the under-reported failure rates are in excess of industry norms, and are a material fact that should have been made available to the Washing Machine consumers.

59.     The failure rate – well is excess of the industry norm – would be a material fact to a reasonable consumer purchasing a Washing Machine. This failure rate is even more material given that the Washing Machines average in cost of over $1,000.00, with some members of the Class paying in excess of $1,2000.00 for their Washing Machine. Considering that a traditional washing machine can be purchased for as little as $350.00, knowing that the Washing Machines had one or more defects is a material fact to a consumer who is paying such a premium for a high-end Washing Machine.

---

[1] Plaintiffs expect formal discovery to establish a more accurate failure rate *in excess* of Defendant's current admissions. Discovery in the case so far has already shown that these numbers are significantly underreported.

**(Sears' Deceptive Practice and the Best Known Date at Which Sears Knew of the Defects Without the Benefit of Discovery)**

60.     Prior to the sale of the Washing Machines, Sears marketed and sold Calypsos Washing Machines, which had many of the same defects as alleged herein, and which resulted in litigation against Sears, with Sears ultimately agreeing to pay damages to the owners of Calypsos Washing Machines. Because of the previous problems with Calypso Washing Machines, Sears knew or should have known about defects, such as those, in the Washing Machines, and failure to disclose those defects would cause substantial damage and injury to consumers.

61.     Despite receiving a high level of complaints about the Washing Machines and notwithstanding Sears' superior knowledge of the relatively high incidence of problems, Sears continued to misrepresent the Washing Machines as being dependable and providing outstanding cleaning and did not disclose the relatively high likelihood of product defects to its consumers and/or omitted disclosing this likelihood. Sears has never disclosed the many claims it received or the high incidence of repair of the Washing Machines, or implemented a recall to correct these problems. Sears omitted critical information and made representations with the intent that consumers rely upon the totality of the message conveyed, *i.e.,* that the Machines were highly dependable and effective, or that the Machines failed at a rate far in excess of accepted industry standards.

62.     Beginning in late 2002 and continuously through late 2006, Plaintiffs purchased their Washing Machines. Beginning in late 2004 and continuously at least through late 2007, Plaintiffs notified Sears of the defects alleged herein. Despite the individual and cumulative notices, Sears did not, and has yet to, disclose the risks of these defects to any of the Plaintiffs or

any member of the Class. Moreover, upon introducing the Washing Machines, Sears began to receive complaints regarding Mold Problems. By the end of 2002, Sears had received hundreds, if not thousands, of complaints of Mold Problems, and Sears had received several thousand complaints by the end of 2003. Based on its experience with the Calypso Washing Machine, which also had Mold Problems, the numerous complaints received shortly after the Washing Machines were put to market were or should have been more than sufficient to place Sears on notice of the defect. Additionally, the complaints Sears received regarding the Control Board Problem followed the same pattern of the Mold Problem complaints, though about two years behind. As with the Calypso that had Control Board Problems, Sears was or should have been aware of the defect with the first reports of problems.

63. Although Sears had prior knowledge of the multiple defects with washing machines as a result of the Calypso machines, and although Sears was receiving thousands and thousands of complaints, Sears did not disclose the risk of defects with the Washing Machines to the Plaintiffs or the Class. Moreover, to this day, despite acknowledging the receipt of tens of thousands of complaints (which number is vastly understated), Sears has yet to make any such disclosure. This failure to disclose, and to continue to fail to disclose, is a deceptive practice or pattern upon Washing Machine consumers, who each spent near, or over, $1,000.00 for the Washing Machines.

64. Sears manufactured and sold the Washing Machines to consumers when it knew or should have known the Machines were not dependable and would not withstand normal operation. The Washing Machines were not of the standard, quality or grade that Sears represented them to be and were not fit for their expected uses. Sears omitted, or otherwise

concealed or failed to disclose to Plaintiffs and the Class members, the true unreliable and defective nature of the Washing Machines, and Sears failed to take other remedial action to correct its omissions or concealments.

65. Sears falsely represented that the Washing Machines provided outstanding performance as home washing machines, even though it knew or should have known that major components of the Machines would fail when used and operated in a normal manner well before the reasonable expectations of the consumers using the product.

66. As a result of Sears' failures and misconduct as detailed herein, Plaintiffs and the proposed Class members have suffered actual damages because their Washing Machines have not operated as represented by Sears. Plaintiffs and the proposed Class have overpaid for the Machines because the value of the Machines was diminished at the time they were sold to consumers. Additionally, Plaintiffs and the proposed Class have been damaged by having to pay for costs associated with service calls, buy replacement parts, clean the Machines, pay for washing items at laundromats and buy extended warranties. If Plaintiffs and other members of the Class had known about the design defects affecting the Washing Machines, they would not have purchased the Washing Machines, or would have paid significantly less for the Machines.

67. The Washing Machines purchased by Plaintiffs and Class members fail to work properly, or as intended, because of defects in their design (not because of the ordinary course of usage by Plaintiffs or Class members).

68. Sears has failed to adequately ensure that the Washing Machines are free from defects. Before the Washing Machines even reached the market, Sears knew, or was reckless in not knowing, that they: (a) contained inherent design defects; and (b) were not of merchantable

quality.

69.     To this day, Sears continues to conceal material information from users, consumers, and the public concerning the Washing Machines, including, *inter alia*, information showing that: (a) the Machines are inherently defective; and (b) the Machines are not of merchantable quality.  In fact, to this day, Sears continues to deny that there is a mechanical problem and/or Mold Problem with its Washing Machines.

70.     Sears knowingly concealed material facts regarding the Washing Machines, namely that they are inherently defective and unreliable, and that they are not of merchantable quality, with the intent that consumers would purchase the Machines.

71.     Faced with a substantial number of consumer complaints regarding the defect and problems associated with the Washing Machines, Sears has failed and refused to warn consumers about the defects inherent in these Machines and, instead, has sat by silently while consumers have purchased these defective products.

72.     Sears intended for customers to believe its statements and representations about its Washing Machines and to trust that its high-end Washing Machines were and are of first-rate quality.  Sears has instead concealed material facts regarding the Washing Machines.

73.     Plaintiffs and Class members reasonably expected that the Washing Machines would not contain design defects that would substantially impair the Machines' performance and use.  Plaintiffs and Class members also reasonably expected that the Machines would not require extensive and expensive repairs (or the purchase of extended or third-party warranties to continuously attempt to fix problems inherent in the Washers) as a result of the defects, which defects were known to Sears at the time of sale.  If Sears had not misrepresented and concealed

material information regarding the defective nature of the Washing Machines, Plaintiffs and other members of the Class would not have purchased the Machines at premium prices, and on the terms offered.

74. All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Consolidated Class Action Complaint.

## CLASS ACTION ALLEGATIONS

75. Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

### Nationwide Class:

All persons or entities residing in the United States who purchased, not for resale, a Washing Machine ("Class").

76. Plaintiffs also bring this action on behalf of the following Sub-Classes, as more fully set forth below and to the extent appropriate, in the alternative to the claims asserted on behalf of the Class:

**Arizona:** All Class members who purchased a Washing Machine, not for resale, in the State of Arizona ("Arizona Class").

**California:** All Class members who purchased a Washing Machine, not for resale, in the State of California ("California Class").

**Colorado:** All Class members who purchased a Washing Machine, not for resale, in the State of Colorado ("Colorado Class").

**Florida:** All Class members who purchased a Washing Machine, not for resale, in the State of Florida ("Florida Class").

**Illinois:** All Class members who purchased a Washing Machine, not for resale, in the State of Illinois ("Illinois Class").

−34−

**Indiana:**      All Class members who purchased a Washing Machine, not for resale, in the State of Indiana ("Indiana Class").

**Kentucky:**      All Class members who purchased a Washing Machine, not for resale, in the State of Kentucky ("Kentucky Class").

**Michigan:**      All Class members who purchased a Washing Machine, not for resale, in the State of Michigan ("Michigan Class").

**Minnesota:**      All Class members who purchased a Washing Machine, not for resale, in the State of Minnesota ("Minnesota Class").

**New Jersey:**      All Class members who purchased a Washing Machine, not for resale, in the State of New Jersey ("New Jersey Class").

**New York:**      All Class members who purchased a Washing Machine, not for resale, in the State of New York ("New York Class").

**Ohio:**      All Class members who purchased a Washing Machine, not for resale, in the State of Ohio ("Ohio Class").

**Oklahoma:**      All Class members who purchased a Washing Machine, not for resale, in the State of Oklahoma ("Oklahoma Class").

**Pennsylvania:**      All Class members who purchased a Washing Machine, not for resale, in the State of Pennsylvania ("Pennsylvania Class").

**Texas:**      All Class members who purchased a Washing Machine, not for resale, in the State of Texas ("Texas Class").

**Washington:**      All Class members who purchased a Washing Machine, not for resale, in the State of Washington ("Washington Class").

**Wisconsin:**      All Class members who purchased a Washing Machine, not for resale, in the State of Wisconsin ("Wisconsin Class").

77.    Excluded from the Class and Sub-Classes are Defendant, its affiliates, employees, officers and directors, persons or entities which distribute or sell the Washing Machines, persons

who have experienced personal injury as a result of purchasing the Washing Machines, the

Judge(s) assigned to this case and the attorneys of record.  Plaintiffs reserve the right to amend

these Class definitions if discovery and/or further investigation reveals that they should be

expanded or otherwise modified.

78.     **Numerosity**:  The members of the proposed Classes are so numerous that joinder

of all members is impracticable.  Each of the proposed Classes includes thousands of members.

The precise number of members of each of the Classes can be ascertained through discovery,

which will include Defendant's sales, warranty service and other records.

79.     **Commonality And Predominance**:  The following questions of law and fact are

common to the Classes:

      (a)     whether the Washing Machines are defective;

      (b)     whether, prior to sale, Sears knew that the Washing Machines were defective;

      (c)     whether Sears made false and/or misleading statements of facts to members of the Classes concerning the Washing Machines;

      (d)     whether Sears omitted material facts and concealed facts from its communications and disclosures to Plaintiffs and members of the Classes regarding the defect inherent in the Washing Machines;

      (e)     whether Sears' false and/or misleading statements of facts and concealment of material facts regarding the Washing Machines were likely to deceive the public;

      (f)     whether, by its conduct, Sears has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the advertising, marketing and sale of the Machines;

      (g)     whether, by its conduct, Sears has violated various state consumer

−36−

protection statutes;

(h)     whether Sears has breached its warranty and/or extended warranty running between it and the members of the Classes;

(i)     whether Sears has breached its implied warranties running between it and the members of the Classes;

(j)     whether, by its conduct, Sears has been unjustly enriched; and

(k)     whether members of the Classes are entitled to recover damages and/or other relief and, if so, the appropriate amount thereof.

80.     **Typicality**:  The representative Plaintiffs' claims are typical of the claims of the members of the Classes.  Plaintiffs and all members of the Classes have been injured by the same wrongful practices in which Sears has engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

81.     **Adequacy**:  Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests which are contrary to or conflicting with the Classes.

82.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each Class member resulting from Sears' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting separate

claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Classes would be proper. Sears has acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Classes as a whole is appropriate.

## **FRAUDULENT CONCEALMENT**

83.     Throughout the Class Period, Defendant affirmatively concealed from Plaintiffs and Class members the defects described herein.

84.     Defendant had a duty to inform Plaintiffs and Class of the defects described herein, which it knew of or should have known. Notwithstanding its duty, Defendant never disclosed the defects to Plaintiffs or the Class; rather, Defendant attributed resulting mechanical failures to soap, water issues or other conduct.

85.     Moreover, as part of the scheme, after the warranty period had expired Defendant marketed extended warranties for hundreds of dollars, thus further attempting to profit from the misfortune of the Washing Machine purchasers.

86.     Despite exercising reasonable diligence, Plaintiffs and Class members could not

have discovered the defects or Defendant's scheme to avoid disclosure of the defect.  Thus,

running of the statute of limitations has been tolled with respect to any claims that Plaintiffs or

the Class have brought or could have brought as a result of the unlawful and fraudulent course of

conduct described herein.

87.     Defendant is further estopped from asserting any statute of limitations defense,

contractual or otherwise, to the claims alleged herein by virtue of its acts of fraudulent

concealment.

**FIRST CAUSE OF ACTION**
**Asserted On Behalf Of The Nationwide Class Against Sears**
**(Violations Of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312)–Written Warranty)**

88.     Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

89.     Sears' Washing Machines are "consumer products," as that term is defined by 15

U.S.C. § 2301(1).

90.     Plaintiffs and Class members are "consumers," as that term is defined by 15

U.S.C. § 2301(3).

91.     Defendant is a "warrantor" and "supplier," as those terms are defined by 15

U.S.C. § 2301(4) and (5).

92.     Defendant provided Plaintiffs and Class members with "written warranties," as

that term is defined by 15 U.S.C. § 2301(6).

93.     In its capacity as a warrantor, and by the conduct described herein, any attempts

by Defendant to limit the express warranties in a manner that would exclude coverage of the

defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise

–39–

limit, liability for the defective Washing Machines is null and void.

94.    All jurisdictional prerequisites have been satisfied.

95.    By Defendant's conduct as described herein, including Defendant's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

96.    As a result of Defendant's breach of express warranties, Plaintiffs and the Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**SECOND CAUSE OF ACTION**
**Asserted On Behalf Of The Arizona, California, Colorado, Florida, Illinois, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Washington And Wisconsin Classes Against Sears**
**(Violations Of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) - Implied Warranty)**

97.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

98.    Sears' Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

99.    Plaintiffs and Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

100.    Defendant is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

101.    Defendant provided Plaintiffs and Class members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

–40–

102.     In its capacity as a warrantor and by the conduct described herein, any attempt by Defendant to limit the implied warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is void.

103.     All jurisdictional prerequisites have been satisfied herein.

104.     By Defendant's conduct as described herein, including Defendant's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

105.     As a result of Defendant's breach of implied warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

### THIRD CAUSE OF ACTION
**Asserted On Behalf Of The Nationwide Class Against Sears**
**(Breach Of Express Warranty)**

106.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

107.     Plaintiffs seek to recover for Sears's breach of express warranty under the laws of the State of Illinois, (810 ILCS 5/2-313).

108.     Sears made affirmations of fact and promises to Plaintiffs and members of the Classes which related to the Washing Machines as more fully described herein.

109.     Sears' affirmations of fact and promises became part of the basis of the bargain between the parties.

110. These affirmations of fact and promises created an express warranty that the Washing Machines would conform to Sears' affirmations and promises.

111. Sears uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from serious defects and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

112. Sears is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Plaintiffs and members of the Classes.

113. Sears has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Sears, and by failing to repair or replace the defects and/or defective parts.

114. As set forth above, Sears' warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Classes can not and should not be limited to the remedies set forth in Sears' written warranty and, instead, should be permitted to recover all measure of appropriate relief.

115. Sears has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and Sears' knowledge of the defects in the Washing Machines, Sears has failed and refused to honor its warranty, even though it knows of the defects inherent in the Washing Machines.

116. Plaintiffs and members of the Classes have given Sears a reasonable opportunity to cure its failures with respect to its warranty, and Sears has failed and refused to do so. In the alternative, Sears' conduct, as described herein, has negated any need for Plaintiffs and members

−42−

of the Classes to provide Sears with an opportunity to cure.

117.     Sears has failed to provide Plaintiffs and members of the Classes, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that Sears expressly warranted when it sold the Washing Machines to Plaintiffs and members of the Classes.

118.     As a result of Sears' breach of warranty, Plaintiffs and members of the Classes have suffered damages, injury in fact and/or ascertainable loss, in an amount to be determined at trial.  Alternatively, Plaintiffs seek to recover Sears' breach of express warranty, under the substantially similar laws of the states of purchase, specifically:  Arizona (A.R.S. § 47-2313), Colorado (C.R.S.A. §4-2-313), Florida (F.S.A. §672.313), Illinois (810 ILCS 5/2-313), Indiana (Ind. Code § 26-2-313), Kentucky (R.R.S. 355.2-313),  Michigan (Michigan Uniform Commercial Code, § 440.2313), Minnesota (M.S.A. § 336.2-313), New Jersey (N.J.S.A. 12A:2-313), New York (New York Uniform Commercial Code §2-313), Ohio (Ohio Rev. Code §1302.26), Oklahoma (12A Okla. St. Ann. § 2-313),  Pennsylvania (13 Pa. C.S.A. §2313), Texas (Tex. Bus. & Com. Code Ann. §2-313), Washington (RCW 62A.2-314), and Wisconsin (W.S.A. §402.313).

### FOURTH CAUSE OF ACTION
**Asserted On Behalf Of The California Class Members**
**(Violation of Song-Beverly Consumer Warranty Act Civil Code § 1790 *et seq.*)**

119.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

120.     The Washing Machines are "consumer goods" within the meaning of Civil Code § 1791 (a).

121.    Sears' express warranty and implied warranty of merchantability arose out of and/or were related to the sale of the Washing Machines.

122.    As is more fully set forth above, Sears has failed to comply with its obligations under its express warranty and its implied warranty of merchantability.

123.    Plaintiff Papaleo and the California Class have suffered and will continue to suffer damages as a result of Sears' failure to comply with its warranty obligations.  Accordingly, Plaintiff and all members of the California Class are entitled to recover damages under the Song-Beverly Act, including damages pursuant to Civil Code §§ 1791.1(d) and 1794.

**FIFTH CAUSE OF ACTION**
**Asserted On Behalf Of The Nationwide Class Against Sears**
**(Breach of Implied Warranty of Merchantability)**

124.    Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

125.    Plaintiffs seek to recover for Sears's breach of implied warranty under the laws of the State of Illinois (810 ILCS 5/2-314).

126.    Sears is a merchant in the sale of the Washing Machines to Plaintiffs and the Class members and the Washing Machines are goods under applicable law.

127.    Plaintiffs and members of the Classes are in privity with Sears in that they purchased their Washing Machines directly from Sears, or from an actual or apparent agent of Sears.

128.    Plaintiffs and the members of the Classes are also in privity with Defendant by virtue of the contractual relationship stemming from Sears' manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, and which is enforceable by Plaintiffs

and the Classes as against Sears regardless of where, or from whom, the Washing Machines were acquired.

129.    At all times relevant hereto, there was a duty imposed by law which requires that Sears' Washing Machines be reasonably fit for the purposes for which washing machines are used, that they are of fair average quality within their description, and that they be acceptable in trade for their description.

130.    Defendant has not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer, exclusion of the same was and is ineffectual.

131.    Notwithstanding the aforementioned duty, at the time of delivery, the Washing Machines sold to Plaintiffs and the Classes were not merchantable, and not fit for the ordinary purposes for which they were sold.  The Washing Machines are not fit for the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing Machines are defective in that they contain design defects that cause them to accumulate mold, mildew and/or foul odors and to produce a moldy odor that permeates consumers' homes and clothing.  Accordingly, clothing is not cleaned in the Machines.

132.    As documented in its own business records and elsewhere, Defendant was notified that the Washing Machines were not merchantable within a reasonable amount of time after the latent defect manifested itself to Plaintiffs and the Classes.

133.    As a result of the non-merchantability of the Washing Machines described herein, Plaintiffs and other members of the Classes have sustained damages in an amount to be determined at trial.

134.    Alternatively, Plaintiffs seek to recover Sears' breach of implied warranty, under the substantially similar laws of the states of purchase, specifically:  Arizona (A.R.S. § 47-2314), Colorado (C.R.S.A. §4-2-314),  Florida (F.S.A. § 672.314), Illinois (810 ILCS 5/2-314), Indiana (Ind. Code § 26-2-314), Kentucky (R.R.S 355.2-314), Michigan (Michigan Uniform Commercial Code, §440.2314), Minnesota (M.S.A. §336.2-314), New Jersey (N.J.S.A. 12A:2-314), New York (New York Uniform Commercial Code §2-314), Ohio (tortious breach of warranty), Oklahoma (12A Okla. St. Ann. §2-314), Pennsylvania (13 Pa. C.S.A. §2314), Texas (Tex. Bus. & Com. Code Ann. §2-314), Washington (RCW 62A.2-314), and Wisconsin (W.S.A. §402.314).

## SIXTH CAUSE OF ACTION
### Asserted On Behalf Of The Arizona Class
### (Violation Of Arizona's Consumer Fraud Act ("CFA") A.R.S. §§44-1521 *et seq.*)

135.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

136.    The CFA prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false promise, misrepresentation, or concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Defendant's conduct, as described herein, is in violation of the CFA.

137.    Defendant violated the CFA when it represented, through its advertising, warranties and other express representation, that the Washing Machines had characteristics and benefits that they did not actually have.

138.    Defendant violated the CFA when it falsely represented, through its advertising,

−46−

marketing, and other express representations, that the Washing Machines were of a certain quality or standard, when they were not.

139.    Defendant violated the CFA by fraudulently concealing from and/or intentionally failing to disclose, to Napoli and the Arizona Class, material information about the Washing Machines in a manner that was deceptive.

140.    Defendant violated the CFA by holding the Washing Machines out as superior in quality, when, in fact, they are defective.

141.    To this day, Defendant continues to violate the CFA by continuing to actively conceal material information about the Washing Machines and by representing to Napoli and the members of the Arizona Class that the Washing Machines are free of defects and/or provide superior cleaning power.

142.    As a direct and proximate cause of Defendant's violation of the CFA, Napoli and the Arizona Class have suffered injury in fact and/or actual damage, in that they purchased Washing Machines that produce mold and mildew and, thus, are inherently defective.

143.    Napoli and the Arizona Class relied on Defendant's misrepresentations.  Had Defendant disclosed in its marketing and sale statements the true quality of the Washing Machines, Napoli and the Arizona Class would not have purchased, or would have paid significantly less for, the Washing Machines.  Napoli and the Arizona Class have suffered damages as a result.

144.    Napoli and Arizona Class have suffered an injury in fact and lost money in that, had Defendant disclosed the true nature and quality of the Washing Machines, they would not have purchased, or would have paid significantly less for, the Washing Machines.  Napoli

suffered further injury in fact and lost money because, as a direct result of the mold and mildew problem, he purchased Sears' extended warranty. Despite having the Machine repaired, under Napoli's extended warranty, the problem with the mold and mildew continues to the date of the filing of this Complaint.

145. Napoli, on behalf of himself and all others similarly situated, demands judgment against Defendant for injunctive relief in the form of restitution and/or proportional disgorgement of funds paid by Napoli and the Arizona Class to purchase the Washing Machines and/or disgorgement of funds received by Defendant from the sale of the Washing Machines, along with interest, attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION
**Asserted On Behalf Of The California Class**
**(Violation of Cal. Bus. & Prof. Code Section 17200 *et seq.*)**

146. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

147. This Count is brought on behalf of Plaintiff Dr. Stephen Papaleo and the California Class.

148. Plaintiff brings this cause of action on behalf of himself and on behalf of the California Class against Defendant for its unlawful, unfair, untrue and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

149. At all times relevant hereto, there was in full force and effect the California's Unfair Competition Statutes, California Business and Professions Code § 17200 *et seq.* and substantially similar state consumer protection statutes (the "Act").

−48−

150.    California Business and Professions Code § 17200 states in pertinent part:

> As used in this chapter, unfair competition shall mean and
> include any unlawful, unfair or fraudulent business act or
> practice and unfair, deceptive, untrue or misleading advertising
> and any act prohibited by Chapter 1 (commencing with Section
> 17500) of Part 3 of Division 7 of the Business and Professions
> Code).

151.    Plaintiff asserts these claims on behalf of California Class members who have expended funds that Defendant should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 *et seq*.

152.    Consumers (such as Papaleo) were and are entitled to disclosure of all material facts because:

    a.    A significant risk of failure would be a material fact in a consumer's decision-making process, and

    b.    Without Sears' disclosure, consumers would not know that there is any risk of failure.

153.    Moreover, because Sears' warranties are limited in duration, consumers were further entitled to know that failures might not exhibit themselves until after the warranties expired and, if that occurred, Sears was not committing to repair the condition. All of these facts were material to consumers' (such as Papaleo's) purchase decisions and are in the exclusive possession of Defendant.

154.    Specifically, at all times relevant, Sears continuously and consistently failed to disclose to consumers (such as Papaleo) that:

a. there was a substantial risk of mechanical failure and/or moldy smells that far exceeded the risk of such defect normally associated with similar consumer products;

b. that failures might not exhibit themselves until after the warranty has expired; and

c. that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

155. Sears intended that Plaintiff and the California Class would rely on the deception by purchasing the Washing Machines, unaware of the material facts described above. Plaintiff and the Class did rely on Defendant's deceptive marketing and sales practices. This conduct constitutes consumer fraud within the meaning of the Act.

156. The acts, misrepresentations, omissions, and practices of Defendant alleged above constitute unfair, unlawful and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 *et seq.*

157. By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200 *et seq.*

158. Defendant's conduct, as fully described above, have deceived and/or are likely to deceive members of the consuming public and impact the public interest, and at all times, Defendant's statements concerning its Washing Machines has been and continues to be unlawful, unfair, fraudulent, untrue and/or deceptive.

159. Defendant's acts, practices and omissions are unlawful because they violate Civil Code §§ 1572, 1709 and 1710.

160. Defendant's misconduct as alleged in this action constitutes negligence and other

tortuous conduct and this misconduct gave Defendant an unfair competitive advantage over its competitors.

161.    As a direct and proximate result of the aforementioned acts, Defendant received monies and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the Washing Machines, a Machine that fails to wash clothes as advertised, as described herein.

162.    The harm to Plaintiff and others similarly situated outweighs the utility of Defendant's policies, acts and/or practices and, consequently Defendant's conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code sections 17200 *et seq.*

163.    The unlawful, unfair, deceptive and/or fraudulent business practices and/or false and misleading advertising of Defendant, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendant's representations on the packaging of the Washing Machines as described herein. Plaintiff and others similarly situated have no other remedy of law that will prevent Defendant's misconduct as alleged herein from occurring and/or reoccurring in the future.

164.    As a direct and proximate result of the unfair acts or practices of Defendant alleged herein, Plaintiff and other members of the California Class has suffered injury in fact. In addition, Plaintiff paid more for the Washing Machine than he would have paid had he known about the defects associated with the Machine.

165.    Plaintiff, on behalf of himself and the California Class, seeks an order of this Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under

Section 17200, as well as interest, attorney's fees and costs, pursuant to, *inter alia,* Cal. Code of Civ. Proc. § 1021.05.

### EIGHTH CAUSE OF ACTION
### Asserted On Behalf Of The Colorado Class
### (Violation of Colorado's Consumer Protection Act ("CCPA") C.R.S. §§6-1-101 *et seq.*)

166.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

167.    Sears' business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the CCPA.

168.    At all relevant times, Sears was a "person" engaged in "trade or commerce" within the meaning of the CCPA and its actions and inactions significantly impacted the public as consumers of Washing Machines.

169.    The practices of Defendant violate the CCPA for, *inter alia,* one or more of the following reasons:

a.    Sears knowingly represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.    Sears provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements and other information to consumers regarding the performance, reliability, quality and nature of the Washing Machines;

c.    Sears represented that the Washing Machines were of a particular standard, quality, or grade, when they were of another;

d.    Sears engaged in unconscionable commercial practices in failing to reveal material facts and information about the Washing Machines, which did, or tended to, mislead Plaintiff Pfefer and the Colorado Class about facts that could not reasonably be known by the consumer;

e.    Sears failed to disclose material information concerning the Washing

Machines, the omission of which would tend to mislead or deceive consumers, including Plaintiff Pfefer and the Colorado Class;

f.      Sears failed to conspicuously disclose the meaning of "lifetime" guarantee as used in the warranty that accompanied the Washing Machines; and

g.      Under all of the circumstances, Sears' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

170.    The foregoing acts, omissions and practices proximately caused Pfefer and other members of the Colorado Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to replace the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

## NINTH CAUSE OF ACTION
### Asserted On Behalf Of The Florida Class
### (Violation Of Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA"), F.S.A., 501.201 *et seq.*)

171.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

172.    At all relevant times, Bettua and all members of the Florida Class were consumers within the meaning of FDUTPA.

173.    At all relevant times hereto, Sears engaged in trade and/or commerce within the meaning of FDUTPA.

174.    The practices of Defendant violate FDUTPA for, *inter alia*, one or more of the following reasons:

a.      Sears omitted and concealed material facts from its communications and

disclosures to Bettua and all members of the Florida Class regarding the defect inherent in the Washing Machines;

b.     Sears made false and/or misleading statements of material fact regarding the Washing Machines, which statements were likely to deceive the public; and

c.     Sears knew, or was reckless in not knowing, that its statements about the Washing Machines were false and/or misleading.

175.   By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

176.   The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

177.   Had Sears disclosed all material information regarding the Washing Machines to Bettua and all of the Florida Class members, they would not have purchased the Washing Machines.

178.   The foregoing acts and practices proximately caused Bettua and other members of the Florida Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

**TENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Illinois Class**
**(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act),**
**815 Ill. Comp. Stat. § 50 5/2)**

179.   Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

180.     At all times relevant hereto, there was in full force and effect the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "Act").

181.     Section 2 of the Act provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or
> practices, including but not limited to the use of or employment
> of any deceptive, fraud, false pretense, false promise,
> misrepresentation or the concealment, suppression or omission of
> any material fact, with intent that others rely upon the
> concealment, suppression or omission of such material fact, or
> the use of employment of any practice described in Section 2 of
> the "Uniform Deceptive Trade Practices Act," approved August
> 5, 1965, in the conduct of any trade or commerce are hereby
> declared unlawful whether any person has in fact been misled,
> deceived or damaged thereby,  In construing this section
> consideration shall be given to the interpretations of the Federal
> Trade Commission and the federal courts relating to Section 5(a)
> of the Federal Trade Commission Act.

815 ILCS 505/2 (footnotes omitted).

182.     Plaintiff and other members of the Illinois Class, as purchasers of the Washing

Machines, are consumers within the meaning of the ICFA given that Defendant's business

activities involve trade or commerce, are addressed to the market generally and otherwise

implicate consumer protection concerns.

183.     Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, renders unlawful

the "use or employment of any deception [including the] concealment, suppression or omission

of any material fact, with intent that others rely upon the concealment, suppression or omission

of such material fact ... in the conduct of any trade or commerce…"  Illinois case law holds that

actual reliance on Sears' deception is not an element of claim under the Illinois Consumer Fraud

Act.

184.     Consumers (such as Plaintiff) were entitled to disclosure of all material facts

because:

        a.     A significant risk of failure would be a material fact in a consumer's
           decision-making process; and

        b.     Without Sears' disclosure, consumers would not know that there is any
           risk of failure.

185.     Moreover, because Sears' warranties are limited in duration, consumers were

further entitled to know that failures might not exhibit themselves until after the warranties

expired, and if that occurred, Sears was not committing to repair the condition.  All of these facts

were material to consumers' (such as Plaintiff's) purchase decisions.

186.     Specifically, at all times relevant, Sears continuously and consistently failed to

disclose to consumers (such as Plaintiff):

        a.     there was a substantial risk of mechanical failure and/or moldy smells that
           far exceeded the risk of such defect normally associated with similar
           consumer products;

        b.     that failures might not exhibit themselves until after the warranty has
           expired; and

        c.     that if failures exhibit themselves after the warranty period expired that
           Sears was not committing to making repairs.

187.     Sears intended that Plaintiff and the Illinois Class would rely on Sears' deceptive

acts or practices by purchasing the Washing Machines, unaware of the material facts described

above.  This conduct constitutes unfair practices within the meaning of the ICFA.

188.     Defendant has committed deceptive acts or practices within the meaning of the

ICFA by engaging in the acts and practices alleged herein, including, but not limited to, its failure

to disclose the material defects of the Washing Machines.

189.    Defendant's conduct alleged herein is furthermore unfair insofar as it offends

public policy; is so oppressive that the consumer has little alternative but to submit; and causes

consumers substantial injury.

190.    As a direct and proximate result of the unfair acts or practices in violation of the

ICFA of Defendant alleged herein, Plaintiff and other members of the Illinois Class have suffered

injury in fact.  Plaintiff and the Illinois Class have suffered damages, in the form of monies spent

to repair the Washing Machines.  In addition, Plaintiff and the Illinois Class suffered damages in

that they paid more for a Washing Machine than they would have paid had they known about the

defects associated with the Machine.

**ELEVENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Indiana Class**
**(Violation Of The Indiana Deceptive Consumers Sales Act,**
**Ind. Code § 24-5-0.5 *et seq.*)**

191.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

192.    This Count is brought on behalf of Plaintiff Butler and the Indiana Class.  At all

times relevant hereto, there was in full force and effect the Indiana Deceptive Consumers Sales

Act, Ind. Code § 24-5-0.5 *et seq.* (the "Act").

193.    Section 0.5-4 of the Act provides in relevant part as follows:

    a.    A person relying upon an uncured or incurable deceptive
act may bring an action for the damages actually suffered as
a consumer as a result of the deceptive act.  The court may
award reasonable attorney fees to the party that prevails in
an action under this subsection.

−57−

194.     Plaintiff Butler and members of the Indiana Class, as purchasers of the Washing Machines, are consumers within the meaning of the Act given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

195.     Once the Washing Machine's failure risk became significant, consumers (such as Plaintiff) were entitled to disclosure of that fact because:

a.     A significant risk of failure would be a material fact in a consumer's decision-making process; and

b.     Without Sears' disclosure, consumers would not know that there is any risk of failure.

196.     Moreover, because Sears' warranties are limited in duration, consumers were further entitled to know that failures might not exhibit themselves until after the warranties expired, and if that occurred, Sears was not committing to repair the condition.  All of these facts were material to consumers' (such as Plaintiff's) purchase decisions.

197.     Specifically, at all times relevant, Sears continuously and consistently failed to disclose to consumers (such as Plaintiff):

a.     there was a substantial risk of mechanical failure and/or moldy smells that far exceeded the risk of such defect normally associated with similar consumer products;

b.     that failures might not exhibit themselves until after the warranty has expired; and

c.     that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

198.     Sears intended that Plaintiff and the Indiana Class would rely on the deception by purchasing the Washing Machines, unaware of the material facts described above.  This conduct

constitutes consumer fraud within the meaning of the various consumer protection statutes.

199.    Defendant has committed deceptive acts or practices within the meaning of the Act by engaging in the acts and practices alleged herein, including, but not limited to, its failure to disclose the material defects.

200.    Defendant's conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

201.    As a direct and proximate result of the unfair acts or practices of Defendant alleged herein, Plaintiff and other members of the Indiana Class were damaged.

## TWELFTH CAUSE OF ACTION
### Asserted On Behalf Of The Kentucky Class
### (Violation of Kentucky Consumer Fraud and Deceptive Business Practices Act, Ky. Rev. Stat. § 367.220 *et seq.*)

202.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

203.    At all times relevant hereto, there was in full force and effect the Kentucky Consumer Fraud and Deceptive Business Practices Act, Ky. Rev. Stat. § 367.220 *et seq.* (the "Act").

204.    Section 170 of the Act provides in relevant part as follows:

    a.    Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

    b.    For the purposes of this section, unfair shall be construed to mean unconscionable.

205.    Sears, Plaintiff and members of the Kentucky Class are persons within the

meaning of KRS § 367.110(1). Defendant's business activities involve trade and/or commerce pursuant to KRS § 367.110(2), as they are addressed to the market generally and otherwise implicate consumer protection concerns.

206. Once the Washing Machine's failure risk became significant, consumers (such as Plaintiff) were entitled to disclosure of that fact because:

    a.    A significant risk of failure would be a material fact in a consumer's decision-making process; and

    b.    Without Sears' disclosure, consumers would not know that there is any risk of failure.

207. Moreover, because Sears' warranties are limited in duration, consumers were further entitled to know that failures might not exhibit themselves until after the warranties expired, and if that occurred, Sears was not committing to repair the condition. All of these facts were material to consumers' (such as Plaintiff's) purchase decisions.

208. Specifically, at all times relevant, Sears continuously and consistently failed to disclose to consumers (such as Plaintiff):

    a.    there was a substantial risk of mechanical failure and/or moldy smells that far exceeded the risk of such defect normally associated with similar consumer products;

    b.    that failures might not exhibit themselves until after the warranty has expired; and

    c.    that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

209. Sears intended that Plaintiff and the Kentucky Class would rely on the deception by purchasing the Washing Machines, unaware of the material facts described above. This conduct constitutes consumer fraud within the meaning of the various consumer protection

−60−

statutes.

210.　Defendant has committed deceptive acts or practices within the meaning of the Act by engaging in the acts and practices alleged herein, including, but not limited to, its failure to disclose the material defects.

211.　Defendant's conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

212.　As a direct and proximate result of the unfair acts or practices of Defendant alleged herein, Plaintiff and other members of the Kentucky Class were damaged.

**<u>THIRTEENTH CAUSE OF ACTION</u>**
**Asserted On Behalf Of The Michigan Class**
**<u>(Violation of Michigan Comp. Laws Ann. § 445.903 *et seq.* )</u>**

213.　Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

214.　This Count is brought on behalf of Plaintiff Bryan Seratt and the Michigan Class.

215.　At all times relevant hereto, there was in full force and effect Mich. Comp. Laws Ann. § 445.903 *et seq.* (the "Act").

216.　Plaintiff and all members of the Michigan Class were persons within the meaning of the MCPA, MCLA 445.902(1)(d).

217.　At all relevant times hereto, Defendant was a "person" engaged in "trade or commerce" within the meaning of the MCPA, M.C.L.A. §445.902(1)(d) and (g)

218.　The practices of Defendant violate the MCPA for, *inter alia*, one or more of the following reasons:

a.     Defendant represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.     Defendant provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Washing Machines;

c.     Defendant represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.     Defendant engaged in unconscionable commercial practices in failing to reveal material facts and information about the Washing Machines, which did and tended to, mislead Plaintiff and the Michigan Class about facts that could not reasonably be known by the consumer;

e.     Defendant failed to reveal facts that were material to the transaction in light of representations of fact made in a positive manner;

f.     Defendant caused Plaintiff and the Michigan Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

g.     Defendant failed to reveal material facts to Plaintiff and the Michigan Class, the omission of which would tend to mislead or deceive consumers, including Plaintiff and the Michigan Class;

h.     Defendant made material representations and statements of fact to Plaintiff and the Michigan Class that resulted in Plaintiff and the Michigan Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

i.     Defendant intended that Plaintiff and the other members of the Michigan Class rely on their misrepresentations and omissions, so that Plaintiff and other Michigan Class members would purchase the Washing Machines; and

j.     Under all circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

219.   The foregoing, acts, omissions and practices proximately caused Plaintiff and

other members of the Michigan Class to suffer actual damages in the form of, *inter alia*, monies spent to replace the tires and/or diminution in value of the Vehicles, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

**FOURTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Minnesota Class**
**(Violation of Minnesota Consumer Fraud Act, Minn. Stat § 325F.67 *et seq.* (MCFA) and**
**Minn. Uniform Deceptive Trade Practices Act, Minn. Stat § 3250.44 *et seq.* "MDTPA")**

220. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

221. This Count is brought on behalf of Plaintiff Leonard and the Minnesota Class.

222. Defendant's acts described above constitute violations of the MCFA in that Defendants used and/or employed fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others relied thereon in connection with the provision of services.

223. Defendant's conduct described herein was not isolated or unique to the Plaintiff, but was widespread, covering the time period of at least the past several years prior to the filing of this complaint, affecting thousands of customers, and was a regular and intended business practice of Defendant, instituted and implemented with a view toward unfairly profiting at the expense of its customers, represented by the Plaintiff.

224. As a result of Defendant's violations of the MCFA, Plaintiff and other members of the Minnesota Class have thereby been damaged and have suffered ascertainable losses.

225. By the conduct described herein, Defendant engaged in a deceptive trade practice by representing that its goods and services had characteristics and benefits that they did not have

−63−

in violation of the MDTPA.

226.    Defendant has willfully engaged in this conduct and practice with full knowledge as to its deceptive nature in violation of the MDTPA.

227.    As a result of Defendant's conduct, Plaintiff and members of the Minnesota Class have been damaged.

228.    As a result of Defendant's violations of the MCFA, it is liable to Plaintiff and the other members of the Minnesota Class for damages, interest, costs of suit, including attorneys' and experts' fees, punitive damages, and such other relief as the Court determines to be just.

### FIFTEENTH CAUSE OF ACTION
### Asserted On Behalf Of The New Jersey Class
### (Violation of New Jersey Consumer Fraud Act, N.J. Rev. Stat. § 56:8-1 *et seq.*)

229.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

230.    This Count is brought on behalf of Plaintiff Alan Jarashow and the New Jersey Class.

231.    At all times relevant hereto, there was in full force and effect the New Jersey Consumer Fraud Act (NJCFA), N.J. Rev. Stat. § 56:8-1 *et seq.*, which was enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices.  The NJCFA, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory scheme.

232.    N.J. Rev. Stat. § 56:8-2 provides:

> "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false

> promise, misrepresentation, or the knowing, concealment,
> suppression, or omission of any material fact . . . whether or not
> any person has in fact been misled, deceived or damaged thereby,
> is declared to be an unlawful practice"

233.    At all relevant times, Plaintiff Jarashow, members of the New Jersey Class and

Defendant were "persons" within the meaning of N.J. Rev. Stat. § 56:8-1.

234.    Plaintiff and members of the New Jersey Class are "consumers" within the

meaning of the NJCFA.

235.    The purported products (the Washing Machines) sold by Defendant are

merchandise within the meaning of the NJCFA.

236.    At all relevant times material hereto, Sears conducted trade and commerce in New

Jersey and elsewhere within the meaning of the CFA.

237.    Consumers (such as Plaintiff) were entitled to disclosure of all material facts

because:

    a.    A significant risk of failure would be a material fact in a consumer's
decision-making process; and

    b.    Without Sears' disclosure, consumers would not know that there is any
risk of failure.

238.    Moreover, because Sears' warranties are limited in duration, consumers were

further entitled to know that failures might not exhibit themselves until after the warranties

expired, and if that occurred, Sears was not committing to repair the condition.  All of these facts

were material to consumers' (such as Plaintiff's) purchase decisions.

239.    Sears has engaged in deceptive practices in the sale of defective Washing

Machines including: (1) selling the Machines with a design flaw that causes mechanical failure

and/or mold smells; and (2) intentionally failing to disclose and/or concealing this known defect.

240.   Specifically, at all times relevant, Sears continuously and consistently failed to disclose to consumers (such as Plaintiff):

        a.   there was a substantial risk of mechanical failure and/or moldy smells that far exceeded the risk of such defect normally associated with similar consumer products;

        b.   that failures might not exhibit themselves until after the warranty has expired; and

        c.   that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

241.   Sears intended that Plaintiff and the New Jersey Class would rely on the deception by purchasing the Washing Machines, unaware of the material facts described above.  Had Sears disclosed all material information regarding the Washing Machines to Plaintiff and other members of the New Jersey Class, they would not have purchased the Machines.  This conduct constitutes consumer fraud within the meaning of the Act.

242.   Through the actions described herein, Defendant engaged in a deceptive and/or unfair practice.  Defendant's conduct constitutes unlawful, unfair and deceptive business practices within the meaning of the NJCFA.

243.   The above-described unlawful, unfair and deceptive business practices by Defendant continue to present a threat to members of the consuming public.

244.   The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices proximately caused Plaintiff and the New Jersey Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repair and replace the Washing Machines and diminution in value of the Washing Machines, and they are entitled to recover

such damages, together with appropriate penalties, including treble damages.

## SIXTEENTH CAUSE OF ACTION
### Asserted On Behalf Of The New York Class
### (Violation of New York's Deceptive Trade Practices Act, N.Y. Gen. Bus. § 349 *et seq.*)

245.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

246.    This Count is brought on behalf of Plaintiff Lauren Crane and the New York Class.

247.    New York's Deceptive Trade Practices Act ("NYDTPA") prohibits "deceptive acts and practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state..."  Defendant's conduct, as described above is unlawful.

248.    Defendant violated the NYDTPA when it represented, through its advertising, warranties and other express representations, that the Washing Machines had characteristics and benefits that they did not actually have.

249.    Sears violated the NYDTPA when it falsely represented, throughout its advertising, warranties and other express representations, that the Washing Machines were of certain quality or standard when they were not.

250.    Defendant violated the NYDTPA by fraudulently concealing from and/or failing to disclose to Plaintiff and the New York Class the defects associated with the Washing Machines.

251.    Sears violated the NYDTPA by actively misrepresenting in, and/or concealing and omitting from, their advertising, marketing and other communications, material information about the Washing Machines in a manner that was deceptive.  The material information included:

    a.      there was a substantial risk of mechanical failure and/or moldy smells that far exceeded the risk of such defect normally associated with similar consumer products;

    b.      that failures might not exhibit themselves until after the warranty has expired; and

    c.      that if failures exhibit themselves after the warranty period expired that Sears was not committing to making repairs.

252.    To this day, Sears continues to violate the NYDTPA by continuing to actively conceal the material information about the Washing Machines by representing to Plaintiff and members of the New York Class that the Washing Machines are free of defects.

253.    As a direct and proximate cause of Sears' violations of the NYDTPA, Plaintiff and members of the New York Class have suffered injury in fact and/or actual damage, in that they purchased a Washing Machine that contains inherent design defects.

254.    Plaintiff and the New York Class members relied on Defendant's misrepresentations. Had Sears disclosed in their marketing and sales statement the true quality and nature of the defects associated with the Washing Machines, Plaintiff and the New York Class would not have purchased, or would have paid significantly less for, the Washing Machines.

255.    Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Sears for injunctive relief in the form of restitution and/or proportional disgorgement of funds paid by Plaintiff and the New York Class to purchase the Washing Machines received by Defendant from the sale of the Washing Machines, or injunctive relief in the form of replacement and/or repair of the Washing Machines, along with interest, attorneys' fees and costs.

**SEVENTEENTH CAUSE OF ACTION**

–68–

### Asserted On Behalf Of The Ohio Class
### (Violation Of The Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.*)

256.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

257.    Donia and the members of the Ohio Class are consumers within the meaning of the OCSPA, and the Washing Machines are consumer goods within the meaning of the OCSPA Ohio Rev. Code § 1345.01(A).

258.    The OCSPA prohibits unfair, deceptive and unconscionable practices in consumer sales transactions and provides consumers with private rights to action to redress such conduct. Ohio Rev. Code §§ 1345.02, 1345.09.

259.    Sears has engaged in deceptive practices in the sale of the Washing Machines including: (1) selling the Machines with design defects that cause mechanical defects and/or mold and mildew to occur with normal use of the Machine and (2) failing to disclose and/or concealing these known defects.

260.    Defendant acted in the face of prior notice that its conduct was deceptive, unfair and unconscionable.  It is well established in OCSPA jurisprudence that material omissions and misrepresentations regarding a product constitute violations of the OCSPA.  *Delahunt* v. *Cytodyne Technologies, et al.*, 241 F. Supp.2d 827, 838 (2003) (plaintiff stated claim for violation of OCSPA where label affixed to products sold by defendant contained misstatements and omitted material information); *Amato v. General Motors Corp.*, 463 N.E.2d 625, 633-33 (Ohio Ct. App. 1982) (plaintiff's claims fell within the OCSPA in a suit involving misrepresentations and omissions in advertising relating to the sale of motor vehicles); *Andrews*

*v. Scott Pontiac Cadillac GMC, Inc.,* 594 N.E.2d 1127, 1130, 1132 (Ohio Ct. App. 1991)

(holding that "a supplier commits an unfair or deceptive act or practice when it has actual

knowledge of the previous defect and/or damage to a new motor vehicle and fails to disclose the

defect and/or extent of the previous damage" and violates the CSPA by failing to disclose);

*Fisher v. Rose Chevrolet, Inc.*, 612 N.E.2d 782, 786 (Ohio Ct. App. 1992) (holding that omission

that induced sale of vehicle was actionable under the CSPA);  *Howard v. Norman's Auto Sales,*

No. 02AP-1001, 2003 WL 21267261, at *5 (Ohio App. 10th Dist. Jun. 3, 2003) (OCSPA

violation where car salesman falsely represented that vehicle was in good condition and would

not require repair for six to eight months).  These decisions existed at the time of the wrongful

conduct by Sears, such that Sears was on sufficient notice because each of the decisions cited

above were publicly available when the alleged violation by Sears occurred.  It also is a deceptive

act or practice for a supplier to make representations, claims or assertions of fact in the absence

of a reasonable basis in fact.  Ohio Admin. Code §§ 109.4-3-10(A).

261.    As a direct and proximate result of Defendant's violation of the OCSPA, Donia

and members of the Ohio Class have been injured, suffered damages and are entitled to relief,

including the recovery of damages, injunctive relief and recovery of attorneys' fees, costs of suit

and such additional relief as the Court may deem appropriate and just.

<strong><u>EIGHTEENTH CAUSE OF ACTION</u></strong><br>
<strong>Asserted On Behalf Of The Oklahoma Class</strong><br>
<strong><u>(Violation Of The Oklahoma Consumer Protection Act ("OCP"), 15 Okl. St. §751 <em>et seq.</em></u></strong><strong>)</strong>

262.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

263.    At all relevant times, Howard and all members of the Oklahoma Class are persons

within the meaning of OCP.

264. At all relevant times hereto, Sears engaged in a consumer transaction in the course of its business with Howard and members of the Oklahoma Class within the meaning of OCP.

265. At all relevant times hereto, Sears engaged in deceptive trade practices with respect to the sale, marketing and servicing of the Washing Machines to Howard and members of the Oklahoma Class within the meaning of OCP.

266. At all relevant times hereto, Sears engaged in an unfair trade practice with respect to the sale, marketing and servicing of the Washing Machines to Howard and members of the Oklahoma Class within the meaning of OCP.

267. The practices of Defendant violate OCP for, *inter alia*, one or more of the following reasons:

      a.    Sears represented to Plaintiff Howard and all members of the Oklahoma Class that the Washing Machines were of a particular standard, style or model, when they were of another; and

      b.    Sears made false representations, knowingly or with reason to know, as to the characteristics, uses, benefits, of the Washing Machines and false representations as to the sponsorship, approval of the Washing Machines.

268. By the conduct described herein, Defendant has engaged in deceptive trade practices in the context of a consumer transaction, as Defendant has misrepresented and omitted material information concerning the Washing Machines that misled Howard and the Oklahoma Class.

269. The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

270. Had Sears disclosed all material information regarding the Washing Machines to

Howard and all of the Oklahoma Class members, they would not have purchased the Washing Machines.

271.    The foregoing acts and practices proximately caused Howard and other members of the Oklahoma Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

**NINETEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The Pennsylvania Class**
**(Violation Of The Pennsylvania Unfair Trade Practices And Consumer Protection Law
("UTPCPL" ), 73 Pa.C.S.A. §§ 201-1 *et seq.*)**

272.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

273.    Defendant is a manufacturer, marketer, seller and/or distributor of the Washing Machines.

274.    The conduct alleged above constituted unfair methods of competition or unfair or deceptive acts or practices in violation of Section 201-2(4)(v), (vii), (xiv) and (xxi) of the UTPCPL, 73 Pa.C.S.A. §§ 201-1 *et seq.*

275.    The UTPCPL applies to the claims of Plaintiff Ramer and the other members of the Pennsylvania Class because the conduct which constitutes violations of the UTPCPL by the Defendant that occurred within the Commonwealth of Pennsylvania.

276.    Ramer and the other members of the Pennsylvania Class are consumers who purchased the Washing Machines for primarily personal, family or household purposes within

the meaning of 73 Pa.C.S.A. § 201-9.2.

277.    Defendant used and employed unfair methods of competition and/or unfair or

deceptive acts or practices within the meaning of 73 Pa.C.S.A. §§ 201-2 and 201-3.  Such unfair

methods of competition and/or unfair or deceptive acts or practices include, but are not limited to

the following:

        a.    Failing to comply with any written guaranty or warranty given to the buyer
at, prior to, or after a contract for the purchase of goods or services was
made (§ 201-2(4)(xiv)); and

        b.    Engaging in any other fraudulent or deceptive conduct which creates a
likelihood of confusion or of misunderstanding (§ 201-2(4)(xxi)).

278.    Defendant knew or should have known that the Washing Machines were

defective, were not suitable for normal use, and otherwise were not as warranted and represented

by Defendant.

279.    Defendant's concealments, omissions, deceptions and conduct were likely to

deceive and likely to cause misunderstanding and/or in fact caused Ramer and the other members

of the Pennsylvania Class to be deceived and to misunderstand the suitability of the Washing

Machines for use and Defendant's intent to honor its warranties.

280.    Defendant intended that Ramer and the other members of the Pennsylvania Class

would rely on its misrepresentations, concealment, warranties, deceptions and/or omissions.

281.    Ramer and the other members of the Pennsylvania Class have been damaged as a

proximate result of Defendant's violations of the UTPCPL and have suffered actual,

ascertainable losses by virtue of having purchased or leased the Washing Machines.

282.    As a direct and proximate result of Defendant's violations of the UTPCPL, as set

forth above, Ramer and the other members of the Pennsylvania Class have suffered an

ascertainable loss of money and are therefore entitled to relief, including damages, plus triple

damages, costs and attorneys' fees under Section 201-9.2 of the UTPCPL.

## TWENTIETH CAUSE OF ACTION
### Asserted On Behalf Of The Washington Class
### (Violation of Washington Rev. Code Ann. § 19.86.010 *et seq.*)

283.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

284.    This Count is brought on behalf of Plaintiff Lawrence L'Hommedieu and the

Washington Class.

285.    At all times relevant hereto, there was in full force and effect Washington Rev.

Code Ann. § 19.86 *et seq.* (the "Act").

286.    Plaintiff and the Washington Class were persons within CPA (RCWA 19.86.010).

Defendant engaged in trade or commerce within CPA (RCWA 19.86.010).

287.    Section 19.86.020 of the Act provides in relevant part as follows:

> "Unfair methods of competition and unfair or deceptive acts or
> practices in the conduct of any trade or commerce are hereby
> declared unlawful"

288.    Once the Washing Machine's failure risk became significant, consumers (such as

Plaintiffs) were entitled to disclosure of that fact because:

a.    A significant risk of failure would be a material fact in a consumer's
decision-making process; and

b.    Without Sears' disclosure, consumers would not know that there is any
risk of failure.

289.    Moreover, because Sears' warranties are limited in duration, consumers were

further entitled to know that failures might not exhibit themselves until after the warranties

expired, and if that occurred, Sears was not committing to repair the condition. All of these facts

were material to consumers' (such as Plaintiff's) purchase decisions.

290.    Specifically, at all times relevant, Sears continuously and consistently failed to

disclose to consumers (such as Plaintiff):

   a.    there was a substantial risk of mechanical failure and/or moldy smells that
         far exceeded the risk of such defect normally associated with similar
         consumer products;

   b.    that failures might not exhibit themselves until after the warranty has
         expired; and

   c.    that if failures exhibit themselves after the warranty period expired that
         Sears was not committing to making repairs.

291.    Sears intended that Plaintiff and the Washington Class would rely on the

deception by purchasing the Washing Machines, unaware of the material facts described above.

This conduct constitutes consumer fraud within the meaning of the Act.

292.    Defendant has committed deceptive acts or practices within the meaning of the

Act by engaging in the acts and practices alleged herein, including, but not limited to, its failure

to disclose the material defects.

293.    Defendant's conduct alleged herein is furthermore unfair insofar as it offends

public policy; is so oppressive that the consumer has little alternative but to submit; and causes

consumers substantial injury.

294.    As a direct and proximate result of the unfair acts or practices of Defendant

alleged herein, Plaintiffs and other members of the Class were damaged.

**TWENTY-FIRST CAUSE OF ACTION**

**Asserted On Behalf Of The Wisconsin Class Against Sears**
**(Violation Of The Wisconsin Deceptive Trade Practices Act ("WDTPA"),**
**Wis. Stat. Ann. § 100.18 _et seq._)**

295.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

296.    Defendant made, published, disseminated, circulated, and/or placed before the public, and/or caused to be made, published, disseminated, circulated, or placed before the public, advertisements, announcements, statements, and representations to the public relating to the purchase, sale, and use of the Washing Machines, that contained assertions, representations and statements of fact concerning the qualities and characteristics of such products.

297.    Such advertisements, announcements, statements and representations were made, published, disseminated, circulated, and/or placed before the public pursuant to Sears' intent: (a) to sell, distribute and increase the consumption of the Washing Machines; and/or (b) to induce the public to enter into contracts and/or obligations relating to the purchase, sale, use of the Washing Machines.

298.    Sears' aforementioned assertions, representations and statements of fact concerning the qualities and characteristics of the Washing Machines were untrue, deceptive and misleading, in violation of the WDTPA.

299.    Sears violated the WDTPA when it represented, through its advertising, warranties and other express representations, that the Washing Machines had characteristics and benefits that they did not actually have.

300.    Sears violated the WDTPA when it falsely represented, through its advertising, marketing, and other express representations, that the Washing Machines were of a certain

quality or standard, when they were not.

301.    Sears violated the WDTPA by fraudulently concealing from and/or failing to disclose to Plaintiffs Miller and the Robinsons ("Wisconsin Plaintiffs") and the Wisconsin Class the true nature of the Washing Machines.

302.    Sears violated the WDTPA by actively misrepresenting in, and/or concealing and omitting from, their advertising, marketing and other communications, material information about the Washing Machines in a manner that was deceptive.

303.    Sears violated the WDTPA by holding the Washing Machines as superior in quality (and, thus, more expensive), when, in fact, they were defective.

304.    To this day, Sears continues to violate the WDTPA by continuing to actively conceal the material information about the Washing Machines and by representing to Wisconsin Plaintiffs and members of the Wisconsin Class that the Washing Machines are free of defects.

305.    As a direct and proximate cause of Defendant's violations of the WDTPA, the Wisconsin Plaintiffs and the Wisconsin Class have suffered injury in fact and/or actual damage, in that they purchased Washing Machines that are unreasonably expensive and inherently defective.

306.    Wisconsin Plaintiffs and the members of the Wisconsin Class relied on Defendant's misrepresentations.  Had Defendant disclosed in its marketing and sales statements the true quality of the Washing Machines, the Wisconsin Plaintiffs and the Wisconsin Class would not have purchased the Washing Machines.

307.    Wisconsin Plaintiffs and members of the Wisconsin Class suffered an injury in fact, pecuniary loss and lost money in that, had Defendant disclosed the true nature and quality of

the Washing Machines as alleged herein, they would not have purchased the Washing Machines.

308.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant for damages, injunctive relief in the form of restitution and/or proportional disgorgement of funds paid by the Wisconsin Plaintiffs and the Wisconsin Class to purchase the Washing Machines and/or disgorgement of funds paid by the Wisconsin Plaintiffs and the Wisconsin Class to purchase the Washing Machines and/or disgorgement of funds received by Defendant from the sale of the Washing Machines, or injunctive relief in the form of replacement and/or repair of the Washing Machines, along with interest, attorneys' fees and costs.

### TWENTY-SECOND CAUSE OF ACTION
**Asserted On Behalf Of The Arizona, California, Colorado, Florida, Illinois, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Washington And Wisconsin Classes Against Sears**
**(Unjust Enrichment)**

309.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

310.    This claim is asserted in the alternative on behalf of Plaintiffs and the members of the Classes, to the extent that there is any determination that any contracts do not govern the subject matter of the disputes with Defendant or that Plaintiffs do not have standing to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise.

311.    Plaintiffs and the members of the Classes conferred a benefit on Sears, of which benefit Sears had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Sears was unjustly enriched at the expense of Plaintiffs and the

members of the Classes.

312.   Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

313.   It would be inequitable for Sears to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

314.   Plaintiffs and the members of the following Classes and all others similarly situated, seek restitution from Sears and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sears from its wrongful conduct and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution:  Arizona, California, Colorado, Florida, Illinois, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Washington and Wisconsin.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

a.   For an order certifying the Classes, pursuant to Fed.R.Civ.P.23(b)(3), appointing Plaintiffs as representatives of the Classes, and appointing Plaintiffs' counsel to represent the Classes;

b.   For restitution and disgorgement of all amounts obtained by Sears as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

–79–

    c.  For all recoverable compensatory and other damages sustained by

Plaintiffs and the Classes;

    d.  For actual and/or statutory damages for injuries suffered by Plaintiffs and

the Classes, in the maximum amount permitted by applicable law;

    e.  For payment of costs of suit herein incurred;

    f.  For both pre-judgment and post-judgment interest on any amounts

awarded;

    g.  For appropriate injunctive relief;

    h.  For payment of reasonable attorneys' fees and costs, as may be allowable

under applicable law; and

    i.  For such other and further relief as the Court may deem proper.

## <u>DEMAND FOR JURY TRIAL</u>

  Plaintiffs hereby demand a trial by jury on all claims so triable.

August 11, 2009                    Respectfully submitted,


                                    /s/ George K. Lang
                                   Paul M. Weiss
                                   George K. Lang
                                   Michael J. Lotus
                                   FREED & WEISS, LLC
                                   111 West Washington Street, Suite 1331
                                   Chicago, IL 60602
                                   Telephone:  (312) 220-0000
                                   Facsimile:  (312) 220-7777
                                   paul@freedweiss.com
                                   george@freedweiss.com
                                   mike@ freedweiss.com

                                   James E. Miller
                                   Patrick A. Klingman
                                   SHEPHERD FINKELMAN MILLER
                                      & SHAH, LLP
                                   65 Main Street
                                   Chester, CT 06412
                                   Telephone: (860) 526-1100
                                   Facsimile: (860) 526-1120
                                   jmiller@sfmslaw.com
                                   pklingman@sfmslaw.com

                                   James C. Shah
                                   Natalie Finkelman Bennett
                                   Nathan C. Zipperian
                                   SHEPHERD FINKELMAN MILLER
                                      & SHAH, LLP
                                   35 E. State Street
                                   Media, PA 19063
                                   Telephone: (610) 891-9880
                                   Facsimile: (610) 891-9883
                                   jshah@sfmslaw.com
                                   nfinkleman@sfmslaw.com
                                   nzipperian@sfmslaw.com

Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER
  & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (619) 234-7334
kleser@sfmslaw.com

Ronald S. Kravitz
Matthew Borden
LINER YANKELEVITZ SUNSHINE
  & REGENSTREIF, LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone:  (415) 489-7700
Facsimile:  (415) 489-7701
Rkravitz@linerlaw.com
Mborden@linerlaw.com

James E. Cecchi
CARELLA, BYRNE, BAIN, GILFILLAN,
  CECCHI, STEWART & OLSTEIN
Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com

Jonathan Shub
SEEGER WEISS, LLP
1515 Market St., Suite 1380 Philadelphia, PA
19102Telephone:  (215) 564-2300
Facsimile:  (215) 851-8029
jshub@seegerweiss.com

Scott George
SEEGER WEISS, LLP
550 Broad Street, Suite 920
Newark, NJ 07102
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
sgeorge@seegerweiss.com

Steve R. Jaffe
Mark S. Fistos
Seth Lehrman
ROTHSTEIN ROSENFELDT ADLER
401 East Las Olas Boulevard, Suite 1650
Fort Lauderdale, Florida 33301
Telephone: (954) 522-3456
Facsimile:  (954) 527-8663
sjaffe@rra-law.com
mfistos@rra-law.com
slehrman@rra-law.com

Steve Schwartz
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone:  (610) 642-8500
Facsimile:  (610) 649-3633
steveschwartz@chimicles.com

Glenn E. Orr
SHEA LAW GROUP
2400 N. Western Avenue, Second Floor
Chicago, Illinois 60647
Telephone: (773) 365-0040
Facsimile: (773) 772-2421
glorr4@yahoo.com

Richard J. Burke
RICHARD J. BURKE, LLC
1010 Market Street, Suite 660
St. Louis, MO 630101
Telephone: (314) 880-7000
Facsimile: (314) 880-7777

rich@richardjburke.com

Michael J. Flannery
James J. Rosemergy
CAREY & DANIS, LLC
8235 Forsyth Boulevard
Suite 1100
St. Louis, MO  63105
Telephone:  (314) 725-7700
Facsimile:  (314) 721-0905
mflannery@careydanis.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 11, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

/s/George K. Lang