IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY BUTLER, JOSEPH LEONARD,<br>KEVIN BARNES, VICTOR MATOS,<br>ALFRED BLAIR, and MARTIN CHAMPION,<br>individually and on behalf of all others<br>similarly situated,<br><br>and<br><br>ALAN JARASHOW, LAUREN CRANE,<br>and LAWRENCE L'HOMMEDIEU,<br>individually and on behalf of all others<br>similarly situated,<br><br>and<br><br>JOHN BETTUA, GIUSEPPINA P. DONIA,<br>DERRAL HOWARD, DENISE MILLER,<br>CHARLES NAPOLI, VIC PFEFER,<br>JEFFREY A. AND SANDRA K. ROBINSON,<br>individually and on behalf of all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEARS, ROEBUCK AND CO.,<br><br>Defendant. | No. 06 C 7023,<br>Consolidated with Nos. 07 C 412,<br>08 C 1832<br><br>Judge Joan H. Lefkow |

## OPINION AND ORDER

Plaintiffs, owners of Kenmore HE2, HE2t, HE3, HE3t, HE4t, HE5t, and other front-loading automatic washers (collectively, "washing machines"), filed an Amended Consolidated

Class Action Complaint (hereinafter "Consolidated Complaint") against Sears, Roebuck and Co.[1] ("Sears"). Plaintiffs allege breach of written warranties (Counts I and III), breach of implied warranties (Counts II and V), violation of their respective home states' consumer protection statutes (Counts IV and VI-XXI), and unjust enrichment (Count XXII). Before the court is Sears's motion to dismiss Counts IV and VI-XXII under Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the following reasons, Sears's motion [#141] is granted in part and denied in part.

## BACKGROUND[2]

In their Consolidated Complaint, plaintiffs allege that the washing machines they bought from Sears suffer from electronic control board failure and a serious design defect that prevents adequate water drainage and proper self-cleaning. Consol. Compl. ¶ 2. The water drainage and cleaning defect allegedly results in foul odors on clothes and in homes and the washing machines being virtually unusable. *Id.* Plaintiffs contend that the electronic control board failure is manifested by the washing machines prematurely and repeatedly failing mechanically, stopping

---

[1] Plaintiffs Larry Butler, Joseph Leonard, Kevin Barnes, and Victor Matos filed their original complaint on December 19, 2006 and plaintiffs Alan Jarashow, Lauren Crane, and Lawrence L'Hommedieu filed their original complaint on January 22, 2007. The court consolidated these cases on January 22, 2007. Alfred Blair and Martin Champion were substituted as class representatives in these cases on August 7, 2009. These plaintiffs will collectively be referred to as the "the *Munch* plaintiffs." Plaintiffs John Bettua, Giuseppina P. Donia, Derral Howard, Denise Miller, Charles Napoli, Vic Pfefer, and Jeffrey A. and Sandra K. Robinson (collectively, "the *Bettua* plaintiffs") filed their original class complaint on July 1, 2008. These cases were consolidated for purposes of discovery and pretrial proceedings on January 6, 2009.

[2] The court assumes familiarity with the background of this case as set out in *Munch* v. *Sears, Roebuck & Co.*, Nos. 06 C 7023, 07 C 412, 2007 WL 2461660 (N.D. Ill. Aug. 27, 2007) ("*Munch I*"); *Munch* v. *Sears, Roebuck & Co.*, Nos. 06 C 7023, 07 C 412, 2008 WL 4450307 (N.D. Ill. Sep. 30, 2008) ("*Munch II*"); and *Bettua* v. *Sears, Roebuck & Co.*, No. 08 C 1832, 2009 WL 230573 (N.D. Ill. Jan. 30, 2009).

or not starting, and displaying error codes, in addition to the washing machine door remaining locked. *Id.* Plaintiffs assert that the number of washing machines that have experienced electronic control board failure and self-cleaning and drainage problems exceeds industry standards, making the failure rate a material fact that should have been disclosed to purchasers. *Id.* ¶¶ 57-59. Reportedly, at least 22,987 of washing machines (1.5%) have required electrical control board repairs, and at least 15,538 (1%) have had mold issues. *Id.* ¶ 58. Plaintiffs aver that industry standards require a failure rate below .01% for electromechanical defects and that "washing machines having the ability to self-clean through and after each washing cycle are 100% of all units short of some defect in design and manufacturing." *Id.* ¶ 57.

Sears is alleged to have known about the defects because (1) there had been similar problems with Calypso washing machines, which Sears had marketed and sold, *id.* ¶ 60; (2) plaintiffs notified Sears of the defects beginning in late 2004, *id.* ¶ 62; and (3) Sears had received many complaints of mold problems by the end of 2002. *Id.* Plaintiffs assert that, despite having knowledge of the problems with the washing machines, Sears has never disclosed them but has instead continued to represent that the washing machines are "dependable and effective" and provide "outstanding cleaning." *Id.* ¶¶ 39, 61. As a result, plaintiffs contend that Sears has violated their respective home states' consumer fraud statutes.

Prior versions of these allegations have been the subject of three motions to dismiss. In *Munch I*, the court dismissed the *Munch* plaintiffs' claims for violation of their home state consumer fraud statutes and unjust enrichment. *Munch I*, 2007 WL 2461660. After considering the *Munch* plaintiffs' amended complaint, in *Munch II*, these same claims were dismissed with prejudice, as the court found that the *Munch* plaintiffs had not cured the pleading defects

3

identified in *Munch I*. *Munch II*, 2008 WL 4450307. In *Bettua*, the court dismissed claims for violation of consumer fraud statutes and unjust enrichment, finding that, "as in *Munch*, plaintiffs' allegations are insufficiently specific to show a deceptive practice or to permit an inference of materiality, fail to identify a specific point at which the defendant clearly knew of the defect yet conveyed an opposite message to plaintiffs, and fail to provide an engineering explanation for the alleged defect." *Bettua*, 2009 WL 230573, at *3.

Upon consolidation, plaintiffs were given leave to file a consolidated amended complaint, *see* Dkt. No. 129, which they did on February 27, 2009. Sears again moved to dismiss Counts IV and VI-XXII of the Consolidated Complaint. Sears claims that (1) Count IV, alleging violation of California's Song-Beverly Act, is time-barred; (2) Counts VII, X-XVI, XX, and XXII, alleging violations of the consumer protection laws of California, Illinois, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, and Washington, and unjust enrichment pursuant to the laws of these states, on behalf of the *Munch* plaintiffs cannot be realleged because they were dismissed with prejudice in *Munch II*; and (3) Counts VI, VIII, IX, XVII-XIX, XXI, and XXII, alleging violations of the consumer protection laws of Arizona, Colorado, Florida, Ohio, Oklahoma, Pennsylvania, and Wisconsin, and unjust enrichment pursuant to the laws of these states, do not meet Rule 9(b)'s requirements. Def.'s Mot. at 1-2.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). The court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those

facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 586 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Allegations of fraud are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that the plaintiff must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## DISCUSSION

### I. Song-Beverly Act (Count IV)

Plaintiffs allege a violation of California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civil Code § 1790 *et seq.*, on behalf of plaintiff Blair, a California citizen. Blair was substituted as a plaintiff for Stephen Papaleo after Sears filed the instant motion to dismiss, after which plaintiffs were given leave to file an amended complaint consistent with the party substitutions made.[3] *See* Dkt. Nos. 161, 163. Sears argues that Count IV must be dismissed because Papaleo, previously named as the class representative for California purchasers of the washing machines, was time-barred from bringing a claim under the Song-Beverly Act. *See* Def.'s Mem. at 12-13. As Papaleo is no longer involved in the litigation,

---

[3] Although plaintiffs made some changes to their complaint in accord with their motion to substitute party class representatives, they failed to substitute Blair's name for Papaleo's in paragraph 123 of their complaint. The court will assume this is an error and will treat the claim as one on behalf of Blair, a named party, rather than Papaleo.

5

the court will evaluate Sears's contention with respect to Blair.

The Song-Beverly Act provides a buyer with a remedy for the violation of an implied warranty of merchantability for consumer goods. Cal. Civil Code § 1791.1(d). Section 1791.1(c) addresses the duration of this implied warranty, specifically providing that "in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." *Id.* § 1791.1(c). Sears maintains that this durational provision means that the problems underlying an implied warranty claim must manifest themselves within a one-year period. Def.'s Mem. at 12; Def.'s Reply at 11. Plaintiffs argue that the implied warranty is breached at the time of sale and thus, because the washing machines were defective when sold, the durational provision would not bar an action under the Song-Beverly Act even if problems were alleged to have manifested themselves only after the one-year durational period. Pls.' Resp. at 23-24.

Whether a plaintiff bringing a claim under the Song-Beverly Act must allege that problems arose within the year after purchase is a question the court need not decide here.[4] Blair alleges that he bought his washing machine on February 12, 2005 and started experiencing

---

[4] California courts are in disagreement on this issue. A recent California Court of Appeals decision held that "the plain language of the statute, particularly in light of the consumer protection policies supporting the Song-Beverly Act, make clear that the statute merely creates a limited, prospective duration for the implied warranty of merchantability; it does not create a deadline for discovering latent defects or for giving notice to the seller." *Mexia* v. *Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 288 (Cal. Ct. App. 2009). The majority position, however, is that the Song-Beverly Act's implied warranty of merchantability expires after one year. *See Hovsepian* v. *Apple, Inc.*, Nos. 08-5788 JF (PVT), 09-1064 JF (PVT), 2009 WL 2591445, at *8 n.7 (N.D. Cal. 2009) ("The Court agrees with [defendant] that the *Mexia* decision appears to be contrary to established California case law with respect to the duration of the implied warranty of merchantability as set forth in § 1791.1 of the Song-Beverly Act. . . . [A]ny component failure could be characterized as having been caused by a latent defect, and thus if *Mexia* were read broadly the time limitation imposed by § 1791.1(c) would be meaningless."); *Atkinson* v. *Elk Corp. of Tex.*, 48 Cal. Rptr. 3d 247, 259-60 (Cal. Ct. App. 2006).

problems within the first year of ownership. Consol. Compl. ¶ 8. He further alleges that he contacted Sears within that year to report his problems with the washing machine. *Id.* Thus, his claim would not be barred by the durational provision of the Song-Beverly Act under Sears's or plaintiffs' interpretations as the implied warranty was in effect during the time in which the problems manifested themselves and Blair notified Sears. As such, Count IV will not be dismissed.

## II.  The *Munch* Plaintiffs' Consumer Fraud and Unjust Enrichment Claims

The court, in its Sept. 30, 2008 order, dismissed with prejudice the *Munch* plaintiffs' consumer fraud claims under the laws of California, Illinois, Indiana, Kentucky, Michigan, Minnesota, New Jersey, New York, and Washington. *See Munch II*, 2008 WL 4450307, at *8. Plaintiffs have realleged these claims in substantially the same form in their Consolidated Complaint.

Plaintiffs cannot revive these previously dismissed claims under the guise of consolidation. *See, e.g.*, *Fraternal Order of Police Hobart Lodge No. 121, Inc.* v. *City of Hobart*, 864 F.2d 551, 557 (7th Cir. 1988) (filing of amended complaint was "a transparent effort to circumvent [the district judge's] ruling dismissing the original complaint" and so dismissal was proper); *MCM Partners, Inc.* v. *Andrews-Bartlett*, No. 92 C 5641, 1997 WL 306577, at *10 (N.D. Ill. May 29, 1997) ("This Court has no obligation to entertain claims that have already been dismissed with prejudice."). Although the court did allow plaintiffs to file a consolidated amended complaint, *see* Dkt. Nos. 129, 136, plaintiffs did not request leave to reallege the claims that were dismissed with prejudice in *Munch II*. Plaintiffs have not presented any compelling argument as to why the court should reconsider its prior dismissal of these claims, relying

instead only on the fact that the cases have now been consolidated. *See* Pls.' Resp. at 8 ("The factual allegations and legal claims of Plaintiffs . . . have yet to be tested in the context of the Consolidated Complaint or the consolidated action.").

The court's decision with regard to the claims dismissed with prejudice in *Munch II* remains binding on the *Munch* plaintiffs. Although the plaintiffs may not agree with this court's decision in *Munch II*, they cannot circumvent it by realleging the same claims solely because they believe the court's ruling to be incorrect. *See Jagla* v. *LaSalle Bank*, No. Civ. A. 05 C 6460, 2006 WL 1543924, at *2 (N.D. Ill. May 31, 2006); *More* v. *R & L Carriers, Inc.*, No. 00 C 5583, 2002 WL 1632206, at *7 (N.D. Ill. July 23, 3002) ("[Plaintiff] may not circumvent a prior order from the district court simply because he is not satisfied with the outcome."). Thus, Counts VII, X-XVI, and XX, the *Munch* plaintiffs' consumer fraud claims, and Count XXII, unjust enrichment with respect to the *Munch* plaintiffs, must be dismissed.

## III. The *Bettua* Plaintiffs' Consumer Fraud and Unjust Enrichment Claims

In granting Sears's motion to dismiss the *Bettua* plaintiffs' consumer fraud and unjust enrichment claims, the court concluded that the *Bettua* plaintiffs' "allegations [were] insufficiently specific to show a deceptive practice or to permit an inference of materiality, fail[ed] to identify a specific point at which the defendant clearly knew of the defect yet conveyed an opposite message to plaintiffs, and failed to provide an engineering explanation for the alleged defect." *Bettua*, 2009 WL 230573, at *3. Although the *Bettua* plaintiffs alleged in their original complaint that Sears knew the washing machines "had a *heightened risk* of failure" and "that consumer complaints attributable to [water drainage defects] were *significant*," no relevant standard was provided "by which to measure the allegedly 'unacceptable' rate of defects

8

and problems." *Id.* (citing *Munch II*, 2008 WL 4450307, at *6).

The Consolidated Complaint contains a number of allegations not previously alleged in the *Bettua* complaint.[5] Instead of focusing solely on a water drainage defect, plaintiffs also allege that the washing machines cannot "adequately clean[] themselves following a wash cycle." Consol. Compl. ¶ 34. Plaintiffs assert that the defects are incapable of a single simple repair and elaborate on "fixes" that Sears has suggested but have not cured the defect. *Id.* ¶¶ 55-56. Plaintiffs allege that "[i]ndustry norms for washing machines having the ability to self-clean through and after each washing cycle are 100% of all units short of some defect in design or manufacturing" and that at least 1% of the washing machines sold have had mold issues. *Id.* ¶¶ 57-58. These numbers allegedly make the failure rate a material fact that Sears should have disclosed. *Id.* ¶ 59. Further, plaintiffs contend that Sears's knowledge of similar problems with its Calypso washing machines indicates that Sears knew of the defects alleged in this case prior to their sale to plaintiffs. *Id.* ¶¶ 60, 62-63.

These new allegations remain insufficient to meet Rule 9(b)'s pleading requirements as set out in this court's opinion in *Bettua*.[6] By alleging that Sears knew of problems because of complaints it had receive in 2002, which is prior to any of the *Bettua* plaintiffs' purchase of their washing machines, *id.* ¶ 62, plaintiffs have adequately averred knowledge. They have not, however, adequately alleged the other required elements. Although plaintiffs allege that the

---

[5] Because none of the *Bettua* plaintiffs allege that they experienced electronic control board failure, the allegations concerning this defect will not be considered when evaluating whether the *Bettua* plaintiffs have sufficiently pled with particularity their claims under the consumer fraud statutes.

[6] Many of these "new" allegations are identical to the *Munch* plaintiffs' complaint found insufficient by this court in *Munch II*. *Compare, e.g.*, Consol. First Am. Class Action Compl. ¶ 36, Dkt. No. 66, *with* Consol. Compl. ¶ 60.

9

number of machines that have exhibited self-cleaning and drainage problems is "far in excess of industry standards," as only "a few hundred Washing Machines should exhibit" such defects, Consol. Compl. ¶ 57, plaintiffs have not indicated how the reported 1% failure rate compares with the failure rates of comparable machines produced by comparable manufacturers. Moreover, the fact that "100% of all units" should have the ability to adequately self-clean "short of some defect in design or manufacturing" restates the obvious; plaintiffs, however, need to specify how often design or manufacturing defects related to self-cleaning features of washers occur, which they have not done. Additionally, no meaningful engineering explanation has been alleged. The complaint restates the allegations of defect found to be insufficiently specific in *Bettua*. *See id.* ¶ 36 ("[T]he stainless steel drum, . . . among other things, plays a role in the accumulation of mold and mildew within the Washing Machines by, *inter alia*, not fully or properly draining in connection with each and every wash cycle. Also playing a role in the accumulation of mold, mildew and/or foul odors is the door seal ("boot"), which, among other things, does not fully or properly drain or get clean in connection with each and every wash cycle."). After quoting the language reproduced in the Consolidated Complaint, the court noted in *Bettua* that "[f]ar from a meaningful engineering explanation for the defects, . . . such allegations are, by their own terms, vague and indeterminate." *Bettua*, 2009 WL 230573, at *3 n.3. The proposed fixes Sears has suggested, included in the Consolidated Complaint, do not provide a technical explanation of the defect, as plaintiffs suggest. *See* Pls.' Resp. at 21-22. As the engineering explanation for the alleged defects remains virtually unchanged, these general allegations still do not meet Rule 9(b)'s standards. Accordingly, the *Bettua* plaintiffs' consumer

fraud claims, Counts VI, VIII, IX, XVII-XIX, and XXI, must be dismissed.[7] Similarly, because the *Bettua* plaintiffs' claims for unjust enrichment are based on the same wrongful conduct underlying their consumer fraud claims, which they have failed to plead with specificity, the *Bettua* plaintiffs' unjust enrichment claims in Count XXII must also be dismissed.

## CONCLUSION AND ORDER

For the foregoing reasons, Sears's motion to dismiss [#141] is granted in part and denied in part. Plaintiffs' consumer fraud claims (Counts VI-XXI) and unjust enrichment claims (Count XXII) are dismissed with prejudice.

Dated: Nov. 4, 2009          Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge

---

[7] Count XIX, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.*, also fails because no Pennsylvania plaintiff remains in the action. Christina Ramer, who was originally named as a plaintiff and was a Pennsylvania resident, was voluntarily dismissed from the action. *See* Dkt. No. 161.