**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES, VICTOR MATOS, ALFRED BLAIR, and MARTIN CHAMPION, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 06-cv-7023 |
| v. | ) ) ) | Judge Sharon Johnson Coleman |
| SEARS, ROEBUCK AND CO., | ) ) | |
| Defendant. | ) | |

**ORDER**

The plaintiffs in this action are purchasers of front loading, high efficiency washing machines manufactured by Whirlpool and sold by Sears. They claim that the machines suffer from two defects: an inability to cleanse inner surfaces which results in an accumulation of bacteria and mold; and a faulty electronic control board unit that interrupts normal operation. The plaintiffs allege that Sears' sale of the washers breached its express warranties against defective products and its implied warranties of merchantability.

The plaintiffs seek certification of two class actions: a class including purchasers whose machines suffered from the mold defect and a class including purchasers whose machines suffered from the control board problem. They also seek to sever the two class actions into separate proceedings. In addition, they request leave to amend their complaint to re-allege previously dismissed claims of consumer fraud and unjust enrichment. Sears opposes each of

the plaintiffs' motions, and also moves to strike testimony of a plaintiff expert offered in support of the motion for class certification. The plaintiffs' motion to amend their complaint is denied. Sears' motion to strike the testimony of plaintiffs' expert is denied. The plaintiffs' motion for class certification is denied as to the proposed class of purchasers of washers suffering from the mold defect, and granted as to the proposed class of purchasers of washers suffering from the control unit defect. Plaintiffs' motion to sever is denied without prejudice to reconsideration of the motion as dictated by further proceedings.

## Background

Beginning in 2001, Sears sold Kenmore-brand front loading, high efficiency washers manufactured by Whirlpool. The plaintiffs, each a purchaser of one of the machines, brought this action, seeking damages under federal and state law for two claimed defects. According to the plaintiffs, the wash cycles of front loading, high efficiency machines use less water overall and water heated to lower temperatures than the cycles of top-loading, standard efficiency machines. The plaintiffs allege that the lower volume of water and the lower water temperatures result in diminished cleansing of dirt and other wash residue from some internal sections of their machines. They further allege that this diminished cleansing, combined with the increased sealing of the wash tub door compared with top loading machines, produces an environment that results in the growth of bacteria and mold which ultimately creates odors that permeate the laundry washed in the machines and even the areas where the machines are located. The plaintiffs claim that this problem is inherent in the design of all of the Sears/Whirlpool front loading high efficiency washers.

The second claimed defect is alleged to have affected a more narrowly defined group of

machines. The parties do not dispute that all of the subject washers contain a "Central Control Unit" (CCU), an electronic processor that instructs the machines to start and stop its various functions. The plaintiffs claim that for machines manufactured from 2004 to 2007, the CCU was provided to Whirlpool by a third party supplier, Bitron. They further claim that Bitron's employees, while installing the CCU into its housing, sometimes damaged the circuit boards of the CCUs, causing them to generate error messages that interrupted normal functioning of the machines.

Before consolidation of their cases into this action, separate subgroups of the current group of plaintiffs filed complaints that asserted consumer fraud claims against Sears under various state statutes. The consumer fraud claims were dismissed by District Judge Joan H. Lefkow for failure to make sufficient, non-conclusory allegations. The plaintiffs were allowed to file amended complaints, and the consumer fraud claims were again dismissed, this time with prejudice. *See Munch v. Sears, Roebuck and Co.,* 2008 WL 4450307 (N.D. Ill. 2008); *Bettua v. Sears, Roebuck and Co.,* 2009 WL 230573 (N.D. Ill. 2009); and *Butler v. Sears, Roebuck and Co.,* 2009 WL 3713687 (N.D. Ill. 2009). Plaintiffs' remaining claims are federal and state law claims for breaches of express and implied warranties.

### Plaintiffs' Motion For Leave To File An Amended Complaint

Plaintiffs seek leave to file an amended complaint which reasserts their consumer fraud claims. Permission of any such amendment following dismissal of their claims with prejudice would be contrary to the law of the case doctrine, which "reflects the rightful expectation of litigants that a change of judges mid-way through a case will not mean going back to square one." *Best v. Shell Oil Co.,* 107 F.3d 544, 546 (7th Cir. 1997). Although the law of the case

doctrine is not an absolute bar to a court's reconsideration of its own rulings or those of a different member of the same court, prior rulings should not be revisited in the absence of a "compelling" reason, such as manifest error or a change in the law. *Minch v. City of Chicago,* 486 F.3d 294, 301 (7th Cir. 2007).

No compelling reason for revisiting Judge Lefkow's rulings has been presented by the plaintiffs here. They contend that subsequent holdings by the Supreme Court (*Matrixx Initiatives, Inc. v. Siracusano,* – U.S. –, 131 S.Ct. 1309 (2011)) and the Seventh Circuit *(In re Text Messaging Antitrust Litigation,* 630 F.3d 622 (7th Cir. 2010)) establish the erroneous nature of the dismissals of the consumer fraud counts of their complaints.

This court does not share the plaintiffs' view. In *Matrixx,* the Supreme Court held that a plaintiff could sufficiently allege the failure to disclose materially adverse information about a drug product without alleging a statistically significant link between the product and an alleged harmful side effect. 131 S.Ct. at 1321-23. In contrast, the plaintiffs' consumer fraud claims in this case were not held to be inadequate because of a failure to allege a statistically significant number of washer problems, but because the only allegations supporting a consumer fraud claim were conclusory assertions that Sears was aware of a high problem rate with the washers. Judge Lefkow found that without some allegation of the comparison between problem rates for the subject washers and those of other machines, the plaintiffs had not sufficiently alleged that the problems were so common that Sears knew the machines were defective. *Butler,* 2009 WL 3713687 at *5. Therefore, while *Matrixx* suggests that materiality can be sufficiently alleged in the absence of statistics, it does not suggest that the statistics provided by the plaintiff here were, by themselves, sufficient to state a consumer fraud claim, or that the other pleading deficiencies

noted by Judge Lefkow could no longer serve as the basis for a 12(b)(6) dismissal.

Plaintiffs' reliance on *In re Text Messaging* is similarly misplaced. In that case the Seventh Circuit clarified that the pleading standard required to survive a 12(b)(6) dismissal motion is a "nonnegligible probability," (630 F. 3d at 629) but it did not in any way suggest that allegations of raw numbers of problem products, without further context, were sufficient to state a claim that a manufacturer knew of a product defect that it should disclose to consumers.

Plaintiffs' additional arguments in support of its assertion of compelling reasons to disregard the law of the case doctrine are unpersuasive. They contend that discovery revealed facts that would now enable them to plead their consumer fraud claims with appropriate specificity. However, they do not suggest that these revelations occurred after Judge Lefkow's most recent dismissal of those claims in November 2009. They also argue that other plaintiffs in similar actions for the same defects in Whirlpool-manufactured washers in other jurisdictions have been allowed to pursue consumer fraud claims, and that an inconsistent ruling here would be unjust. In the court's view, such inconsistency is a possibility inherent in the pursuit of multiple actions in different jurisdictions, and does not constitute a compelling basis for reconsideration of the prior dismissals of the plaintiffs' consumer fraud claims.

Plaintiffs' motion for leave to file an amended complaint is therefore denied.

<u>Defendant's Motion To Strike Opinions Of Plaintiffs' Expert</u>

Plaintiffs supported their motion for leave to certify this proceeding as a class action with the opinion of an expert, R. Gary Wilson. It is undisputed that Wilson holds a doctorate degree in mechanical engineering and that he was employed by Whirlpool from 1976 to 1999, including tenure from 1997 to 1999 as its director of laundry technology.

According to Wilson, the subject washers are defective in design because their basic functional characteristics, including their use of lower water volumes at cooler temperatures than standard machines, makes them unable to rid themselves of residue in the normal wash and rinse cycles and makes them incubators for the growth of bacteria and mold. Wilson concluded that the core design of all of the Whirlpool-built front loading high efficiency washers is defective, without regard to any changes made to individual models to attempt to mitigate the problem.

It is undisputed that Wilson inspected fewer than 20 washers in total, that most of the washers he inspected were from a group of machines known to have mold problems, and that he did not evaluate the impact of model changes made by Whirlpool to address those problems. Sears contends that his opinions must be excluded because they were based upon insufficient facts and because they were not produced by reliable, scientifically valid methods.

An expert's testimony is not unreliable simply because it is founded on his experience rather than on data. *Metavante Corp. v. Emigrant Savings Bank,* 619 F.3d 748, 761 (7th Cir. 2010). An expert knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion. *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791 (4th Cir. 1989). Here, Wilson's knowledge of and experience with washing machine design is not questioned. The value of Wilson's testimony is not based upon his sampling methods; it is instead based upon his knowledge of washer technology and his understanding of the principles that generally keep machines functionally clean, as well as the extent to which the subject machines depart from those principles. In the court's view, Wilson is clearly qualified to use his knowledge of those principles to offer an opinion, for purposes of a class certification motion, that all front loading high efficiency machines are similarly defective

6

in design. The fact that his opinion does not account for mitigating model changes that do not alter the machines' basic design is relevant to the weight to be assigned to his opinion, but does not indicate that the opinion is inadmissible in support of the certification motion.

Sears' motion to exclude Wilson's opinion is therefore denied.

<u>Class Certification - Machines With Mold Problems</u>

An action may be certified as a class action if the putative class satisfies all four requirements of Federal Rule of Civil Procedure 23(a) - numerosity, commonality, typicality, and adequacy of representation - and any one of the conditions of Rule 23(b). *Siegel v. Shell Oil Co.,* 612 F.3d 932, 935 (7th Cir. 2010).

Plaintiffs represent that the subject washers have been sold in several states for many years, and Sears does not deny that the number of potential members of the putative class is sufficiently large to make class action certification appropriate. Plaintiffs also assert, without dispute from Sears, that they and their counsel would be adequate representatives of the class.

Sears argues that the named plaintiffs are not typical of the class they purport to represent because they did not notice odor problems, did not consider them significant, or were not sufficiently troubled by them to report them to Sears within the warranty period. A plaintiff's claim is typical for purposes of Rule 23(a) analysis "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998), quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Typicality may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009). In the

present case, even though plaintiffs may have suffered or noticed mold problems to different degrees, their claims are all based upon the same course of Sears conduct: the sale of a washer type that is alleged to be unduly prone to the problem. The court therefore concludes that the named plaintiffs' claims are typical of those of the class they seek to represent.

The court similarly concludes that the plaintiffs satisfy the commonality requirement of Rule 23(a)(2). To meet that requirement, "[i]t is enough that there be one or more common questions of law or fact." *Spano v. The Boeing Co.,* 633 F.3d 574, 585 (7th Cir. 2011). Whether the subject washers were uniformly defective in design, and whether their sale violates Sears' warranties are questions that are apparently common to all members of the class, thus satisfying the rule.

More problematic for the plaintiffs, however, is the requirement of Rule 23(b)(3): that questions of law or fact common to class members "predominate over any questions affecting only individual members." A determination of whether questions common to class members predominate begins with the elements of the underlying cause of action and an analysis of whether they can be resolved on a common, classwide basis. *Erica P. John Fund, Inc. v. Halliburton Co.,* – U.S. – ,131 S.Ct. 2179, 2184 (2011).

Plaintiffs' complaint alleges that Sears did not have solutions that would resolve the design defects that created the mold problem, and that it continued to sell the machines despite its knowledge of the problem and of the inadequacy of its proposed remedies. "Sears is aware that the Mold Problem is caused *inter alia,* by the inability of the Machine to clean itself following a wash cycle and that none of the proposed solutions Sears has offered Plaintiffs and the Class members will adequately remedy the defect." Amended Consolidated Class Action

Complaint, Docket #162, par. 37. "Sears has long known that the Washing Machines suffer from a self-cleaning defect and do not perform as intended, because they are susceptible to and likely to experience Mold Problems as a result of *inter alia,* the water drainage defect, which Sears has been, and continues to be, unable to remedy." Id. at par. 43. The plaintiffs' allegations thus establish as central issues Sears' failure to fix the mold problem and its knowledge that the problem had not been and could not be fixed.

In response, Sears has produced evidence of numerous model changes that were aimed at fixing the mold problem, including problem areas identified by the plaintiffs' expert. One such change was a smoothing of the inside surface of the washer's water tub, eliminating crevices where mold could more easily evade rinse water. A second identified problem area was a metal cross piece component, which, according to plaintiffs' expert, also had crevices which promoted mold growth and which contained a level of copper that promoted corrosion. Sears produced unrebutted evidence that this piece was also smoothed in later models and that its copper content was reduced to lower the corrosion risk. Sears contends that these changes from model to model reduced any mold problems that the machines had. Declaration of Anthony Hardaway, Docket #231, Attachment 8, pars. 41-43

The plaintiffs do not offer any evidence suggesting that they assessed the impacts of any of these changes, and their expert's testimony indicates that he did not attempt to calculate any of those impacts in determining that the machines were defective in design, without regard to any later attempts to remedy the mold problem. The plaintiffs identify internal Whirlpool documents that characterize the problem as extending across all front loading high efficiency platforms, but these documents predate the model changes that, according to Sears, fixed the

9

problem.

In the court's view, the issues raised by the effect of the washer modifications and the extent of Sears' knowledge across multiple product iterations cannot be answered on a basis as wide as the class defined by the plaintiffs' certification motion. If the washer model changes had any impact on the problem, the extent to which Sears continued to sell a defective washer and the extent of its knowledge of a continued problem are questions whose answers will differ from model to model.

Plaintiffs argue that the efficacy of such changes is an issue to be decided on the merits of their claim, and that their assertion of a design defect that defies all attempted remedies was sufficient to allow similar claims to be certified as a class action in a proceeding in the United States District Court for the Northern District of Ohio. The court notes that in the Seventh Circuit, preliminary inquiries into the facts and merits are appropriate in reviewing the predominance of common issues for certification purposes. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676-77 (7th Cir. 2001).

The model-specific issues regarding the washer modifications and Sears' knowledge of ongoing problems, in this court's view, outweigh the mold problem issues that can be resolved on a class-wide basis. See *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018-19 (7th Cir. 2002). The party seeking class certification bears the burden of demonstrating that each of the elements required for certification are present. *Retired Chicago Police Association v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). The court concludes that this burden has not been met for the mold problem class, and accordingly denies the plaintiffs' motion to certify that class.

Class Certification - Machines With Control Unit Problems

As in its response to plaintiffs' motion to certify the mold problem class, Sears does not dispute plaintiffs' assertion of the presence of the Rule 23(a) factors of numerosity and adequacy of representation for certification of the proposed control unit class. The common class questions that satisfied the rule's moderate commonality requirement for purposes of the proposed mold problem class achieve the same result for this proposed class.

Unlike the proposed mold problem class, the claimed predominance of common issues is not lessened by model-specific differences within the control unit class. This proposed class is limited to an identified production period during which control units from a single supplier were installed by a unique process. The parties do not dispute that washers with the Bitron control unit in question are readily identifiable by serial number, and Sears does not suggest that it employed remedies that solved the problem before the end of the production run of the washers in the proposed class. Although Sears does contend that individual issues predominate over the potential common issues in this proposed class, the court finds that the individual issues identified by Sears do not outweigh the common issues raised by this class.

Sears also argues that the proposed control unit class is fatally over-inclusive because, according to its records, the vast majority of its customers suffered no control unit issues, and because the issues that did occur were not demonstrated to have been caused by the same defect. The court considers Sears' assertions on this issue to be evidence of the problems for which it received a customer complaint rather than a demonstration of the over-inclusive definition of the class. At this stage, it is not clear that the proposed class includes many members who were not

11

injured by alleged control unit defect, so Sears' assertions of overbreadth are not a basis for denial of certification.

The court finds that the proposed control unit class meets the requirements of Rule 23(a), that questions of law and fact common to members of the class predominate over questions affecting only individual class members, and that a class action is superior to other methods for fairly and efficiently adjudicating the issues of Sears' liability for the alleged control unit problems. Plaintiffs' motion for certification of a control unit class is therefore granted.

Plaintiffs' Motion To Sever

Plaintiffs ask that, for reasons of judicial economy, their control unit class claims be severed from their mold problem claims. Since the scope and direction of remaining proceeding have not yet been determined, the court considers this motion to be premature, and accordingly denies the motion without prejudice to its reassertion later in the proceedings.

Conclusion

The plaintiffs' motion for leave to file an amended complaint is denied. Sears' motion to exclude the opinions of the plaintiffs' expert is denied. The plaintiffs' motion for certification of a class of purchasers of machines with mold problems is denied. The plaintiffs' motion for certification of a class of all persons or entities who purchased, not for resale, a front-load

washing machine manufactured from 2004 to 2007 with a Bitron CCU, in the states of California, Indiana, Illinois, Kentucky, Minnesota and Texas is granted. The plaintiffs' motion to sever is denied without prejudice.

So ordered.

September 30, 2011

_____
Sharon Johnson Coleman
District Judge