**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY BUTLER, JOSEPH LEONARD, KEVIN BARNES, VICTOR MATOS, ALFRED BLAIR, and MARTIN CHAMPION, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 06-cv-7023 |
| v. | ) ) ) | Judge Sharon Johnson Coleman |
| SEARS, ROEBUCK AND CO., | ) ) ) | |
| Defendant. | ) | |

**ORDER**

Plaintiffs seek reconsideration of this court's order denying its motion for certification of a class of those who purchased from defendant a "front-load washing machine manufactured through 2008, without a steam feature, in the States of California, Indiana, Illinois, Kentucky, Minnesota and Texas." Alternatively, they seek certification of smaller subclasses of plaintiffs. For the reasons detailed below, plaintiffs' motion is denied.

Background

This court's prior order denied plaintiffs' motion for certification of a proposed single class of buyers of washers suffering from a mold problem as a result of their front loading, high-efficiency design. The court noted that Sears had presented evidence of multiple model changes intended to combat the problem. The court further noted that these changes, along with the

changes in Sears' knowledge of and responses to the mold problem, raised model-specific issues that outweighed the mold problem issues that could be resolved on a class wide basis.

Plaintiffs' Motion For Reconsideration

In its prior order, this court observed that evidence of knowledge of problems with the machines by their manufacturer, Whirlpool, "predated" the model changes that, according to Sears, fixed the problem. Plaintiffs correctly note that there is also evidence of Whirlpool knowledge of the persistence of the problem after the various model changes, and they contend that the existence of such evidence demonstrates a factual misapprehension by this court that merits reconsideration of its earlier order.

The significance of the evidence in question is its capacity to establish that legal and factual issue related to the machines' alleged mold problem can be resolved on a class-wide basis. Plaintiffs allege that the inherent propensity of front-loading high efficiency washers to develop mold problems was present in all machines in the proposed class. In response, Sears contends that various modifications over the machines' product cycles reduced the problem. (Declaration of Anthony Hardaway, Docket #231-8, par. 41.) Sears' argument thus suggests that the alleged propensity of all high efficiency washers to develop mold problems may have been remediated to different degrees in different models, in spite of their common overall design platform. Evidence of Whirlpool's knowledge of the problem before the model changes does not address the effectiveness of any such changes or preclude variations in the issues to be determined in assessing those changes.

The subsequent evidence identified by plaintiffs as indicative of knowledge of the continued problem by Sears and Whirlpool is similarly lacking in distinction between various

machine models. Each of the documents cited by plaintiffs addresses the group of high efficiency washers as a whole, or their general propensity to develop the mold problem. None addresses the specific effect of any modification in mitigating the impact of that general propensity.

Therefore, while plaintiffs may present allegations of defectiveness that are common to all machines in the proposed class, the record presented at this stage suggests that Sears' defenses regarding the machines' functions will be model-specific. Plaintiffs' evidence of post-modification knowledge of the mold problem does not diminish the likelihood that design change issues not common to the entire proposed class will require resolution by the trier of fact.

In further support of their motion for reconsideration, plaintiffs argue that the court erroneously assessed the testimony of their expert, R. Gary Wilson, in finding that he had not tested washers that incorporated any of Sears' design changes. The court made no such finding. In addressing the impacts of Sears' model-specific changes, the court found that Wilson "did not attempt to calculate any of those impacts in determining that the machines were defective in design, without regard to any later attempts to remedy the mold problem." Stated differently, the court interpreted Wilson's testimony to express the opinion that the front loading high efficiency washers are defective due to their susceptibility to the mold problem, notwithstanding any later modifications. The court also concluded that Wilson had not assessed the individual impact of any individual design change. Plaintiffs' motion confirms this conclusion: "It is true, of course, that Dr. Wilson did not attempt to quantify the impact of any particular design change in isolation, but this only reflects his conclusion that all of the machines suffered from the mold problem and that none of Whirlpool's changes remedied the essential defect – the failure of

Sears' machines to fully clean themselves." (Memorandum in Support of Motion for Reconsideration, Docket #290, p. 13 of 22, n. 9.) Like the Whirlpool evidence discussed above, Wilson's expert opinion that there are no model-specific differences material to the mold problem may result in common allegations by plaintiffs in attempting to prove their case, but they do not diminish the likelihood that Sears will raise in its defense issues that are not common to all the models.

In addition to the model-specific issues related to the machines' design, plaintiffs' complaint raises issues regarding Sears' knowledge of the mold problem. Two counts of the complaint claim that Sears violated the Magnuson-Moss Act, 15 U.S.C. § 2301, by its conduct, including "knowledge of the defective Washing Machines" and "action, and inaction, in the face of that knowledge." (Amended Complaint, Docket #162, pars. 95, 104.) At this stage of the proceedings, the court has not been presented with evidence that Sears' knowledge of the alleged mold problem and its responses to that knowledge were uniform throughout the machines' product cycles. The issues regarding Sears' knowledge and its actions in response to that knowledge raise additional questions of law and fact not common among the various washer models.

For these reasons, the court adheres to the view that issues of fact and law common to all washers defining the proposed class do not predominate over the issues that will require resolutions that potentially differ between various models. Plaintiffs' motion for reconsideration is accordingly denied.

Plaintiffs' Motion For Certification of Subclasses or Particular Issues

Plaintiffs alternatively seek certification of subclasses or of specific issues. Such

4

certification is appropriate only upon a finding that the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation are satisfied. See *In re Factor VII or IX Concentrate Blood Products,* 2005 WL 497782 (N.D. Ill. 2005) at *3. As the court's prior order noted, Sears did not dispute the numerosity of the previously proposed single mold problem class. However, the parties have not had the opportunity to address the numerosity of subclasses defined by the model-specific changes to the washer models at issue. Plaintiffs also acknowledge that newly defined subclasses would necessitate a reassessment of the current plaintiffs' typicality of the newly defined class. The court concludes that the plaintiffs have not yet established the propriety of certification of subclasses or particular issues, and their alternative request for such relief is denied.

So ordered.

July 20, 2012

Sharon Johnson Coleman
District Judge