# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOSEPH LEONARD, KEVIN BARNES,
VICTOR MATOS, ALFRED BLAIR,
MARTIN CHAMPION, KAREN FREEMAN,
and PEGGY LEMLEY, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiffs,

        v.

SEARS, ROEBUCK AND CO.,

        Defendant,

WHIRLPOOL CORPORATION,

        Intervenor Defendant.

ALAN JARASHOW, LAUREN CRANE, and
LAWRENCE L'HOMMEDIEU, Individually
and on Behalf of All Others Similarly
Situated,

        Plaintiffs,

        v.

SEARS, ROEBUCK AND CO.,

        Defendant.

JOHN BETTUA, GIUSEPPINA P. DONIA,
DERRAL HOWARD, DENISE MILLER,
CHARLES NAPOLI, VIC PFEFER,
JEFFREY A. AND SANDRA K. ROBINSON,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiffs,

        v.

SEARS, ROEBUCK AND CO.,

        Defendant.

Case No. 06-CV-7023

Consolidated with Case Nos.
07-CV-0412 and 08-CV-1832

**The Hon. Mary M. Rowland**

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

In 2011, this Court entered an Order denying plaintiffs' motion to certify a class of "purchasers of front loading, high efficiency washing machines manufactured by Whirlpool and sold by Sears" in six different States "whose machines suffered from [a] mold defect." (Dkt. 285 at 1) (Coleman, J.). The Court also denied a motion for reconsideration. (Dkt. 327 at 1). A lengthy journey through federal appellate courts followed, culminating in reversal. *See Butler v. Sears, Roebuck & Co.*, slip op., case no. 06-CV-7023 (N.D. Ill. July 20, 2012), *reversed in relevant part*, 702 F.3d 359 (7th Cir. 2012), *rehearing and rehearing en banc denied* (7th Cir. 2012), *cert. granted, judgment vacated*, 133 S. Ct. 1722 (2013), *and judgment reinstated, reversed in relevant part*, 727 F.3d 796 (7th Cir. 2013), *cert denied,* 134 S. Ct. 1277 (2014).

After the case returned to the district court, plaintiffs filed an amended renewed motion for class certification. (Dkt. 381). Judge Coleman denied this motion without prejudice, (Dkt. 452), knowing the parties intended subsequently to: (1) consent to the jurisdiction of the undersigned, (Dkt. 456 (joint consent to jurisdiction of Magistrate Judge)); and then (2) re-submit portions of their earlier-filed class certification briefs, with necessary amendments, (Dkt. 471 (resubmitting certain briefs)).

Plaintiffs' pending renewed motion for class certification is identical to their earlier motion (Dkt. 381), except that plaintiffs: (a) have substituted two new proposed class representatives, and (b) seek to certify a class made up of Illinois plaintiffs on-

ly, rather than plaintiffs from six different states. Similarly, the arguments raised by Sears in opposition to plaintiffs' pending renewed motion are identical to those offered in its earlier opposition.

In sum, nearly ten years into this litigation and four years after the Court originally denied the request, a decision reversed by the Seventh Circuit Court of Appeals, plaintiffs' motion for class certification of a "mold defect class" awaits a new ruling. For the reasons stated below, the motion for class certification [381] is **GRANTED**. The Court hereby certifies the following liability-only class of Illinois plaintiffs:

> All persons who are current residents of Illinois and who purchased certain models (listed below) of Whirlpool-Manufactured, Kenmore-Brand Front-Load Washing Machines ("Kenmore Front-Load Washers") for primarily personal, family, or household purposes, and not for resale, in Illinois.

> "Kenmore Front-Load Washers" is defined to include only washers with the following model numbers:

| Model No. Begins With | Model by Color Breakdown (if any) | Production Dates |
|---|---|---|
| 110.4292* | 42922 (White)<br>42924 (Bisque)<br>42926 (Graphite) | January 2001–June 2004 |
| 110.4293* | 42932 (White)<br>42934 (Bisque)<br>42936 (Graphite) | February 2001–December 2003 |
| 110.4282* | 42822 (White)<br>42824 (Bisque)<br>42826 (Graphite) | April 2001–July 2004 |
| 110.4283* | 42832 (White)<br>42836 (Graphite) | June 2001–May 2003 |
| 110.4483* | 44832 (White)<br>44836 (Graphite)<br>44834 (Bisque) | March 2002–June 2004 |
| 110.4493* | 44932 (White)<br>44934 (Bisque)<br>44936 (Graphite) | October 2002–September 2004 |
| 110.45091 | (n/a) | May 2003–September 2006 |

| Model No. Begins With* | Model by Color Breakdown (if any) | Production Dates |
|---|---|---|
| 110.4508* | 45081 (White)<br>45087 (Pacific Blue)<br>45088 (Champagne)<br>45089 (Sedona) | May 2003–October 2006 |
| 110.44826 | (n/a) | July 2003–June 2004 |
| 110.44921 | (n/a) | August 2003–July 2004 |
| 110.45862 | (n/a) | January 2004–September 2006 |
| 110.4598* | 45981 (White-on-White)<br>45986 (Graphite) | January 2004–July 2006 |
| 110.43902 | (n/a) | January 2004–May 2004 |
| 110.4599* | 45991 (White-on-White)<br>45992 (White)<br>45994 (Bisque)<br>45996 (Graphite) | January 2004–July 2006 |
| 110.4596* | 45962 (White)<br>45966 (Graphite) | June 2004–October 2006 |
| 110.4597* | 45972 (White)<br>45976 (Graphite) | June 2004–October 2006 |
| 110.45872 | (n/a) | July 2004–May 2006 |
| 110.46472 | (n/a) | June 2005–June 2006 |
| 110.46462 | (n/a) | August 2005–June 2006 |
| 110.4756* | 47561 (White-on-White)<br>47566 (Black)<br>47567 (Pacific Blue) | August 2005–October 2010 |
| 110.4751* | 47511 (White)<br>47512 (White-on-White) | January 2006–November 2009 |
| 110.49972 | (n/a) | January 2006–October 2008 |
| 110.49962 | (n/a) | April 2006–November 2009 |
| 110.4708* | 47081 (White)<br>47086 (Black)<br>47087 (Pacific Blue)<br>47088 (Champagne)<br>47089 (Barolo) | April 2006–October 2009 |
| 110.4753* | 47531 (White)<br>47532 (White-on-White) | April 2006–April 2009 |
| 110.4757* | 47571 (White-on-White)<br>47577 (Pacific Blue) | August 2006–August 2009 |
| 110.47091 | (n/a) | October 2006–March 2009 |
| 110.47852 | (n/a) | March 2007–June 2007 |
| 110.47542 | (n/a) | June 2007–November 2008 |

(See also chart appended to the end of this Order.)

Excluded from the class are: (1) Kenmore Front-Load Washers with model numbers and manufacture dates not listed above; (2) Sears, any entity in which Sears has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (3) Whirlpool, any entity in which Whirlpool has a controlling interest,

and its legal representatives, officers, directors, employees, assigns, and successors; (4) Kenmore Front-Load Washers purchased through the Sears or Whirlpool Employee Purchase Programs; (5) the Judge to whom this case is assigned, any member of the Judge's staff (including the Special Master and his staff) and any member of the Judge's or the Special Master's immediate family; (6) persons or entities who distribute or resell Kenmore Front-Load Washers; (7) government entities; and (8) claims for personal injury, wrongful death, and/or emotional distress.

## II. BACKGROUND

### A. Procedural History

In the currently-operative Amended Consolidated Class Action Complaint (Dkt. 162, amended by interlineation, Dkt. 467), Illinois plaintiffs Karen Freeman and Peggy Lemley each allege that they bought a Kenmore-brand front-loading, high-efficiency washing machine manufactured by intervenor-defendant Whirlpool and sold by defendant Sears, and that the machine developed serious internal mold problems. Specifically, plaintiffs allege their washers

> contain a serious design defect that prevents adequate water drainage and causes them to (a) accumulate mold and mildew within the Washing Machines; (b) produce a moldy odor that permeates [their] homes if the doors to the Washing Machines are left open; (c) produce a mold or mildew odor on clothes washed in the Machines; (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew and/or associated foul odors; and (e) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold.

(Dkt. 162, Complaint at ¶2). Freeman and Lemley assert the following claims: (1) breach of express written warranty, in violation of the Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312; (2) breach of implied warranty, in violation of the Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312; (3) breach of express written warranty in viola-

tion of Illinois law, 810 ILCS 5/2-313; and (4) breach of implied warranty in violation of Illinois law, 810 ILCS 5/2-314. (*Id.* ¶ 4).[1] In their motion, however, plaintiffs seek to certify for class treatment only the last of these four claims. (Dkt. 381 at 2, ¶1) ("Plaintiffs seek certification [only] of claims for breach of implied warranty under the law[] of . . . Illinois").[2]

Originally, plaintiffs sought certification of a six-state class of owners of Kenmore machines that suffer the mold problem. Plaintiffs proposed their class should be defined to include "[a]ll persons or entities who purchased, not for resale, a [Kenmore] front-load washing machine in the States of California, Indiana, Illinois, Kentucky, Minnesota and Texas." Plaintiffs Motion for Class Certification at 2 (Dkt. 206).[3] The Court denied the motion for class certification. (Dkt. 285).[4]

---

[1] The Complaint also originally contained claims for: (a) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; and (b) unjust enrichment, in violation of Illinois law. The Court dismissed those claims with prejudice on November 4, 2009. (Dkt. 170).

[2] The named plaintiffs have represented to the Court that they will not pursue the first three claims at trial.

[3] *See also* Plaintiffs' Motion for Reconsideration at 2 (Dkt. 289) (amending the proposed class definition to include only washers "manufactured through 2008, without a steam feature"); Plaintiffs' Renewed Motion for Certification at 1 (Dkt. 378) (amending the proposed class definition again to include only washers "manufactured by Whirlpool in Germany through 2008, without a steam feature"); Plaintiffs Amended Renewed Motion for Certification at 1-2 (Dkt. 381) (amending the proposed class definition again to include only washers "manufactured by Whirlpool through 2008, without a steam feature, other than those built on the 'Sierra' platform").

[4] Plaintiffs have alleged two different product defects—the "mold problem," and faulty electronic central control units ("CCUs"). (Complaint at ¶ 50 (Dkt. 162)). In the same order denying plaintiffs' motion for certification of a "mold class," the Court granted plaintiffs' motion for certification of a CCU class. The Seventh Circuit affirmed class certification of the CCU class. Litigation of the mold class and the CCU class is proceeding separately; the CCU class is not addressed in this opinion.

Plaintiffs appealed the denial of class certification and the Seventh Circuit Court of Appeals reversed, holding the class should have been certified. *Butler v. Sears, Roebuck and Co.*, 702 F.3d 359 (7th Cir. 2012) ("*Butler I*"). The Seventh Circuit observed that: (1) "[r]oughly 200,000 of these Kenmore-brand machines are sold each year and there have been many thousands of complaints of bad odors by the owners," *id.* at 361; and (2) the "basic question in the litigation—were the machines defective in permitting mold to accumulate and generate noxious odors?—is common to the entire mold class," *id.* The Seventh Circuit also noted its agreement with the Sixth Circuit's decision to uphold "the certification of a . . . mold class in a case, identical to this one . . . , against Whirlpool," the manufacturer of the machines. *Id.* at 363 (citing *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, MDL No. 2001, 678 F.3d 409 (6th Cir.2012)).

Sears filed a Petition for Writ of Certiorari. The Supreme Court entered an order vacating the Seventh Circuit's prior judgment and remanding the case for further consideration in light of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). *Sears, Roebuck and Co. v. Butler*, 133 S. Ct. 2768 (2013). On remand, the Seventh Circuit again concluded the district court should have certified the class. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"). In *Butler II*, the Seventh Circuit agreed once more with the Sixth Circuit, which had reinstated its own conclusion after also having its original opinion vacated by the Supreme Court. *See id.* at 798 (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 845, 859-61 (6th Cir. 2013) ("*Whirlpool II*")). Sears again petitioned the

Supreme Court for a Writ of Certiorari; this time, it was denied. *Sears, Roebuck and Co. v. Butler*, 134 S. Ct. 1277 (2014).[5]

Accordingly, this Court must now follow the Seventh Circuit's mandate, including its conclusions that: (1) "[t]here is a single, central, common issue of liability: whether the Sears washing machine was defective"; and (2) any "complications" caused by design differences in various washing machine models "can be handled by the creation of subclasses," if necessary. *Butler II*, 727 F.3d at 801-02.

## B. Related History—*Whirlpool*

As noted, this case is closely related to the multidistrict litigation known as *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation.* Indeed, this case and *Whirlpool* share many of the same attorneys and experts; *Whirlpool* involves the same washing machine designs as does this case; and the arguments offered by the parties are virtually identical.

Specifically, not only does Sears sell Whirlpool-manufactured front-loading washers under the Kenmore brand name, but Whirlpool also sells the same machines under its own brand name, "Duet." From a mechanical design standpoint, the Kenmore and Duet machines are duplicates. Like the Kenmore-branded machines, the Duet-branded machines also developed mold problems. Like plaintiffs

---

[5] The full appellate history of this Court's class certification ruling is as follows: *Butler v. Sears, Roebuck & Co.,* slip op., case no. 06-CV-7023 (N.D. Ill. July 20, 2012) (docket nos. 285 & 327), *reversed in relevant part*, 702 F.3d 359 (7th Cir. 2012), *rehearing and rehearing en banc denied* (7th Cir. 2012), *cert. granted, judgment vacated*, 133 S. Ct. 1722 (2013), and *judgment reinstated, reversed in relevant part*, 727 F.3d 796 (7th Cir. 2013), *cert denied*, 134 S. Ct. 1277 (2014).

here, the *Whirlpool* plaintiffs moved to certify a number of single-state classes of Duet-owners.

The *Whirlpool* MDL court granted certification of a class of Duet-owner plaintiffs who lived in Ohio. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2010 WL 2756947 at *4 (N.D. Ohio July 12, 2010) ("*Whirlpool Class Cert. Order I*"). The MDL court certified class-action treatment of only the question of liability, however, "leaving . . . the damages issue[s] for individual determination." *Id.* at *3.

Thereafter, the procedural history of *Whirlpool* essentially mirrors the procedural history in this case. Whirlpool appealed the *Class Cert. Order* and the Sixth Circuit Court of Appeals affirmed. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409 (6th Cir. 2012) ("*Whirlpool I*"). Whirlpool then filed a Petition for Writ of Certiorari to the Supreme Court, which cited *Comcast* and "granted Whirlpool's petition, vacated [the Sixth Circuit's] prior judgment, and remanded the case to [the Court of Appeals] for further consideration." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 845 (6th Cir. 2013) ("*Whirlpool II*") (referring to the Supreme Court's Order, *Whirlpool Corp. v. Glazer*, 133 S. Ct. 1722 (2013), as a "grant, vacate, and remand order (GVR)"). On remand, and upon further consideration, the Sixth Circuit again affirmed. *Id.* Whirlpool again petitioned the Supreme Court for a Writ of Certiorari; this time, it was denied. *Whirlpool Corp. v. Glazer*, 134 S. Ct. 1277 (2014).[6] In 2014, four years after

---

[6] The full appellate history of the *Whirlpool* MDL court's class certification ruling is as follows: *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 2010 WL

the Ohio class was originally certified, the *Whirlpool* case finally returned to the district court.

Whirlpool promptly filed a motion to decertify the class, while plaintiffs moved to modify the class definition. The district court denied the motion to decertify, noting it was "bound by the Sixth Circuit's mandate, including its conclusion that, even though 'Whirlpool claims that commonality is defeated because the Duets were built over a period of years on two different [engineering] platforms, resulting in the production of twenty-one different models during the relevant time frame,' class certification is appropriate because there exists a 'common question of whether design defects cause mold growth . . . across the manufacturing spectrum Whirlpool describes.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 452 (N.D. Ohio 2014) ("*Whirlpool Class Cert. Order II*") (quoting *Whirlpool II*, 722 F.3d at 854).

Following all the appellate litigation, plaintiffs asked the MDL court to "modify the existing class definition by adding four exclusions: (1) all machines manufactured after December 31, 2008, including all ALPHA [engineering platform] machines; (2) all SIERRA [engineering platform] machines; (3) all machines that have a steam feature; and (4) all machines that have a plastic tub with only longitudinal reinforcing ribs." *Id.* at 460. The MDL district court agreed with plaintiffs that it

---

2756947 (N.D. Ohio July 12, 2010), *affirmed*, 678 F.3d 409 (6th Cir. 2012), *rehearing and rehearing en banc denied* (6th Cir. 2012), *cert. granted, judgment vacated sub nom. Whirlpool Corp. v. Glazer*, 133 S. Ct. 1722 (2013), and *affirmed*, 722 F.3d 838 (6th Cir. 2013), *cert denied*, 134 S. Ct. 1277 (2014).

was appropriate to "assure commonality by re-defining the class to better reflect new evidence regarding exactly which Duet washer models have the alleged design defect." *Id.* at 461. But the court further found "the proper re-definition is not the one Plaintiffs propose." *Id.* Rather, the court undertook a model-by-model analysis, identified those that had the alleged design defects, and included only those models in the class. *See id.* at 462 ("Plaintiffs' theory is that all models of Duet washers that had plastic tubs or metal brackets with crevices were defective, because the crevices caused the machines to suffer mold problems. * * * [T]he better approach is to identify precisely those model numbers and their manufacture dates that did have plastic tubs or metal brackets with crevices, and include only those Duets within the class."). This modified class definition included 20 models of Duets, with some models limited by manufacture-dates. *Id.* at 451.

The Ohio-class *Whirlpool* case went to trial and a jury found in favor of Whirlpool.[7] Because the issues and arguments raised in this case and in *Whirlpool* are nearly identical, and because this Court agrees with the bulk of the reasoning in the *Whirlpool* MDL court's *Class Cert. Order II*, this Order adopts much of that analysis.

## C. The Washing Machines at Issue

Plaintiffs have amended their proposed class definition several times. Their most recent request is for certification of a an Illinois-only class of "All persons or

---

[7] Plaintiffs have filed an appeal of the *Whirlpool* MDL verdict. Whirlpool has filed a conditional cross-appeal, asserting that, if the court does reverse the verdict and remand, it should also reverse the district court's denial of Whirlpool's motion to decertify the class.

entities who purchased, not for resale, any Kenmore front-load washing machine manufactured by Whirlpool through 2008, without a steam feature, other than those [machines] built on the 'Sierra' [engineering] platform." (Dkt. 381 at 1-2; Dkt. 471).

This class definition includes numerous models of Kenmore washers. *See Butler I*, 702 F.3d at 361 ("Sears contends that during the period covered by the complaint it sold 27 different Kenmore-brand models"). The parties recently submitted a chart clarifying that: (a) Whirlpool manufactured 37 different models of Kenmore front-load washers from 2001 through 2008; and (b) plaintiffs' most-recent proposed class would include 29 of these 37 models in the class. The eight models plaintiffs would exclude were either produced on the Sierra engineering platform or had the "steam feature." *See* chart appended to the end of this Order.

The parties' chart shows that Whirlpool made several design changes to the Kenmore machines over time. These changes included both structural modifications to the machines and also the addition of different laundry cycles and optional selections. Some of these changes are listed here:[8]

- Modifications to the plastic tub, which holds the wash-water and within which the metal laundry-basket revolves. Whirlpool redesigned the plastic tub several times to remove water-side structural ribs, which tended to gather mold. See example photographs below. There are at least three different plastic tub designs in various Kenmore models; plaintiffs seek to include two of these tub designs in the class.
- Modifications to the metal bracket (also called the "crosspiece"), which sits inside the plastic tub and connects the metal laundry-basket to the

---

[8] These changes are discussed at length in the parties' expert reports.

revolving motor spindle. Whirlpool redesigned the bracket several times to remove structural crevices,[9] which tended to gather mold. See example photographs below. There are at least four different bracket designs in various Kenmore models; plaintiffs seek to include three of these bracket designs in the class. Whirlpool also modified the mostly-aluminum bracket to contain less copper, which tended to corrode and cause pitting, allowing mold accumulation.

· Addition of a "sanitary cycle" allowing the user to super-heat the wash-water to about 160°, thereby sanitizing the laundry and also reducing accumulation of bacteria and mold.

· Addition of a "maintenance cycle" or "clean washer cycle." This is a laundry cycle that allows the user to run the washer with no laundry inside the machine. After the tub fills with water, the user adds bleach or other machine-cleaning additives, and the water is agitated to "scrub" the interior of the otherwise-empty tub, reducing bacteria and mold.

· Addition of a "steam feature." This is an optional selection that helps sanitize the machine's interior and prevent accumulation of bacteria and mold. Like the "extra rinse" option, the user of the washing machine may choose to add the steam feature to a laundry cycle, or not; the steam feature does not normally operate unless added by the user.

---

[9] The Court uses the terms "crevices" and "cavities" interchangeably, although Whirlpool and Sears have suggested there is a difference depending on the size and shape of the indentation.



| | |
|---|---|
| **Access 2001 Design** | **Sierra 2007 Design** |

**Sears Kenmore Washing Machines—Plastic Tub and Metal Bracket**

**(The bracket fits into the back of the metal clothes basket, which is not shown; all surfaces inside the tub—including the entire bracket—get wet during a wash cycle.)**

In addition to these structural design changes, Sears also made several amendments over time to the washers' "Use and Care Guides" ("UCGs"). These amendments instructed the user to perform various actions in order to minimize mold formation, such as leaving the washer door ajar between uses, removing mildew stains on the rubber door seal by cleaning it with bleach, and using high-efficiency laundry detergent.

Because Whirlpool built the Kenmore washing machines using different engineering "platforms," it did not introduce the above-mentioned structural design changes to all of the Kenmore models at the same time. For example, Whirlpool has

manufactured Kenmore machines using: (1) the "ACCESS" platform, in Germany; (2) the "HORIZON" platform, in Mexico; (3) the "SIERRA" platform, in Mexico; and (4) the "MATADOR" platform, in Germany. In 2007, Whirlpool first incorporated plastic tubs with a *rib-free* interior in Kenmore machines built on the SIERRA platform; but Whirlpool continued to incorporate plastic tubs *with* interior ribs on all Kenmore machines built on other platforms. That is why plaintiffs seek to exclude SIERRA machines from the class. Further, Whirlpool added optional cycles to different Kenmore models at different times. For example, Whirlpool first added a maintenance cycle to certain MATADOR models in 2005, and installed either the maintenance cycle or clean washer cycle on all HORIZON models at about the same time; but Whirlpool never added either of these two cycles to any ACCESS model. Similarly, Whirlpool first added the steam feature to certain MATADOR models in 2007 but never added the steam feature to any HORIZON model. A chart of the 37 different Kenmore models whose manufacture began between 2000 and 2008, showing relevant design features, is appended to the end of this Order. The models are listed in order of when their production began (column 4). The models highlighted in yellow in the chart appended to this order[10] are the ones included in the class definition.

---

[10] The models included in the class definition are in rows 1-27 and 31-32.

# III. ANALYSIS

## A. Propriety of Class Certification

When the Court addressed plaintiffs' motion for certification of a "mold class" four years ago, it set out the applicable legal standard: "An action may be certified as a class action if the putative class satisfies all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b)." (Dkt. 285 at 7) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)). Sears did not dispute that plaintiffs met the numerosity and adequacy requirements, and the Court easily concluded plaintiffs also met the commonality and typicality requirements. (*See id.* at 7-8). The Court denied class certification, however, because it concluded plaintiffs could not meet "the requirement of Rule 23(b)(3): that questions of law or fact common to class members "'predominate over any questions affecting only individual members.'" (*Id.* at 8).

In reversing this decision however, the Seventh Circuit found that "[t]here is a single, central, common issue of liability: whether the Sears washing machine was defective." *Butler II*, 727 F.3d at 801; *see Butler I*, 702 F.3d at 361 ("The basic question in the litigation—were the machines defective in permitting mold to accumulate and generate noxious odors?—is common to the entire mold class, although the answer may vary with the differences in design."); *see also Butler II*, 727 F.3d at 802 (citing with approval the Sixth Circuit's *Whirlpool II* conclusion that "the requirement of predominance ha[s] been satisfied"). Indeed, the Seventh Circuit concluded

that "[a] class action is the efficient procedure for litigation of a case such as this, a case involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit." *Butler II*, 727 F.3d at 798; *see Butler I*, 702 F.3d at 362 ("Predominance is a question of efficiency."). Accordingly, the appellate court reversed the denial of certification of the mold class. *Butler II*, 727 F.3d at 802.

Further, in *Whirlpool*—which, for all practical purposes, is identical to this case regarding matters relevant to class certification—the Sixth Circuit ruled that "the district court did not abuse its discretion in ruling that the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequate representation are satisfied for certification of a liability class only." *Whirlpool II,* 722 F.3d at 858. The Sixth Circuit "also confirm[ed] the presence of predominance and superiority." *Id*. Thus, this issue has had a full airing before both the Sixth and Seventh Circuits, which have both opined that certification of a mold class is appropriate. Almost ten years after this lawsuit was filed, it is time to reach the merits.

Despite this overwhelming authority in plaintiffs' favor, Sears still opposes plaintiffs' motion and offers a number of reasons why class certification is improper. But the Sixth and Seventh Circuits have already "address[ed] and reject[ed] virtually all of [Sears'] current arguments." *Whirlpool Class Cert. Order II*, 302 F.R.D. at 469 (denying defendant's motion to decertify). For example, Sears asserts that plaintiffs Freeman and Lemley "are not typical because their claims arise from a different 'practice' or 'course of conduct'—i.e., *different Washer* designs—than do the

claims of many other buyers." (Dkt. 385 at 20) (emphasis added). When the Court

originally addressed the propriety of class certification, however, it disagreed:

> A plaintiff's claim is typical for purposes of Rule 23(a) analysis "if it
> arises from the same event or practice or course of conduct that gives
> rise to the claims of other class members and his or her claims are
> based on the same legal theory." * * * Typicality may be satisfied even
> if there are factual distinctions between the claims of the named plain-
> tiffs and those of other class members. * * * In the present case, even
> though plaintiffs may have suffered or noticed mold problems to differ-
> ent degrees, their claims are all based upon the same course of Sears
> conduct: the sale of a washer type that is alleged to be unduly prone to
> the problem. The court therefore concludes that the named plaintiffs'
> claims are typical of those of the class they seek to represent.

(Dkt. 285 at 7) (citations omitted). Moreover, the Seventh Circuit explicitly rejected

the argument that class certification must be denied because the various washer

models have different designs:

> Sears contends that Whirlpool (the manufacturer of the washing ma-
> chines) made a number of design modifications, and as a result differ-
> ent models are differently defective; Sears does not contend that any of
> the design changes eliminated the odor problem, only that they dimin-
> ished it. The basic question presented by the mold claim—are the ma-
> chines defective in permitting mold to accumulate and generate nox-
> ious odors?—is common to the entire mold class, although damages are
> likely to vary across class members (the owners of the washing ma-
> chines).

*Butler II*, 727 F.3d at 798. The Sixth Circuit agreed, noting that, even though the

Ohio class of Whirlpool washer owners included over 20 different models, common

evidence "will either prove or disprove as to *all* class members whether the alleged

design defects caused the collection of biofilm, promoting mold growth." *Whirlpool

II*, 722 F.3d at 859 (emphasis added). In sum, Sears' argument that the class should

not be certified because Freeman's and Lemley's claims are not typical is wholly unpersuasive.

Sears also persists in objecting to class certification with its assertion that "plaintiffs cannot prove a common, classwide injury" because not "<u>all</u> Washers build up such an excessive amount of [mold] that it . . . prevents adequate cleaning of clothes." (Dkt. 385 at 16) (emphasis in original). The Seventh Circuit has repeatedly observed that "a class will often include persons who have not been injured by the defendant's conduct * * * [and this] possibility or indeed inevitability does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *see also In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (rejecting the "mistaken belief that 'commonality of damages' is legally indispensable" for class certification, and citing *Butler II*); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) (citing *Butler II* and holding: "If the [district] court thought that no class can be certified until proof exists that every member has been harmed, it was wrong."). Similarly, the Sixth Circuit rejected this argument in Whirlpool "[b]ecause all [washer] owners were injured at the point of sale upon paying a premium price for the [washers] as designed, even those owners who have not experienced a mold problem are properly included within the certified class." *Whirlpool II*, 722 F.3d at 857.[11]

---

[11] In Illinois, "[i]n order to prove a breach of an implied warranty of merchantability, plaintiff must prove [1] that [the product] was defective and [2] that the defect(s) existed when the [product] left defendant's control." *Alvarez v. American Isuzu Motors*, 321 Ill. App. 3d 696, 702-03 (Ill. Ct. App. 2001). The measure of damages for breach of implied warranty

In fact, the Seventh Circuit explained that Sears' argument—that some plaintiffs did not suffer any harm from the alleged defect—actually adds weight to *plaintiffs'* position: "Sears argued that most members of the plaintiff class had not experienced any mold problem. But if so, we pointed out, that was an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate Sears—a course it should welcome, as all class members who did not opt out of the class action would be bound by the judgment." *Butler II*, 727 F.3d at 796; *see also Suchanek*, 764 F.3d at 757-58 (quoting this observation from *Butler* II and noting it remains true even "[i]f very few members of the class were harmed").

In sum, Sears' perseverance in opposing class certification is overwhelmed by the constancy of the appellate court conclusions pointedly holding otherwise. The only real question, which the *Whirlpool* MDL court also examined, is what the class definition should be. The Court turns to that question next.

## B. Class Definition

The named plaintiffs seek to represent a class of owners of only certain Kenmore washers with particular design features, (without a steam feature, other than those built on the "Sierra" platform), and the Court has been given no reason to expand or

---

"is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have if they had been as warranted." *Shoop v. DaimlerChrysler Corp.*, 371 Ill. App. 3d 1058, 1061 (Ill. Ct. App. 2007) (quoting UCC § 2-714(2)); *see also Butler I*, 702 F.3d at 362 ("class members who have not yet encountered odor can still obtain damages for breach of warranty, where state law allows such relief— relief for an expected rather than for only a realized harm from a product defect covered by an express or implied warranty").

contract this proposal. Accordingly, as did the *Whirlpool* MDL court (and for the same reasons, *see Whirlpool Class Cert. Order II*, 302 F.R.D. at 463-65), this Court will accept plaintiffs' proposed definitional limitation that the class definition not include machines built on the Sierra platform. Contrary to the decision by the *Whirlpool* MDL court, this Court will also exclude machines with the steam feature.[12]

This leaves the question of whether to adopt plaintiffs' proposal that the class be defined to include "machine[s] manufactured by Whirlpool ***through 2008***." (Dkt. 381 at 1-2 (emphasis added)). The *Whirlpool* MDL court set out a cogent analysis of why the use of a specific date was imprecise and unwieldy, as opposed to defining the class by reference to specific model numbers, which had different dates of manufacture. *See Whirlpool Class Cert. Order II*, 302 F.R.D. at 462 ("The problem with using any single date certain as a cut-off in this case, however, is that it will be either under- or over-inclusive, or both.").[13] This Court adopts the same approach—

---

[12] The Court has carefully reviewed the *Whirlpool* MDL court's reasoning behind its decision to include machines with the steam feature, *see Whirlpool Class Cert. Order II*, 302 F.R.D. at 465-67. The Court reaches a different conclusion because the procedural stance of this case is meaningfully different. In *Whirlpool*, plaintiffs originally asked for certification of *all* models of Duet washers; the MDL court granted that request and, in addition to the fact that the Sixth Circuit had affirmed the decision to certify the class as defined, extensive discovery was completed based on the decision to include machines with the steam feature. *Whirlpool Class Cert. Order II*, 302 F.R.D. at 459-60 ("Once a class is certified, the parties can be expected to rely on it and conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that in the normal course of events it will not be altered except for good cause.") Here, to the contrary, there has never been a class certified in this case. Further, Sears has not objected to plaintiffs' proposed scope of the class—only to whether the class should be certified at all.

[13] The *Whirlpool* MDL court explained: "Rather than choosing a single cut-off date approximating when *most* such Duet models no longer had tubs or brackets with crevices—or,

that is, rather than limiting the class to include only washers manufactured before a *single* end-date, the Court has defined the class to include all of those washer models with the alleged design defect and without the steam feature, regardless of when each model was manufactured.

Accordingly, the chart contained within the Court's class definition sets out precisely those Kenmore model numbers and manufacture dates that are appropriately included in the class. The earliest Kenmore that is included, model 110.4292*, was first manufactured on January 12, 2001; the latest Kenmore washer that is included, model 110.4756*, was manufactured through October 11, 2010; and the class includes a total of 29 different models manufactured during this span of almost ten years.

The Court adds the following observations regarding the question of subclasses. The Seventh Circuit stated that, "if it turn[s] out as the litigation unfold[s] that there [are] large differences in the mold problem among the differently designed washing machines, the district judge might decide to create subclasses." *Butler II*, 727 F.3d at 798.

---

as Plaintiffs put it, 'a cut-off [date] in close proximity to when the material shifts in design occurred'—the better approach is to identify precisely those model numbers and their manufacture dates that *did* have plastic tubs or metal brackets with crevices, and include only those Duets within the class. This new definition adds factual and legal clarity and fairness to the scope of the class, allowing both sides to better focus on the remaining issues." *Whirlpool Class Cert. Order II*, 302 F.R.D. at 462.

For several reasons, the Court concludes it will not require creation of subclasses for different washer models at this point.[14] First, plaintiffs have not requested subclassing. Moreover, plaintiffs have consistently asserted that the defect causing the mold problem is the same across all washer models. Plaintiffs assert this is true regardless of whether, for example, the model has a clean washer cycle or a sanitary cycle, and regardless of which of the two creviced plastic tub designs the model employs. Unless and until it appears to the Court that different washer models had meaningfully different mold problems, subclassing is not appropriate.

## IV. APPOINTMENT OF COUNSEL; NOTICE TO THE CLASS

The Court appoints the following law firms as class counsel: (1) Lieff Cabraser Heimann & Bernstein, LLP; (2) Carey Danis & Lowe; and (3) Chimicles & Tikellis, LLP.

---

[14] As the Seventh Circuit noted, the necessity of subclasses may only become clear "as the litigation unfold[s]." *Butler II*, 727 F.3d at 798. Accordingly, the Court may come to a different conclusion regarding future trials.

Within 30 days of the date of this Order, Class Counsel shall submit to the Court a proposed Plan of Notice, including methods of service and approximate time for completion of service. The proposed Plan shall provide the best notice practicable to all persons who are members of the class, as required by Fed. R. Civ. P. 23(c)(2)(B). If possible, the parties should stipulate to the proposed Plan of Notice. Class Counsel shall carry out the Plan of Notice only after approval by the Court.

E N T E R:

Dated: July 20, 2015

_____
MARY M. ROWLAND
United States Magistrate Judge

**Whirlpool-Manufactured, Kenmore-Brand Front-Loading Washer Models 2001 - 2010**

Legend:
- Included in Class (yellow)
- Sierra Machine (orange)
- Steam Feature (blue)
- Plaintiff Freeman's Washer (green)
- Plaintiff Lemley's Washer (red)

| | 1 Model No. Begins With | 2 Model by Color Breakdown | 3 Model Name | 4 Production Begins** | 5 Production Ends** | 6 Platform | 7 Part of Class? | 9 Crosspiece Has Cavities? | 10 Tub Has Cavities? | 11 Steam? | 12 Sanitary Cycle? | 13 Maintenance (M) or Clean Washer (C) Cycle? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 110.4292* | 42922 (White), 42924 (Bisque), 42926 (Graphite) | HE3t | 1/12/2001 | 6/11/2004 | Access | Yes | Yes | Yes | No | Yes | No |
| 2 | 110.4293* | 42932 (White), 42934 (Bisque), 42936 (Graphite) | HE3t | 2/7/2001 | 12/5/2003 | Access | Yes | Yes | Yes | No | Yes | No |
| 3 | 110.4282* | 42822 (White), 42824 (Bisque), 42826 (Graphite) | HE3 | 4/10/2001 | 7/7/2004 | Access | Yes | Yes | Yes | No | No | No |
| 4 | 110.4283* | 42832 (White), 42836 (Graphite) | HE3 | 6/28/2001 | 5/28/2003 | Access | Yes | Yes | Yes | No | No | No |
| 5 | 110.4483* | 44832 (White), 44836 (Graphite), 44834 (Bisque) | HE3 | 3/4/2002 | 6/11/2004 | Access | Yes | Yes | Yes | No | No | No |
| 6 | 110.4493* | 44932 (White), 44934 (Bisque), 44936 (Graphite) | HE3t | 10/4/2002 | 9/10/2004 | Access | Yes | Yes | Yes | No | Yes | No |
| 7 | 110.45091 | | HE4t | 5/5/2003 | 9/15/2006 | Matador 1 | Yes | Yes | Yes | No | Yes | Yes after July 2005 (M) |
| 8 | 110.4508* | 45081 (White), 45087 (Pacific Blue), 45088 (Champagne), 45089 (Sedona) | HE4t | 5/5/2003 | 10/30/2006 | Matador 1 | Yes | Yes | Yes | No | Yes | Yes after July 2005 (M) |
| 9 | 110.44826 | | HE3 | 7/28/2003 | 6/29/2004 | Access | Yes | Yes | Yes | No | No | No |
| 10 | 110.44921 | | HE3t | 8/18/2003 | 7/14/2004 | Access | Yes | Yes | Yes | No | Yes | No |
| 11 | 110.45862 | | HE3 | 1/5/2004 | 9/27/2006 | Matador 1 | Yes | Yes | Yes | No | No | Yes after July 2005 (M) |
| 12 | 110.4598* | 45981 (White-on-White), 45986 (Graphite) | HE4t | 1/6/2004 | 7/28/2006 | Matador 1 | Yes | Yes | Yes | No | Yes | Yes after July 2005 (M) |
| 13 | 110.43902 | | HE3t | 1/8/2004 | 5/17/2004 | Access | Yes | Yes | Yes | No | Yes | No |
| 14 | 110.4599* | 45991 (White-on-White), 45992 (White), 45994 (White), 45996 (Graphite) | HE4t | 1/19/2004 | 7/28/2006 | Matador 1 | Yes | Yes | Yes | No | Yes | Yes after July 2005 (M) |
| 15 | 110.4596* | 45962 (White), 45966 (Graphite) | HE3t | 6/8/2004 | 10/6/2006 | Matador 1 | Yes | Yes | Yes | No | Yes | Yes after July 2005 (M) |
| 16 | 110.4597* | 45972 (White), 45976 (Graphite) | HE3t | 6/21/2004 | 10/6/2006 | Matador 1 | Yes | Yes | Yes | No | Yes | Yes after July 2005 (M) |
| 17 | 110.45872 | | HE3 | 7/5/2004 | 5/19/2006 | Matador 1 | Yes | Yes | Yes | No | No | Yes after July 2005 (M) |

**Whirlpool-Manufactured, Kenmore-Brand Front-Loading Washer Models 2001 - 2010**

Legend:
- Included in Class (yellow)
- Sierra Machine (orange)
- Steam Feature (blue)
- Plaintiff Freeman's Washer (green)
- Plaintiff Lemley's Washer (red)

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Model No. Begins With | Model by Color Breakdown | Model Name | Production Begins** | Production Ends** | Platform | Part of Class? | Crosspiece Has Cavities? | Tub Has Cavities? | Steam? | Sanitary Cycle? | Maintenance (M) or Clean Washer (C) Cycle? |
| 18 | 110.46472 | | HE2 | 6/13/2005 | 6/9/2006 | Horizon | Yes | No | Yes | No | No | Yes (M) |
| 19 | 110.46462 | | HE2 | 8/1/2005 | 6/2/2006 | Horizon | Yes | No | Yes | No | No | Yes (M) |
| 20 | 110.4756* | 47561 (White-on-White), 47566 (Black), 47567 (Pacific Blue) | HE2t | 8/15/2005 | 10/11/2010 | Horizon | Yes | No | Yes | No | Yes | Yes (C) |
| 21 | 110.4751* | 47511 (White), 47512 (White-on-White) | HE2 Plus | 1/5/2006 | 11/5/2009 | Horizon | Yes | No | Yes | No | No | Yes (C) |
| 22 | 110.49972 | | HE3t | 1/26/2006 | 10/17/2008 | Matador 2 | Yes | Yes | Yes | No | Yes | Yes (C) |
| 23 | 110.49962 | | HE3t | 4/3/2006 | 11/4/2009 | Matador 2 | Yes | Yes | Yes | No | Yes | Yes (C) |
| 24 | 110.4708* | 47081 (White), 47086 (Black), 47087 (Pacific Blue), 47088 (Champagne), 47089 (Barolo) | HE5t | 4/4/2006 | 10/7/2009 | Matador 2 | Yes | Yes | Yes | No | Yes | Yes (C) |
| 25 | 110.4753* | 47531 (White), 47532 (White-on-White) | HE2 Plus | 4/24/2006 | 4/14/2009 | Horizon | Yes | No | Yes | No | No | Yes (C) |
| 26 | 110.4757* | 47571 (White-on-White), 47577 (Pacific Blue) | HE2t | 8/7/2006 | 8/21/2009 | Horizon | Yes | No | Yes | No | Yes | Yes (C) |
| 27 | 110.47091 | | HE5t | 10/4/2006 | 3/27/2009 | Matador 2 | Yes | Yes | Yes | No | Yes | Yes (C) |
| 28 | 110.46742 | | HE3t Steam | 1/8/2007 | 11/10/2009 | Matador 2B | No | Yes | Yes | Yes | Yes | Yes (C) |
| 29 | 110.4778* | 47781 (White), 47789 (Barolo) | HE5t Steam | 1/26/2007 | 4/10/2009 | Matador 2B | No | Yes | Yes | Yes | Yes | Yes (C) |
| 30 | 110.47791 | | HE5t Steam | 2/6/2007 | 6/27/2008 | Matador 2B | No | Yes | Yes | Yes | Yes | Yes (C) |
| 31 | 110.47852 | | HE3 | 3/5/2007 | 6/14/2007 | Matador 2 | Yes | Yes | Yes | No | No | Yes (C) |
| 32 | 110.47542 | | HE2 Plus | 6/6/2007 | 11/4/2008 | Horizon | Yes | No | Yes | No | No | Yes (C) |
| 33 | 110.46752 | | HE3t Steam | 7/20/2007 | 7/3/2009 | Matador 2B | No | Yes | Yes | Yes | Yes | Yes (C) |
| 34 | 110.4775* | 47751 (Chai), 47787 (Twilight), 47788 (Truffle) | HE5t Steam | 1/18/2008 | 9/25/2009 | Sierra/Matador 3 | No | No | No | Yes | Yes | Yes (C) |
| 35 | 110.4776* | 47761 (Chai), 47797 (Twilight), 47798 (Truffle) | HE5t Steam | 7/11/2008 | 9/18/2009 | Sierra/Matador 3 | No | No | No | Yes | Yes | Yes (C) |
| 36 | 110.47701 | | HE5t Steam | 8/25/2008 | 9/25/2009 | Sierra | No | No | No | Yes | Steam | Yes (C) |
| 37 | 110.47711 | | HE5t Steam | 10/6/2008 | 12/5/2008 | Sierra | No | No | No | Yes | Steam | Yes (C) |

** The starting and ending production dates for each model vary by color. The chart provides the earliest start and latest end dates for each model, regardless of color.