**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re SEARS, ROEBUCK AND CO. FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION | Case No. 06-CV-7023 Consolidated with Case Nos. 07-CV-0412 and 08-CV-1832 |
| | **The Hon. Mary M. Rowland** |
| *This Filing Pertains to CCU Claims* | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF THE FACTS ..........................................................................3

       A.         Procedural Background ...........................................................................3

               1.       The *Kenmore* Action ..................................................................3

               2.       The *Poulsen Whirlpool CCU* Action .........................................4

       B.     The Parties' Negotiations.........................................................................5

       C.     The Proposed Settlement ..........................................................................7

               1.       The Settlement Classes ...............................................................7

                2.       Qualifying Repairs for Performance Problems............................8

                3.       Prequalified Settlement Members ................................................9

                4.       Monetary Compensation............................................................10

                5.       Class Release ..............................................................................11

                6.       Class Representative Service Award ..........................................11

                7.       Attorneys' Fees and Costs .........................................................12

                8.       Administration and Notice..........................................................12

III.   ARGUMENT ...................................................................................................13

       A.     The Settlement Approval Process........................................................13

       B.     The Settlement is Within the "Range of Reasonableness"
             for Preliminary Approval .......................................................................16

                1.       The Settlement Provides Substantial Relief for Class Members,
                        Particularly in Light of the Uncertainty of Prevailing on the Merits.........16

                    a.     The Monetary Amount offered in Settlement...............17

                    b.     The Strength of Plaintiffs' Case....................................17

2.  Continued Litigation is Likely to be
    Complex, Lengthy, and Expensive ............................................................19

3.  There is Currently No Opposition to the Settlement ................................20

4.  Class Counsel Strongly Endorse the Settlement.....................................20

5.  The Stage of the Proceedings and the Amount of Discovery
    Completed Supports Preliminary Approval...............................................21

C.  Provisional Certification of the Settlement Class is Appropriate .........................21

1.  The Rule 23(a) Requirements are Satisfied .............................................21

2.  The Rule 23(b)(3) Requirements are Satisfied .........................................22

D.  The Proposed Notice Program Is Constitutionally Sound ....................................23

IV.  CONCLUSION.............................................................................................................25

**TABLE OF AUTHORITIES**

## CASES

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
 No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219 ...................................................................15

*Amchem Prods. v. Windsor*,
 521 U.S. 591 ......................................................................................................................23

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
 616 F.2d 305 (7th Cir. 1980), overruled on other grounds by *Felzen v.
 Andreas*, 134 F.3d 873 ...............................................................................................14, 20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 ...................................................................................................................17

*Butler v. Sears, Roebuck & Co.*,
 727 F.3d 796 (7th Cir. Ill. 2013), *cert denied* ..................................................................3

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
 No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) ..........................22

*Isby v. Bayh*,
 75 F.3d 1191 ................................................................................................................14, 15

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
 Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450 ............................................16

*McCabe v. Crawford & Co.*,
 210 F.R.D. 631 ...................................................................................................................21

*McKinnie v. JP Morgan Chase Bank, N.A.*,
 678 F. Supp. 2d 806 ..........................................................................................................20

*In re Mexico Money Transfer Litig.*,
 164 F. Supp. 2d 1002 ........................................................................................................20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306 ......................................................................................................................23

*Parker v. Risk Mgmt. Alternatives, Inc.*,
 206 F.R.D. 211 ...................................................................................................................22

*Poulsen v. Whirlpool Corp.*,
 Case No. 1:09-wp-65003-CAB (N.D. Ohio), pending ................................................. *passim*

*Redman v. Radioshack Corp.*,
 No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880 ..................................................................16

*Sadowski v. Med1 Online, LLC*,
   No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766 ................................................................22, 23

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 ...................................................................................................................20

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 ..............................................................................................................................17


## **STATUTES**

Magnuson Moss Warranty Act ....................................................................................................1, 3, 4

Song-Beverly Consumer Warranty Act .........................................................................................1, 4


## **OTHER AUTHORITIES**

Federal Rule of Civil Procedure Rule 23 ..............................................................13, 15, 21, 23

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) ........................................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

Plaintiffs respectfully move the Court to approve the Joint Motion for preliminary approval of a class action settlement ("Settlement")[1] reached between Plaintiffs and Defendants Whirlpool Corp. and Sears, Roebuck and Co. that resolves all Central Control Unit ("CCU") claims ("CCU Claims) with respect to certain Kenmore Washers and certain Whirlpool Washers The proposed Settlement would resolve all CCU claims[2] in the above-entitled action and the related claims in *Poulsen v. Whirlpool Corp.*, Case No. 1:09-wp-65003-CAB (N.D. Ohio) (Whirlpool CCU Action"), pending in the United States District Court, Northern District of Ohio, Eastern Division as part of MDL No. 6500. Plaintiffs have alleged in the CCU Lawsuits claims against Whirlpool and Sears for breach of express warranty, breach of implied warranty, violation of the Magnuson Moss Warranty Act, and violation of the Song-Beverly Consumer Warranty Act based on an alleged design defect in the Whirlpool and Kenmore Washers' main electronic control board or central control unit ("CCU").

After extensive proceedings and discovery, including written discovery, the production of hundreds of thousands of pages of documents by Defendants, numerous depositions being taken in various parts of the country and in Milan, Italy, preparation of comprehensive expert reports, conducting multiple Court hearings in Illinois and Court conferences in Ohio, briefing and receiving rulings on motions to dismiss and for class certification, appeal of the class

---

[1] A copy of the Settlement Agreement ("SA") is attached as Exhibit 1 to the Declaration of Steven A. Schwartz and James J. Rosemergy ("Joint Decl.") filed concurrently herewith. All Capitalized terms have the same meaning as the Definitions set forth in Section I of the Settlement Agreement.

[2] The Settlement does not settle, release, or otherwise impact the Biofilm claims pending before this Court or at MDL No. 6500. SA, ¶ I.BB (Released Claims).

certification ruling to the Seventh Circuit and United States Supreme Court,[3] the parties have reached a settlement that they believe is fair, adequate and reasonable and in the best interests of Settlement Class Members.

As discussed more fully below, the Settlement provides substantial benefits including:

- A broad definition of CCU related Performance Problems covered by the Settlement;

- A full recovery for Paid Qualifying Repairs for Performance Problems that occurred within 3 years of the purchase[4] of the affected Washers;

- Additional compensation for costs associated with multiple repairs and/or replacement due to Performance Problems in the affected Washers;

- A streamlined claims process for Prequalified Class Members (*i.e.* Settlement Class Members who can be identified in Whirlpool's or Sears's databases as having paid for a Qualifying Repair or as having paid for a Qualifying Service Contract).

- No limitation on the total amount be paid by Defendants to eligible Class Members;

- The payment by Defendants of all notice and administration costs and payments to Class Counsel for attorneys' fees and reimbursement of litigation expenses above and beyond any payments to be made to eligible Class Members;

With this motion, Plaintiffs seek preliminary approval of the Settlement and provisional certification of a nationwide class with respect to the Kenmore Washers and the California-only class with respect to the Whirlpool Washers for purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard. The proposed

---

[3] *See* Joint Decl., ¶ 3.
[4] The original manufacturer's warranty for the Washers was limited to one year for labor and 2 years for parts. Joint Decl., ¶12.

Settlement satisfies all criteria for preliminary settlement approval under Seventh Circuit law, and should therefore be approved, with notice to issue as set forth herein.

## II.     STATEMENT OF THE FACTS

### A.     Procedural Background

#### 1.     The *Kenmore* Action

The *Kenmore* action was filed in this Court and initially asserted both CCU and biofilm claims with respect to Whirlpool-manufactured front load washers sold by Sears under its Kenmore brand. The plaintiffs alleged claims for breach of express warranty, breach of implied warranty, and violation of the Magnuson Moss Warranty Act based on an alleged design defect in the Washers' CCU that resulted in Performance Problems (*e.g.*, problems related to the Washer's display of F11, Fdl, or Fdu error codes or problems related to the CCU, the door lock assembly, the wire harness between the CCU and the Motor Control Unit ("MCU"), the wire harness between the CCU and door lock, or the MCU. *See* SA, ¶ I.X.

Discovery in the *Kenmore* action was coordinated with discovery in the *Poulsen* action (which only related to CCU claims) and discovery with respect to the biofilm claims pending before this court in the Whirlpool MDL. There was also a significant, but not complete, overlap of Plaintiffs' counsel in the two actions.

This Court ultimately certified the CCU Claims for class treatment with respect to several single-state classes, and after extensive appellate proceedings before the Seventh Circuit and the United States Supreme Court, that certification decision was upheld. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. Ill. 2013), *cert denied* Sears v. Butler, 134 S. Ct. 1277 (U.S., Feb. 24, 2014).  After completion of the appellate proceedings, the litigation efforts related to the CCU claims intensified. Plaintiffs' Co-Lead Counsel, with the assistance of a world-renowned electronic component reliability engineer, Professor Michael G. Pecht of the Center for

Advanced Life Cycle Engineering at the University of Maryland,[5] performed a complete review and analysis of hundreds of thousands of pages of documents produced by defendants and other documents identified by counsel and by Dr. Pecht, reviewed all prior depositions taken in the case, conducted a forensic evaluation of the washers and the CCU's, deposed Whirlpool's CCU designee in Milan Italy, served an initial expert report by Dr. Pecht, analyzed the responsive report served by Whirlpool's/Sears' expert, prepared a near-final reply report by Dr. Pecht, prepared for expert depositions were scheduled to take place the week after a tentative settlement was reached, fully organized all relevant documents into a "trial package" for use at trial, prepared for and defended the deposition of the Illinois class representative plaintiff Martin Champion, reached agreement with Whirlpool and Sears on a definition of the Class that tracked the analysis of their expert Dr. Pecht (*see* Dkt. No. 472), and made substantial progress in the preparation for trial of CCU claims on behalf of the certified Illinois Kenmore class that was scheduled to begin on July 8, 2015. *See generally* Joint Decl., ¶ 5. Simply stated, this Settlement is the result of an enormous amount of effort, and comes at a time with the parties had fully fleshed out their respective positions and were aware of the relative strength and weaknesses of their claims.

### 2. The *Poulsen Whirlpool CCU* Action

The *Poulsen* action was originally filed in the United States District Court for the Central District of California and transferred at Whirlpool's request into MDL No. 2001. As in the *Kenmore* action, the *Poulsen Whirlpool CCU* action alleged claims on behalf of a California class against Whirlpool for breach of express warranty, breach of implied warranty, violation of the Magnuson Moss Warranty Act, and violation of the Song-Beverly Consumer Warranty Act

---

[5] A copy of Dr. Pecht's resume is attached as Exhibit 2 to the Joint Decl.

based on an alleged design defect in the Whirlpool Washers' CCU. On September 15, 2010, counsel in the *Poulsen Whirlpool CCU* action filed a motion for class certification along with an extensive set of supporting exhibits. *See* 1:09-wp-65003-CAB (N.D. Ohio) at Dkt. Nos. 14 and 15. That set of motion papers was and the evidence presented was critical in the drafting of the CCU-related portions of the class certification motion filed in the *Kenmore* action on November 22, 2010. Joint Decl., ¶ 7.

As discussed above, CCU-related discovery in *Poulsen* was coordinated with the CCU-related discovery in the *Kenmore* action in the broader discovery led to the Whirlpool MDL Biofilm case, and lead counsel in *Poulsen* was ultimately appointed by Judge Coleman as Co-Lead Plaintiffs' Counsel in the *Kenmore* action. There was also extensive motion practice related to the initial complaint filed in *Poulsen* that included the submission of extensive evidentiary material, which resulted, after a Court conference before Judge Boyko, in the filing of a first amended complaint *Poulsen* on February 25, 2013 (Dkt. No. 31) and a complete re-briefing of Whirlpool's motion to dismiss. The Court in *Poulsen* ultimately did not issue rulings on the motions to dismiss, and consideration of the CCU class certification motion was stayed (along with numerous single-state certification motions related to Biofilm claims) in favor proceeding through a bellwether trial of the Ohio Biofilm Class.

**B.    The Parties' Negotiations**

In the summer of 2014, the parties engaged in some exploratory discussions to settle both the *Kenmore* and *Whirlpoo*l CCU actions. Plaintiffs' counsel prepared and sent Defendants' counsel a proposed Term Sheet for use as a basis to begin substantive settlement negotiations. Joint Decl., ¶ 8.  At that point in time, after reviewing the proposed Term Sheet, Whirlpool expressed no interest in settlement negotiations. *Id*., ¶ 8. Accordingly, Plaintiffs' litigation efforts continued and intensified, as did the work of their expert Dr. Pecht. *Id*.

After deposing Whirlpool's CCU designee in Milan, Italy and serving Dr. Pecht's initial expert report, the parties again explored the possibility of settlement, and on March 9, 2015. Plaintiffs' Co-Lead Counsel prepared and sent Defendants' counsel a revised Term Sheet. Among other things, that revised term sheet reflected the more-refined class definition recommended by Dr. Pecht. *Id.*, ¶ 9. After some additional discussions between counsel, on March 30, 2015, Defendants' counsel advised Plaintiff's counsel that Defendants would be willing to have a face-to-face settlement meeting on April 30, 2015 in Chicago, to make a good faith attempt at settlement before trial. *Id.*, ¶ 9. Between March 9 and April 30, litigation and preparation for the July 2015 trial continued apace, including, *inter alia*, service of Defendants' expert report, the near final completion of Dr. Pecht's reply report, the deposition of Illinois plaintiff Martin Champion, discussions about the deposition of an additional designee of defendants, and the service by Plaintiffs of an additional set of interrogatories and document requests. *Id.*, ¶ 9.

The April 30, 2015 settlement meeting was attended by the undersigned plaintiffs' Co-Lead Counsel, Steve Schwartz and James Rosemergy, and attended by defendants' counsel Michael Williams and Kyle P. De Jong, the Senior Counsel at Whirlpool with primary responsibility for the CCU litigation. After a full day of extensive negotiations, which included Whirlpool presenting a revised Term Sheet reflecting its counterproposal to Plaintiffs March 9 Term Sheet, an exchange of numerous additional iterations of, and compromise by both sides, the parties were successful in reaching agreement on a Term Sheet that they executed at the end of the day. *Id.*, ¶ 10.

The next day the parties advised the Court that they reached agreement on the Term Sheet. *See* Dkt. No. 483. As provided for in the Term Sheet, the parties recommended and

obtained the necessary client approvals to proceed with the preparation of final settlement

documents for presentation to the Court. *Id.*, ¶ 11. After additional extensive negotiations,

including telephone conferences between counsel, consultation with and input from the

Settlement Administrator Kurtzman Carson Consultants LLC ("KCC"), and the exchange of

multiple drafts and redlines of the formal Settlement documents, the Parties ultimately reached

Agreement on the complete set of settlement papers. *Id.*, ¶ 11. In addition, all of the CCU class

Representative Plaintiffs have reviewed, signed and endorsed the Settlement. *Id.*, ¶ 11.

## C.   **The Proposed Settlement**

The Settlement's details are contained in the Agreement signed by the parties, a copy of

which is attached as Exhibit 1 to the Joint Declaration.  For purposes of preliminary approval, the

following summarizes the Agreement's terms:

### 1.   **The Settlement Classes**

The Settlement Classes are defined as follows:

**Kenmore Settlement Class**:  All Persons who, while living in the United States,
either (a) bought from Sears a new Kenmore Washer[6] or (b) received as a gift,
from a donor meeting those requirements, a new Kenmore Washer, not used by
the donor or by anyone else after the donor purchased the Washer and before the
donor gave the Washer to the Person.

**Whirlpool Settlement Class**:  All Persons who, while in the State of California,
either (a) bought a new Whirlpool Washer[7] or (b) received as a gift, from a donor

---

[6]         "Kenmore Washer" means a Kenmore-brand front-loading washing machine
manufactured by Whirlpool between June 8, 2004, and February 28, 2006, with a Bitron-
manufactured Matador 1 CCU and the new-washer warranty package provided by Sears with all
new Kenmore-brand Matador 1 front-loading clothes washers. The Kenmore Washers are
identifiable to Class Members by specific combinations of model and serial numbers, with the
model numbers beginning with the numbers 110.45* and serial numbers beginning with digits in
the range CSR24 through CSR53 (for Kenmore Washers manufactured in 2004), CSS01 through
CSS53 (for Kenmore Washers manufactured in 2005), and CST01 through CST08 (for Kenmore
Washers manufactured in 2006).

[7]         Whirlpool Washer" means a Whirlpool-brand front-loading washing machine

meeting those requirements, a new Whirlpool Washer, not used by the donor or by anyone else after the donor purchased the Washer and before the donor gave the Washer to the Person.

SA §§ I.Q & R and PP & OO.  These definitions track the revised class definition recommended by Dr. Pecht and previously approved by the Court. According to Whirlpool's and Sears' records, there are approximately 450,000 Kenmore Washers and 86,500 Whirlpool Washers in the classes. *See* SA Ex. 4 (Joint [Proposed] Order Granting Preliminary Approval To Class Action Settlement, at ¶1).

### 2.    Qualifying Repairs for Performance Problems

The Settlement provides monetary compensation for class members who suffered out-of-pocket losses as a result Qualifying Repairs for Performance Problems. Those terms are defined broadly at SA §§ I.X & I.Z:

- **Performance Problems** means that, within three years after the Purchase Date, the Washer manifested a problem with the Washer's CCU, including as shown by one or more of the following: (a) failure of the Washer to complete a cycle or interruption of the cycle; (b) failure of the door to lock at the start of the wash cycle or display of an Fdl error code on the control console, or both; (c) failure of the door to unlock at the end of the wash cycle or display of an Fdu error code on the control console, or both; (d) display of an F11 error code; and (e) service calls to repair or replace the CCU, the door lock assembly, the wire harness between the CCU and the MCU, the wire harness between the CCU and the door lock, or the MCU.

- **Qualifying Repair** means that within three years after the Purchase Date: (1) a Service Technician repaired or replaced the Washer's CCU, the door lock assembly, the wire harness between the CCU and the MCU, the wire harness between the CCU and door lock or the MCU or (2) a Settlement Class Member otherwise incurred documented out of pocket costs to repair the Washer due to the Washer's Performance Problem (e.g., paid

---

manufactured by Whirlpool between May 25, 2004, and February 28, 2006, with a Bitron-manufactured Matador 1 CCU and with the new-washer warranty package provided by Whirlpool with all new Whirlpool-brand Matador 1 washing machines. The Whirlpool Washers are identifiable to Class Members by specific combinations of model and serial numbers, with the model numbers beginning with the letters GHW* and serial numbers beginning with digits in the range CSR22 through CSR53 (for Whirlpool Washers manufactured in 2004), CSS01 through CSS53 (for Whirlpool Washers manufactured in 2005), and CST01 through CST08 (for Whirlpool Washers manufactured in 2006).

for replacement parts that the Class Member installed himself or herself), or (3) a Settlement Class Member replaced the Washer or otherwise took it out of service after contacting Whirlpool, Sears, an authorized Whirlpool or Sears retailer, or a Service Technician about a Performance Problem (e.g. problems related to the Washer's display of F11, Fdl, or Fdu error codes or problems related to the CCU, the door lock assembly, the wire harness between the CCU and the MCU, the wire harness between the CCU and door

These definitions track the evidence reflected in the documents produced by Whirlpool and Sears in the analysis of Plaintiffs' expert Dr. Pecht. *See* Joint Decl., ¶ 5.

### 3. Prequalified Settlement Members

A key component of the Settlement is that it provides for "Prequalified Class Members," who are Class Members who can be identified in Whirlpool's or Sears's databases as having paid for a Qualifying Repair or as having paid for a Qualifying Service Contract.[8] Defendants are required to provide the Settlement Administrator with all information and assistance necessary to identify Prequalified Class Members and compile information to process their claims. As a result, "Prequalified Class Members will not be required to submit documentation to support their claims" and their Notices "will include a pre-printed unique claim identification number" so "Prequalified Class Members will be required only to enter or confirm their current name and address, check the eligibility boxes on the online Claim Form, and electronically sign the Claim Form certifying that the statements are true and correct." *See. e.g.*, SA §§ I.Y, IV.A.4, IV.C.1, IV.C.4. This should dramatically increase claim rates and effectuate the purpose of the Settlement.

---

[8]    In addition to providing compensation for repair costs, the Settlement provides compensation to Class Members for the cost of warranty service contracts that were purchased and used to effect repairs. *See* SA §§ I.AA, IV.C.4.

### 4.    Monetary Compensation

As reflected in Section IV.C.1-5 of the Settlement Agreement, the Settlement does not provide Class Members with coupons or other illusory benefits.  Rather, it provides them with cash ranging from a minimum of $150 for repairs (with no cap for eligible repairs), to a maximum of $300 if they chose to replace their washer due to a CCU Performance Problem.

**Reimbursement for Paid Qualifying Repairs**:  Eligible Settlement Class Members will receive the **full amount** – with no cap – of any documented costs for their First Paid Repair for any Performance Problems within 3 years of purchase. Moreover, to the extent Settlement Class Members can provide sufficient documentary proof for their First Paid Repair but the proof does not show the amount paid for that repair, such Settlement Class Members will nonetheless receive $150.[9]  SA § IV.C.1. Class members can also get additional compensation (on the same terms) for a Second Paid Repair (as long as the repair occurs less than 54 months after purchase). SA § IV.C.2.a.

**Reimbursement for Replacement:**   If the Settlement Class Member chose to replace, rather than repair, the Washer or otherwise took it out of service after contacting Whirlpool, Sears, or an Authorized Service Technician about a Performance Problem, the Settlement Class

---

[9]     As discussed above, Prequalified Class Members do not need to submit any documentary proof and are eligible for the $150 minimum payment if the information in defendants' databases on reflects the fact of the first repair but not the cost of that repair. Prequalified Class Members do have the right to provide additional proof in order to obtain an amount higher than that shown in defendants' databases. SA §§ IV.A.4. Non-Prequalified Settlement Class Member will have to submit a claim with documentation of their repairs, replacement, or purchase of a Qualifying Service Contract. SA §§ IV.A.2-3.  Once they submit a claim, however, the Settlement Administrator is required to search defendants' databases for any missing documentation to cure any deficiencies. SA §§ IV.A.5. Further, the required documentary proof is reasonable and includes cancelled checks, invoices, receipts, entries in Whirlpool's or Sears' databases, service-company records, a declaration form the Class Member, etc. *See, e.g.*, SA §§ IV.A.2-3, IV.C.5.

Member will be reimbursed for the amount that sufficient documentary proof shows the Settlement Class Member actually paid for the replacement clothes washer up to a **maximum of $300.** SA § IV.C.2

**Compensation for Qualifying Service Contracts**: Class Members who effected repairs of performance promise by purchasing a warranty service contract will be reimbursed **$100** to partially offset the cost of the service contract. The slightly-reduced amount reflects that the service contract provided value in addition to the cost of repairing the CCU Performance Problem. SA § IV.C.4.

**Compensation for Excessive Repairs:** Settlement Class Members had the CCU replaced by a Service Technician on three occasions within four years of purchase will receive the **greater of** (i) the purchase price of the Washer or (ii) the aggregate cost for the three repairs. SA § IV.C.5.

**Offsets**: The above compensation is subject to an offset if Whirlpool or Sears previously provided compensation for CCU Performance Problems (*e.g.,* a policy-adjust cash payment, a partial refund, a discount off the regular price of a new clothes washer, a coupon applicable to the purchase of a new clothes washer that was redeemed, etc.). SA § IV.D.

### 5.    Class Release

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the CCU Performance Problems at issue in this case (*i.e.*, claims related to the electronic and electrical components and systems of the Washers related to Performance Problems); they will **not**, however, release any Biofilm claims. SA §§ I.BB & XI.

### 6. Class Representative Service Award

As part of the Settlement, Defendants have agreed to pay, subject to court approval, a service award for each Class Representatives (up to a maximum of $4,000) in recognition of the time and effort they have personally invested in this Action. Each of these plaintiffs have responded to written discovery and been deposed by Defendants' counsel. Even though each of these plaintiffs supports approval of the Settlement, payment of the Service Award is not contingent on such support. The payment of the service awards will not reduce the amount available under the settlement to the other class members. SA §VII.B.

### 7. Attorneys' Fees and Costs

As part of the Settlement, Defendants have agreed to pay Class Counsel reasonable attorneys' fees and costs, without reducing the amount of money available to pay Valid Claims submitted by Settlement Class Members. To date, the Parties have not reached any agreement as to the proper amount of the fees and costs. To the extent the Parties subsequently reach agreement (subject to Court review and approval) on the appropriate amount, the Parties will advise the Court and provide additional notice to the class as appropriate. To the extent the parties do not agree as to the appropriate amount, they have agreed that the amount will be decided by the Court via an adversarial proceeding. The proposed Preliminary Approval Order and Settlement Agreement provide for a briefing schedule regarding fees and expenses. That briefing schedule requires Class Counsel to file their motion for attorneys' fees and costs, and for Defendants to file their opposition, before the deadline for Class Members to submit requests to opt out or to submit objections. *See generally* SA § X and proposed Preliminary Approval Order.

### 8. Administration and Notice

All costs of notice and claims administration will be paid by Defendants and will not reduce the amounts available to class members. SA § VI. The parties have agreed that, subject to

court approval, Kurtzman Carson Consultants LLC ("KCC") will serve as the Settlement

Administrator. SA § I.HH.  KCC's work will be subject to review by Class Counsel. SA § V.A.

KCC's work includes: (1) identifying Prequalified Class Members; (2) assisting in the

preparation and issuing the Class Notice; (3) setting up the online claims process[10] and claim

forms; (2) setting up and maintaining the settlement website[11] and toll-free number; (3)

responding to Class member inquiries regarding the claims administration process; (4) approving

or rejecting claims; and (5) and issuing settlement payments.  SA §§ IV.A.4; V.  Defendants

have agreed to cooperate with the Claims Administrator to ensure that it has all of the

information it needs to perform these tasks.  *Id.*

Notice will be sent via email (to the extent email addresses are available) and by

postcard. SA §V.B. The Settlement Administrator will take the necessary steps to comply with

due process, including obtaining relevant addresses from defendants' databases, testing email

addresses via a "list cleansing" process to minimize the risk of ISP providers embargoing email

notices, and updating postal addresses utilizing the National Change of Address database. SA §

V.B. Notice for the Whirlpool California Class will also be provided via an additional

appropriate publication notice. SA §§ III.A.6.a, g & Ex. 5.

---

[10]     While class members will have the right to submit their claims on paper claim forms,
KCC will set up an interactive website that will allow claims to be fully submitted online
(including the uploading of any necessary supporting documentation) and will allow Prequalified
Class Members to input a unique claim number that they will receive as part of the notice
program in order to make the claims process as user-friendly as possible. SA § V.C.  It is
anticipated that most class members will submit their claims in this fashion, which should result
in a streamlined claims administration process.

[11]     In addition to the full class notice, FAQs and the interactive online claim forms, the
Settlement Website will include relevant pleadings such as the operative Amended Complaint,
papers in support of preliminary and final approval of the Settlement, and Class Counsel's
Petition for attorneys' fees and reimbursement of expenses and Service Awards, plus relevant
orders of the Court, so Class Members can easily access those documents. SA §§ III.A.6.b.

III.   **ARGUMENT**

A.   **The Settlement Approval Process**

When a proposed class-wide settlement has been reached, it must be submitted to the court for approval.  Fed. R. Civ. P. 23(e)(1)(A).  As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class action context in particular, 'there is an overriding public interest in favor of settlement.'  Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998; *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996 ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).  The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable.  Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26, 2011 (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.*

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

(1) the strength of plaintiffs' case compared to the terms of the proposed settlement;

(2) the likely complexity, length, and expense of continued litigation;

(3) the amount of opposition to settlement among affected parties;

(4) the opinion of competent counsel; and

(5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. While not required, courts often consider these factors to determine whether the settlement falls within the range of possible approval at the preliminary approval

stage. *See, e.g., Am. Int'l Group*, 2011 U.S. Dist. LEXIS 84219, at *33 ("[A]lthough neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed "a more summary version" of the final fairness inquiry at the preliminary approval stage); *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007 ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Redman v. Radioshack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. Feb. 7, 2014 (citing *Isby*, 75 F.3d at 1199). In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

Granting preliminary approval of this Settlement will allow all Class Members to receive notice of the proposed Settlement's terms and the date and time of the final Settlement approval hearing, at which Class Members may voice approval of or opposition to the Settlement, and at which the parties and Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, at §§ 13.14, § 21.632

### B.   The Settlement is Within the "Range of Reasonableness" for Preliminary Approval

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

1.    **The Settlement Provides Substantial Relief for Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits**

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006 (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010 (citations omitted).

a.    **The Monetary Amount offered in Settlement**

The Settlement requires Defendants to provide what amounts to full, make-whole relief for repairs (and significant compensation for washer replacements) related to CCU Performance Problems that first manifested within 3 years of purchase. This represents a substantial recovery for the Class, particularly since the original manufacturer's warranty was limited to one year for labor and 2 years for parts, and a significant percentage of CCU Performance Problems manifested within the first 3 years of service. Joint Decl., ¶ 12. The Settlement compares favorably to other consumer appliance class action settlements, both in terms of monetary compensation and the state-of-the-art claims and prequalification process. The Settlement provides class members with real monetary relief that is directly correlated with damages suffered due to the defect at issue, and is a great result for the Class.

b.    **The Strength of Plaintiffs' Case**

Plaintiffs continue to believe that their claims against Defendants have merit and that they could make a compelling case if their claims were tried. Nevertheless, Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue.

First, while Plaintiffs believe that Defendants' internal documents and Dr. Pecht's analysis provide a strong basis for liability verdict, Whirlpool would no doubt maintain at trial that its internal documents discussing CCU problems simply represent the responsible company going the extra mile to identify each and every possible problem and find fixes for those problems as part of its ongoing quality control efforts. Whirlpool would have also been able to present a trial testimony from its own world-renowned engineers and its distinguished expert Shukri J. Souri, Ph.D,[12] disputing Plaintiffs' assertion that the CCUs were defective.

Second, Whirlpool and Sears would have argued that their internal SIR consumer complaint databases do not reflect as high a failure rate as the rate claimed by Plaintiffs. While Plaintiffs believe that defendants' consumer complaint databases in fact reflected an unacceptable failure rate, and in any event dispute that they accurately reflect the true failure rate and at best represent the tip of the iceberg, defendants' internal consumer complaint data would have posed a substantial obstacle to prevent Plaintiffs from prevailing on their claims.

Third, defendants made clear that they intended to continue to challenge the propriety of class certification, and defendants, along with their expert Dr. Souri, developed arguments that the CCU Performance Problems did not result from a predominant defect as identified by Dr. Pecht (*e.g.,* the design of Whirlpool's CCU's was not sufficiently robust for use in the environment present in a high-efficiency front load washing machine because Whirlpool's used a CEM-1 printed circuit board instead of a more robust circuit board material such as CEM-3 or

---

[12]     Dr. Souri earned his Masters and Ph.D. in electrical engineering from Stanford University, was a member of staff at Raychem Corporate Research and Development Laboratories, and in 2012 was selected by the national Academy of engineering as one of "seventy-eight of the nation's greatest young engineers… who are performing exceptional engineering research and technical work in a variety of disciplines…" Joint Decl., ¶ 14.

FR4 for the soldering of components on a single side), but instead there were limited, *sui generis* CCU failures that resulted from a variety of independent issues that Whirlpool promptly fixed as part of its proactive quality control processes. While Plaintiffs continue to believe that class certification would been sustainable through trial and appeal, Co-Lead Counsel were mindful of the risk.

Finally, regardless of how strongly Plaintiffs feel about their case, there is a risk of losing a jury trial. Moreover, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal.

The Settlement provides substantial relief to Class Members without delay and is well within the range of reasonableness, particularly in light of the above risks that Class Members would face in litigation.

> **2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive**

While the Settlement was reached less than three months before trial, the length of continued litigation and associated cost would have been substantial, a fact to which both Whirlpool and Class Counsel know only too well given their experience trying the *Glazer* Ohio Class MDL Biofilm trial in October 2014 and their experience before the Sixth and Seventh Circuit and United States Supreme Court in connection with the CCU and Biofilm certification orders. The tasks that remained included completing fact discovery, deposing each other's experts, evaluating and perhaps filing summary judgment and/or *Daubert* motions, preparing and filing/transporting all the usual pretrial motions, exhibits and exemplars (which would have included the CCUs and complete washing machines as well). The trial was scheduled to last for more than two weeks, and, just like in *Glazer*, there would likely have been appeals regardless of the verdict at trial. In addition, the trial would only have resolved the Illinois CCU class and

would have left for future trials resolution of the California Whirlpool CCU claims in *Poulsen* and the non-Illinois CCU claims *in Kenmore*. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011 (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. There is Currently No Opposition to the Settlement

All parties favor settlement. Because notice has not yet been sent to the class, this factor cannot be fully evaluated prior to the final fairness hearing, but it bears mention at this stage that all nine Class Representatives strongly support the Settlement.

### 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiffs strongly endorse this Settlement.[13] Courts are entitled to "rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325 Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation; (2) Class Counsel engaged in formal and informal discovery and exhaustively evaluated the claims in the context of settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations by experienced counsel, a full-day in-person negotiation preceded by prior settlement efforts and the exchange of detailed Term Sheets and extensive negotiations regarding the formal settlement documents.[14] *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009; *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill.

---

[13]     Joint Decl., ¶ 3.
[14]     *Id.*, ¶¶ 8-11.

2000 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").  This factor therefore weighs in favor of preliminary approval.

**5.**     **<u>The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval</u>**

The Settlement was informed by Class Counsel's thorough litigation and analysis of the factual and legal issues involved.  The case was settled shortly before trial after significant litigation in the trial courts and appellate courts and after the parties and their experts had fully vetted their respective strengths and weaknesses. Joint Decl., ¶ 13.  That the case was resolved at a point in the litigation when the parties were imminently familiar with the factual landscape, the issues to be tried, and the strengths and weaknesses of their respective positions strongly supports approval of the Settlement.

**C.**     **<u>Provisional Certification of the Settlement Class is Appropriate</u>**

For settlement purposes, Plaintiffs respectfully request that the Court provisionally certify the National Kenmore and California Whirlpool Classes defined in the Agreement. The prior certification decisions of this Court in the Seventh Circuit make clear that class treatment of the CCU claims is proper. In any event, provisional certification for settlement purposes permits notice of the proposed Settlement to issue to inform Class Members of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the formal fairness hearing.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. Defendants waive their right to challenge class certification solely for purposes of this Settlement.  For the reasons set forth below, provisional certification is appropriate under Federal Rule of Civil Procedure Rule 23.

**1.**     **The Rule 23(a) Requirements are Satisfied**

The numerosity requirement of Rule 23(a) is satisfied because there are approximately 450,000 Kenmore Washers and 86,500 Whirlpool Washers in the classes, and joinder of owners of all such Washers is impracticable.  *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002 *See Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002 ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *12 (N.D. Ill. Aug. 20, 2009). The central question in this case – whether the CCUs were defectively designed – presents a predominating common question. The typicality requirement is satisfied because Plaintiffs' claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213.  The adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class, as demonstrated by the vigorous litigation of the CCU claims.  *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16.  Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including consumer and product defect actions.  *Id ; see also* biographies of class counsel Steve Schwartz at chimicles.com  (recent settlements include a $53 million recovery in consumer class action against Apple Inc. for wrongfully denying warranty claims for iPhones, resulting in a recovery of over 117% of the average cost paid by class members to replace their defective iPhones) and James Rosemergy at careydanis.com (recent settlements include a consumer class action against Nokia for defective cell phones resulting in make-whole recovery for members of the class).

### 2.    The Rule 23(b)(3) Requirements are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions present a significant aspect of the case and can be resolved for all Settlement Class members in a single adjudication. Common issues predominate here because the claims of the class members arise from Defendants' alleged defective design of the Washers' CCU's. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, at \*13 (N.D. Ill. May 27, 2008 (Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). And, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Sadowski*, 2008 U.S. Dist. LEXIS 41766, at \*14 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005) ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'"). For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### D.    The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 314 (1950.  According to the *Manual*, *supra*, at § 21.312, the settlement

notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits to the Settlement Agreement, satisfy

all of the criteria above.  As discussed above, the Notice Plan provides for direct, individual

notice via either email or mail after searching defendants' databases for addresses. Because

virtually all of the Kenmore Washers were purchased directly at or through Sears, the Sears'

databases are particularly robust. Even though Whirlpool is generally not a direct seller to

consumers, it does have a substantial warranty and customer complaint database which, notably,

is likely to include the consumers actually affected by the Performance Problems at the heart of

this case. As a supplement to this notice, however, the Settlement Agreement requires defendants

to pay for a publication notice for the Whirlpool California class. After consulting with the

Settlement Administrator, which has significant experience crafting notice campaigns, has

recommended a plan for the California publication notice that meets governing standards. See Declaration of KCC's Patrick M. Passarella filed concurrently herewith. In addition, notice will be provided via the establishment of a Settlement Website that not only includes the notice and relevant claim submission processes, but also includes provides Class Members with easy access to the Settlement Agreement and other relevant pleadings, including the competing fee papers. Finally, notice provides clear instructions to Class Members about the right to opt out of the class were serve objections, and those instructions are consistent with those routinely approved in other consumer class actions.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant the parties' Joint Motion and : (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the Settlement Classes and appoint Plaintiffs as class representatives; (3) appoint Steve Schwartz of Chimicles & Tikellis LLP and James Rosemergy of Carey Danis & Lowe as Co-Lead Class Counsel; and (4) appoint Kurtzman Carson consultants LLC as the Settlement Administrator to administer the proposed Notice and Claims Program.

Dated: July, 24, 2015                            Respectfully submitted,


<u>/s/ Steven S. Schwartz</u>                     <u>/s/ James J. Rosemergy</u>
Steve Schwartz                                   James J. Rosemergy
CHIMICLES & TIKELLIS, LLP                         CAREY, DANIS & LOWE
One Haverford Centre                             8235 Forsyth Boulevard
361 West Lancaster Avenue                        Suite 1100
Haverford, PA 19041                              St. Louis, MO 63105
Telephone: (610) 642-8500                        Telephone: (314) 725-7700
Facsimile: (610) 649-3633                        Facsimile: (314) 721-0905
steveschwartz@chimicles.com                      jrosemergy@careydanis.com


*Plaintiff's Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed using the Court's ECF system on July 24, 2015 and served upon all counsel of record thereby.

*/s/ James J. Rosemergy*