UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **In re: SEARS, ROEBUCK AND CO. FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION**<br><br>*This Document Relates to CCU Claims* | Case No. 06 C 7023<br>Consolidated with Case Nos.<br>07 C 0412 and 08 C 1832<br><br>Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

This class action was brought by purchasers of Kenmore- and Whirlpool-branded front load washing machines against Sears and Whirlpool. In February 2016, the Court approved the parties' class action Settlement Agreement. The administration and distribution of the settlement continues to date. Presently before the Court is Plaintiffs' motion to allow 579 late claims. For the reasons stated herein, Plaintiffs' Motion to Allow Late Claims [624] is granted as to 180 claims and is otherwise denied.

**A. Procedural History**

This case has a long history dating back more than a decade. Relevant to the present dispute, in July 2015, the parties entered into a class action settlement agreement. (Dkt. 505-1, hereinafter "Settlement Agreement"). On February 27, 2016, this Court held a final fairness hearing and granted the parties' Joint Motion for Final Approval of Class Action Settlement. (Dkts. 569, 585). On February 29, 2016, the Court entered a written order granting final approval to the Settlement

Agreement. (Dkt. 590, hereinafter "Final Approval Order"). On October 19, 2017, almost 20 months following final approval, Plaintiffs filed their Motion to Allow Late Claims which is now fully briefed.

**B. The Settlement Agreement and Final Approval Order**

In the Settlement Agreement, a "Valid Claim" is defined, in part, as a Claim Form that is "timely submitted by a Settlement Class Member." (Settlement Agreement, p. 11, Sec. 1.KK). The parties agreed that deadlines would be "measured from the date on which the Court enters the Preliminary Approval Order." (*Id*. p. 30, Sec. VIII.B.2). They agreed that 120 days after the entry of the Preliminary Approval Order was the "[d]ate on or before which all claims by Settlement Class Members to the Settlement Administrator for benefits under Section IV of this Agreement shall be postmarked or received" and "[c]laims received after this date shall not be Valid Claims." (*Id*. p. 32, Sec. VIII.B.2.h).

The Settlement Agreement also allowed for a "Prequalified Class Member" defined as a Settlement Class Member who "can be identified in Whirlpool's or Sears's databases as having paid for a Qualifying Repair or as having paid for a Qualifying Service Contract." (Settlement Agreement, p. 7, Sec. 1.Y). That provision further stated that "Defendants shall provide the Settlement Administrator with all information and assistance necessary to identify Prequalified Class Members and compile information to process their claims." (*Id*.).

In its Final Approval Order, this Court:

retain[ed] exclusive jurisdiction over the Class Action and the Settlement Agreement, including the administration, interpretation, consummation, and enforcement of the Settlement Agreement. With the parties' joint consent, the Court specifically incorporate[d] into this Order in full the parties' Settlement Agreement at docket no. 505-1, so that this Order may serve as an enforceable injunction. (Final Approval Order, p. 30, ¶ 7).

**C. Discussion**

Plaintiffs argue that it is common practice in class actions to allow late claims. They urge the Court to rely on its inherent and equitable powers and Federal Rule of Civil Procedure 6(b), which allows a court to extend time, to allow the late claims to be processed. Defendants assert that judicial estoppel and waiver should bar Plaintiffs' motion. They also argue that the parties' Settlement Agreement only allows for timely filed claims, and equitable principles are irrelevant to this question of contract construction.

The Court is mindful of the terms of the Settlement Agreement as well as the significant time and effort it took to reach a resolution in this case. The Court does not believe, however, that its fiduciary duty to class members and equitable powers ceased after final approval of the Settlement Agreement was granted. The particular circumstances present in this case, namely the fact that the majority of the valid-but-late claims[1] were from Prequalified Class Members, the status of settlement processing and distribution, the minimal disruption to settlement administration and judicial efficiency, and the lack of surprise or undue prejudice to

---

[1] The term "valid-but-late" is used herein for ease of reference, although the Court notes Defendants' position that these claims are not Valid because they were late. The Court uses this term to refer to the 180 claims that will require no further follow-up by the Settlement Administrator. (See Dkt. 623 at 4, ¶7(b)).

Defendants, convince that Court that the 180 valid-but-late claims should be paid. However, the remaining late filed claims, which may or may not fit the requirements for payment, will require follow-up by the Settlement Administrator, will further burden the process, and for which Plaintiffs have not offered an explanation for their tardiness, will not be allowed this late in the process.

### *1. The Court's Equitable Authority and Fiduciary Duty*

It is well-settled that in class actions, courts have equitable and inherent powers and a fiduciary duty to class members. *See Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982) ("the class action procedure [is] equitable in origin"); *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276 (7th Cir. 2017) ("[D]istrict courts should act as the 'fiduciary of the class,' subject 'to the high duty of care that the law requires of fiduciaries.'"). Retaining jurisdiction after a class action settlement agreement has been finally approved and the case has been dismissed "is consistent with [the court's] responsibility, pursuant to Fed.R.Civ.P. 23, to protect the interests of class members." *Alexander v. Chi. Park Dist.*, 927 F.2d 1014, 1023 (7th Cir. 1991) (cert. denied, 475 U.S. 1095 (1986)).

Here, the Court explicitly retained jurisdiction to administer, interpret, consummate, and enforce the Settlement Agreement. (Final Approval Order, p. 30, ¶ 7). In addition to this explicit retention of jurisdiction, the Court's inherent powers and fiduciary duty continue "until the [settlement fund] is actually distributed." *Alexander v. Chi. Park Dist.*, No. 79 C 2242, 1989 U.S. Dist. LEXIS 13988, at *3 (N.D. Ill. Nov. 20, 1989) (quoting *Zients v. La Morte*, 459 F.2d 628, 630

(2d Cir. 1972). "[A] court supervising the distribution of a [settlement] fund has the inherent power and duty to protect unnamed, but interested persons." *Zients,* 459 F.2d at 630. In *Standard Iron Works v. ArcelorMittal*, for example, one year after final approval of the settlement agreement, the court considered absent class members' interest "in the fair allocation of the settlement fund." No. 08 C 5214, 2015 U.S. Dist. LEXIS 142222, at *8 (N.D. Ill. Oct. 20, 2015) (internal citations omitted). *See also Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (the court's fiduciary role to absent class members includes examining the settlement's implementation).

With regard to late filed claims specifically, the Seventh Circuit Court of Appeals has held that "courts have discretion to permit the filing of late claims, [but] they should permit such claims only when the equities, on balance, favor claimants." *Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985). Other appellate courts agree. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) ("A primary use of these equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members."); *Zients*, 459 F.2d at 630–31 (finding that equities weighed in favor of allowing class members filing untimely claims to participate in the settlement fund).

Defendants argue that the Court should not consider the equities because the parties' Settlement Agreement controls. To support their position, Defendants rely on *Dahingo v. Royal Caribbean Cruises, Ltd.,* 312 F. Supp. 2d 440 (S.D.N.Y. 2004). (*see* Dkt. 632 at 15). The *Dahingo* court surveyed late-claims cases and found they

5

considered whether a modification of the settlement agreement would result in increased liability of the defendant and whether the claims deadline was agreed to by the parties or set by the court. *Id.* at 446–47. In *Dahingo,* the deadline was agreed upon by the parties and defendants were entitled to a return of any excess monies not paid. Therefore the court reasoned that there was "no justification for going beyond contract principles" and denied the motion to allow late claims. *Id.* at 447–48. To the contrary, in *Barnes v. District of Columbia*, 38 F. Supp. 3d 131 (D.D.C. 2014), the court declined to adopt *Dahingo*'s "strict application of contract law principles" despite the parties' settlement agreement with its claim form deadline. *Id.* at 132. *Barnes* instead followed the *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) framework for excusable neglect and allowed an extension of time for class members to submit claim forms for payment. *Id.* at 134.[2]

The Court agrees with the reasoning in *Barnes* and believes the facts in this case warrant a more lenient approach with regard to the 180 valid-but-late claims. *See Curtiss-Wright Corp.*, 687 F.2d at 174 ("the class action procedure [is] equitable in origin…[and] 'equity' [has been used] to denote not a particular type of remedy, procedure, or jurisdiction but a mode of judgment based on broad ethical principles rather than narrow rules."); *Russell v. Ill. Bell Tel. Co.*, No. 08 C 1871, 2009 U.S.

---

[2] The other cases cited by Defendants for the general proposition that a settlement agreement is a contract do not address the specific issues raised when class members file claims late. (Dkt. 632 at 13–14) (citing *Webb v. James,* 147 F.3d 617 (7th Cir. 1998), *Walker v. Commercial Recovery Sys.*, No. 99 C 5512, 2000 U.S. Dist. LEXIS 17933 (N.D. Ill. Dec. 6, 2000), *Medina v. City of Chi.*, Case No. 00 C 1, 2001 U.S. Dist. LEXIS 14650 (N.D. Ill. Sep. 14, 2001), *Eirhart v. Libbey-Owens-Ford Co.*, No. 76 C 3182 consolidated with No. 78 C 2042, 1991 U.S. Dist. LEXIS 7062 (N.D. Ill. May 22, 1991)).

Dist. LEXIS 131170, at *5 (N.D. Ill. June 17, 2009) (finding that certain plaintiffs who signed claim forms soon after the deadline "substantially complied with the deadline"); *Zients*, 459 F.2d at 630–31 (declining to take a "narrow" view of the court's role in overseeing a class action); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d at 316–17 ("[R]igid and unquestioned adherence to such limitations belies principles of equity and the court's role as a fiduciary in class actions when allowing a claimant participation in a settlement works no harm on the conduct of the proceedings and does not significantly prejudice the interests of the parties."); Late claims, 4 Newberg on Class Actions § 12:23 (5th ed.) ("Generally, a court cannot rewrite a settlement agreement. However, courts have found it within their equitable authority to permit class members who filed untimely claims to participate in the settlement.").

In addition, the Court does not believe allowing the 180 class members to be paid materially changes the Settlement Agreement. *See Alexander*, 1989 U.S. Dist. LEXIS 13988, at *3 (N.D. Ill. Nov. 20, 1989) (court order in class action "did not substantially modify the obligations of the parties."). While the Settlement Agreement states that only timely claims will be paid, it also anticipates some flexibility with regard to "Valid Claims" and extensions of time. It "authorizes the payment by Defendants of Valid Claims approved by the Settlement Administrator as Valid Claims, or otherwise reviewed by Class Counsel and counsel for Defendants and determined to be Valid Claims" (Settlement Agreement, III.B) and also provides that the parties "may agree to reasonable extensions of time to carry

7

out any of the provisions of this Agreement and Settlement." (*Id.* at XIV.A). The agreement states that "decisions regarding notice and settlement administration shall be made jointly between Defendants and Class Counsel [and] disputes, if any, shall be resolved by the Court" (*Id.* at V.A). This provision allowing for judicial resolution of disputes about settlement administration is not time-limited. Indeed resolving such a dispute is consistent with the Court's explicit retention of jurisdiction, inherent powers and fiduciary duty to class members. The Court is unpersuaded that the Settlement Agreement prevents it from allowing any late filed claims.[3]

The Court is also not convinced by defendants' judicial estoppel argument. Judicial estoppel is "an equitable concept, and its application is therefore within the court's sound discretion." *In re Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990). It "may be applied only where a clearly inconsistent position is taken." *Id.* at 641. Plaintiffs did not take clearly inconsistent positions. They requested that the Court approve the settlement as fair and reasonable and stated that there were no objections to the claims and notice process. That is not inconsistent with Plaintiffs' request that the Court exercise its discretion under FRCP 6 and its equitable authority to allow payment to a limited number of class members who submitted late claims. This is

---

[3] Defendants argue that the claims deadline was a strict, immovable deadline. However Plaintiffs previously reported that because of technical issues with the settlement website, corrective notices were sent to class members, with Defendants' agreement, some *after* the December 21, 2015 claims deadline. (*See* Dkt. 570-1 at 1–2). This Court acknowledged that the parties sent corrective notices which it found "only [] improve[d] the Notice Plan earlier approved by the Court." (Final Approval Order at 17–18).

8

simply not a situation where judicial estoppel must be applied "to prevent the perversion of the judicial process." *In re Cassidy*, 892 F.2d at 641.

Nor did Plaintiffs waive the ability to seek compensation for these late claims by not raising them at the final fairness hearing. Waiver is intentionally and voluntarily relinquishing a known right. *See Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 66, 367 Ill. Dec. 20, 40 ("waiver means the voluntary relinquishment of a known right and arises from an affirmative, consensual act consisting of an intentional relinquishment of a known right") (internal citations and quotations omitted). While the Court is frustrated that Plaintiffs waited 20 months to file this motion, failing to raise the issue at the final fairness hearing does not constitute waiver.

The Court agrees with Defendants that Plaintiffs should have requested Court intervention on this issue far earlier. However as discussed below, the Court finds that the equities favor allowing the 180 valid-but-late claims but denying the other 399 claims.

### *2. Equitable Considerations*

Having determined that the Court is free to exercise its equitable powers over this question, the equities favor allowing the 180 valid-but-late claims to be paid. The excusable neglect standard considers "all relevant circumstances" including the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for delay, and whether the movant acted in good faith. *See Pioneer Inv. Servs.*, 507 U.S. at 395.

Here, all of the 180 individuals are current class members, the majority of them are Prequalified Class Members, the settlement administration and processing continues to date, there will be minimal disruption to settlement administration, and there is no surprise or undue prejudice to Defendants. It is undisputed that more than half of all late claims were received within one month of the filing deadline. (*see* Dkt. 623, ¶ 7). The 180 valid-but-late claims are from current class members and 156 of those are Prequalified Class Members. The value of the 180 claims is $47,314.20. (*Id*.). A substantial amount (86%) is owed to Prequalified Class Members. (*Id*.).

Prequalified Class Members have a unique status in this case. They were identified as class members who paid for a Qualifying Repair or a Qualifying Service Contract; the amount of their claims has been and is known to the parties. Defendants agreed to provide the Settlement Administrator with information and assistance to identify them and process their claims. (Settlement Agreement, p. 7, Sec. 1.Y). Prequalified Class Members were "not required to submit *any* documentation to support their claims; to receive reimbursement for the amounts that Sears already knows the Prequalified Class Members paid, these Class Members need only confirm their current name and address, check the eligibility boxes on the online Claim Form, and submit their electronic signature." (Final Approval Order, p. 11).

It is also undisputed that as of the time the Motion to Allow Late Claims was filed, 9,535 of the 11,335 total claims received by the Settlement Administrator

10

remained under review. (Dkt. 623, ¶ 5). Therefore, allowing these 180 claims that require no further action by the Settlement Administrator will result in minimal disruption to settlement administration and judicial efficiency. There is also no surprise or undue prejudice to Defendants. Defendants have long been aware of the existence and amounts owed to Prequalified Class Members. *See Barnes*, 38 F. Supp. 3d at 133 ("This situation is [] distinguishable from cases wherein a defendant is unfairly surprised by claimants who appear after the deadline has passed."). Defendants are correct that they did not agree to a minimum settlement amount in this case. But they also did not agree to a maximum cap. Although their monetary liability will increase, it will be by a set and limited amount.

There is also no risk of prejudice to the other class members because payment of the 180 claims will not change the amount paid to other class members. There is no evidence of bad faith on the part of the late-filing class members. Finally, as discussed, the Court places great weight on the fact that a majority of the 180 valid-but-late claims were filed by Prequalified Class Members.

### 3. The Other Late Claims

Drawing the line in this case at the 180 valid-but-late claims is appropriate because "[d]efendants are entitled to some certainty in their settlement liability… a line must be drawn and 'finish' written on the litigation at some point." *Burns,* 757 F.2d at 155. Considering the equities, the Court does not find it appropriate to allow the other 399 claims to be processed. Assessing these claims will require additional time, administrative effort and cost which Defendants are required to pay. (*See*

11

Settlement Agreement, I.A. and VI). While the amount owed to the 180 individuals is known, Defendants' monetary liability for the other 399 late claims is unknown because they were preliminarily deemed deficient. (Dkt. 623, ¶ 7). The proportion of the 399 claims with incurable deficiencies is also unknown. (*Id*.).

Furthermore, Plaintiffs have not provided an explanation for why these claims were late. Plaintiff argues that technical issues with the settlement website "may have been a contributing factor" and that the claims period fell over the holidays. (Dkt. 622 at 10). But this is speculation. The extra delay and administrative effort required to determine whether these are even compensable claims convinces the Court that allowing these claims to be processed would prejudice the Defendants. Considering all the relevant circumstances, Plaintiffs have failed to establish excusable neglect as to these claimants.

**D. Conclusion**

Plaintiffs' Motion to Allow Late Claims [624] is GRANTED only as to the 180 valid-but-late claims. Plaintiffs' Motion is otherwise DENIED. No further additional late claims will be allowed.

Dated: March 2, 2018

E N T E R:

*Mary M Rowland*
_____
MARY M. ROWLAND
United States Magistrate Judge